# United States District Court

———————— **STATE AND DISTRICT OF COLORADO** ————————

**UNITED STATES OF AMERICA**
**v.**

**CRIMINAL COMPLAINT**

**1. RICHARD KELLOGG ARMSTRONG**

**CASE NUMBER:** *10-mj-1088-NLM*

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief: On or about <u>the dates indicated in Attachment A hereto, incorporated by reference</u>, in the State and District of <u>Colorado</u>, and elsewhere, the defendant did:

Please See Attachment A attached hereto and incorporated by reference

in violation of Title <u>18</u> United States Code, Sections <u>287, 1341 and 2</u>.

I further state that I am a <u>Special Agent, Internal Revenue Service, Criminal Investigation Division</u> and that this complaint is based on the following facts:

Please See Affidavit attached hereto as Attachment B.

Continued on the attached sheet and made a part hereof:   **X** Yes   ☐ No

_____
Signature of Complainant   Greg M. Flynn, Special Agent, U.S.
Internal Revenue Service, Criminal Investigation Division

Sworn to before me, and subscribed in my presence

_____<u>5/18/10</u>_____   at   ____<u>Denver, Co</u>_____
Date                                                         City and State

_____         _____
**KRISTEN L. MIX**                                 Signature of Judicial Officer
Name and **U.S. MAGISTRATE JUDGE**
Title of Judicial Officer
**DISTRICT OF COLORADO**

## ATTACHMENT A

Specification No. 1

2008 *[handwritten]*

Continuing from on or about October 23, ~~208~~ through to on or about November 3, 2008, in the State and District of Colorado and elsewhere, the defendant made and presented to the United States Treasury Department claims against the United States for payments of refunds of taxes in the aggregate amount of approximately $ 1.4 million, which he then and there knew to be false, fictitious, and fraudulent, by causing to be prepared and filed Amended U.S. Individual Income Tax Returns, on Forms 1040X, for the years 2005, 2006 and 2007, which returns were presented to the United States Treasury Department, through the Internal Revenue Service.

In violation of Title 18, United States Code, Section 287 and 2.

Specification No. 2

Continuing from on or about January 23, 2009 through to on or about January 31, 2009, in the State and District of Colorado and elsewhere, the defendant made and presented to the United States Treasury Department a claim against the United States for payment of a refund of taxes in the amount of approximately $ 1.739 million, which he then and there knew to be false, fictitious, and fraudulent, by causing to be prepared and filed a U.S. Individual Income Tax Return, on Form 1040, for the year 2008, which returns were presented to the United States Treasury Department, through the Internal Revenue Service.

In violation of Title 18, United States Code, Section 287 and 2.

Specification No. 3

On or about October 23, 2008, in the State and District of Colorado, and elsewhere, for the purpose of executing a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent material pretenses, representations and promises, the defendant did knowingly cause, and aid and abet others to cause, to be deposited a matter and things to be sent and delivered by a commercial interstate carrier, according to the direction thereon, to wit, three completed amended U.S. Income Tax Returns for the years 2005, 2006, and 2007, from Elizabeth, Colorado to Prescott, Arizona.

In violation of Title 18, United States Code, Sections 1341 and 2.

1

**ATTACHMENT B**

**AFFIDAVIT**

I, GREG M. FLYNN, being duly sworn, hereby depose and state as follows:

1.       I am a Special Agent/Criminal Investigator with the Internal Revenue Service Criminal Investigation Division (IRS/CID). I have been employed as such since July of 1999, and have worked in the Denver Field Office since January of 2000.

2.       Pursuant to my employment with IRS/CID, I was trained at the Federal Law Enforcement Training Center in Glynco, Georgia. As a Special Agent with IRS/CID I have investigated numerous financial fraud cases, including: false claims submitted to the Internal Revenue Service (IRS), tax evasion, preparation of fraudulent tax returns, conspiracy to defraud the United States Government, mail fraud, wire fraud and money laundering.

3.       Prior to my employment with IRS/CID, I worked as an accountant for roughly five years. I performed auditing, tax and general accounting services during my tenure as an accountant. I have an inactive Certified Public Accountant (CPA) license issued by New York State. I have a Bachelors of Science in Business Administration with a major in accounting from Bucknell University in Lewisburg, Pennsylvania.

4.       I submit this affidavit in support of a criminal complaint charging Richard Kellogg ARMSTRONG with filing false claims for income tax refunds, in violation of Title 18, United States Code, Section 287, and with engaging in a mail fraud scheme, as described further below, in violation of Title 18, United States Code, Section 1341. This affidavit is based on a criminal investigation of ARMSTRONG and others which I have been conducting

1

concerning their use and exploitation of false and fictitious IRS Forms 1099-OID, as part of a

fraudulent scheme to obtain improper large income tax refunds.  The information set forth herein

is intended for the sole purpose of establishing probable cause for the complaint against Richard

Kellogg ARMSTRONG.  As such, this affidavit does not contain all information known to me

concerning ARMSTRONG or the investigation involving him. The statements contained within

this affidavit are based, in part, on the results of my participation in this investigation, in part on

information that has been provided to me directly or indirectly by other IRS agents and

employees involved in the investigation or related matters, on my experience and training as an

IRS/CID special agent, and my analysis of financial and public records and examination of tax

return information and documents.

### **Relevant Statutes**

5.       False, Fictitious, or Fraudulent Claims -18 U.S.C. § 287 makes it a felony to make

or present to any person or officer in the civil, military, or naval service of the United States, or

to any department or agency thereof, any claim upon or against the United States, or any

department or agency thereof, knowing such claim to be false, fictitious, or fraudulent.

6.       Mail Fraud - 18 U.S.C. § 1341 makes it a felony to devise any scheme or artifice

to defraud, or for obtaining money or property by means of false or fraudulent pretenses,

representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute,

supply , or furnish or procure for unlawful use any counterfeit or spurious coin, obligation,

security, or other article, or anything represented to be or intimated or held out to be such

counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting

so to do, places in any post office or authorized depository for mail matter, any matter or thing

2

whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any

matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or

takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by

mail or such carrier according to the direction thereon, or at the place at which it is directed to be

delivered by the person to whom it is addressed, any such matter or thing.

### General Information Regarding Form 1099- OID Schemes

7.     Based on my work on the investigation which is the subject of this affidavit, I

have learned the following:

A.     Nationwide, the IRS is receiving a large number of fraudulent tax returns/false

claims for refunds utilizing Forms 1099-OID. The perpetrators of these schemes generally claim

credit for large amounts of federal income tax withheld from supposed original issue discount

income using bogus Forms 1099-OID, when in fact no Original Issue Discount (OID) income or

related federal income tax withholding occurred. The perpetrators then claim credit for the

payments that were never made to the IRS on tax returns or amended tax returns, and request

large tax refunds, which are based entirely on the amount of federal income tax they claim was

withheld from the claimed OID income.

B.     The 1099-OID schemes are the most recent in a series of frivolous arguments

against the IRS and the United States tax system as a whole. The United States Government has

suffered significant losses as a result of these schemes.

C.     OID income is a form of interest and occurs when a debt instrument is issued at a

discount, or is purchased for less than its ultimate redemption value. There are legitimate

financial transactions that involve original issue discount income, which are reported to the IRS

by the issuing institution on Form 1099-OID. These transactions are governed by Internal

Revenue Code, Sections 1271 through 1275. OID income, reported on Form 1099-OID, is

generally included in a taxpayer's income as it accrues over the term of the debt instrument,

whether or not they receive any payments from the issuer. A debt instrument generally has OID

when the instrument is issued for a price that is less than its stated redemption price at maturity.

OID is the difference between the stated redemption price at maturity and the issue price. For

example, if a taxpayer buys for $950 a 10-year bond with a stated redemption price at maturity of

$1,000, the OID is $50 and the taxpayer must include the OID in income as it accrues over the

term of the bond. Box 4 of Form 1099-OID will contain an amount if the taxpayer was subject to

backup withholding. Investment income is generally not subject to regular federal income tax

withholding. However, in certain instances it may be subject to backup withholding. Backup

withholding applies if (a) the taxpayer does not give the payer an identification number, which is

either a social security number or an employer identification number, (b) the IRS notifies the

payer that the taxpayer gave an incorrect identification number, (c) the IRS notifies the payer that

the taxpayer is subject to backup withholding because the taxpayer underreported interest on

their tax return, or (d) the taxpayer is required, but failed, to certify that they are not subject to

backup withholding for the reason described in (c). If backup withholding applies, the payer will

withhold funds from the taxpayer and remit them to the IRS, similar to how an employer handles

payroll taxes withheld from wages paid to employees. When used properly the payer will file

Forms 1099-OID along with a Form 1096 summarizing the amounts of income, and taxes

withheld, with the IRS and provide copies of the Forms 1099 to the payees, and remit the

withheld federal income taxes to the IRS-US Treasury.

D.      Fraudulent use or misuse of Forms 1099-OID: Individuals are preparing IRS Forms 1099-OID and submitting them to the IRS attached to fraudulent tax returns or amended tax returns. In most instances, someone generates IRS Forms 1099-OID that purport to be from financial institutions of some kind. The bogus Forms 1099-OID claim large amounts of OID income and equal amounts of federal income tax withheld from that income. The amounts of federal income tax withheld listed on the Forms 1099-OID are claimed as payments on income tax returns submitted to the IRS. Those returns request refunds. The persons involved claim credit for and request refunds based on payments that were never made to the IRS.

E.      1099-OID type fraudulent tax returns/false claims for refunds typically contain statements addressing the return of equity interest to principal, creator or surety or similar verbiage. I do not know what is meant by that, and have no knowledge of similar verbiage being used on legitimate tax returns. Some 1099-OID returns will have actual Forms 1099-OID attached to them, others simply claim large amounts of unsubstantiated federal income tax withheld without providing details to the source, or attaching any Forms 1099-OID.

## Summary of the Investigation To Date

### The Nature And Origins of the Investigation.

8.      In or about April 2009, the IRS's Fraud and Detection Center in Ogden, Utah referred for possible criminal investigation a series of suspected fraudulent income tax returns that had been prepared by Curtis L. Morris, doing business as Numbers And Beyond, claiming large federal income tax refund payments, using as their apparent basis fraudulent IRS Forms 1099-OID or related information and matching the profile of fraudulent 1099-OID schemes of the sort described above.  Based on my review of the referral and the underlying returns and

5

records filed with or on file with the IRS, I learned that Mr. Morris prepared at least forty-six

federal income tax returns for the tax years 2005 through 2008 that appear to have exploited the

use of fraudulent IRS Forms 1099-OID or information purported to be derived from such forms,

consistent with 1099-OID schemes described above, in order to claim large tax refunds for the

taxpayers. These forty-six returns were prepared for over twenty clients. These returns claim

large amounts of federal income tax withheld on IRS Forms 1099-OID and correspondingly

claim large refunds due.

9.      I learned as well that the returns flagged for investigation were submitted to the

IRS on paper by mail. The returns were signed and dated by both the taxpayer(s) and Morris, as

the return preparer. The returns were then typically mailed from various locations in Colorado,

New Mexico, Arizona, and California to various IRS locations for processing.

10.     The tax returns prepared by Numbers and Beyond that I  reviewed that were the

subject of the referral either had Forms 1099-OID attached, or indicia of 1099-OID type activity.

Specifically most of the returns had statements regarding the return of equity interest to creator

and surety or words to the effect, which is a telltale sign of a 1099-OID type fraudulent

return/false claim for refund based on other returns that have been detected by the IRS to be

exploiting the 1099-OID scheme.

11.     Based on my review, I learned as well that IRS records do not show any of the

Forms 1099-OID attached to any of the returns prepared by Morris and Numbers and Beyond

being filed, independently or otherwise, with the IRS by the parties purported to have issued

them, something which an issuer of a valid Form 1099-OID would have been obligated to do.

Furthermore, IRS records did not show the amounts of federal income tax withheld claimed on

the Numbers and Beyond tax returns being reported or remitted to the IRS either. The vast majority of federal income tax withheld claimed on the Numbers and Beyond tax returns could not be substantiated and appeared to be bogus.

12.     In addition to being unsubstantiated, the amounts of federal income tax withheld claimed on the Numbers and Beyond tax returns, I could tell from my review of the returns, was unreasonable with respect to the reported income for those periods. For a sample of returns analyzed, the claimed federal income tax withheld exceeded the total income on the returns. Typically, federal income tax is withheld at a rate of 28% from the related income, and would not exceed reported income.

13.     Among the returns referred for investigation were amended joint federal income tax returns prepared by Morris and Numbers And Beyond for Sharon L. and Richard K. Armstrong for the years 2005 through 2007.  Each of these returns claimed large refunds owed to these taxpayers based on asserted income tax withheld from income listed on Forms 1099-OID. As a result of the filed returns, the IRS issued checks to Richard K. Armstrong and Sharon L. Armstrong for income tax refunds and interest exceeding $1.6 million.

**The Fraudulent Armstrong Income Tax Returns & Refund Claims**.

14.     Based on my review of the Armstrong returns that were prepared by Morris and Numbers And Beyond, and which were the basis for the $1.6 million refund and interest payments to the Armstrongs, as well as related investigation, I learned, in particular, the following, among other things:

A.     On or about November 3, 2008, the IRS received three Amended US Individual Income Tax Returns for Richard K. & Sharon L. Armstrong of Lake Havasu City, Arizona. The

7

returns were for the taxable years 2005, 2006 and 2007. The returns indicate that they were prepared by Numbers and Beyond at 5996 Pine Ridge Drive in Elizabeth, Colorado.

B.      The Armstrong returns were signed by Richard Armstrong, Sharon Armstrong and Curtis Morris as paid preparer.  The signatures on the tax returns of Richard K. Armstrong are similar to signatures for Richard Kellogg ARMSTRONG noted on his Arizona driver's license, his U.S. passport application, previously filed tax returns, and various bank records and financial documents.

**The 2005 Return**.

C.      The 2005 amended tax return for Richard K. and Sharon L. Armstrong had seventeen Forms 1099-OID attached to it. Those forms, four in Sharon's name, and thirteen in Richard's, listed federal income tax withheld by various financial institutions of $582,352.10. Also, attached to the 2005 amended tax return were two IRS Forms 1096 Annual Summary and Transmittal of U.S Information Returns. One listed its filer as Richard K. Armstrong and stated that he had thirteen forms with a total of $540,752.10 of federal income tax withheld. The other Form 1096 listed Sharon L. Armstrong as its filer, and stated she had four forms with a total of $41,600.00 of federal income tax withheld.

D.      IRS Form 1096 is a summary form or cover sheet for Forms 1099 and some other miscellaneous IRS documents. Typically, a Form 1096 is issued by the payer to summarize all of the Forms 1099 it issued during a particular year. Form 1096 is not used to report a summary of Forms 1099 received by anyone taxpayer from separate sources. With a typical Form 1096 filing, the payer will provide the IRS with copies of all the Forms 1099 it issued during a year and remit to the IRS any federal income tax that was withheld. Also with a typical Form 1099/Form 1096

filing, the payer provides Forms 1099 to each payee it paid during the year.

E.      IRS records did not show any of the Forms 1099-OID attached to the Armstrongs'

2005 return being filed with the IRS by the parties purported to have issued them.

F.      The amended tax return for 2005 requested a refund of $582,352. On or about

November 28, 2008, the Internal Revenue Service issued United States Treasury Check # 2309

53596478 payable to Richard K. & Sharon L. Armstrong for $699,449.70. Included in that

amount was $117,097.70 of interest on the $582,352 refund requested for 2005. The check was

mailed to Mr. & Mrs. Armstrong at 1642 N McCulloch Boulevard # 391 in Lake Havasu City,

Arizona. The check was negotiated on or about December 15, 2008 with an endorsement stamp

that reads For Deposit Only Richard K Armstrong Sharon L Armstrong 115747682.

**2006 Return.**

G.      The 2006 amended tax return for Richard K. and Sharon L. Armstrong had eleven

Forms 1099-OID attached to it. Those forms, three in Sharon's name, and eight in Richard's, list

federal income tax withheld by various financial institutions of $283,746.00. Also attached to the

2006 amended tax return were two IRS Forms 1096 Annual Summary and Transmittal of U.S

Information Returns. One lists its filer as Richard K. Armstrong and stated he had eight forms

with a total of $251,846.00 of federal income tax withheld. The other Form 1096 lists Sharon L.

Armstrong as its filer, and stated she had three forms with a total of $31,900.00 of federal income

tax withheld.  IRS records did not show any of the Forms l099-OID attached to the Armstrong's

or any of the other returns prepared by Numbers and Beyond being filed with the IRS by the

parties purported to have issued them.

H.      The Armstrong's amended tax return for 2006 claimed a refund due of $283,746.

The Internal Revenue Service issued United States Treasury Check # 2309 53596479 on or about November 28, 2008. The check was payable to Richard K. & Sharon L. Armstrong and was mailed to them at 1642 N McColloch Boulevard in Lake Havasu City, Arizona. The check was for $315,252.75, the $283,746 plus interest of $31,512.60 on the refund requested for 2006. (There is a miscellaneous un-reconciled amount of $5.85.) The check was negotiated with a stamp that reads, Pay to the order of Bank of America Lake Havasu City AZ 86403 For Deposit Only Richard K Armstrong Sharon L Armstrong 115747682. Stamps on the check indicate it was negotiated on or about December 15, 2008.

**The 2007 Return.**

I.      The 2007 amended tax return for Richard K. and Sharon L. Armstrong had ten Forms 1099-OID attached to it. Those forms, two in Sharon's name, and eight in Richard's, list federal income tax withheld by various financial institutions of $605,300.00. Also attached to the 2007 amended tax return were two IRS Forms 1096 Annual Summary and Transmittal of U.S Information Returns. One lists its filer as Richard K. Armstrong and stated he had eight forms with a total of $558,300.00 of federal income tax withheld. The other Form 1096 lists Sharon L. Armstrong as its filer, and stated she had two forms with a total of $47,000.00 of federal income tax withheld. IRS records did not show any of the Forms 1099-OID attached to the Armstrong's or any of the other returns prepared by Numbers and Beyond being filed with the IRS by the parties purported to have issued them.

J.      The Armstrong's amended tax return for 2007 requested a refund of $605,300. On or about November 28, 2008, the Internal Revenue Service issued United States Treasury check # 230953596480 payable to Richard K. & Sharon L. Armstrong and mailed it to them at 1642 N

10

McColloch Boulevard in Lake Havasu City, Arizona. The check was for $622,779.16, which

included $17,479.16 of interest in addition to the $605,300 refund requested for 2007. The check

was negotiated with a stamp that reads, Pay to the order of Bank of America Lake Havasu City

AZ86403 For Deposit Only Richard K Armstrong Sharon L Armstrong 115747682. Stamps on

the check indicate it was negotiated on or about December 15, 2008.

**Analysis of Forms 1099-OID Attached to Armstrong Tax Returns**.

15.     I was able to determine from the returns themselves and related IRS records that

each of the amended tax returns for Richard and Sharon Armstrong for 2005, 2006 and 2007

were filed with the IRS on paper by mail. I was able to tell from my review of the IRS Forms

1099-OID attached to these amended returns that these supporting forms were bogus in nature

and consistent with a Form 1099-OID scheme.

16.     Specifically, for the Forms 1099-OID attached to the Armstrong amended tax

returns for 2005, 2006 and  2007:

A.     The Forms 1099-OID attached to the Armstrong's tax returns for 2005, 2006 and

2007 appear similar in font, type and form, even though they are allegedly from numerous

different financial institutions.

B.     There are two IRS Forms 1096 attached to each return. These Forms 1096

summarize the Forms 1099-OID purportedly received by Richard & Sharon Armstrong. When

used properly, IRS Forms 1096 are filed with the IRS by issuers of Forms 1099 to summarize

information contained on the Forms 1099 they issued to payees. The Forms 1096 for Richard &

Sharon Armstrong summarize the Forms 1099-OID they allegedly received.

C.     Some of the Forms 1099-OID attached to the returns list sixteen digit account

11

numbers, with dashes every four digits, for accounts at institutions such as Citibank, Discover,

Bank of America, First USA, Chase Bank, and Capital One. Based on my experience as a

financial investigator, which includes reviewing numerous credit reports, I could tell that these

numbers appear to be credit card account numbers, with amounts listed in boxes # 1 & # 4 that

appear to be credit limits on those accounts.

D.      Included in the Forms 1099-OID attached to the 2005 amended tax returns were

two forms supposedly from Countrywide Home Loans. The forms list account numbers # 287047

and # 299633. Forms 1098, mortgage interest statements, independently filed by Countrywide

Home Loans with the IRS indicate that Richard K. Armstrong paid mortgage interest on accounts

#287047 & 299633 in 2005. Included in the Forms-1099-OID attached to the 2007 amended tax

return for Richard & Sharon Armstrong was a Form 1099-OID supposedly from Countrywide

Home Loans. The form lists account # 120258003 and indicates Richard K. Armstrong had

$300,000 of original issue discount (income) in 2007, with $300,000 of federal income tax

withheld from that amount. Countrywide Home Loans independently filed a Form 1098

mortgage interest statement with the IRS for 2007 indicating that Richard Armstrong paid

mortgage interest of $18,750 on account # 120258003.

E.      The Forms 1099-OID attached to the Armstrong's tax returns list equal amounts in

Box # 1 Original Issue Discount (income), and Box # 4 Federal Income Tax Withheld.

Legitimate Forms 1099-OID would normally list a smaller amount in Box # 4 than they do in

Box # 1. Box # 4 represents the amount of federal income tax withheld from the income in Box #

1 and is typically 28% of that amount.

F.      IRS records do not show the amounts of federal income tax withheld claimed on

12

these returns, attributable to the attached Forms 1099-OID, being reported or remitted to the IRS. The amounts of federal income tax withheld claimed on the Armstrong's returns, attributable to the amounts claimed on these forms, could not  be substantiated by any IRS records.  As a consequence, the purported income tax withheld amounts that were the basis for the Armstrongs' $1.6 million in refund and interest claims were not supported by any tax payments reported or made to the IRS.

**Warranted Search Of Curtis Morris' Elizabeth, Colorado Residence**
**And Related Investigation.**

17.     On June 30, 2009, based on information gathered in the investigation to that date, I applied for and obtained a federal search warrant from the United States District Court in Colorado for Curtis Morris' residence in Elizabeth, Colorado, the premises where he primarily conducted his tax preparation business under the name Numbers And Beyond and where it appeared that he prepared and mailed out many of  the returns exploiting the fraudulent 1099-OID tax refund scheme.  I and other IRS agents conducted this warranted search the following day.

18.     While the search of this residence was being conducted, Curtis Morris agreed to be interviewed and gave a lengthy statement to me, in which he admitted the following, among other things:

A.     He knows the IRS considers the OID program he operates a scam.

B.     He prepared OID tax returns using the program for numerous clients and charged $150 a return.   He explained that the OID returns that he prepared were supported by IRS Forms 1099-OID that did not report income taxes that were actually withheld and paid over to the IRS

13

by the taxpayer (or anyone) but rather money that he believed was owed by financial institutions to the IRS; he indicated that financial institutions that extended loans and other forms of credit to individuals were creating money and that this was income that the institutions should have reported to the IRS and paid taxes on, but did not, and that individuals who received the loans or other forms of credit could make claim to the IRS for the taxes that the institutions should have paid over to the IRS.

C.     He prepared amended tax returns for Richard and Sharon Armstrong for 2005, 2006, and 2007 at his home in Elizabeth, Colorado, claiming over $1,400,000 in refunds owed to the couple, utilizing IRS Forms 1099-OID that were part of this 1099-OID program.  Morris stated that certain unidentified friends referred Richard ARMSTRONG to him to do the returns and that he  dealt with Richard ARMSTRONG concerning the preparation of the returns.  Morris denied preparing the supporting Forms 1099-OID for the returns, declining to identify the source of these documents, but indicated generally that Richard ARMSTRONG gave him records to prepare the returns.  Morris acknowledged that ARMSTRONG probably came to him to do these particular returns because he (Morris) was willing to do things that other accountants were not willing to do.

D.     Richard and Sharon Armstrong received roughly $1.6 million from the IRS based on the returns he prepared.  Morris stated that he congratulated Richard ARMSTRONG on receiving the $1.6 million.  Morris acknowledged that he was aware that the institutions identified in the supporting Forms 1099-OID had not remitted the supposed tax payments supporting the refunds claimed but was adamant that the institutions should have paid these amounts over to the IRS and that the IRS should collect these funds from them.

14

E.    Morris prepared, signed and submitted a 2006 amended U.S. income tax return, containing forms 1099-OID, for himself claiming a $74,000 refund.  When asked why the IRS owed him $74,000, he stated "you don't".  Mr. Morris stated the return was filed for equities, and he wanted the IRS to go after the financial institutions listed on the Forms 1099-OID.

19.    As a result of the warranted search, IRS/CID seized numerous records relating the OID tax returns and the scheme in general.  IRS/CID also seized electronic images of Mr. Morris' computers and recovered numerous emails addressing OID returns and related matters from those images.  Among these recovered emails were email communications to and from Richard Kellogg ARMSTRONG and email communications forwarded to or from ARMSTRONG.

20.    Among these recovered emails was a December 16, 2008 email communication from a certified public accountant (CPA) in California who had previously prepared ARMSTRONG's income tax returns providing his views on the lawfulness of the 1099 OID program and ARMSTRONG's description and use of it in securing his tax refunds for the years 2005 through 2007, which was forwarded to Morris for comment.

21.    Using this email, I identified and interviewed the California CPA about ARMSTRONG.  The CPA indicated that ARMSTRONG had been his tax preparation client for approximately twenty years before the time period of ARMSTRONG's association with Morris[1] and indicated that during this time ARMSTRONG identified himself as being retired.  The returns that the CPA prepared for ARMSTRONG reflected modest income from Social Security benefits and investments.  I discussed with the CPA the email that had been recovered from Morris's computers, and he acknowledged that he had sent the email to Armstrong that was then

---

[1]    The California CPA did not know Morris.

15

forwarded to Morris.

22.     ARMSTRONG's California CPA indicated that he wrote the email in response to two emails that ARMSTRONG had sent him regarding the 1099-OID and ARMSTRONG's use of it to obtain refund payments for 2005 through 2007.  The CPA indicated that ARMSTRONG was sending him these emails because ARMSTRONG wanted the CPA to prepare ARMSTRONG's 2008 federal income returns using the 1099 OID program and forms that were the basis of his previous refund claims for 2005 through 2007.  The CPA provided me with hard copies of these emails, which I retained and reviewed.

23.     In the first of these emails, dated  December 16, 2008, ARMSTRONG explained the OID program to the California CPA.  Mr. Armstrong wrote, in part:

> "Through an associate, we learned that we could apply to the IRS for a tax refund for the past three years, 2005, 2006 and 2007, by submitting, on a Form 1099-OID, the gross amount of any mortgages and purchase contracts that were open during that period, the maximum credit limits on all credit cards open for that period and all debits, except for cash, from our personal checking accounts for each of the three years.

> We submitted 1099-OIDs along with a Form 1096 summary of the OIDs and then filed Form 1040Xs for each of the three years.  The 1040Xs were completed by an accountant who was familiar with the subject IRS ruling and filing process.  The result, after about 6 weeks from the filing date, was the receipt of three checks form the Treasury Dept. totaling $1,637,481.61 as tax refunds including interest in the amount of $166,089.46.  Under this process, we can file 1099-OIDs each year for all of the stated "credit" forms.  It all dates back to Roosevelt and HJR 192 in 1933.  The key now, you might say is to spend as much as possible this year because it will all come back next year in the form of a tax refund.  The interest, of course, is taxable."

> "Under separate email I'm sending you a 38 page paper that my associate wrote covering the formation of the Federal Reserve Bank in 1913, Roosevelt's election and the subsequent withdrawal of gold to back our currency, HJR 192 and the allowance of the Federal Reserve Bank (a private company) to become our Central Bank and the OID.  I'm sure you'll enjoy reading it and then you'll be

knowledgeable and able to file our 1099-OIDs and 1096 along with our 1040 for 2008. We will want to file immediately after Jan. 1 so that we'll get out tax refund by the end of February. You'll probably want to take personal advantage of this process for 2005, 2006, and 2007 and probably do the same for some of your clients. By the way, this process is ABSOLUTELY LEGAL.

Please let me have your comments after happy reading. Thanks."

24.    In the second email, also of that date, ARMSTRONG provided the CPA with a lengthy document entitled A "Relatively" Brief History of How Original Issue Discount (OID) Came to Be and Why it Must Return to the Source (Y.O.U)," as further explanation for the 1099 OID program. The CPA provided me a hard copy of this document, which was an attachment to the email. I retained and reviewed it. The document is not signed and contained a legal disclaimer at the end that reads in part, "This document is not to be construed as legal or tax advice. Use of this material is done so at the individual's own risk." The document is not lucid, but states, among other things, the following:

  a.    The United States is a corporation that has jurisdiction over Washington, D.C.

  b.    We are not citizens of the United States, but rather citizens of the United States of America, and citizens of the states in which we reside.

  c.    The IRS is a private company and not a part of the United States government.

  d.    The federal government does not have constitutional authority to tax your wages. So the income tax is voluntary.

  e.    Reference is made to government actions in the 1930's regarding the confiscation of gold, this is given as the basis for the OID program, and the reason people are entitled to submit claims under this program. "After analyzing the complete order, it becomes clear the people voluntarily gave up their gold, a substance with intrinsic value, for worthless paper."

  f.    "As a result of HJR 192 (House Joint Resolution), we the people, can no

17

longer pay our debts. We have nothing of value to give in exchange for the goods and services we need. According to HJR 192, we can only discharge our debts. This was a huge change in our society, but very few people realize what has occurred."

g.   Reference is made to a "strawman", that is required to act between fictitious entities and the living soul. The document goes on to state that real being ratifies the strawman's deal if they accept benefits from the system.

h.   "The effect of this emergency power is that all Americans are part of the Trading with the Enemy Act, as amended in 1933, i.e., all United States citizens have been declared to be enemies of the United States, to have no rights under the Constitution for the united States of America, no standing in court and no right to operate in commerce without a license!"

i.   The federal government holds title to us in the form of our birth certificates and for which we pay income taxes and social security taxes."

25.   In his December 16, 2008 email reply, the California CPA informed ARMSTRONG that the OID program was not valid and was in fact illegal. The CPA directed Mr. ARMSTRONG to the IRS's web cite addressing the scheme. The CPA strongly recommended that ARMSTRONG return the funds received from the IRS and undo the OID claims. The CPA explained that the courts have rejected the arguments that people are not citizens of United States but are state citizens and that the concept that the U.S. owes people a debt due to the confiscation of gold is invalid. The CPA further advised ARMSTRONG that the U.S. Treasury would move to take his assets to recover the $1.6 million in refund payments and might prosecute him criminally. The CPA advised ARMSTRONG that the promoter of the scheme and return preparer would most likely be prosecuted criminally as well. The CPA also pointed out in his reply that the theory being put forth did not make sense, indicating that if money really is worthless what good would it do to receive $1.6 million worthless dollars, and

that the U.S. could not possibly afford to pay the money "owed" to each person under this theory.

26.     The California CPA advised me that he declined to help ARMSTRONG with his 2008 income tax return and that, in his view, ARMSTRONG was smart enough to know that he should not be generating Forms 1099 that purport to be from banks, or have associates preparing Forms 1099 that purport to be from banks on his behalf.

**Additional Investigation Concerning ARMSTRONG.**

27.     Based on my additional work in this investigation, it is evident that ARMSTRONG did not heed his California CPA's advice to return the refund funds from the IRS and undo his OID claims for 2005, 2006, and 2007 and not to use the 1099-OID program for further income tax refund claims.

28.     As part of the investigation, I obtained bank account records for the bank account into which, according to the endorsement stamps, ARMSTRONG's three IRS refund checks were deposited.  The account was a personal account in the name of Richard and Sharon Armstrong at Bank of America, and the account records reflects that all three refund checks were deposited into the account on or about December 15, 2008.  The account records further reflect that a $600 check was drawn on the account, dated January 22, 2009, payable to Morris or his business, which would be the amount consistent with Morris's professed fee for four OID tax returns.

29.     Using these account records, records I acquired from other financial institutions, and statements from prospective witnesses, I determined that, after receiving the IRS tax refunds, ARMSTRONG made the following disbursements, among others, from the Bank of America account  funded by the tax refunds:

a.  Net payments of approximately $625,000 to a person whom I have identified as a Morris associate who promoted the OID program and authored the OID document that Armstrong provided to his California CPA. Based on public real estate records and records from a real estate title company, I was able to trace approximately $590,000 of these funds to the purchase of a residence in Brighton, Colorado in early 2009 that was ultimately titled in the name of a purported Nevada unincorporated business organization that also holds title to a real property in Arizona that ARMSTRONG previously held in his own name.

b.  Transfers of funds outside the U.S. of $386,000, including $336,000 of wire transfers to an account in Belize, and a $50,000 payment to an apparent international shell company;

c.  A $58,000 payment to an entity named Bonanza Pacific Group, which was listed by ARMSTRONG as his employer on a 2005 mortgage application submitted to Countrywide Home Loans.

d.  A $345,000 check to Cabo Corp, owned 100% by Sharon Armstrong according to its corporate tax returns, to purchase an airplane. A bill of sale was filed with the Federal Aviation Administration (FAA). Shortly after buying the plane from Cabo Corp, Mr. and Mrs. Armstrong received $340,000 from Cabo Corp to repay a shareholder loan.

30.  Additionally, I learned from IRS records that ARMSTRONG filed an additional OID tax return for 2008 on or about January 31, 2009, requesting a refund of $1,739,452 from the IRS. The IRS did not issue the 2008 refund requested by ARMSTRONG. The 2008 US Individual Income Tax Return claiming this refund was prepared by Curtis Morris. At least one of the emails that was recovered from Morris's computers pursuant to the search warrant has been identified as being associated with the preparation of this return; the email was from Armstrong to Morris and included attachments of Forms 1099-OID that ARMSTRONG wanted to use as a basis for the refund claim. In the email, which is dated January 23, 2009, ARMSTRONG wrote, "Here's our 2008 tax info. As you can see, it's super simple mainly because we didn't make any money except for the IRS donation."

20

31.     As part of my work in the investigation of ARMSTRONG's 1099-OID-based tax returns and refund claims, I identified and contacted representatives of the financial institutions purported to have issued these Forms 1099-OID for the returns that ARMSTRONG filed for the years 2005 through 2007.  They have informed me that  their institutions did not issue the Forms 1099-OID in question; that Mr. and Mrs. Armstrong did not have any OID income from their institutions; and that these institutions did not withhold  federal income tax for him for the accounts indicated on the forms.

32.     I reviewed the 2008 income return that ARMSTRONG filed in attempt to get the $1,739,452 from the IRS and saw that that return listed income tax withheld in an aggregate amount of roughly $1.7 million.  I reviewed the Forms 1099-OID attached to ARMSTRONG's email to Morris regarding this return and saw that most of the claimed income tax withheld was by Bank of America.  I contacted a representative from Bank of America about these claimed amounts and was told that Bank of America did not issue the form in question or withhold tax amounts listed on the form transmitted by ARMSTRONG to Morris.

**Mailings in Furtherance of the Scheme** .

33.     Based on IRS records, I have been able to determine that the income tax returns that ARMSTRONG filed to secure tax refunds for the years 2005 through 2007 were mailed to the IRS and that the three refund checks would have been mailed to ARMSTRONG at the address listed on the tax returns, which was in Arizona.

34.     I was also able to identify mailings originating from Colorado, in connection with the preparation of these returns.  I obtained and reviewed shipping records from Federal Express, a commercial interstate carrier, indicating that a Federal Express shipment from Curtis Morris in

21

Elizabeth, Colorado was made to a "R Armstrong" at 30 Perkins Dr in Prescott, Arizona on

October 23, 2008.  Federal Express records list the shipper's reference as "05-07 OID RETURN".

I saw from the returns themselves that the 2005, 2006, and 2007 Armstrong Amended U.S.

Individual Income Tax Returns claiming 1099-OID based tax refunds were signed and dated by

Curtis Morris on October 20, 2008, and they were signed and dated by Richard and Sharon

Armstrong on October 24, 2008.  Based on these dates, and the notation on the Federal Express

records, it is apparent that the returns prepared by Morris for these years were sent by Federal

Express to ARMSTRONG in Arizona for signature and filing.

### Conclusion

35.     Based on the foregoing, your affiant submits that there is probable cause to

believe that:

—     Richard Kellogg ARMSTRONG submitted false claims against the United States,

based on federal income tax returns that he filed requesting refunds for the years 2005

through 2008, in violation of Title 18, United States Code, Section 287; and that

—     Richard Kellogg ARMSTRONG engaged and participated in a  fraudulent scheme

that was executed through the use of mail matter, including a Federal Express shipment

from Colorado to Arizona on or about October 23, 208, in violation of Title 18, United

States Code, Section 1341.

FURTHER AFFIANT SAYETH NAUGHT.

GREG M. FLYNN, SPECIAL AGENT
INTERNAL REVENUE SERVICE,
CRIMINAL INVESTIGATION DIVISION

Sworn and Subscribed to before
me this day ___ of May 2010,
at Denver, Colorado

UNITED STATES MAGISTRATE JUDGE

KRISTEN L. MIX
U.S. MAGISTRATE JUDGE
DISTRICT OF COLORADO

23