# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case Number: 10-cr-00317-REB-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.    RICHARD KELLOGG ARMSTRONG,

    Defendant.

_____

## MOTION TO RECONSIDER MAGISTRATE'S ORDER OF DETENTION
_____

    Defendant, Richard Kellogg Armstrong, by and through his court-appointed attorney, Richard K. Kornfeld, hereby moves this Honorable Court, pursuant to 18 U.S.C. § 3145(b), to review and reconsider the Magistrate Judge's Order of Detention (Document 30). In support of said Motion, Defendant states as follows:

### I. Background

1.    Defendant is charged by Indictment with wire fraud and filing false claims, in violation of 18 U.S.C. §§ 1341 and 287. Defendant is facing a total of five counts.

2.    Federal agents arrested Defendant in the Southern District of California on May 20, 2010. Defendant appeared before Magistrate Judge Peter C. Lewis for an initial appearance and detention hearing, and Magistrate Judge Lewis found that no condition or combination of conditions would reasonably assure the appearance of Defendant as required (Document 8). Upon information and belief, the government did not argue that Defendant posed a danger to the community.

3.    On June 21, 2010, the Defendant appeared before Magistrate Judge Kathleen Tafoya in the District of Colorado, at which time Magistrate Judge Tafoya allowed Defendant to reopen the detention hearing. The government continued to assert that Defendant posed a risk of flight. The government did not argue that Defendant was a danger to the community, and

1

conceded that there was no statutory presumption of detention applicable to the case. After hearing testimony from I.R.S. Special Agent Greg Flynn, and considering the arguments of counsel, Magistrate Judge Tafoya orally held that Defendant posed a risk of flight and, therefore, that he should be detained pending trial. This ruling was codified in a written Order of Detention (Document 30).

4. Among the factors cited in the Order were the following: 1) the Defendant's titling of properties in the name of various entities; 2) the fact that Defendant is a licensed pilot and allegedly associates with other individuals "who *may* have access to aircraft and who *appear* to have issues with the United States' taxing authorities" (emphasis supplied); 3) the fact that a large portion of the proceeds allegedly illegally paid to Defendant are missing; and 4) the fact that Defendant and his wife spend time in Mexico. See Order of Detention at p. 5. The Magistrate Judge acknowledged that Defendant was willing to surrender his pilot's license and passport. Id. While the government did produce evidence of Defendant's receiving some payments from various bank accounts, some of which are located overseas, it did not produce evidence that Defendant had significant financial resources, either in the United States or abroad, or that Defendant somehow otherwise had access to or control over vast sums of money.

5. Since the detention hearing, a number of new factors have arisen, including the following: 1) due to the volume of discovery and other issues pertinent to effectively preparing for and defending this case, Defendant and his co-Defendant filed a Joint Unopposed Motion for Declaration of Complexity and to Exclude Time Within Which the Trial for the Offenses charged in the Indictment Must Commence (Document 36). As a result of this Motion, the Court has vacated the August trial date and set the matter for hearing on October 22, 2010 (Document 42); 2) the defendants have received more than 7,700 pages of discovery, a mirror computer image, and various recorded telephone calls between Defendant and his wife while Defendant was in custody in California; 3) a review of the recorded telephone calls indicates that Defendant does not have vast financial resources at his disposal and, in fact, is struggling to come up with enough funds to pay for calling cards at the jail; 4) the government has indicated that it may very

2

well supersede the Indictment in August with new charges against defendants and the possible addition of other indicted individuals.

## II. Standard of Review

6. A District Court's authority to review a Magistrate Judge's decision is codified in 18 U.S.C. § 3145(b), and is *de novo* review. See *United States v. Cisneros,* 328 F.3d 610, 616 n.1 (10th Cir. 2003). This Court has the discretion to determine what procedures are most appropriate in order to conduct its review, and it need not conduct a *de novo* evidentiary hearing. See, *United States v. Lutz*, 207 F.Supp.2d, 1247, 1251 (D.Kan. 2002); *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). Regardless of how it decides to proceed, a District Court must decide "both the facts and the propriety of detention anew without deference to the magistrate judge's findings." *United States v. Poole,*, 2004 WL 1732306, at *1 (citing *Lutz,* 207 F.Supp.2d at 1251).

## III. Standard for Detention

7. Under the Bail Reform Act of 1984, the court must order a defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The government must prove risk of flight by a preponderance of the evidence, and dangerousness by clear and convincing evidence. *Cisneros,* 328 F.3d at 616. In the present case, the Court's analysis should be limited to risk of flight, inasmuch as the government did not proceed on a theory of dangerousness.

8. In conducting its review, the Court is guided by the factors enumerated in 18 U.S.C. § 3142(g), which include, in relevant part[1], the following:

> 1. the nature and circumstances of the offense charged, including whether the offense charge…;
> 2. the weight of the evidence against the person;

---

[1] A fourth factor under 18 U.S.C. 3142(g) is the "nature and seriousness of the danger to any person of the community that would be posed by the person's release". 18 U.S.C. § 3142(g)(4). Because the government has not argued that Defendant is a danger to the community, this factor is not relevant to the Court's analysis in the instant case.

3

> 3. the history and characteristics of the person, including –
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct…criminal history, and record concerning appearance at court proceedings;

### IV. Analysis

9. A consideration of the factors enumerated in 18 U.S.C. § 3142(g) suggests that there are conditions or a combination of conditions that will reasonably ensure the Defendant's ongoing participation at this case absent his pretrial detention.

10. Turning to the first of the applicable § 3142(g) factors, this case involves allegations of fraudulent activity associated with the filing of certain IRS forms. According to the discovery provided to date, Defendant allegedly filed certain forms and subsequently received significant payments from the IRS. The government alleges that the Defendants were not entitled to the payments they received from the IRS. Defendant Armstrong utilized the services of co-Defendant Morris, a tax preparer, to file the forms in question. The instant case, therefore, is a fraud case and does not involve allegations of violence, controlled substance offense, or other types of offense that may give rise to a rebuttable of presumption of detention pursuant to 18 U.S.C. § 3142(e).

11. With respect to the second applicable factor, the weight of the evidence against the person, such a determination is difficult at this point given the volume of discovery, issues involving the advice rendered to Defendant by various tax professionals, and perhaps the most complicated factor, i.e. Defendant's fraudulent intent, or lack thereof. As in many so-called while collar cases, the government appears to be relying on circumstantial evidence to establish that Defendant specifically intended to defraud the government and, in so doing, knew and understood that he was not entitled to the tax payments for which he applied. While undersigned

4

Case 1:10-cr-00317-REB Document 52-2 Filed 08/02/10 USDC Colorado Page 5 of 19

counsel has yet to digest all of the discovery in this case, a review of the Criminal Complaint does not suggest that there is a so-called "smoking gun" document or other piece of evidence that directly establishes Defendant's fraudulent intent. The closest the government may have in this regard are several emails from Defendant's prior accountant, who warned Defendant that the filing of the forms at issues was not proper. However, the evidence establishes that Defendant subsequently contacted co-Defendant Morris, who not only assisted Defendant in the filing of the forms, but also himself filed the same forms, thus circumstantially suggesting that another tax professional believed that the filing of the forms at issue was not improper. The point here is that the issue of Defendant's *mens rea* most likely will be the crux of any trial, and the weight, therefore, of the government's evidence is not overwhelming.

12.    With respect to the third relevant factor, i.e. the history and characteristics of the Defendant, the Defendant's background and present circumstances mitigate against an order of detention. Defendant is 76 years old, a citizen of the United States, and devoid of any prior criminal history. He has work experience in the engineering field, although he has been retired for some time. At the Detention Hearing, the testifying agent suggested that the fact Defendant has historically derived some post-retirement income somehow undermines his assertion that he is retired. However, the fact remains that, like millions of Americans, while Defendant is not working in a fulltime capacity, he has other sources of income, including lines of credit. It is true that Defendant spends time in Mexico every year with his wife where she ostensibly runs a part-time real estate business, although the evidence is devoid of any proof that she is active in the business, or that Defendant is somehow actively engaged in the business. Regardless, there is nothing illegal or nefarious about spending the winter months in Mexico, working in a part-time capacity, or otherwise traveling at will when there are not travel restrictions, as was the case

prior to Defendant's arrest. While Defendant is in very good health for a man of his age, Defendant, his wife and undersigned counsel have concerns about the long-term effects of ongoing incarceration at the Federal Detention Center or any other detention facility. Defendant maintains several homes in Arizona. While at least one of the homes may be titled in some sort of legal entity, that fact alone is not illegal or nefarious and the Defendant has made no secret of his interest in both of the Arizona properties. Although the testifying agent at the Detention Hearing attempted to portray Defendant's alleged failure to maintain a flight log book in his private airplane as evidence of disrespect for governmental authority, the fact remains that Defendant has no negative history of ignoring court orders, failing to file income tax returns, or otherwise disobeying government authority. Defendant was cooperative with the pretrial detention officer in both Colorado and California. With respect to Defendant's pilot license, Defendant is willing to give up that license and, upon information and belief, it would not be possible to rent an airplane without producing a valid FAA pilot's license. At the detention hearing, the testifying agent spun a fantastical conspiracy theory about how Defendant might be able to utilize relationships with certain uncharged individuals who, in the past, have expressed anti-government feelings and who may have access to aircraft. Apart from this rank speculation, there is no evidence in the record that Defendant, whose airplane was seized by the IRS upon his arrest, would have access to an airplane that he could utilize to flee the United States. Finally, it is true that Defendant does not have ties to the District of Colorado other than having several friends that live in the Denver area. Were this Court to Order Defendant's release, Defendant would prefer to return to his home in the Phoenix area pending trial. However, Defendant would be willing to remain in the District of Colorado and, upon information and belief, would be able to secure housing with one of his friends in the Denver area.

Case 1:10-cr-00317-REB Document 59-2 Filed 08/02/10 USDC Colorado Page 7 of 9

13. In light of the factors discussed above, Defendant respectfully avers that there are conditions, or combinations of conditions, that will reasonable ensure his ongoing participation in the pending case in the District of Colorado. Such conditions might include, but are not limited to, the following: 1) electronic home monitoring; 2) a curfew; 3) travel restrictions; 4) submission of Defendant's passport to the Clerk of the District Court; 5) voluntary relinquishment of Defendant's pilot's license; and, 6) any other condition or combination of conditions that this Court sees fit to impose.

14. Should this Court wish to conduct a hearing regarding this Motion, undersigned counsel respectfully requests that it not be set the week of July 26, 2010, as undersigned counsel is scheduled to be out of state that week.

WHEREFORE, Defendant respectfully requests that this Court review and reconsider the Magistrate Judge's Order of Detention for the reasons set forth herein.

Dated this 14th day of July, 2010.

Respectfully submitted,

s/Richard K. Kornfeld
RICHARD K. KORNFELD
Attorney for Defendant Richard Armstrong
1600 Stout St., Suite 1000
Denver, Colorado 80202
(303) 573-1900
Fax: (303) 446-9400
admin@rechtkornfeld.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of July, 2010, I electronically filed the foregoing **Motion to Reconsider Magistrate's Order of Detention** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

s/Michael Shomler
Michael Shomler

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Criminal Case No. 10-cr-00317-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2. RICHARD KELLOGG ARMSTRONG,

    Defendant.

## ORDER DENYING
## DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

**Blackburn, J.**

On July 23, 2010, the matter was before me for hearing on defendant's **Motion To Reconsider Magistrate's Order of Detention** [#43][1] filed July 14, 2010. I deny the motion.

In fashioning my ruling subsequent to *de novo* review, I (1) judicially noticed all relevant adjudicative facts in the file and record of this action *pro tanto*, including, but not limited to the relevant proceedings conducted before the Honorable Kathleen M. Tafoya, United States Magistrate Judge for the District of Colorado, on June 21, 2010; (2) considered the evidence, proffer,[2] and argument presented at the hearing I

---

[1] "[#43]" is an example of the convention I use to identify the document number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

[2] Under 18 U.S.C. § 3142(f), the defendant ". . . shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise."

conducted on July 23, 2010; (3) considered the reasons stated, arguments advanced, and authorities cited by the parties in their papers and during the hearing; and (4) considered the written information and recommendations of pretrial services as stated in the **Pretrial Services Report** prepared by Pretrial Services Officer, Gilbert Ramirez, executed May 25, 2010. Accordingly, I enter the following findings of fact, conclusions of law, and orders.

### FINDINGS AND CONCLUSIONS:

On June 21, 2010, Magistrate Judge Tafoya conducted a hearing on the defendant's oral motion to reconsider or modify the order of detention [#8] entered on June 2, 2010, by the Honorable Peter C. Lewis, United States Magistrate Judge for the Southern District of California. On June 22, 2010, Magistrate Judge Tafoya entered an **Order of Detention** [#30].

My review of the magistrate judge's order of June 22, 2010, is *de novo. See* **United States v. Leon**, 766 F.2d 77, 80 (2d Cir.1985). Under this standard of review, I must judge the issues anew, but in doing so, I may utilize and have utilized the factual and evidentiary record developed during the detention hearing before Magistrate Judge Tafoya on June 21, 2010. However, as required under *de novo* review, I must reach and have reached my own independent findings of fact and conclusions of law. *See* **Leon**, 766 F.2d at 80 (finding that on de novo review, a district court "should not simply defer to the judgment of the magistrate, but reach its own independent conclusion"). Consonant with this requirement, I have reached my own independent findings of fact and conclusions of law and included them in this order.

Essentially, I have conducted a detention hearing as required by 18 U.S.C. §

Case 1:10-cr-00317-REB Document 54 Filed 08/03/10 USDC Colorado Page 3 of 9

3142(e) and 18 U.S.C. § 3145(b). My review has been *de novo.*

I have afforded the defendant the presumption of innocence without modification or limitation. *See* 18 U.S.C. § 3142(j). However, I am still permitted and required to consider the weight of the evidence against the defendant. *See* 18 U.S.C. § 3142(g)(2).

On June 8, 2010, the grand jury returned a nine count indictment, *see* [#5], in which the defendant is charged in Count 1 with mail fraud, in violation of 18 U.S.C. § 1341, and in Counts 4 through 7 with filing false claims against the United States, in violation of 18 U.S.C. § 287. Mail fraud is punishable by up to 20 years in a federal penitentiary. Each of the four counts of filing false claims is punishable by up to five years in a federal penitentiary. On conviction the sentences for these crimes may be imposed concurrently or consecutively. The gravamen of these related charges is that the defendant devised and deployed an illegal and fraudulent scheme designed to procure substantial federal income tax refunds to which he was not entitled.

The government continues to contend that the defendant is a flight risk. Thus, the government must establish that there is no condition or combination of conditions which could be imposed in connection with pretrial release that would reasonably insure the defendant's presence for court proceedings. On this issue the government has the burden of proof by a preponderance of the evidence. *See* **United States v. Cisneros**, 328 F.3d 610, 616 (10th Cir. 2003). I have conducted a detention hearing as required by 18 U.S.C. § 3142(e) and applied the apposite burden of proof.

The Bail Reform Act of 1984 at 18 U.S.C. § 3142(g), directs me to consider the following factors in determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required:

(1) the nature and circumstances of the offenses charged, including whether the offenses involve a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including -

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law.

As required under 18 U.S.C. § 3142(g), I have considered carefully the factors that are relevant[3] to the defendant. In the abstract none of these factors is preponderant or dispositive. On balance these factors weigh in favor of detention.

The filing of the Indictment constitutes probable cause to believe the defendant committed the crimes with which he is charged. The defendant has been charged in a complex scheme of defrauding the government pursuant to 18 U.S.C. §§ 1341 and 287, mail fraud and filing false claims against the United States. The allegations

---

[3] Thus, I have not considered whether the defendant poses or constitutes a danger to any person or the community. 18 U.S.C. § 3142(g)(4)

concern a so-called "OID Program." It is charged that the defendant, through his co-defendant and accountant Curtis Morris, filed tax returns claiming income and refunds on a form OID-1099. However, the evidence at the June 21, 2010, hearing indicated that no refunds were due and that none of the accounts listed in the tax returns had withheld any money from the defendant for any reason that would have produced a refund to the defendant. Evidence at the hearing indicated that the defendant had been advised by his accountant that this scheme was illegal and refused to participate in it. However, the defendant had already established a relationship with the co-defendant, and the alleged false returns were filed. The evidence established that the defendant has submitted numerous loan applications and other documents over the years that contain information that is inconsistent with the information given to Pretrial Services in connection with the detention hearing regarding his ownership of overseas property and other financial information. The weight of the evidence against the defendant is significant and more than preponderant. This factor weighs in favor of detention. 18 U.S.C. § 3142(g)(2).

The defendant's history, residence, family background, family ties, employment history, financial resources, criminal record, and health are as described and represented in the pretrial services report and the evidence educed at the June 21, 2010, and July 23, 2010, detention hearings. Relevantly, defendant is 76 years old with a life of expectancy of 10.7 years.[4]

The defendant's character and conduct, including his declaration of individual

---

[4] Defendant's date of birth is May 19, 1034. See §13-25-103, C.R.S., which I judicially notice pursuant to Fed.R.Evid. 201, to determine life expectancy.

-5-

sovereignty and his denunciation of the authority of the government generally and the IRS specifically, evinces a disaffected personal philosophy inconsistent with and indifferent to respect for the law (and concomitant authority).[5] Yet respect for the law and judicial authority are integral to the *sine qua non* for compliance with mandatory, standard, and special conditions of bond, which are specifically designed and intended to minimize the probability of failure to appear. This factor weighs in favor of detention. 18 U.S.C. § 3142(g)(3)(A).

The defendant's physical and mental condition is unremarkable. This discrete consideration does not influence my calculus one way or the other.

The defendant's family ties, employment, financial resources, length of residence in the community, and community ties weigh heavily in favor of detention without bond. The defendant does not reside in Colorado and has no significant ties to the District of Colorado. Instead, he and his wife have homes in Prescott, Arizona, Lake Havasu, Nevada, and Cabo San Lucas, Mexico, where Mrs. Armstrong owns and operates a real estate business. 18 U.S.C. § 3142(g)(3)(A).

Defendant's financial resources are substantial, diverse, and largely, if not entirely, beyond the reach of American authorities. A large portion of the proceeds allegedly paid to Mr. Armstrong illegally have not been recovered, but remain available to the defendant either directly or indirectly. Investigators experienced significant difficulty tracing the money once it was moved offshore. Approximately $669,000 of the $1,600,000 paid to the defendant is unaccounted for. Given the myriad transfers of the

---

[5] Under our constitution, the defendant has the right to believe and espouse his personal and political beliefs as he chooses. However, his beliefs are relevant to the probability that the defendant can and will submit to the jurisdiction and authority of this court.

-6-

assets to which the defendant has access and control, and given the various ways in which property has been titled, the defendant has effectively shielded the funds from detection and recovery, while preserving his access to and use of them.

The defendant has the ways, means, and motives to eschew prosecution and possible incarceration in a federal penitentiary. At his age, any significant sentence to imprisonment would effectively eviscerate the remaining years of his life and might very well be tantamount to a life sentence, and, thus, a death sentence for the defendant. He is an experienced pilot with the connections necessary to flee covertly and quickly to Mexico or elsewhere by airplane without a passport or a pilot's license. FFA records indicate that between 2006 and 2010, the defendant's airplane – and, thus, presumably, the defendant – made 20 round trips to Mexico. This ability can not be discomfitted by even the most restrictive conditions of bond, including frequent reporting, intensive pretrial supervision, electronic monitoring, or even residence in a half-way house – whether in Colorado or Arizona. Given his age, his concomitant life expectancy, the weight of the evidence, the possible sentences to prison, his present and prospective financial circumstances, resources, and opportunities, and, his nexus to Mexico, and his ability and opportunity for unanticipated and undetectable covert international travel by airplane, the defendant has significant reasons to absquatulate to eschew prosecution. The defendant has no ties or allegiances to cause him to remain in this jurisdiction or this country. In fact, the defendant has no reason to stay and every reason to flee.

The defendant's history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, weigh against detention. The defendant does not have a history of drug or alcohol abuse. He has no criminal record

-7-

Case 1:10-cr-00317-REB Document 54 Filed 08/03/10 USDC Colorado Page 8 of 9

or failures to appear. 18 U.S.C. § 3142(g)(3)(A).

At the time of the alleged current offenses, the defendant was not on probation, parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law. 18 U.S.C. § 3142(g)(3)(B). Thus, this consideration weighs against detention.

Based on the foregoing findings of fact and conclusions of law, I conclude ultimately as follows: (1) that the evidence establishes by a preponderance that the defendant presents a risk of failure to appear in this court as ordered; (2) that the evidence establishes by a preponderance that there exists no condition or combination of conditions of release, which will reasonably mitigate the risks of failure to appear. Additionally, after my *de novo* review, and based on virtually the identical evidence, I approve, adopt, and incorporate the magistrate judge's well reasoned and circumstantiated findings of fact and conclusions of law in the **Order of Detention** [#30] entered June 22, 2010.[6] Thus, continued detention is warranted. Accordingly, the defendant's motion should be denied.

**THEREFORE, IT IS ORDERED** as follows:

1. That defendant's **Motion To Reconsider Magistrate's Order of Detention** [#43] filed July 14, 2010, is **DENIED**;

2. That the defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the

---

[6] *See **United States v. King**,* 849 F.2d 485, 490 (11th Cir.1988) (After *de novo* review district court may explicitly adopt the magistrate's pretrial detention order. Adoption of the order obviates the need for the district court to prepare its own written findings of fact and statement of reasons supporting pretrial detention).

-8-

extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

3. That the defendant is remanded to the custody of the United States Marshal for continued detention; and

4. That the defendant shall be afforded a reasonable opportunity to consult confidentially with his attorney.

Dated August 3, 2010, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge

-9-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case Number: 10-cr-00317-REB-2

UNITED STATES OF AMERICA,

 Plaintiff,

v.

2. RICHARD KELLOGG ARMSTRONG,

 Defendant.

_____

### NOTICE OF APPEAL
_____

 Notice is given that Defendant Richard Kellogg Armstrong in the above-named case hereby appeals to the United States Court of Appeals for the Tenth Circuit regarding the "Order Denying Defendant's Motion to Revoke Detention Order" (Doc. 54).

 Respectfully submitted this 6th day of August, 2010.

              Respectfully submitted,

              s/Richard K. Kornfeld
              RICHARD K. KORNFELD
              Attorney for Defendant Richard Armstrong
              1600 Stout St., Suite 1000
              Denver, Colorado 80202
              (303) 573-1900
              Fax: (303) 446-9400
              admin@rechtkornfeld.com

1

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2010, I electronically filed the foregoing **Notice of Appeal** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.


s/Michael Shomler
Michael Shomler

2