UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

DISTRICT OF ~~~

2011 MAY -6  PM 3: 39

GREGORY C. LANGHAM
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| **Plaintiff** | § | |
| v. | § | |
| | § | BY_____DEP. CLK |
| RICHARD KELLOGG ARMSTRONG | § | |
| **Defendant** | § | No. 10-cr-00317-REB-02 |

*10-cv-01073-MEH*

# REQUEST FOR CERTIFIED QUESTION OF LAW TO THE OFFICE OF THE UNITED STATES ATTORNEYS RELATED TO JURISDICTION IN THIS CASE AND OFFER OF PROOF

Comes now, Petitioner/Defendant, unrepresented, and hereby submits a certified question of law to the Office of the United States attorneys and submits an offer of proof on his claim, and alternatively, requests sanctions against the Office of the US attorney for violations of FRCP 11(b) and the Federal Rules of Criminal Procedure for submitting pleadings which are contrary to the Constitution and statutes of the United States.

**To Attorney General Eric Holder and his designated representatives in the case of <u>United States v. Armstrong</u>, No. 10-cr-00317, United States District Court for the District of Colorado**
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

## <u>REQUEST TO ANSWER TO CERTIFIED QUESTION OF LAW</u>

I am requesting that the attorney general of the United States, the supreme authority related to law in the United States for federal cases, answer the following certified question of law within the next 30 days. Please understand that you as part of taking your office have also taken an oath to uphold the Constitution of the United States, and to uphold the integrity of the legal system of the United States:

**A.    The following question should be addressed and answered by the Attorney General:**
**If a bill, allegedly passed by Congress, had no quorum in**

place when the House of Representatives passed the bill, and that lack of quorum is established by the Congressional record, and no other vote on the bill occurred by the House of Representatives during that Congressional session, is the bill invalid and unconstitutional?

It should be noted by this office that a poling of other countries in the Americas establishes that a quorum is mandatory to establish legal authority and to pass legislation. In fact, in the United States, the government of Wisconsin declared a bill invalid which had no quorum.[1]

Petitioner is prepared to submit an offer of proof, witnesses, evidence and testimony, to prove his claim. The court cannot refuse an offer of proof. <u>Haines v. Kerner</u>, 404 U.S. 519, 522.

Should the U.S. attorneys fail to answer the request for a certified question of law, a presumption is created establishing that Public Law 80-772, and 18 USC section 3231 is unconstitutional and the indictment and charges against Petitioner must be dismissed. Should the U.S. attorneys fail to properly answer the certified question of

---

[1] (RTTNews) - A Wisconsin judge temporarily blocked the state's controversial anti-union law aimed at stripping most collective bargaining rights from state employees.

The law, which was passed despite Democratic State Senators fleeing the state to prevent the chamber from reaching a quorum, had drawn national attention and large groups of protesters to the state capitol.

Opponents of the measure are claiming in court that the bill passed the State Senate in violation of the chamber's rules and the state open meetings law.

The law was voted on roughly two hours after the union bargaining restrictions were stripped from a broader budget bill to avoid the requirement of a quorum.

On Friday, Dane County Judge MaryAnn Sumi granted a temporary restraining order to stop the Secretary of State from publishing the law, which was signed by Republican Gov. Scott Walker.

law, a presumption is created that they are in violation of their oath of office.  The United States attorneys "duty [is] to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.  <u>Berger v. United States</u>, 295 U.S. 78, 88 (1935)  FRCP 11(b) states:  "By presenting to the court a pleading, written motion, or other paper-whether by signing, filing, submitting, or later advocating it- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law..."  The same rule applies to criminal law. Thus the US attorneys are bound by their oath to declare the statute unconstitutional and to release Petitioner.

## B.    History

### I.    Introduction

This party requests the office of the attorney general to declare unconstitutional and *void ab initio*: (1) <u>Public Law 80-772</u> which purported to enact Title 18, United States Code, Act of June 25, 1948, Chapter 645, 62 Stat. 683 *et seq.*, and (2) more specifically, Section 3231 thereof, 62 Stat. 826, which purported to confer upon "the district courts of the United States ... original jurisdiction ... of all offenses against the laws of the United States."   These legislative Acts violated the <u>**Quorum**</u>, Bicameral and/or Presentment Clauses mandated respectively by Article I, § 5, Cl. 1, and

Article I, § 7, Cls. 2 and 3, of the Constitution of the United States.   Any federal district court which rendered judgment and ordered commitment under Section 3231, lacked jurisdiction and, therefore the judgment and commitment order is *void ab initio*.   To imprison and detain anyone under *void* judgments and commitment orders is unconstitutional and unlawful.   As such, Petitioner must be discharged from illegal sentence immediately.

## II.   <u>CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED</u>

Article I, § 1, commands and declares that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."

Article I, § 5, Cl. 1, commands, in relevant part, that "a Majority of each [House of Congress] shall constitute a Quorum to do Business," excepting there from permission to "adjourn from day to day" and "to compel Attendance of its Members, in such Manner, and under such Penalties as each House may provide."

Article I, § 7, Cl. 2, commands, in relevant part, that "[e]very Bill which shall have passed both Houses, shall, before it becomes a Law, be presented to the President of the United States."

Article I, § 7, Cl. 3, commands, in relevant part, that "[e]very ... Resolution ... to which the Concurrence of the Senate and House of Representatives may be necessary ... shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be re-passed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the case of a Bill."

Title 1, United States Code, Section 106, Act of July 30, 1947, Chapter 388, Title I, Ch. 2, § 106, 61 Stat. 634, Pub. L 80-278, provides, in relevant part, that "[w]hen [a] bill ... shall have passed both Houses, it shall be printed and shall then be called the enrolled bill ... and shall be signed by the presiding officers of both Houses and sent to the President of the United States."

### Iii.   STATEMENT OF FACTS

This party was charged and placed into Executive custody by order of United States District Court acting pursuant to the grant of original jurisdiction purportedly created by <u>Public Law 80-772</u>, Title 18, United States Code, Section 3231.  By virtue of the commitment order, Petitioner has been committed into the custody of the Attorney General and into the

custody of the Bureau of Prisons.  <u>See</u> 18 U.S.C. § 4082(a) (repealed) and §
3621(a) (enacted Oct. 12, 1984, and effective Nov. 1, 1987).

The text of the bill, <u>H.R. 3190</u> as amended, which became <u>Public Law
80-772</u> (enacting Title 18, United States Code, and especially Section 3231),
was passed only by the Senate and never passed by the House of
Representatives because the **House had no quorum** when it presented the
bill to the House on a 38 to 6 vote on May 12, 1947, when the House had
435 members.

For those reasons, <u>Public Law 80-772</u> which purportedly enacted Title
18, United States Code, Act of June 25, 1948, Chapter 645, 62 Stat. 683 *et
seq.* and Section 3231 thereof, 62 Stat. 826, purporting to confer upon "the
district courts of the United States ... original jurisdiction ... of all offenses
against the laws of the United States" violates Article I, § 5, Cl. 1, and
Article I, § 7, Cls. 2 and 3, and are therefore unconstitutional and *void ab
initio*.  The district court, which acted against Petitioner, did so without
jurisdiction, and the judgment and commitment order is ***void ab initio***, and
imprisonment and/or confinement there under is fundamentally
unconstitutional and unlawful.

**A.**      <u>**H.R. 3190 In The First Session Of The 80th Congress**</u>

---

H.R. 3190 was introduced and committed to the Committee of the entire House of Representatives on the State of the Union of the First Session of the 80th Congress entitled "Crimes and Criminal Procedure." See House Report No. 304 (April 24, 1947), p. 1 See also 94 Cong. Rec. D556-D557 (Daily Digest) (charting H.R. 3190). H.R. 3190 differed from "five … bills which … preceded it … [because] it constitute[d] a revision, as well as a codification, of the Federal laws relating to crimes and criminal procedure." 93 Cong. Rec. 5048-5049 (May 12, 1947)  The bill was intended (1) to revise and compile all of the criminal law, (2) to "restate[]" and "consolidate[]" "existing statutes," (3) to "repeal" "obsolete, superseded, redundant and repetitious statutes," (4) to coordinate the Criminal Code with the "Federal Rules of Criminal Procedure" formerly enacted, and (5) to "clarify and harmonize" penalties of the "many acts" passed by Congress which were found to be "almost identical." "The bill was ordered to be engrossed and read a third time, was read a third time, and passed" the House on May 12, 1947, id.; Journal of the House of Representatives ("House Journal"), May  12, 1947, pp. 343-344  Cong. Rec. D556-D557 (showing H.R. 3190's only passage by the House of Rep. on May 12, 1947), sent to the Senate and there "referred … to the Committee on the Judiciary." 93 Cong. Rec. 5121, May 13, 1947; Journal of the Senate ("Senate

Journal"), May 13, 1947, p. 252.  **However, the "passage" of the bill, as established by the Congressional record was on a vote of 38 to 6, when 435 members were in Congress and no quorum was in session, rendering the bill in violation of Article I, Section 5, Clause I of the Constitution, and void ab initio.**

As passed and enrolled by the House of Representatives H.R. 3190 included at section 3231, Subtitled "District Courts," the following text:

> Offenses against the United States shall be cognizable in the district courts of the United States, but nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof.

H.R. 3190 as passed by the H. of Rep., p. 367, § 3231;  See United States v. Sasscer, 558 F. Supp. 33, 34 (D.MD. 1982)

On July 27, 1947, Congress adjourned without the Senate passing H.R. 3190.  See 93 Cong. Rec. 10439, 10522 (July 26, 1947).  On November 17, 1947, Congress reconvened pursuant to a Presidential proclamation.  Yet again, Congress "adjourned *sine die* on December 19, 1947" without the Senate passing H.R. 3190.   Kennedy v. Sampson, 511 F.2d 430, 444 Appendix n. 4 (D.C. Cir. 1974)

**B.          H.R. 3190 In Second Session Of The 80th Congress**

The Senate Committee on the Judiciary reported amendments to H.R. 3190 on June 14, 1948, under Sen. Rep. No. 1620.  94 Cong. Rec. 8075 (June 14, 1948); Senate Journal, June 14, 1948, p. 452 (App. 34)[2]  Sen. Rep. No. 1620 contained "a large volume of amendments" and "the new Federal Rules of Criminal Procedure [were] keyed to the bill and [were] reflected in part II of [the new proposed] title 18."  Heralding that, upon passage of the amended bill, "[u]ncertainty will be ended," the Senate wanted "the amendments adopted en bloc," including a new jurisdictional section for Title 18.  94 Cong. Rec. 8721   The report contained only the proposed amendments.  See Sen. Rep. No. 1620, pp. 1 & 4.

"[T]he amendments were considered and agreed to en bloc" and then "ordered to be engrossed."  94 Cong. Rec. 8721-8722 (June 18, 1948), Senate Journal, June 18, 1948, p. 506 (H.R. 3190, "as amended," passed the Senate).  It was moved that "the Senate insist upon its amendments" by the House (94 Cong. Rec. at 8722); and "[o]rdered that the Secretary request the concurrence of the House of Representatives in the amendments."  Senate Journal, supra, p. 506; House Journal, June 18, 1948, p. 688

The House received the proposed amendments.  The Clerk "read the Senate amendments" collectively into the record with which the House

---

[2]     The Senate approved its Journal for June 14, 1948.  Senate Journal, June 15, 1948, pp. 461-462.

concurred.  94 Cong. Rec. 8864-8865 (June 18, 1948); House Journal, June 18, 1948, p. 704 (the "said Senate amendments were concurred in"). Although "[t]he House agreed to the amendments to … H.R. 3190," Senate Journal, June 18, 1948, p. 510, no action was taken on H.R. 3190 as amended.[3]  The Journal of the House of Representatives is devoid of any vote on H.R. 3190 itself on June 18, 1948, and thereafter through adjournment on June 20, 1948.  Moreover, the official historical chart of H.R. 3190 clearly shows the *"only* passage*"* by the House of Representatives occurring on May 12, 1947, and specifically references volume 93, page 5048 of the Congressional Record as the recorded date the House passed the bill.  94 Cong. Rec. D556-D557 (Daily Digest)  **However, as is clearly established by the Congressional record, the vote for passage was 38 to 6, when 435 members were in Congress and a quorum to do business would require a majority of those members to be present for passage.  Therefore, with no quorum present, the bill is null and void ab initio.**

> **C.    Congress Agreed By Resolution To Continue Legislative Business By A Single Officer Of Each House During Adjournment**

---

[3]      The House approved the Journal for June 18, 1948, House Journal, p. 714 (June 19, 1948, approving Journal for "legislative day of … June 17, 1948" – *i.e.*, calendar day of June 18, 1948); id. at p. 669 (showing Friday, June 18, 1948, as "legislative day of Thursday, June 17, 1948"), and the Senate approved its Journal for June 18, 19 and 20, 1948.  Senate Journal, July 26, 1948, p. 593.

On June 19, 1948, the House submitted and agreed to concurrent resolutions H.Con.Res. 218 and 219 and requested concurrence by the Senate. House Journal, June 19, 1948, pp. 771-772; Senate Journal, June 18, 1948, p. 577. "[T]he Senate [then] passed without amendment these concurrent resolutions of the House."[4] 94 Cong. Rec. 9349 (App. 57). H. Con. Res. 218 "provid[ed] adjournment of the two Houses of Congress until December 31, 1948," id.; see Concurrent Resolutions, Second Session, Eightieth Cong., H. Con. Res. 218, June 20, 1948, 62 Stat. 1435-1436. H. Con. Res. 219 "authorize[ed] the signing of enrolled bills following adjournment," 94 Cong. Rec. 9349, specifically resolving:

> That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

See Concurrent Resolutions, supra, H. Con. Res. 219, June 20, 1948, 62 Stat. 1436.

Congress adjourned on June 20, 1948, pursuant to H. Con. Res. 218. 94 Cong. Rec. 9348, 9169; House Journal, June 20, 1948, p. 775; Senate Journal, June 20, 1948, p. 578. Both Houses reconvened on July 26, 1948,

---

[4]    The House sat from June 19 through June 20, 1948, adjourning at 6:56 A.M., House Journal, June 19, 1948, p. 775, and approved the Journal of the 19th. House Journal, July 26, 1948, pp. 792-793 (reconvention by Presidential Proclamation).

pursuant to a proclamation of President Truman. Senate Journal July 26, 1948, p. 593 (showing reconvention); House Journal, July 26, 1948, pp. 792-793 (same)[5]

**D.    Post-Adjournment Signing Of H.R. 3190 By Single Officers Of The Houses And Presentment To And Approval Thereof By The President Pursuant To H. Con. Res. 219**

With both Houses adjourned, with **no quorum**, disassembled and dispersed, Mr. LeCompte, the Chairman of the Committee on House Administration reported that that committee had found H.R. 3190 "truly enrolled." House Journal, legislative day of June 19, 1948, p. 776 (recorded under heading "BILLS AND JOINT RESOLUTIONS ENROLLED SUBSEQUENT TO ADJOURNMENT").[6]   He attached his certificate of enrollment to the **original** H.R. 3190 passed by the House on May 12, 1947. See H.R. 3190, certified after adjournment as "truly enrolled" (as certified by Richard H. Hunt, Director, Center for Legislative Archives, The National Archives, Washington, D.C.). Although never certified as truly enrolled, the Speaker and President pro tempore respectively signed the Senate's amended H.R. 3190 on June 22 and 23, 1948. 94 Cong. Rec. 9353-9354; House Journal, legislative day June 19, 1948, p. 777; Senate Journal,

---

[5]      The House Journal for July 26, 1948, was approved, House Journal, July 27, 1948, p. 797, and the Senate Journal for July 26, 1948, was approved. Senate Journal, July 27, 1948, p. 593.
[6]      Mr. LeCompte's announcement was reported upon reconvention by the President's Proclamation on July 26, 1948. 94 Cong. Rec. 9363.

legislative day June 18, 1948, pp. 578-579.   National Archives & Records Adm. Cert., H.R. 3190 signed by House and Senate officers and President Truman.   The Senate's amended H.R. 3190 was then presented by the Committee on House Administration to President Truman, on June 23, 1948, who signed it on June 25, 1948[7], at 12:23 P.M. E.D.T., 94 Cong. Rec. 9364-9367; House Journal, legislative day of June 19, 1948, pp. 778, 780-782; Senate Journal, legislative day of June 18, 1948, pp. 579, 583.   National Archives & Records Adm. Cert., H.R. 3190, supra; 94 Cong. Rec. D557 (Daily Digest)

### E.   The Signatories Of H.R. 3190 Knew the Enacting Clause Was False When Signed

Public Law 80-772 stated that the enactment proceeded "by the Senate and House of Representatives of the United States of America *in Congress assembled*."   See National Archives & Records Adm. Cert., H.R. 3190 as signed into P.L. 80-772, supra.   Each signatory knew that **no quorum existed at the time of the House vote on May 12, 1947, no quorum existed on June 20, 1948, and** neither "House" legislatively existed at that time, and that the **legislative process had ceased** within the terms of Article I, §§ 5 and 7 on June 20, 1948.

---

[7]      That same day President Truman signed into law Public Law 80-773 enacting into positive law Title 28, United States Code.  Act of June 25, 1948, Ch. 646, § 1, 62 Stat. 869   That Act positively repealed the former criminal jurisdiction granted to the district courts. id., § 39 *et seq.*, 62 Stat. 991 *et seq.* (positive repeal listing former 28 U.S.C. § 41, ¶ 2 in schedule of repealed statutes)

**F.** **_Public Law 80-772_ Is Unconstitutional And _Void_ Because H.R. 3190 Never Passed Both Houses As Required By Article I, Section 7, Clause 2**

## 1.   THE LEGAL PRINCIPLES

This case presents the "profoundly important issue,"[8] of the constitutionality of an act of Congress[9] – matters "'of such public importance as to justify deviation from normal appellate practice and to require immediate determination by this Court.'" Clinton, 524 U.S. at 455 (Scalia, J., and O'Conner, J., joining in part and dissenting in part) (adopting language directly from Sup. Ct. R. 11).[10]

Although "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives," (Art. I, § 1, U.S. Constitution), "when [Congress] exercises its legislative power, it must follow the 'single, finely wrought and exhaustively considered procedures' specified in Article I." Metropolitan Washington Airports Authority v. Citizens for Abatement of Aircraft Noise, Inc., 501 U.S. 252, 274 (1991) (quoting INS v. Chadha, 462 U.S. at 951)

---

[8]     Clinton v. City of New York, 524 U.S. 417, 439 (1998)
[9]     INS v. Chadha, 462 U.S. 919, 929 (1983)
[10]    Clinton, 524 U.S. at 447, "twice had full argument and briefing," as did INS v. Chadha, 462 U.S. at 943-944 ("The important issues have been fully briefed and twice argued.") "[T]he importance of the question," Metropolitan Washington Airports Authority v. Citizens for Abatement of Aircraft Noise, Inc., 501 U.S. 252, 263 (1991), has always been noted. Wright v United States, 302 U.S. 583, 586 (1938) ("the importance of the question"); Pocket Veto Case, 279 U.S. 655, 673 (1929) ("the public importance of the question presented"); Missouri Pacific Railway Co. v. Kansas, 248 U.S. 276, 279 (1919) ("the importance of the subject")

Article I establishes "just how those powers are to be exercised." INS v. Chadha, 462 U.S. at 945.

An act of Congress "does *not* become a law unless it follows each and every procedural step chartered in Article I, § 7, cl. 2, of the Constitution." Landgraf v. USI Film Products, 511 U.S. 244, 263 (1994) (citing INS v. Chadha, 462 U.S. at 946-951 (emphasis added)); Clinton, 524 U.S. at 448 (noting requisite "steps" taken before bill may "'become a law'" and holding that a procedurally defective enactment cannot "'become a law' pursuant to the procedures designed by the Framers of Article I, § 7, of the Constitution").

The Constitution requires "three procedural steps": (1) a bill containing its *exact text* was approved by a majority of the Members of the House of Representatives; (2) the Senate approved *precisely the same text*; and (3) *that text* was signed into law by the President. "If one paragraph of *that text* had been omitted at *any one of those three stages*, [the] law [in question] would *not* have been validly enacted."[11] Clinton, 524 U.S. at 448

---

[11]    "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Art. I, § 1 of the Constitution.
   "... [A] Majority of each [House] shall constitute a Quorum to do Business ..." Art. I, § 5, Cl. 1.
   "Every Bill which shall have passed [both Houses], shall, before it becomes a Law, be presented to the President of the United States; If he approves he shall sign it ..." Art. I, § 7, Cl. 2
   "Every ... Resolution ... to which the Concurrence of [both Houses] may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him ..." Art. I, § 7, Cl. 3

(emphasis added).   Between the second and third "procedural steps," the bill "… shall … be presented to the President…" Article I, § 7, Cl. 2.

The text of H.R. 3190 passed by the House of Representatives was the text as it existed on the date of passage – *i.e.*, May 12, 1947.  Whereas, the text of the bill passed by the Senate on June 18, 1948, was H.R. 3190 "as amended." Senate Journal, June 18, 1948, p. 506.  Thus, no bill passed the House on May 12, 1947 since no quorum existed and no quorum existed on June 20, 1948, rendering the bills passed by the respective Houses invalid and neither bill ever "became a law." Clinton, 524 U.S. at 448.

### G.   Permitting Post-Adjournment Legislative Business Pursuant To H. Con. Res. 219 Violated The Quorum, Bicameral And Presentment Requirements Of Article I Of The Constitution

After Congress adjourned on June 20, 1948, pursuant to H. Con. Res. 219, a single officer of each House of Congress signed *a bill* purporting to be H.R. 3190 on June 22-23, 1948, 94 Cong. Rec. 9354; House Journal, legislative day of June 19, 1948, p. 777; Senate Journal, legislative day of June 18, 1948, pp. 578-579, and presented *that bill* to the President, who signed it on June 25, 1948.  94 Cong. Rec. 9365-9367   Thus, the post-adjournment signature "provision [of H. Con. Res. 219] was an important part of the legislative scheme," leading to the enactment of Public Law 80-

<u>772</u>, without which it would never have "become a Law." <u>Bowsher v.</u> <u>Synar,</u> 478 U.S. 714, 728 (1986)   <u>Public Law 80-772</u> *falsely* stated it was "enacted" while both Houses were "in Congress assembled," when in fact Congress was not in session. <u>See</u> National Archives & Records Adm. Cert., <u>H.R. 3190</u> as signed into <u>P.L. 80-772</u>.

The bill signed was the Senate's amended <u>H.R. 3190</u> – a bill never certified as "truly enrolled," *compare* <u>Pub. L. 80-772</u>, Enactment Clause & signature pages *with* <u>H.R. 3190</u> certified as "truly enrolled," <u>supra</u>, and <u>H.</u> <u>Con. Res. 219</u> never authorized the signing of *unenrolled* bills after adjournment. <u>See</u> <u>H. Con. Res. 219</u>, <u>supra</u>, 62 Stat. 1436

**Article I, § 5, Clause 1 mandates a quorum of both Houses of Congress "to do Business." This constitutional requirement has been enforced by practice, Rules of the Houses, custom, Supreme Court holdings and duly enacted statutes.**

1 U.S.C. § 101 requires every "enacting clause of all Acts of Congress" to state: "'Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled.'" Although the bill after passage by "both Houses" must be "enrolled" following which it "shall be signed by the presiding officers of both Houses

and sent to the President of the United States,"[12] 1 U.S.C. § 106, the actual

procedure is regulated by House rules and established practice.  Following

passage the "chairman of the Committee on House Administration ... affixes

to the bills examined a certificate that the bill has been found truly

enrolled,"[13] House Doc. No. 769, supra, Stages of a Bill, § 983, No. 16, p.

[483] (App. 79), after which the "enrolled bill is first laid before the House

of Representatives and signed by the Speaker ... after which it is transmitted

to the Senate and signed by the President of that body." Id., No. 17, p.

[484][14]

The Supreme Court in Marshall Field & Co. v. Clark, 143 U.S. 649

(1892), defined the essence of this procedure:

> ***The signing*** by the Speaker of the House of
> Representatives, and, by the President of the
> Senate, ***in open session, of an enrolled bill is an
> official attestation by the two houses*** of such bill
> as one that has passed Congress.  It is ***a
> declaration by the two houses***, through their
> presiding officers, ***to the President***, that a bill, thus

---

[12]      1 U.S.C. § 106 contains an exception for enrollment "[d]uring the last six days of a session," but
no exception for enrolling, signing or presenting a bill to the President otherwise than during the sitting of
both Houses.

[13]      Formerly, the "chairman of the Committee on Enrolled Bills" performed this critical task in the
legislative business of enacting a bill, which has always required the enrolled bill to be "placed before the
House and signed by the Speaker." See House Doc. No. 355, 59th Cong., 2nd Sess., Hinds' Precedents of
the House of Representatives, Ch. XCI, § 3429, notes 3 & 5, p. 311 (G.P.O. 1907)   See House Doc. No.
769, supra, Preface, p. [VI] ("The rulings of the Speakers of the House and of the Chairman of the
Committee of the Whole are to the rules of the House what the decisions of the courts are to the statutes ...
[which are] embodied in the monumental work[s] of Hinds and Canon.").

[14]      The Supreme Court not only takes judicial notice of the legislative history of a bill, Alaska v.
American Can Co., 358 U.S. 224, 226-227 (1959), but will both judicially notice and "h[o]ld" Congress
and its legislative committees "to observance of its rules."   Yellin v. United States, 374 U.S. 109, 114
(1963).

> attested, has received, in due form, *the sanction of the legislative branch* of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass Congress shall be presented to him.

143 U.S. at 672 (emphasis added).   1 U.S.C. § 106 codified this implicit constitutional requirement.   Reading 1 U.S.C. §§ 101 and 106 together requires that all acts must occur at least through presentment to the President while Congress is in session.   That the enrolled bill must be "laid before the House" prior to signing by the Speaker and *then* "transmitted to the Senate" before the signing by the President of that body concludes that the respective Houses *must be in session during this transaction.*[15]

An "adjournment terminates the legislative existence of Congress." Pocket Veto Case, 279 U.S. at 681.   "'Th[e] expression, a "house," or "each house," [when] employed ... with reference to the faculties and powers of the two chambers ... always means ... the constitutional quorum, assembled for the transaction of business, and capable of transacting business.'"   279 U.S. at 683, quoting I Curtis' Constitutional History of the United States, 486 n. 1.   Moreover, the term "'House'" means "the House in session," 279 U.S. at 682, and "'as organized and entitled to exert legislative power,' that

---

[15]   "[T]he Constitution has left it to Congress to determine how a bill is to be authenticated as having passed" and "the courts accept as passed all bills authenticated in the manner provided by Congress." United States v. Munoz-Flores, 495 U.S. 385, 391 n. 4 (1990) (citing Field & Co. v. Clark, 143 U.S. 649 (1892), in which case the Court established the so-called "enrolled bill rule" – a rule not applicable in this case, but a ruling that supports Petitioners' claims.)

is, the legislative bodies 'organized conformably to law for the purpose of enacting legislation.'" Id. (quoting Missouri Pacific Railway Co. v. Kansas, 248 U.S. 276, 281 (1919)).  See also House Doc. No. 355, supra, Hinds' Precedents, § 2939, p. 87 ("'The House is not a House without a quorum'") (App. 87).

No "attestation" or "declaration **by the two houses** ... to the President," Field & Co., 143 U.S. at 672, that H.R. 3190 had "passed" Congress during the adjournment was possible because no such "houses" constitutionally existed.  See also United States National Bank of Oregon v. Independent Insurance Agents of America, 508 U.S. 439, 455 n. 7 (1993) (noting that the rule established in Field & Co., 143 U.S. at 672, made statutory by 1 U.S.C. § 106 turned upon "the 'enrolled bill,' signed in open session by the Speaker of the House of Representatives and the President of the Senate").  Longstanding precedence of the House affirms this.  House Doc. No. 355, supra, Hinds' Precedents, Vol. IV, § 2951, pp. 90-91 (upon "disclos[ure] ... that there is not a quorum .., [t]he House thereby becomes **constitutionally disqualified** to do further business") (excepting from disqualification the exceptions stated in Art. I, § 5, Cl. 1) (emphasis added) (App. 88-89); id., § 3458, p. 322 ("The Speaker may not sign an enrolled bill in the absence of a quorum.")  (App. 93); id. at § 3486, pp. 332-333

(recognizing enrollment and presentment to the President to be legislative business required to be completed before adjournment) (App. 95-96); id. at § 3487, p. 333 n. 3 (presentment to the President is legislative "business" which must be completed before adjournment) (App. 96);  id. at § 4788, p. 1026 ("The presentation of enrolled bills" to the President of the United States is a "transact[ion]" of "business" of the "House.")  (App. 100).

Once a bill has passed the House of Representatives it must be printed as an "engrossed bill" which then "shall be signed by the Clerk of the House … sent to the other House, and in that form shall be dealt with by that House and its officers, and, if passed, returned signed by said Clerk."  1 U.S.C. § 106    In the immediate case H.R. 3190 was passed by the House of Representatives on May 12, 1947, engrossed and sent to the Senate and there referred to the Senate's Committee on the Judiciary.  See 93 Cong. Rec. 5048-5049, 5121; Senate Journal, May 13, 1947, p. 252.  However, it was not dealt with nor passed "in that form."

Instead, amendments were proposed which were "agreed to en bloc," read into the record and "ordered to be engrossed," 94 Cong. Rec. 8721-8722.  Then, "the [amended] bill was read the third time and passed."  94 Cong. Rec. 8722; Senate Journal, June 18, 1948, p. 506.  The House then

concurred in the amendments en bloc.   94 Cong. Rec. 8864-8865; House Journal, June 18, 1948, p. 704.[16]

"The House in which a bill originates enrolls it," House Doc. No. 769, supra, Stages of a Bill, No. 15, p. [483] (App. 79), and, in the case of House bills, the "chairman of the Committee on House Administration ... affixes to the bills examined a certificate that the bill has been found truly enrolled," Id., No. 16, p. [483], after which it is "laid before the House ... signed by the Speaker [then] transmitted to the Senate and signed by the President of that body." Id., No. 17, p. [484]   Unequivocally, "[t]he Speaker may not sign an enrolled bill in the absence of a quorum." House Doc. No. 355, supra, Hinds' Precedents, § 3458, p. 322   Cf., id., § 2939, p. 87 ("The House is not a House without a quorum.").

**The constitutional "quorum" issue** is precluded from the Field & Co.'s "enrolled bill rule" by its terms – *i.e.*, "[t]he signing ... **in open session**, of an enrolled bill," 143 U.S. at 672 (emphasis added), which in any case only applies in "the absence of [a] constitutional requirement binding Congress." United States v. Munoz-Flores, supra, 495 U.S. at 391 n. 4 Moreover, just as "§ 7 gives effect to **all** of its Clauses in determining what procedures the Legislative and Executive branches must follow to enact a

---

[16]   This contravenes the procedures of the House of Representatives for the 80th Congress. "When a bill with Senate amendments comes before the House, the House takes up each amendment by itself ...." House Doc. No. 769, Stages of a Bill in the House, § 983, No. 13, p. [483].

law," id., 495 U.S. 386 (emphasis by Court), so too does Article I, § 5, Cl. 1 "provid[e] that no law could take effect without the concurrence of the prescribed majority of the Members of both Houses," INS v. Chadha, 462 U.S. at 949-950, as to **all** legislative "Business." *Cf.* United States v. Ballin, 144 U.S. 1, 3-5 (1892) (to determine whether constitutionally mandated quorum was present for legislative action the Court "assume[s]" the Journals of the Houses are to be considered to decide the issue).

The bill signed by the Officers of the Houses presented to and signed by the President of the United States was the Senate's amended bill, which never passed the House. H. Con. Res. 219 only "authorized [the] sign[ing] [of] enrolled bills ... duly passed by the two Houses and found truly enrolled," H. Con. Res. 219, supra, 62 Stat. 1436, voiding the signatures on the amended bill.[17]

**Having not been enrolled, certified as truly enrolled, or signed by the Speaker of the House with a quorum present, the bill was rendered constitutionally void.** House Doc. No. 769, supra, Constitution of the

---

[17]    On July 26, 1948, "Mr. LeCompte, from the Committee on House Administration, reported that that committee had examined and found" that H.R. 3190 had been "truly enrolled." 94 Cong. Rec. 9363 The version of H.R. 3190 certified as "truly enrolled" by Mr. LeCompte, is the House version passed on May 12, 1947, with the text of the original § 3231 – the text of which was never passed by the Senate – to which his certificate of enrollment is attached. The statutory mandate after final passage and printing to "call[]" the bill in such final form "the enrolled bill," 1 U.S.C. § 106, Act of July 30, 1947, Ch. 388, Ch. 2, 61 Stat. 634, is determined by the certificate "affixe[d] to the bill," House Doc. No. 769, Stages of a Bill, supra, No. 16, all of which is required *before* the "sign[ing]" by the presiding officers of both Houses and sen[ding] to the President of the United States." 1 U.S.C. § 106

United States, § 55, p. [19] ("[w]hen action requiring a quorum was taken in the ascertained absence of a quorum ... the action was null and void") (App. 74); House Doc. No. 355, supra, Hinds' Precedents, §§ 3497 & 3498, pp. 344-345 (such a bill is "not in force" and is "not a valid statute") (App. 97-98). *Cf.*, id., Hinds' Precedents, § 2962, p. 94 (to vacate legislative act "the absence of a quorum should appear from the Journal") (App. 90).

Art. I, § 7, mandates that a bill that has passed both Houses "'shall before it becomes a Law, be presented to the President of the United States ...,'" Art. I, § 7, Cl. 2; INS v. Chadha, 462 U.S. at 945, which "can **only** contemplate a presentment by the Congress in some manner, [because] ... [a]t that point the bill is necessarily in the hands of the Congress". United States v. Kapsalis, 214 F.2d 677, 680 (7th Cir. 1954), cert. denied, 349 U.S. 906 (1955) (emphasis added). Thus, presentment is clearly part of the legislative procedure required as essential to enactment of a bill as law. INS v. Chadha, 462 U.S. at 945, 947, 951; La Abra Silver Mining Co. v. United States, 175 U.S. 423, 454 (1899) ("*After a bill has been presented* to the President, *no further action is required by Congress* in respect of that bill, unless it be disapproved by him. ...") (emphasis added). See House Doc. No. 355, supra, Hinds' Precedents, Vol. IV, § 4788, p. 1026 (recognizing that "the presentation of enrolled bills" to the President is a "transact[ion]"

of "business" of "the House"); id., § 3486, p. 332 (recognizing presentment required prior to adjournment); id., § 3487, p. 333 note 3 (when bill is enrolled or signed by presiding officers "too late to be presented to the President before adjournment" signing and presentment must continue at next session as a "resumption of [legislative] business").   Clearly presentment is part of the constitutionally mandated "Business," Art. I, § 5, Cl. 1, to be "exercised in accord with [the] single, finely wrought and exhaustively considered, procedure" "prescri[bed] … in Art. I, §§ 1, 7." INS v. Chadha, 462 U.S. at 951.

The "draftsmen" of the Constitution "took special pains to assure these [legislative] requirements could not be circumvented.  During the final debates on Art. I, § 7, Cl. 2, James Madison expressed concern that it might easily be evaded by the simple expedient of calling a proposal a 'resolution' or 'vote' rather than a 'bill.'  As a consequence, Art. I, § 7, Cl. 3, … was added." INS v. Chadha, 462 U.S. at 947 (citing 2 Farrand, supra, 301-302, 304-305)

Whether actions authorized under a resolution are "an exercise of legislative powers depends not on their form but upon 'whether they contain matter which is properly to be regarded as legislative in its character and effect.'"  INS v. Chadha, 462 U.S. at 952 (quoting S. Rep. No. 1335, 54th

Cong., 2d Sess., 8 (1897)).  "If the power is legislative, Congress must exercise it in conformity with the bicameralism and presentment requirements of Art. I, § 7."  Metropolitan, 501 U.S. at 276   See also Bowsher v. Synar, 478 U.S. at 756 (Stevens, J., concurring) ("It is settled, however, that if a resolution is intended to make policy that will bind the Nation, and thus is 'legislative in its character and effect,' S. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1897) – then the full Article I requirements must be observed.  For 'the nature or substance of the resolution, and not its form, controls the question of its disposition'.  Ibid")

"'Congress,'" of course, "'cannot grant to an officer under its control what it does not possess.'"  Metropolitan, 501 U.S. at 275 (quoting Bowsher v. Synar, 478 U.S. at 726)   Congress does not possess the "'capab[ility] of transacting business'" and is not "'entitled to exert legislative power,'" when its "legislative existence" has been "terminate[d]" by an "adjournment." Pocket Veto Case, 279 U.S. at 681-683 (citations omitted).  "The limitation of the power of less than a quorum is absolute," House Doc. No. 355, supra, Hinds' Precedents, Vol. V, Ch. CXL, § 6686, p. 851 (App. 102), and includes the signing of an enrolled bill by the Speaker of the House, id., Vol. IV, Ch. XCI, § 3458, p. 322, and presentment to the President of the United States.  id., Ch. XCII, §§ 3486, 3487 & 3497, pp. 332, 333 note 3, 344 &

345 (App. 95-98).   <u>Wright v. United States</u>, 302 U.S. 583, 600 (1938)
(Stone, J., concurring) ("The houses of Congress, being collective bodies,
transacting their routine business by majority action are capable of acting
only when in session and by formal action recorded in their respective
journals, or by recognition, through such action, of an established practice.")
Thus, "Congress," as defined by the Constitution and Supreme Court, never
"presented" *any* version of <u>H.R. 3190</u> to the President of the United States.

Whether the action taken under <u>H. Con. Res. 219</u> was an "exercise of
legislative power" depends upon whether it was essentially "legislative in
purpose and effect." <u>INS v. Chadha</u>, 462 U.S. at 952.  "In short, when
Congress '[takes] action that ha[s] the purpose and effect of altering the
legal rights, duties, and relations of persons ... outside the Legislative
Branch,' it must take that action by the procedures authorized in the
Constitution." <u>Metropolitan</u>, 501 U.S. at 276, quoting <u>INS v. Chadha</u>, 462
U.S. at 952-955  "If Congress chooses to use a [] resolution ... as a means
of expediting action, it may do so, if it acts by both houses and presents the
resolution to the President," <u>Consumer Energy Council of America v.
F.E.R.C.</u>, 673 F.2d 425, 476 (D.C. Cir. 1982), <u>aff'd mem. sub nom.</u>, <u>Process
Gas Consumers Group v. Consumer Energy Council of America</u>, 463 U.S.
1216 (1983).

The inescapable conclusion as to the "purpose and effect" of H. Con. Res. 219 was to enact *a bill* the text of which at the time of adjournment on June 20, 1948, had not been passed by both Houses, enrolled, certified as "truly enrolled," or signed by the officers of the Houses or presented to the President of the United States with quorums sitting. In other words, H. Con. Res. 219 unconstitutionally permitted post-adjournment legislative business to proceed without Congress and upon an un-passed bill. Congress did not follow the procedures mandated by Art. I, § 7, Cl. 2 and attempted to supersede the quorum requirements of Art. I, § 5, Cl. 1 *via* a concurrent resolution to carry forth legislative business with no legislature. The 80th Congress surreptitiously provided a bill, the text of which had never passed either House "'mask[ed] under ... [the] indirect measure,'" Metropolitan, supra, 501 U.S. at 277 (quoting Madison, The Federalist No. 48, p. 334 (J. Cooke 1961 ed.)), of a resolution purporting to authorize continuing legislative action during adjournment with no quorum and no Congress of an extra-congressional bill. Public Law 80-772 did not "become a Law" as required by the constitutional procedures mandated under Article I, § 5, Cl. 1, and Article I, § 7, Cls. 2 and 3, and is unconstitutional and *void ab initio*.

"[W]hen action requiring a quorum was taken in the ascertained absence of a quorum ... the action [is] null and void," House Doc. No. 769,

supra, Constitution of the United States, § 55, p. [19] (citing Hinds' Precedents, Vol. IV, § 2964), and "a bill … not actually passed [although] signed by the President [is to be] disregarded [requiring] a new bill [to be] passed." House Doc. No. 769, § 103, p. [34] (citing Hinds' Precedents, Vol. IV, § 3498) (App. 75).

**H.    Any District Court Order Committing Petitioner To Executive Custody Pursuant To § 3231 (Of The Unconstitutional *Public Law 80-772*) Is Issued *Ultra Vires*, Is Unconstitutional And *Coram Non Judice*, And Imprisonments And/or Confinement Is Unlawful**

"The challenge in [any current criminal case] goes to the subject-matter jurisdiction of the court and hence the power to issue the order[s]," United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 77 (1988), committing Petitioner to imprisonment in Executive custody. Thus, the "question is, whether …the action is judicial or extra-judicial, with or without the authority of law to render [the] judgment," Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) 657, 718 (1838), and to issue the commitment orders.

Subject-matter jurisdiction means "'the courts' statutory or constitutional *power* to adjudicate the case,'" United States v. Cotton, 535 U.S. 625, 630 (2002), quoting Steel Co. v. Citizens For A Better Environment, 523 U.S. 83, 89 (1998); Rhode Island v. Massachusetts, 37

U.S. (12 Pet.) at 718 ("Jurisdiction is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them."); Reynolds v. Stockton, 140 U.S. 254, 268 (1891) ("Jurisdiction may be defined to be the right to adjudicate concerning the subject matter in a given case."). "Subject-matter limitations on federal jurisdiction serve institutional interests by keeping the federal courts within the bounds the Constitution and Congress have prescribed." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)[18]

"'Without jurisdiction the court cannot proceed at all in any cause … and when it ceases to exist, the only function of the court is that of announcing the fact and dismissing the cause.'" Steel Co. v. Citizens, 523 U.S. at 94, quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869); Willy v. Coastal Corp., 503 U.S. 131, 137 (1992) ("lack of subject-matter jurisdiction … precludes further adjudication"). This Court has asserted over and over that "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power

---

[18]    "Federal courts are courts of limited jurisdiction … Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxite de Guinea, 456 U.S. 694, 701 (1982); Kline v. Burke Constr. Co., 260 U.S. 226, 234 (1922) (all lower federal courts "derive[] [their] jurisdiction wholly from the authority of Congress"); United States v. Hudson & Goodwin, 11 U.S. 32, 33 (1812) (federal courts "possess no jurisdiction but what is given to them by the power that creates them."). United States v. Hall, 98 U.S. 343, 345 (1879) (federal "courts possess no jurisdiction over crimes and offenses … except what is given to them by the power that created them"); Hudson & Goodwin, 11 U.S. at 33-34 See also, e.g., United States v. Wiltberger, 18 U.S. 76, 95-105 (1820) ("the power of punishment is vested in the legislative, not the judicial department," criminal statutes are to be construed strictly, "probability" cannot serve to "enlarge a statute" and an offense not clearly within the terms of a statute precludes federal court jurisdiction).

of the United States' and is 'inflexible and without exception.'" <u>Steel Co.</u>, 523 U.S. at 94-95, quoting <u>Mansfield, C. & L.M.R. Co. v. Swan</u>, 111 U.S. 379, 382 (1884); <u>See</u> <u>also</u> <u>Insurance Corp. of Ireland, Ltd.</u>, 456 U.S. at 702.

Because subject-matter jurisdiction "involves a court's power to hear a case, [and thus] can never be forfeited or waived ... **correction [is mandatory]** whether the error was raised in district court" or not. <u>United States v. Cotton</u>, 535 U.S. at 630 (citation omitted); <u>Steel Co.</u>, 523 U.S. at 94-95 (citing cases). When a district court did "not have subject-matter jurisdiction over the underlying action ... [its] process[es] [are] void and an order of [punishment] based [thereupon] ... must be reversed." <u>United States Catholic Conf.</u>, 487 U.S. at 77; <u>Willy v. Coastal Corp.</u>, 503 U.S. at 139 ("[T]he [punishment] order itself should fall with a showing that the court was without authority to enter the decree."); <u>Ex parte Fisk</u>, 113 U.S. 713, 718 (1885) ("When ... a court of the United States undertakes, by its process ... to punish a man ... [respecting] an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing ... is equally void.")

*Habeas corpus* review "is limited to the examination of the jurisdiction of the court whose judgment of conviction is challenged." <u>INS v. St. Cyr</u>, 533 U.S. 289, 311-314 (2001); <u>Bowen v. Johnston</u>, 306 U.S. 19

23 (1939)   A "court 'has jurisdiction to render a particular judgment *only when the offense charged is within the class of offenses placed by the law under its jurisdiction.*" 306 U.S. at 24 (emphasis added).  If it is found that the court lacked jurisdiction to try petitioner, the judgment is *void* and the prisoner must be discharged.  <u>Ex parte Yarbrough</u>, 110 U.S. 651, 654 (1884)

Petitioner has established that the text of <u>H.R. 3190</u> signed by respective House officers and the President of the United States: (1) failed to pass the House of Representatives because no quorum was present when the House voted 38 to 6 to pass the bill on May 12, 1947, and (2) that the legislative process continued after Congress adjourned by single officers of each House acting pursuant to <u>H. Con. Res. 219</u> **without quorums** in either House, all of which violated Article I, Section 5, Clause 1; Article I, Section 7, Clause 2, and/or Article I, Section 7, Clause 3 – and any of which rendered <u>Public Law 80-772</u> unconstitutional and *void ab initio*.  <u>Marbury v. Madison,</u> 5 U.S. 137, 180 (1803) ("a law repugnant to the constitution is void; and … courts, as well as other departments, are bound by that instrument").  Therefore, because "the offense[s] charged … [were] placed by the law under [the] jurisdiction," of the respective district courts below pursuant to 18 U.S.C. § 3231 of <u>Public Law 80-772,</u> which is

unconstitutional, and "void, the court was without jurisdiction and the prisoner[s] must be discharged." Yarbrough, 110 U.S. at 654. Since Public Law 80-772 has never been enacted as required by Article I, Section 5, Clause 1, and Article I, Section 7, Clauses 2 and 3 thereof, rendering *void ab initio* the jurisdiction by which the respective district courts acted to convict, enter judgment, and order Petitioner imprisoned in Executive custody, the district courts' actions were "'*ultra vires,*'" Ruhrgas AG, 526 U.S. at 583 (quoting Steel Co., 523 U.S. at 101-102), and "*coram non judice.*" Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) at 720

Any conviction and judgment thereupon "being without jurisdiction, is void, and the order punishing … is equally void." Ex parte Fisk, 113 U.S. at 718; United States Cath. Conf., 487 U.S. at 77; Willy v. Coastal Corp., 503 U.S. at 139. This is precisely the office and function of *habeas corpus* – *i.e.*, to "examin[e] … the jurisdiction of the court whose judgment of conviction is challenged," Bowen v. Johnston, 306 U.S. at 23, and where, as here, a court is clearly "without jurisdiction … the prisoner … must be discharged." Ex parte Yarbrough, 110 U.S. at 654. See also Ex parte Lange, 85 U.S. (18 Wall.) 163, 166 (1874)

**Unsworn declaration under penalty of perjury 28 USC 1746(1), an affidavit of truth**

## CONCLUSION

In summary, no quorum was present according to Congress' own records for the House vote on May 12, 1947, and no quorum was present on June 20, 1948 for the signature of both Houses.   For these reasons, the Attorney General of the United States must declare according to law that Public Law 80-772 is invalid and unconstitutional according to law.

Respectfully submitted,

May ____, 2011

By *Richard Kellogg Armstrong*
**Richard Kellogg Armstrong**
**# 20413-298**
**Federal Correction Center**
**9595 Quincy Ave**
**Littleton, CO 80123**

CC: ADMINISTRATIVE OFFICE OF THE U.S. COURTS
U.S. DEPT. OF JUSTICE, ERIC HOLDER, ATT'Y. GENERAL
U.S. DISTRICT COURT COLORADO
TENTH CIRCUIT COURT OF APPEALS
SUPREME COURT OF THE UNITED STATES
SUPREME COURT OF ARIZONA
OFFICE OF CHIEF COUNSEL, IRS



Richard K. Armstrong
20413-298
Federal Detention Center Englewood
9595 Quincy Ave.
Littleton, CO 80123

**CERTIFIED MAIL**

7010 3090 0002 7265 7971

U.S POSTAGE
PAID
LITTLETON CO
80123
MAY 05 11
AMOUNT
$0.00
00035516-06

LEGAL MAIL

U.S. District Court Colorado
Gregory L. Langham, Clerk of the Court
901 19th St., Room A-105
Denver, CO 80294-3589

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAY 06 2011

GREGORY C. LANGHAM CLERK