FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**DENVER DIVISION**

JUN 23 2011

GREGORY C. LANGHAM
CLERK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| **Plaintiff/Respondent** | § | |
| | § | 1:10-cr-00317-REB-2 |
| **v.** | § | |
| | § | 10-CV-01073 |
| **RICHARD KELLOGG** | § | |
| **ARMSTRONG** | § | **Affidavit** |
| **Defendant/Petitioner** | § | |
| | § | **Verified** |

## MOTION FOR DISMISSAL OF INDICTMENT WITH PREJUDICE DUE TO U.S. ATTORNEYS' LACK OF CANDOR WITH THE COURT

Comes now, Petitioner, unrepresented, and hereby submits an offer of proof and requests sanctions against the Office of the US attorney for violations of FRCP 11(b) and the Federal Rules of Criminal Procedure, for submitting pleadings which are contrary to the Constitution and statutes of the United States and for lack of candor to the court. FRCP 11(b) requires that every paper submitted by an attorney should only be submitted after a careful analysis of the facts and the law. FRCrimP 16 requires disclosure of any materials or evidence which would tend to prove the Defendant's innocence. State Bar rules require that an attorney may be sanctioned for lack of candor to the court. In this case, the lack of candor and violations of FRCP 11(b) and FRCrimP 16 requires that the indictment be dismissed with prejudice.

**FRCP 11(b) states: "By presenting to the court a pleading, written motion, or other paper-whether by signing, filing, submitting, or later advocating it- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law..." The same rule applies to criminal law.**

**Thus the US Attorneys are bound by their oath to declare the statute unconstitutional and to release Petitioner.**

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor - indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. U.S.,* 295 U.S. 78, 88 (1935). The overriding concern always with the prosecutor's function is that no foul blows be struck that would impair impartial justice.

## A.   Defendant submits an Offer of Proof

The court can not refuse an offer of proof. ***"Allegations such as those asserted by petitioner, (a pro se litigant), however in-artfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. Accordingly, although we intimate no view on the merits of petitioner's allegations, we conclude that he is entitled to an opportunity to offer proof." Haines v. Kerner,*** 404 U.S. 519, 522.

## B.   Question of Law

**If a bill, allegedly passed by Congress, had no quorum In place when the House of Representatives passed the bill, the vote in the House was 38 to 6 as established by the Congressional record, 435 members were in the House at the time, 218 members are required to constitute a quorum, and the House neither ordered proceedings adjourned until the members showed up nor ordered the Marshals to find the missing members; and the Congressional record establishes that no other vote on the bill occurred by the House of Representatives during that Congressional session, is the bill unconstitutional and void ab initio?**

**It should be noted by the court that a poling of other countries in the Americas establishes that a quorum is mandatory to establish legal authority and to pass legislation in other countries.  In fact, in the United States, the government of Wisconsin recently declared a bill invalid which had no quorum.[1]**

---

[1] (RTTNews) - A Wisconsin judge temporarily blocked the state's controversial anti-union law aimed at stripping most collective bargaining rights from state employees.

The law, which was passed despite Democratic State Senators fleeing the state to prevent the chamber from reaching a quorum, had drawn national attention and large groups of protesters to the state capitol.

Opponents of the measure are claiming in court that the bill passed the State Senate in violation of the chamber's rules and the state open meetings law.

The law was voted on roughly two hours after the union bargaining restrictions were stripped from a broader budget bill to avoid the requirement of a quorum.

On Friday, Dane County Judge Maryann Sumi granted a temporary restraining order to stop the Secretary of State from publishing the law, which was signed by Republican Gov. Scott Walker.

**A.** **History**

### I.    Introduction

This party requests the court declare unconstitutional and *void ab initio*: (1) Public Law 80-772 which purported to enact Title 18, United States Code, Act of June 25, 1948, Chapter 645, 62 Stat. 683 *et seq.*, and (2) more specifically, Section 3231 thereof, 62 Stat. 826, which purported to confer upon "the district courts of the United States ... original jurisdiction ... of all offenses against the laws of the United States."   These legislative Acts violated the **Quorum**, Bicameral and/or Presentment Clauses mandated respectively by Article I, § 5, Cl. 1, and Article I, § 7, Cls. 2 and 3, of the Constitution of the United States.  Any federal district court which rendered judgment and ordered commitment under Section 3231, lacked jurisdiction and, therefore the judgment and commitment order is *void ab initio*.   To imprison and detain anyone under *void* judgments and commitment orders is unconstitutional and unlawful.  As such, Petitioner must be discharged from illegal sentence immediately.

## II.    CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

Article I, § 1, commands and declares that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."

Article I, § 5, Cl. 1, commands, in relevant part, that "a Majority of each [House of Congress] shall constitute a Quorum to do Business," excepting there from permission to "adjourn from day to day" and "to compel Attendance of its Members, in such Manner, and under such Penalties as each House may provide."

Article I, § 7, Cl. 2, commands, in relevant part, that "[e]very Bill which shall have passed both Houses, shall, before it becomes a Law, be presented to the President of the United States."

Article I, § 7, Cl. 3, commands, in relevant part, that "[e]very … Resolution … to which the Concurrence of the Senate and House of Representatives may be necessary … shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the case of a Bill."

Title 1, United States Code, Section 106, Act of July 30, 1947, Chapter 388, Title I, Ch. 2, § 106, 61 Stat. 634, Pub. L. 80-278, provides, in relevant part, that "[w]hen [a] bill … shall have passed both Houses, it shall be printed and shall then be called the enrolled bill … and shall be signed by the presiding officers of both Houses and sent to the President of the United States."

### Iii.   <u>STATEMENT OF FACTS</u>

This party was charged and placed into Executive custody by order of United States District Court acting pursuant to the grant of original jurisdiction purportedly created by <u>Public Law 80-772</u>, Title 18, United States Code, Section 3231.  By virtue of the commitment order, Petitioner has been committed into the custody of the Attorney General and into the custody of the Bureau of Prisons.  <u>See</u> 18 U.S.C. § 4082(a) (repealed) and § 3621(a) (enacted Oct. 12, 1984, and effective Nov. 1, 1987).

The text of the bill, <u>H.R. 3190</u> as amended, which became <u>Public Law 80-772</u> (enacting Title 18, United States Code, and especially Section 3231), was passed only by the Senate and never passed by the House of Representatives because the **House had no quorum** when it presented the

bill to the House on a 38 to 6 vote on May 12, 1947, when the House had 435 members.[2]

For those reasons, Public Law 80-772 which purportedly enacted Title 18, United States Code, Act of June 25, 1948, Chapter 645, 62 Stat. 683 *et seq.* and Section 3231 thereof, 62 Stat. 826, purporting to confer upon "the district courts of the United States … original jurisdiction … of all offenses against the laws of the United States" violates Article I, § 5, Cl. 1, and Article I, § 7, Cls. 2 and 3, and are therefore unconstitutional and *void ab initio*. The district court, which acted against Petitioner, did so without jurisdiction, and the judgment and commitment order is ***void ab initio***, and imprisonment and/or confinement thereunder is fundamentally unconstitutional and unlawful.

A.          **H.R. 3190 In The First Session Of The 80th Congress**

H.R. 3190 was introduced and committed to the Committee of the entire House of Representatives on the State of the Union of the First Session of the 80th Congress entitled "Crimes and Criminal Procedure." See House Report No. 304 (April 24, 1947), p. 1  See also 94 Cong. Rec. D556-D557 (Daily Digest) (charting H.R. 3190).  H.R. 3190 differed from  "five … bills which … preceded it … [because] it constitute[d] a revision, as well

---

[2] In fact, the House was required to stop all proceedings when no quorum was present, and wait for enough members to join, or order the Marshals to find the missing members and bring them to the House.  See Roberts Rules of Order, available for download at www.rulesoforder.com

as a codification, of the Federal laws relating to crimes and criminal procedure." 93 <u>Cong. Rec.</u> 5048-5049 (May 12, 1947)  The bill was intended (1) to revise and compile **all** of the criminal law, (2) to "restate[]" and "consolidate[]" "existing statutes," (3) to "repeal" "obsolete, superseded, redundant and repetitious statutes," (4) to coordinate the Criminal Code with the "Federal Rules of Criminal Procedure" formerly enacted, and (5) to "clarify and harmonize" penalties of the "many acts" passed by Congress which were found to be "almost identical." "The bill was ordered to be engrossed and read a third time, was read a third time, and passed" the House on May 12, 1947, <u>id.</u>; <u>Journal of the House of Representatives</u> ("<u>House Journal</u>"), May 12, 1947, pp. 343-344 <u>Cong. Rec.</u> D556-D557 (showing <u>H.R. 3190's</u> only passage by the House of Rep. on May 12, 1947), sent to the Senate and there "referred … to the Committee on the Judiciary." 93 <u>Cong. Rec.</u> 5121, May 13, 1947; <u>Journal of the Senate</u> ("<u>Senate Journal</u>"), May 13, 1947, p. 252. **However, the "passage" of the bill, as established by the Congressional record was on a vote of 38 to 6, when 435 members were in Congress and no quorum was in session, rendering the bill in violation of Article I, Section 5, Clause I of the Constitution, and void ab initio.**

As passed and enrolled by the House of Representatives H.R. 3190 included at section 3231, Subtitled "District Courts," the following text:

> Offenses against the United States shall be cognizable in the district courts of the United States, but nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof.

H.R. 3190 as passed by the H. of Rep., p. 367, § 3231;   See United States v. Sasscer, 558 F. Supp. 33, 34 (D.MD. 1982)

On July 27, 1947, Congress adjourned without the Senate passing H.R. 3190. See 93 Cong. Rec. 10439, 10522 (July 26, 1947). On November 17, 1947, Congress reconvened pursuant to a Presidential proclamation. Yet, Congress again "adjourned *sine die* on December 19, 1947," without the Senate passing H.R. 3190;   Kennedy v. Sampson, 511 F.2d 430, 444 Appendix n. 4 (D.C. Cir. 1974)

### B.        H.R. 3190 In Second Session Of The 80th Congress

The Senate Committee on the Judiciary reported amendments to H.R. 3190 on June 14, 1948, under Sen. Rep. No. 1620.  94 Cong. Rec. 8075 (June 14, 1948); Senate Journal, June 14, 1948, p. 452 (App. 34)[3] Sen. Rep. No. 1620 contained "a large volume of amendments" and "the new Federal Rules of Criminal Procedure [were] keyed to the bill and [were] reflected in

---

[3]        The Senate approved its Journal for June 14, 1948. Senate Journal, June 15, 1948, pp. 461-462.

part II of [the new proposed] title 18." Heralding that, upon passage of the amended bill, "[u]ncertainty will be ended," the Senate wanted "the amendments adopted en bloc," including a new jurisdictional section for Title 18. 94 Cong. Rec. 8721. The report contained only the proposed amendments. See Sen. Rep. No. 1620, pp. 1 & 4.

"[T]he amendments were considered and agreed to en bloc" and then "ordered to be engrossed." 94 Cong. Rec. 8721-8722 (June 18, 1948), Senate Journal, June 18, 1948, p. 506 (H.R. 3190, "as amended," passed the Senate). It was moved that "the Senate insist upon its amendments" by the House (94 Cong. Rec. at 8722); and "[o]rdered that the Secretary request the concurrence of the House of Representatives in the amendments." Senate Journal, supra, p. 506; House Journal, June 18, 1948, p. 688.

The House received the proposed amendments. The Clerk "read the Senate amendments" collectively into the record with which the House concurred. 94 Cong. Rec. 8864-8865 (June 18, 1948); House Journal, June 18, 1948, p. 704 (the "said Senate amendments were concurred in"). Although "[t]he House agreed to the amendments to … H.R. 3190," Senate Journal, June 18, 1948, p. 510, no action was taken on H.R. 3190 as

amended.[4]   The Journal of the House of Representatives is devoid of any vote on H.R. 3190 itself on June 18, 1948, and thereafter through adjournment on June 20, 1948.  Moreover, the official historical chart of H.R. 3190 clearly shows the "*only* **passage**" by the House of Representatives occurring on May 12, 1947, and specifically references volume 93, page 5048 of the Congressional Record as the recorded date the House passed the bill.  94 Cong. Rec. D556-D557 (Daily Digest)  **However, as is clearly established by the Congressional record, the vote for passage was 38 to 6, when 435 members were in Congress and a quorum to do business would require a majority of those members to be present for passage.  Therefore, with no quorum present, the bill is null and void ab initio.**

### C.   Congress Agreed By Resolution To Continue Legislative Business By A Single Officer Of Each House During Adjournment

On June 19, 1948, the House submitted and agreed to concurrent resolutions H. Con. Res. 218 and 219 and requested concurrence by the Senate.  House Journal, June 19, 1948, pp. 771-772; Senate Journal, June 18, 1948, p. 577.  "[T]he Senate [then] passed without amendment these

---

[4]   The House approved the Journal for June 18, 1948, House Journal, p. 714 (June 19, 1948, approving Journal for "legislative day of … June 17, 1948" – *i.e.*, calendar day of June 18, 1948); id. at p. 669 (showing Friday, June 18, 1948, as "legislative day of Thursday, June 17, 1948"), and the Senate approved its Journal for June 18, 19 and 20, 1948.  Senate Journal, July 26, 1948, p. 593.

concurrent resolutions of the House."[5]   94 Cong. Rec. 9349 (App. 57).

H.Con.Res. 218 "provid[ed] adjournment of the two Houses of Congress

until December 31, 1948," id.; see Concurrent Resolutions, Second Session,

Eightieth Cong., H.Con.Res. 218, June 20, 1948, 62 Stat. 1435-1436.

H.Con.Res. 219 "authorize[ed] the signing of enrolled bills following

adjournment," 94 Cong. Rec. 9349, specifically resolving:

> That notwithstanding the adjournment of the two
> Houses until December 31, 1948, the Speaker of
> the House of Representatives and the President pro
> tempore of the Senate be, and they are hereby,
> authorized to sign enrolled bills and joint
> resolutions duly passed by the two Houses and
> found truly enrolled.

See Concurrent Resolutions, supra, H.Con.Res. 219, June 20, 1948, 62 Stat.

1436.

Congress adjourned on June 20, 1948, pursuant to H.Con.Res. 218.

94 Cong. Rec. 9348, 9169; House Journal, June 20, 1948, p. 775; Senate

Journal, June 20, 1948, p. 578.  Both Houses reconvened on July 26, 1948,

pursuant to a proclamation of President Truman.  Senate Journal, July 26,

---

[5]     The House sat from June 19 through June 20, 1948, adjourning at 6:56 A.M., House Journal, June
19, 1948, p. 775, and approved the Journal of the 19th.   House Journal, July 26, 1948, pp. 792-793
(reconvention by Presidential Proclamation).

1948, p. 593 (showing reconvention); House Journal, July 26, 1948, pp. 792-793 (same)[6]

### D.   Post-Adjournment Signing Of H.R. 3190 By Single Officers Of The Houses And Presentment To And Approval Thereof By The President Pursuant To H.Con.Res. 219

With both Houses adjourned, with **no quorum**, disassembled and dispersed, Mr. LeCompte, the Chairman of the Committee on House Administration reported that that committee had found H.R. 3190 "truly enrolled." House Journal, legislative day of June 19, 1948, p. 776 (recorded under heading "BILLS AND JOINT RESOLUTIONS ENROLLED SUBSEQUENT TO ADJOURNMENT").[7]   He attached his certificate of enrollment to the **original** H.R. 3190 passed by the House on May 12, 1947. See H.R. 3190, certified after adjournment as "truly enrolled" (as certified by Richard H. Hunt, Director, Center for Legislative Archives, The National Archives, Washington, D.C.).   Although never certified as truly enrolled, the Speaker and President pro tempore respectively signed the Senate's amended H.R. 3190 on June 22 and 23, 1948.  94 Cong. Rec. 9353-9354; House Journal, legislative day June 19, 1948, p. 777; Senate Journal, legislative day June 18, 1948, pp. 578-579.  National Archives & Records

---

[6]   The House Journal for July 26, 1948, was approved, House Journal, July 27, 1948, p. 797, and the Senate Journal for July 26, 1948, was approved.  Senate Journal, July 27, 1948, p. 593.
[7]   Mr. LeCompte's announcement was reported upon reconvention by the President's Proclamation on July 26, 1948.  94 Cong. Rec. 9363.

Adm. Cert., H.R. 3190 signed by House and Senate officers and President

Truman.    The Senate's amended H.R. 3190 was then presented by the

Committee on House Administration to President Truman, on June 23, 1948,

who signed it on June 25, 1948[8], at 12:23 P.M. E.D.T., 94 Cong. Rec. 9364-

9367; House Journal, legislative day of June 19, 1948, pp. 778, 780-782;

Senate Journal, legislative day of June 18, 1948, pp. 579, 583.    National

Archives & Records Adm. Cert., H.R. 3190, supra; 94 Cong. Rec. D557

(Daily Digest).

### E.    The Signatories Of H.R. 3190 Knew the Enacting Clause Was False When Signed

Public Law 80-772 stated that the enactment proceeded "by the Senate

and House of Representatives of the United States of America *in Congress

assembled*."    See National Archives & Records Adm. Cert., H.R. 3190 as

signed into P.L. 80-772, supra.    Each signatory knew that **no quorum

existed at the time of the House vote on May 12, 1947, no quorum

existed on June 20, 1948, and** neither "House" legislatively existed at that

time, and that the **legislative process had ceased** within the terms of Article

I, §§ 5 and 7 on June 20, 1948.

---

[8]        That same day President Truman signed into law Public Law 80-773 enacting into positive law
Title 28, United States Code.    Act of June 25, 1948, Ch. 646, § 1, 62 Stat. 869.    That Act positively
repealed the former criminal jurisdiction granted to the district courts. id., § 39 *et seq.*, 62 Stat. 991 *et seq.*
(positive repeal listing former 28 U.S.C. § 41, ¶ 2 in schedule of repealed statutes).

**F.**     ***Public Law 80-772*** **Is Unconstitutional And *Void* Because**
**H.R. 3190 Never Passed Both Houses As Required By**
**Article I, Section 7, Clause 2**

**1.     THE LEGAL PRINCIPLES**

This case presents the "profoundly important issue,"[9]  of the
constitutionality of an act of Congress[10] – matters "'of such public
importance as to justify deviation from normal appellate practice and to
require immediate determination by this Court.'"  Clinton, 524 U.S. at 455
(Scalia, J., and O'Conner, J., joining in part and dissenting in part) (adopting
language directly from Sup. Ct. R. 11).[11]

Although "[a]ll legislative Powers herein granted shall be vested in a
Congress of the United States, which shall consist of a Senate and a House
of Representatives," (Art. I, § 1, U.S. Constitution), "when [Congress]
exercises its legislative power, it must follow the 'single, finely wrought and
exhaustively considered procedures' specified in Article I."  Metropolitan
Washington Airports Authority v. Citizens for Abatement of Aircraft Noise,
Inc., 501 U.S. 252, 274 (1991) (quoting INS v. Chadha, 462 U.S. at 951).

---

[9]       Clinton v. City of New York, 524 U.S. 417, 439 (1998)
[10]      INS v. Chadha, 462 U.S. 919, 929 (1983)
[11]      Clinton, 524 U.S. at 447, "twice had full argument and briefing," as did INS v. Chadha, 462 U.S.
at 943-944 ("The important issues have been fully briefed and twice argued.")  "[T]he importance of the
question," Metropolitan Washington Airports Authority v. Citizens for Abatement of Aircraft Noise, Inc.,
501 U.S. 252, 263 (1991), has always been noted.  Wright v. United States, 302 U.S. 583, 586 (1938) ("the
importance of the question"); Pocket Veto Case, 279 U.S. 655, 673 (1929) ("the public importance of the
question presented"); Missouri Pacific Railway Co. v. Kansas, 248 U.S. 276, 279 (1919) ("the importance
of the subject")

Article I establishes "just how those powers are to be exercised." INS v. Chadha, 462 U.S. at 945.

An act of Congress "does *not* become a law unless it follows each and every procedural step chartered in Article I, § 7, cl. 2, of the Constitution." Landgraf v. USI Film Products, 511 U.S. 244, 263 (1994) (citing INS v. Chadha, 462 U.S. at 946-951 (emphasis added)); Clinton, 524 U.S. at 448 (noting requisite "steps" taken before bill may "'become a law'" and holding that a procedurally defective enactment cannot "'become a law' pursuant to the procedures designed by the Framers of Article I, § 7, of the Constitution").

The Constitution requires "three procedural steps": (1) a bill containing its *exact text* was approved by a majority of the Members of the House of Representatives; (2) the Senate approved *precisely the same text*; and (3) *that text* was signed into law by the President. "If one paragraph of *that text* had been omitted at *any one of those three stages*, [the] law [in question] would *not* have been validly enacted." [12] Clinton, 524 U.S. at 448

---

[12]   "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Art. I, § 1 of the Constitution
        "... [A] Majority of each [House] shall constitute a Quorum to do Business ..." Art. I, § 5, Cl. 1
        "Every Bill which shall have passed [both Houses], shall, before it becomes a Law, be presented to the President of the United States; If he approves he shall sign it ..." Art. I, § 7, Cl. 2
        "Every ... Resolution ... to which the Concurrence of [both Houses] may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him ..." Art. I, § 7, Cl. 3

(emphasis added).  Between the second and third "procedural steps," the bill "… shall … be presented to the President…"  Article I, § 7, Cl. 2.

The text of H.R. 3190 passed by the House of Representatives was the text as it existed on the date of passage – *i.e.*, May 12, 1947.  Whereas, the text of the bill passed by the Senate on June 18, 1948, was H.R. 3190 "as amended."  Senate Journal, June 18, 1948, p. 506.  Thus, no bill passed the House on May 12, 1947 since no quorum existed and no quorum existed on June 20, 1948, rendering the bills passed by the respective Houses invalid and neither bill ever "became a law."  Clinton, 524 U.S. at 448.

### G. Permitting Post-Adjournment Legislative Business Pursuant To H.Con.Res. 219 Violated The Quorum, Bicameral And Presentment Requirements Of Article I Of The Constitution

After Congress adjourned on June 20, 1948, pursuant to H.Con.Res. 219, a single officer of each House of Congress signed *a bill* purporting to be H.R. 3190 on June 22-23, 1948, 94 Cong. Rec. 9354; House Journal, legislative day of June 19, 1948, p. 777; Senate Journal, legislative day of June 18, 1948, pp. 578-579, and presented *that bill* to the President, who signed it on June 25, 1948.  94 Cong. Rec. 9365-9367.  Thus, the post-adjournment signature "provision [of H.Con.Res. 219] was an important part of the legislative scheme," leading to the enactment of Public Law 80-772,

without which it would never have "become a Law." Bowsher v. Synar, 478 U.S. 714, 728 (1986). Public Law 80-772 *falsely* stated it was "enacted" while both Houses were "in Congress assembled," when in fact Congress was not in session. See National Archives & Records Adm. Cert., H.R. 3190 as signed into P.L. 80-772.

The bill signed was the Senate's amended H.R. 3190 – a bill never certified as "truly enrolled," *compare* Pub.L. 80-772, Enactment Clause & signature pages *with* H.R. 3190, certified as "truly enrolled," supra, and H.Con.Res. 219 never authorized the signing of *unenrolled* bills after adjournment. See H.Con.Res. 219, supra, 62 Stat. 1436.

**Article I, § 5, Clause 1 mandates a quorum of both Houses of Congress "to do Business." This constitutional requirement has been enforced by practice, Rules of the Houses, custom, Supreme Court holdings and duly enacted statutes.**

1 U.S.C. § 101 requires every "enacting clause of all Acts of Congress" to state: "'Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled.'" Although the bill after passage by "both Houses" must be "enrolled" following which it "shall be signed by the presiding officers of both Houses

and sent to the President of the United States,"[13] 1 U.S.C. § 106, the actual procedure is regulated by House rules and established practice.  Following passage the "chairman of the Committee on House Administration ... affixes to the bills examined a certificate that the bill has been found truly enrolled,"[14] House Doc. No. 769, supra, Stages of a Bill, § 983, No. 16, p. [483] (App. 79), after which the "enrolled bill is first laid before the House of Representatives and signed by the Speaker ... after which it is transmitted to the Senate and signed by the President of that body."  Id., No. 17, p. [484][15].

The Supreme Court in Marshall Field & Co. v. Clark, 143 U.S. 649 (1892), defined the essence of this procedure:

> *The signing* by the Speaker of the House of Representatives, and, by the President of the Senate, *in open session, of an enrolled bill is an official attestation by the two houses* of such bill as one that has passed Congress.   It is *a declaration by the two houses*, through their presiding officers, *to the President*, that a bill, thus

---

[13]      1 U.S.C. § 106 contains an exception for enrollment "[d]uring the last six days of a session," but no exception for enrolling, signing or presenting a bill to the President otherwise than during the sitting of both Houses.

[14]      Formerly, the "chairman of the Committee on Enrolled Bills" performed this critical task in the legislative business of enacting a bill, which has always required the enrolled bill to be "placed before the House and signed by the Speaker."  See House Doc. No. 355, 59th Cong., 2nd Sess., Hinds' Precedents of the House of Representatives, Ch. XCI, § 3429, notes 3 & 5, p. 311 (G.P.O. 1907).  See House Doc. No. 769, supra, Preface, p. [VI] ("The rulings of the Speakers of the House and of the Chairman of the Committee of the Whole are to the rules of the House what the decisions of the courts are to the statutes ... [which are] embodied in the monumental work[s] of Hinds and Canon.").

[15]      The Supreme Court not only takes judicial notice of the legislative history of a bill, Alaska v. American Can Co., 358 U.S. 224, 226-227 (1959), but will both judicially notice and "h[o]ld" Congress and its legislative committees "to observance of its rules."  Yellin v. United States, 374 U.S. 109, 114 (1963).

> attested, has received, in due form, *the sanction of the legislative branch* of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass Congress shall be presented to him.

143 U.S. at 672 (emphasis added).   1 U.S.C. § 106 codified this implicit constitutional requirement.   Reading 1 U.S.C. §§ 101 and 106 together requires that all acts must occur at least through presentment to the President while Congress is in session.   That the enrolled bill must be "layed before the House" prior to signing by the Speaker and *then* "transmitted to the Senate" before the signing by the President of that body concludes that the respective Houses *must be in session during this transaction.*[16]

    An "adjournment terminates the legislative existence of Congress." <u>Pocket Veto Case</u>, 279 U.S. at 681.   "'Th[e] expression, a "house," or "each house," [when] employed ... with reference to the faculties and powers of the two chambers ... always means ... the constitutional quorum, assembled for the transaction of business, and capable of transacting business.'"   279 U.S. at 683, quoting I <u>Curtis' Constitutional History of the United States</u>, 486 n. 1.   Moreover, the term "'House'" means "the House in session," 279 U.S. at 682, and "'as organized and entitled to exert legislative power,' that

---

[16]    "[T]he Constitution has left it to Congress to determine how a bill is to be authenticated as having passed" and "the courts accept as passed all bills authenticated in the manner provided by Congress." <u>United States v. Munoz-Flores</u>, 495 U.S. 385, 391 n. 4 (1990) (citing <u>Field & Co. v. Clark</u>, 143 U.S. 649 (1892), in which case the Court established the so-called "enrolled bill rule" – a rule not applicable in this case, but a <u>ruling</u> that supports Petitioners' claims.)

is, the legislative bodies 'organized conformably to law for the purpose of enacting legislation.'" Id. (quoting Missouri Pacific Railway Co. v. Kansas, 248 U.S. 276, 281 (1919)). See also House Doc. No. 355, supra, Hinds' Precedents, § 2939, p. 87 ("'The House is not a House without a quorum'") (App. 87).

No "attestation" or "declaration **by the two houses** ... to the President," Field & Co., 143 U.S. at 672, that H.R. 3190 had "passed" Congress during the adjournment was possible because no such "houses" constitutionally existed. See also United States National Bank of Oregon v. Independent Insurance Agents of America, 508 U.S. 439, 455 n. 7 (1993) (noting that the rule established in Field & Co., 143 U.S. at 672, made statutory by 1 U.S.C. § 106 turned upon "the 'enrolled bill,' signed in open session by the Speaker of the House of Representatives and the President of the Senate"). Longstanding precedence of the House affirms this. House Doc. No. 355, supra, Hinds' Precedents, Vol. IV, § 2951, pp. 90-91 (upon "disclos[ure] ... that there is not a quorum ..., [t]he House thereby becomes **constitutionally disqualified** to do further business") (excepting from disqualification the exceptions stated in Art. I, § 5, Cl. 1) (emphasis added) (App. 88-89); id., § 3458, p. 322 ("The Speaker may not sign an enrolled bill in the absence of a quorum.") (App. 93); id. at § 3486, pp. 332-333

(recognizing enrollment and presentment to the President to be legislative business required to be completed before adjournment) (App. 95-96); id. at § 3487, p. 333 n. 3 (presentment to the President is legislative "business" which must be completed before adjournment) (App. 96); id. at § 4788, p. 1026 ("The presentation of enrolled bills" to the President of the United States is a "transact[ion]" of "business" of the "House.") (App. 100).

Once a bill has passed the House of Representatives it must be printed as an "engrossed bill" which then "shall be signed by the Clerk of the House … sent to the other House, and in that form shall be dealt with by that House and its officers, and, if passed, returned signed by said Clerk." 1 U.S.C. § 106. In the immediate case H.R. 3190 was passed by the House of Representatives on May 12, 1947, engrossed and sent to the Senate and there referred to the Senate's Committee on the Judiciary. See 93 Cong. Rec. 5048-5049, 5121; Senate Journal, May 13, 1947, p. 252. However, it was not dealt with nor passed "in that form."

Instead, amendments were proposed which were "agreed to en bloc," read into the record and "ordered to be engrossed," 94 Cong. Rec. 8721-8722. Then, "the [amended] bill was read the third time and passed." 94 Cong. Rec. 8722; Senate Journal, June 18, 1948, p. 506. The House then

concurred in the amendments en bloc.  94 Cong. Rec. 8864-8865; House

Journal, June 18, 1948, p. 704.[17]

"The House in which a bill originates enrolls it," House Doc. No. 769,

supra, Stages of a Bill, No. 15, p. [483] (App. 79), and, in the case of House

bills, the "chairman of the Committee on House Administration ... affixes to

the bills examined a certificate that the bill has been found truly enrolled,"

Id., No. 16, p. [483], after which it is "laid before the House ... signed by the

Speaker [then] transmitted to the Senate and signed by the President of that

body." Id., No. 17, p. [484].  Unequivocally, "[t]he Speaker may not sign an

enrolled bill in the absence of a quorum." House Doc. No. 355, supra,

Hinds' Precedents, § 3458, p. 322. Cf., id., § 2939, p. 87 ("The House is not

a House without a quorum.").

The constitutional "quorum" issue is precluded from the Field &

Co.'s "enrolled bill rule" by its terms – i.e., "[t]he signing ... in open

session, of an enrolled bill," 143 U.S. at 672 (emphasis added), which in any

case only applies in "the absence of [a] constitutional requirement binding

Congress." United States v. Munoz-Flores, supra, 495 U.S. at 391 n. 4

Moreover, just as "§ 7 gives effect to all of its Clauses in determining what

procedures the Legislative and Executive branches must follow to enact a

---

[17]        This contravenes the procedures of the House of Representatives for the 80th Congress.  "When a
bill with Senate amendments comes before the House, the House takes up each amendment by itself ...."
House Doc. No. 769, Stages of a Bill in the House, § 983, No. 13, p. [483].

law," id., 495 U.S. 386 (emphasis by Court), so too does Article I, § 5, Cl. 1 "provid[e] that no law could take effect without the concurrence of the prescribed majority of the Members of both Houses," INS v. Chadha, 462 U.S. at 949-950, as to **all** legislative "Business." *Cf.* United States v. Ballin, 144 U.S. 1, 3-5 (1892) (to determine whether constitutionally mandated quorum was present for legislative action the Court "assume[s]" the Journals of the Houses are to be considered to decide the issue).

The bill signed by the Officers of the Houses presented to and signed by the President of the United States was the Senate's amended bill, which never passed the House. H.Con.Res. 219 only "authorized [the] sign[ing] [of] enrolled bills ... duly passed by the two Houses and found truly enrolled," H.Con.Res. 219, supra, 62 Stat. 1436, voiding the signatures on the amended bill.[18]

**Having not been enrolled, certified as truly enrolled, or signed by the Speaker of the House with a quorum present, the bill was rendered constitutionally void.** House Doc. No. 769, supra, Constitution of the

---

[18]      On July 26, 1948, "Mr. LeCompte, from the Committee on House Administration, reported that that committee had examined and found" that H.R. 3190 had been "truly enrolled." 94 Cong. Rec. 9363. The version of H.R. 3190 certified as "truly enrolled" by Mr. LeCompte, is the House version passed on May 12, 1947, with the text of the original § 3231 – the text of which was never passed by the Senate – to which his certificate of enrollment is attached.  The statutory mandate after final passage and printing to "call[]" the bill in such final form "the enrolled bill," 1 U.S.C. § 106, Act of July 30, 1947, Ch. 388, Ch. 2, 61 Stat. 634, is determined by the certificate "affixe[d] to the bill," House Doc. No. 769, Stages of a Bill, supra, No. 16, all of which is required *before* the "sign[ing] by the presiding officers of both Houses and sen[ding] to the President of the United States." 1 U.S.C. § 106.

United States, § 55, p. [19] ("[w]hen action requiring a quorum was taken in the ascertained absence of a quorum ... the action was null and void") (App. 74); House Doc. No. 355, supra, Hinds' Precedents, §§ 3497 & 3498, pp. 344-345 (such a bill is "not in force" and is "not a valid statute") (App. 97-98). Cf., id., Hinds' Precedents, § 2962, p. 94 (to vacate legislative act "the absence of a quorum should appear from the Journal") (App. 90).

Art. I, § 7, mandates that a bill that has passed both Houses "'shall before it becomes a Law, be presented to the President of the United States ...,'" Art. I, § 7, Cl. 2; INS v. Chadha, 462 U.S. at 945, which "can **only** contemplate a presentment by the Congress in some manner, [because] ... [a]t that point the bill is necessarily in the hands of the Congress." United States v. Kapsalis, 214 F.2d 677, 680 (7th Cir. 1954), cert. denied, 349 U.S. 906 (1955) (emphasis added). Thus, presentment is clearly part of the legislative procedure required as essential to enactment of a bill as law. INS v. Chadha, 462 U.S. at 945, 947, 951; La Abra Silver Mining Co. v. United States, 175 U.S. 423, 454 (1899) ("*After a bill has been presented* to the President, *no further action is required by Congress* in respect of that bill, unless it be disapproved by him. ...") (emphasis added). See House Doc. No. 355, supra, Hinds' Precedents, Vol. IV, § 4788, p. 1026 (recognizing that "the presentation of enrolled bills" to the President is a "transact[ion]"

of "business" of "the House"); id., § 3486, p. 332 (recognizing presentment required prior to adjournment); id., § 3487, p. 333 note 3 (when bill is enrolled or signed by presiding officers "too late to be presented to the President before adjournment" signing and presentment must continue at next session as a "resumption of [legislative] business").   Clearly presentment is part of the constitutionally mandated "Business," Art. I, § 5, Cl. 1, to be "exercised in accord with [the] single, finely wrought and exhaustively considered, procedure" "prescri[bed] … in Art. I, §§ 1, 7." INS v. Chadha, 462 U.S. at 951.

The "draftsmen" of the Constitution "took special pains to assure these [legislative] requirements could not be circumvented.  During the final debates on Art. I, § 7, Cl. 2, James Madison expressed concern that it might easily be evaded by the simple expedient of calling a proposal a 'resolution' or 'vote' rather than a 'bill.'  As a consequence, Art. I, § 7, Cl. 3, … was added." INS v. Chadha, 462 U.S. at 947 (citing 2 Farrand, supra, 301-302, 304-305).

Whether actions authorized under a resolution are "an exercise of legislative powers depends not on their form but upon 'whether they contain matter which is properly to be regarded as legislative in its character and effect.'" INS v. Chadha, 462 U.S. at 952 (quoting S. Rep. No. 1335, 54th

Cong., 2d Sess., 8 (1897)).  "If the power is legislative, Congress must exercise it in conformity with the bicameralism and presentment requirements of Art. I, § 7."  Metropolitan, 501 U.S. at 276.  See also Bowsher v. Synar, 478 U.S. at 756 (Stevens, J., concurring) ("It is settled, however, that if a resolution is intended to make policy that will bind the Nation, and thus is 'legislative in its character and effect,' S. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1897) – then the full Article I requirements must be observed.  For 'the nature or substance of the resolution, and not its form, controls the question of its disposition.'  Ibid.").

"'Congress,'" of course, "'cannot grant to an officer under its control what it does not possess.'"  Metropolitan, 501 U.S. at 275 (quoting Bowsher v. Synar, 478 U.S. at 726).  Congress does not possess the "'capab[ility] of transacting business'" and is not "'entitled to exert legislative power,'" when its "legislative existence" has been "terminate[d]" by an "adjournment."  Pocket Veto Case, 279 U.S. at 681-683 (citations omitted).  "The limitation of the power of less than a quorum is absolute," House Doc. No. 355, supra, Hinds' Precedents, Vol. V, Ch. CXL, § 6686, p. 851 (App. 102), and includes the signing of an enrolled bill by the Speaker of the House, id., Vol. IV, Ch. XCI, § 3458, p. 322, and presentment to the President of the United States.  id., Ch. XCII, §§ 3486, 3487 & 3497, pp. 332, 333 note 3, 344 &

345 (App. 95-98). Wright v. United States, 302 U.S. 583, 600 (1938) (Stone, J., concurring) ("The houses of Congress, being collective bodies, transacting their routine business by majority action are capable of acting only when in session and by formal action recorded in their respective journals, or by recognition, through such action, of an established practice.") Thus, "Congress," as defined by the Constitution and Supreme Court, never "presented" *any* version of H.R. 3190 to the President of the United States.

Whether the action taken under H.Con.Res. 219 was an "exercise of legislative power" depends upon whether it was essentially "legislative in purpose and effect." INS v. Chadha, 462 U.S. at 952. "In short, when Congress '[takes] action that ha[s] the purpose and effect of altering the legal rights, duties, and relations of persons ... outside the Legislative Branch,' it must take that action by the procedures authorized in the Constitution." Metropolitan, 501 U.S. at 276, quoting INS v. Chadha, 462 U.S. at 952-95 "If Congress chooses to use a [] resolution ... as a means of expediting action, it may do so, if it acts by both houses and presents the resolution to the President," Consumer Energy Council of America v. F.E.R.C., 673 F.2d 425, 476 (D.C. Cir. 1982), aff'd mem. sub nom., Process Gas Consumers Group v. Consumer Energy Council of America, 463 U.S. 1216 (1983).

The inescapable conclusion as to the "purpose and effect" of H.Con.Res. 219 was to enact *a bill* the text of which at the time of adjournment on June 20, 1948, had not been passed by both Houses, enrolled, certified as "truly enrolled," or signed by the officers of the Houses or presented to the President of the United States with quorums sitting. In other words, H.Con.Res. 219 unconstitutionally permitted post-adjournment legislative business to proceed without Congress and upon an unpassed bill. Congress did not follow the procedures mandated by Art. I, § 7, Cl. 2 and attempted to supersede the quorum requirements of Art. I, § 5, Cl. 1 *via* a concurrent resolution to carry forth legislative business with no legislature. The 80th Congress surreptitiously provided a bill, the text of which had never passed either House "'mask[ed] under ... [the] indirect measure,'" Metropolitan, supra, 501 U.S. at 277 (quoting Madison, The Federalist No. 48, p. 334 (J. Cooke 1961 ed.)), of a resolution purporting to authorize continuing legislative action during adjournment with no quorum and no Congress of an extra-congressional bill. Public Law 80-772 did not "become a Law" as required by the constitutional procedures mandated under Article I, § 5, Cl. 1, and Article I, § 7, Cls. 2 and 3, and is unconstitutional and *void ab initio*.

"[W]hen action requiring a quorum was taken in the ascertained absence of a quorum ... the action [is] null and void," House Doc. No. 769, supra, Constitution of the United States, § 55, p. [19] (citing Hinds' Precedents, Vol. IV, § 2964), and "a bill ... not actually passed [although] signed by the President [is to be] disregarded [requiring] a new bill [to be] passed." House Doc. No. 769, § 103, p. [34] (citing Hinds' Precedents, Vol. IV, § 3498) (App. 75).

**H.** **Any District Court Order Committing Petitioner To Executive Custody Pursuant To § 3231 (Of The Unconstitutional *Public Law 80-772*) Is Issued *Ultra Vires*, Is Unconstitutional And *Coram Non Judice*, And Imprisonments And/or Confinement Is Unlawful**

"The challenge in [any current criminal case] goes to the subject-matter jurisdiction of the court and hence the power to issue the order[s]," United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 77 (1988), committing Petitioner to imprisonment in Executive custody. Thus, the "question is, whether ...the action is judicial or extra-judicial, with or without the authority of law to render [the] judgment," Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) 657, 718 (1838), and to issue the commitment orders.

Subject-matter jurisdiction means "'the courts' statutory or constitutional *power* to adjudicate the case,'" United States v. Cotton, 535

U.S. 625, 630 (2002), quoting Steel Co. v. Citizens For A Better Environment, 523 U.S. 83, 89 (1998); Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) at 718 ("Jurisdiction is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them."); Reynolds v. Stockton, 140 U.S. 254, 268 (1891) ("Jurisdiction may be defined to be the right to adjudicate concerning the subject matter in a given case."). "Subject-matter limitations on federal jurisdiction serve institutional interests by keeping the federal courts within the bounds the Constitution and Congress have prescribed." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).[19]

"'Without jurisdiction the court cannot proceed at all in any cause … and when it ceases to exist, the only function of the court is that of announcing the fact and dismissing the cause.'" Steel Co. v. Citizens, 523 U.S. at 94, quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869); Willy v. Coastal Corp., 503 U.S. 131, 137 (1992) ("lack of subject-matter jurisdiction … precludes further adjudication"). This Court has asserted

---

[19]      "Federal courts are courts of limited jurisdiction … Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxite de Guinea, 456 U.S. 694, 701 (1982); Kline v. Burke Constr. Co., 260 U.S. 226, 234 (1922) (all lower federal courts "derive[] [their] jurisdiction wholly from the authority of Congress"); United States v. Hudson & Goodwin, 11 U.S. 32, 33 (1812) (federal courts "possess no jurisdiction but what is given to them by the power that creates them."). United States v. Hall, 98 U.S. 343, 345 (1879) (federal "courts possess no jurisdiction over crimes and offenses … except what is given to them by the power that created them"); Hudson & Goodwin, 11 U.S. at 33-34. See also, e.g., United States v. Wiltberger, 18 U.S. 76, 95-105 (1820) ("the power of punishment is vested in the legislative, not the judicial department," criminal statutes are to be construed strictly, "probability" cannot serve to "enlarge a statute" and an offense not clearly within the terms of a statute precludes federal court jurisdiction).

over and over that "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s]' from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" <u>Steel Co.</u>, 523 U.S. at 94-95, quoting <u>Mansfield, C. & L.M.R. Co. v. Swan</u>, 111 U.S. 379, 382 (1884); <u>See also</u> <u>Insurance Corp. of Ireland, Ltd.</u>, 456 U.S. at 702.

Because subject-matter jurisdiction "involves a court's power to hear a case, [and thus] can never be forfeited or waived ... **correction [is mandatory]** whether the error was raised in district court" or not. <u>United States v. Cotton</u>, 535 U.S. at 630 (citation omitted); <u>Steel Co.</u>, 523 U.S. at 94-95 (citing cases). When a district court did "not have subject-matter jurisdiction over the underlying action ... [its] process[es] [are] void and an order of [punishment] based [thereupon] ... must be reversed." <u>United States Catholic Conf.</u>, 487 U.S. at 77; <u>Willy v. Coastal Corp.</u>, 503 U.S. at 139 ("[T]he [punishment] order itself should fall with a showing that the court was without authority to enter the decree."); <u>Ex parte Fisk</u>, 113 U.S. 713, 718 (1885) ("When ... a court of the United States undertakes, by its process ... to punish a man ... [respecting] an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing ... is equally void.")

*Habeas corpus* review "is limited to the examination of the jurisdiction of the court whose judgment of conviction is challenged." INS v. St. Cyr, 533 U.S. 289, 311-314 (2001); Bowen v. Johnston, 306 U.S. 19, 23 (1939). **A "court 'has jurisdiction to render a particular judgment *only when the offense charged is within the class of offenses placed by the law under its jurisdiction.'"** 306 U.S. at 24 (emphasis added). If it is found that the court lacked jurisdiction to try petitioner, the judgment is *void* and the prisoner must be discharged. Ex parte Yarbrough, 110 U.S. 651, 654 (1884).

Petitioner has established that the text of H.R. 3190 signed by respective House officers and the President of the United States: (1) failed to pass the House of Representatives because no quorum was present when the House voted 38 to 6 to pass the bill on May 12, 1947, and (2) that the legislative process continued after Congress adjourned by single officers of each House acting pursuant to H.Con.Res. 219 **without quorums** in either House, all of which violated Article I, Section 5, Clause 1; Article I, Section 7, Clause 2, and/or Article I, Section 7, Clause 3 – and any of which rendered Public Law 80-772 unconstitutional and ***void ab initio***. Marbury v. Madison, 5 U.S. 137, 180 (1803) ("a law repugnant to the constitution is void; and … courts, as well as other departments, are bound by that

instrument"). Therefore, because "the offense[s] charged ... [were] placed by the law under [the] jurisdiction," of the respective district courts below pursuant to 18 U.S.C. § 3231 of Public Law 80-772, which is unconstitutional, and "void, the court was without jurisdiction and the prisoner[s] must be discharged." Yarbrough, 110 U.S. at 654. Since Public Law 80-772 has never been enacted as required by Article I, Section 5, Clause 1, and Article I, Section 7, Clauses 2 and 3 thereof, rendering *void ab initio* the jurisdiction by which the respective district courts acted to convict, enter judgment, and order Petitioner imprisoned in Executive custody, the district courts' actions were "'*ultra vires*,'" Ruhrgas AG, 526 U.S. at 583 (quoting Steel Co., 523 U.S. at 101-102), and "*coram non judice.*" Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) at 720

Any conviction and judgment thereupon "being without jurisdiction, is void, and the order punishing ... is equally void." Ex parte Fisk, 113 U.S. at 718; United States Cath. Conf., 487 U.S. at 77; Willy v. Coastal Corp., 503 U.S. at 139. This is precisely the office and function of *habeas corpus* – *i.e.*, to "examin[e] ... the jurisdiction of the court whose judgment of conviction is challenged," Bowen v. Johnston, 306 U.S. at 23, and where, as here, a court is clearly "without jurisdiction ... the prisoner ... must be

discharged." Ex parte Yarbrough, 110 U.S. at 654. See also Ex parte Lange, 85 U.S. (18 Wall.) 163, 166 (1874)

## CONCLUSION

Petitioner requests that the court adopt the facts and law of Petitioner as the facts and law of the case, and issue an order of dismissal of the indictment with prejudice, and such other sanctions as the court deems just and proper. In summary, no quorum was present according to Congress' own records for the House vote on May 12, 1947, and no quorum was present on June 20, 1948 for the signature of both Houses.  For these reasons, the court must declare according to law that Public Law 80-772 is void ab initio.

This Motion is further supported by the information included within the "Request for Extraordinary Writ of Habeas Corpus as Authorized by the Constitution for the United States of America" submitted as filed by Harry Edwin Miles in the United States Supreme Court # 10-10047. Also submitted herewith and deemed a part hereof.

**Unsworn declaration under penalty of perjury 28 USC 1746(1), an affidavit of truth**

Unsworn declaration under penalty of perjury 28 USC 1746(1), an affidavit of truth

Respectfully submitted,

By *[signature]*

**Richard Kellogg Armstrong**
**20413-298**
**9595 West Quincy Avenue**
**Littleton, CO 80123**

# CERTIFICATE OF SERVICE

On this the _Sixth_ day of _June_, a true and correct copy of

the foregoing was served on the U.S. Attorney as opposing counsel in this

case as is required by law and includes a copy of the Habeas Corpus Brief

submitted by Harry Edwin Miles to the United States Supreme Court, #10-

10047, filed April 18, 2011.

*[signature]*

Richard Kellogg Armstrong

No. _10-10047_

In The

UNITED STATES SUPREME COURT

*April 18, 2011*

In re: Harry Edwin Miles, pro se

Petitioner

REQUEST FOR

EXTRAORDINARY WRIT OF HABEAS CORPUS

AS AUTHORIZED BY THE CONSTITUTION FOR

THE UNITED STATES OF AMERICA

EXTRAORDINARY WRIT OF HABEAS CORPUS

---

Harry Edwin Miles
Reg. No. 17768-112
Pro Se Petitioner
Federal Correction Complex
Victorville Medium 1
Post Office Box 5300
Adelanto, CA 92301-5300

## QUESTIONS PRESENTED

1. Whether this Court must exercise its original jurisdiction over this matter, in the unique and exceptional circumstances presented, and in light of the significance of the Constitutional issue presented.

2.                           t of June 25, 1948, Ch. 645, unconstitutional and void in 90 never passed both Houses as 2 of the Constitution.

3. Whether the District Court Executive Custody pursuant to 80-772, were issued ultra coram non judice, and his i

TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| QUESTIONS PRESENTED |  | i |
| TABLE OF CONTENTS |  | ii |
| TABLE OF AUTHORITIES |  | iv |
| I | PRAYER FOR RELIEF | 1 |
| II. | JURISDICTION OF THIS COURT TO ISSUE ORIGINAL WRIT | 2 |
| A. | Pursuant To Supreme Court Rule 20.4(a); Statement Of "Reasons For Not Making Application To The District Court of Commitment" | 4 |
| B. | Continued Incarceration Violates The Supreme Court Standard Under Glover | 6 |
| III. | CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED | 7 |
| IV. | STATEMENT OF FACTS | 8 |
| C. | History Of H.R. 3190 In The First Session Of The 80th Congress ................................... | 9 |
| D | H.R. 3190 In The Second Session Of The 80th Congress ......................................... | 10 |
| E | Congress Agreed By Resoulution To Continue Legislative Business By A Single Officer Of Each House During Adjournment ...................... | 12 |
| F. | Post-Adjournment Signing Of H.R. 3190 By Signing Officers Of The House And Presentment To, And Approval Thereof By President Truman To H.Con.Res. 219 | 13 |
| G. | The Signatories Of H.R. 3190 Knew The Enacting Clause Was False When Signed | 15 |
| V. | THE LEGAL PRINCIPLES | 16 |
| H. | Public Law 80-772 Is Unconstitutional And Void, H.R. 3190 Never Passed Both Houses As Required By Article I, §7, Cl. 2, Of The Constitution | 16 |
| I. | Permitting Post-Adjournment Legislative Business Pursuant to H.Con.Res. 219 Violated The Quorum, Bicameral And Presentment Requirements Of Article I, Of The Constitution .............................. | 18 |

Page

VI      THE DISTRICT COURT ORDER COMMITTING MILES
        TO EXECUTIVE CUSTODY PURSUANT TO $3231
        (OF THE UNCONSTITUTIONAL PUBLIC LAW 80-772
        IS ISSUED ULTRA VIRES, IS UNCONSTITUTIONAL
        AND CORAM NON JUDICE, AND IMPRISONMENT
        AND/OR CONFINEMENT IS UNLAWFUL ......................   30

J.      The Court Must Notice The Error "At Any
        Time" F.R.Civ.P. 12(b)(2) ...........................   34

VII.    CONCLUSION ..........................................   35

VIII.   RELIEF REQUESTED ....................................   37

IX.     VERIFICATION ........................................   38

X.      COMPLIANCE WITH WORD COUNT ..........................   39

XI.     CERTIFICATE / PROOF OF SERVICE ......................   40

ATTACHMENTS: APPENDIX OF EXHIBITS

iii

**TABLE OF AUTHORITIES**

**Cases**                                                                                    Page(s)

Ex Parte Abernathy, 320 U.S. 219 (1943)                                                          2

Alaska v. American Can Co., 358 U.S. 224 (1959)                                                  20

Ex Parte Bollman, 8 U.S. (4 Cranch) 75 (1874)                                                    4

Bowen v. Johnston, 306 U.S. 19 (1939)                                                        31, 34

Bowsher v. Synar, 478 U.S. 714 (1986)                                                       18, 27

Castro v. U.S., 540 U.S. 375 (2003)                                                         passim

Chapman v. California, 386 U.S. 18 (1967)                                                        36

Clinton v. City of New York, 524 U.S 417 (1998)                                             passim

Consumer Energy Council of America v. F.E.R.C.,
    673 F.2d 425 (D.C. Cir. 1982)                                                                28

Edwards v. Balisok, 520 U.S. 641 (1997)                                                          36

Fay v. Noia, 372 U.S. 391 (1963) ........................                                   passim

Felkner v. Turpin, 518 U.S. 651 (1996) ..................                                        3

Ex Parte Fisk, 113 U.S. 713 (1885)                                                          31, 34

Glover v. U.S., 531 U.S. 198 (2001)                                                          6, 35

Ex Parte Hudgings, 249 U.S. 378 (1919)                                                           2

Hughes v. Thompson, 415 U.S. 1301 (1974)                                                        34

INS v. Chadha, 462 U.S. 919 (1983)                                                          passim

INS v. St. Cyr, 533 U.S. 289 (2001) ....................                                     3, 31

Insurance Corporation of Ireland, Ltd. v. Campagnie
    des Bauxite de Guinea, 456 U.S. 702 (1982) .........                                    31, 33

Johnson v. U.S., 520 U.S 461 (1997) ....................                                         36

Kennedy v. Sampson, 511 F.2d 430, (D.C. Cir. 1974)                                              10

Kline v. Burke Construction Co., 264 U.S. 226 (1922) .....                                       33

Ex Parte Lange, 85 U.S. (18 Wall.) 163 (1874)                                                   34

Landgraf v. USI Film Products, 511 U.S. 244 (1994) ......                                       17

Marbury v. Madison, 5 U.S. 137 (1803) ..................                                         32

iv

| Cases | Page(s) |
|---|---|
| Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379 (1884) . | 31 |
| Marshal Field & Co. v. Clark, 143 U.S. 649 (1892) ....... | passim |
| Ex Parte McCardle, 74 U.S. (7 Wall.) (1869) | 33 |
| Metropolitan Washington Airports Authority v. Citizens for Abatement of Aircraft Noise, Inc., 501 U.S. 252 (1991) ............................... | passim |
| Missouri Pacific Railway Co. v. Kansas, 248 U.S. 276 (1919) .............................. | 16, 21 |
| National Bank of Oregon v. Independent Insurance Agents of America, 508 U.S. 439 (1993) .................... | 22 |
| Neder v. U.S., 527 U.S. 1 (1999) ........................ | 36 |
| New York v. Eno, 155 U.S. 89 (1894) ..................... | 2 |
| Ex Parte Parks, 93 U.S. 18 (1876) ...................... | 34 |
| Pocket Veto Case, 279 U.S. 655 (1929) .................. | passim |
| Process Gas Consumer Group v. Consumer Energy Council of America, 436 U.S. 1216 (1983) ................... | 28 |
| Reynolds v. Stockton, 140 U.S 254 (1891) | 30 |
| Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) (1838) . | 30, 32 |
| Rose v. Clark, 478 U.S 570 (1986) ...................... | 36 |
| Ruhrgas v. Marathon Oil Co., 526 U.S. 574 (1999) | 30, 32 |
| Satterwhite v. Texas, 486 U.S. 249 (1988) | 36 |
| Silver Mining Co. v. U.S., 175 U.S. 423 (1899) | 26 |
| Steel Co. v. City for a Better Environment, 523 U.S. 83 (1998) | passim |
| Sullivan v. Louisiana, 508 U.S. 275 (1993) | 36 |
| Tumey v. Ohio, 273 U.S. 510 (1927) ..................... | 36 |
| United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S 72 (1988) .............. | passim |
| U.S. v. Ballin, 144 U.S. 1 (1892) ..................... | 24 |
| U.S. v. Cotton, 535 U.S. 625 (2002) ................... | passim |

| Cases | Page(s) |
|---|---|
| U.S. v. Hall, 98 U.S. 343 (1879) | 33 |
| U.S. v. Hudson & Goodwin, 11 U.S. 32 (1812) | 33 |
| U.S. v. Kapsalis, 214 F.2d 677 (7th Cir. 1994) | 25 |
| U.S. v. Munoz-Flores, 495 U.S. 385 ...................... | 21, 24 |
| U.S. ex rel. Norris v. Swan, _US_, 96 L.Ed. 1381 (1952) . | 2 |
| U.S. v. Olano, 507 U.S. 725 (1993) ..................... | 36 |
| U.S. v. Ropp, 347 F.Supp.2d 831 (C.D.Cal. 2004) | 34 |
| U.S. v. Sasscer, 558 F.Supp. 33 (D.MA. 1982) | 10 |
| U.S. v. Wiltberger, 18 U.S. 76 (1820) | 33 |
| Vasquez v. Hillary, 474 U.S. 254 (1986) | 36 |
| Ex Parte Virginia, 100 U.S. 339 (1880) .................. | 4 |
| Willy v. Coastal Corp., 503 U.S 139 (1992) | passim |
| Wright v. U.S., 302 U.S. 583 (1938) | 16, 28 |
| Ex Parte Yarbrough, 110 U.S. 651 (1884) | 32, 34 |
| Ex Parte Yerger, 75 U.S. (8 Wall.) 85 (1896) | 4 |
| Yellin v. U.S., 374 U.S. 109 (1963) | 20 |

**UNITED STATES CODES**

| | |
|---|---|
| 1 U.S.C. §101 | 19, 20 |
| 1 U.S.C. §106 | passim |
| 8 U.S.C. et seq. | passim |
| 18 U.S.C. et seq. | passim |
| 18 U.S.C. §3231 | passim |
| 21 U.S.C. et seq. | passim |
| 26 U.S.C. et seq. | passim |
| 28 U.S.C. et seq. | passim |
| 28 U.S.C. §454 | 35 |
| 28 U.S.C. §455 | 35 |

| Cases | Page(s) |
|---|---|
| 28 U.S.C. §1651(a) | 3 |
| 28 U.S.C. §1746 | passim |
| 28 U.S.C. §2241 | passim |
| 28 U.S.C. §2244(a) | 3 |
| 28 U.S.C. §2241(b) | 2 |
| 28 U.S.C. §2255 | passim |
| 44 U.S.C. §1501 | 15 |

### PUBLIC LAW

| | |
|---|---|
| Public Law 80-772 / H.R. 3190, Ch. 645, §1, June 25, 1948, 62 Stat., 683 et seq. | passim |
| Public Law 80-773, Ch. 646, §1, June 25, 1948, 62 Stat., 869 | 14 |

### FEDERAL RULES OF EVIDENCE

| | |
|---|---|
| Rule 201 ......................................... | 37 |

### UNITED STATES SUPREME COURT RULES

| | |
|---|---|
| Rule 20.1 .. ............ | 2 |
| Rule 20.4(a) | 4 |
| Rule 34(h) | 39 |

### FEDERAL RULES OF CIVIL PROCEDURE

| | |
|---|---|
| Rule 12(b)(2) | 34 |

### CONSTITUTION FOR THE UNITED STATES

| | |
|---|---|
| Article I, §1 | 7 |
| Article I, §5, Cl. 1 | passim |
| Article I, §7, Cl. 2 | passim |
| Article I, §7, Cl. 3 | passim |

### OTHER AUTHORITIES

| | |
|---|---|
| The Federalist No. 48 | 29 |
| Hines' Precedents of the House of Representatives ....... | passim |

| Cases | Page(s) |
|---|---|
| I Curtis' Constitutional History of the United States | 21 |

### CONGRESSIONAL RECORDS

| | |
|---|---|
| 93 Cong. Rec. 5048-5049 May 12, 1947 | 9, 23 |
| 93 Cong. Rec. 5121, May 13, 1947 | 9 |
| 94 Cong. Rec. 10439, 10522, July 26, 1947 | 10 |
| 94 Cong. Rec. Daily Digest D556-D557 | 9 |
| 94 Cong. Rec. 8075, June 14, 1948 | 10 |
| 94 Cong. Rec. 8721-8722, June 18, 1948 | 11 |
| 94 Cong. Rec. 8864-8865, June 18, 1948 | 11 |
| 94 Cong. Rec. 9348, June 20, 1948 | 12, 13 |
| 94 Cong. Rec. 9349 App. 57, July 26, 1948 | 13 |
| 94 Cong. Rec. 9353-9354, June 22, 1948 | 14, 24 |
| 94 Cong. Rec. 9363-9367, July 26, 1948 | 14, 18 |
| 94 Cong. Rec. 9365-9367, June 28, 1948 | 18 |

### HOUSE JOURNAL

| | |
|---|---|
| May 12, 1947, pp. 343-344 | 9 |
| June 18, 1948, p. 688 | 11 |
| June 18, 1948, p. 704 | 11 |
| June 19, 1948, p. 669 | 11 |
| June 19, 1948, p. 714 | 11 |
| June 19, 1948, pp. 771-772 | 12 |
| June 19, 1948, p. 775 | 12 |
| June 19, 1948, p. 776 | 13 |
| June 19, 1948, p. 777 | 14, 18 |
| June 25, 1948, p. 778 | 14 |
| July 26, 1948, pp. 792-793 | 12, 13 |
| July 27, 1948, p. 797 | 13 |

Cases

## SENATE JOURNAL

May 13, 1947, p. 252 ...................................... 9

June 14, 1948, p. 452 App. 34 ........................... 10

June 15, 1948, pp. 461-462 ............................. 11

June 18, 1948, p. 506 .................................. passim

June 18, 1948, p. 510 .................................... 11

June 18, 1948, p. 577 .................................... 12

June 18, 1948, p. 579, 583 ............................. 13

June 18, 1948, p. 593 .................................... 12

June 19, 1948, p. 578-579 ............................. 14, 18

July 27, 1948, p. 593 .................................... 13

## HOUSE DOC.

House Doc. 355 .......................................

House Doc. 769 .......................................

## SENATE REPORT

2nd Session (1897) .................

No. 1620 ....................................

## HOUSE CONCURRENT RESOLUTIONS

218, June 20, 1948 .......................

219, June 20, 1948 .......................

I.                          **PRAYER FOR RELIEF**

COMES Now, Harry Edwin Miles, Petitioner, pro se, (hereinafter "Miles"), a person detained by the Federal Bureau of Prisons, (FBOP). Miles files this writ under common law and 28 U.S.C. §2241.

This is an extraordinary writ, requiring immediate attention.

Miles requests this Court to grant his Extraordinary Writ of Habeas Corpus, and to declare Miles actually innocent of the charges against him, and to declare unconstitutional and void ab initio:

> (1) House Resolution ("**H.R.**") 3190. Public Law ("**P.L.**") 80-772 which purported to enact Title 18, United States Code, ("**U.S.C.**"), Act of June 25, 1948, Ch. 645, 62 Stat. 683 et seq., and;
>
> (2) More specifically, §3231 thereof 62 Stat. 826, which purported to confer upon "the district courts of the United States ... original jurisdiction ... of all offenses against the laws of the United States."

This Legislative Act violated the **Quorum**, Bicameral, and/or Presentment clauses mandated by Articles I, §5, Cl. 1, and I, §7, Cl. 2 of the Constitution for the United States.

Thus the Federal District Court which rendered judgement and ordered the commitment of Miles under 18 U.S.C. §3231, lacked jurisdiction and, therefore his judgement and commitment order is void ab initio.

To imprison and detain anyone under **void** judgement and commitment orders is unconstitutional and unlawful. As such, Miles must be discharged from illegal sentence immediately.

//

//

1

## II.    JURISDICTION OF THIS COURT TO ISSUE ORIGINAL WRIT

This Court has discretion to hear this petition in the first instance. See 28 U.S.C. §2241(b). See e.g., Ex Parte Abernathv 320 U.S. 219 (1943)(per curiam). Although such discretion is "sparingly" exercised, (Supreme Court Rule 20.1), this case presents factors which compel exercise of this discretion.

Miles presents undisputed facts and law establishing that Title 18 of the United States Code, is not only unconstitutional, but is only a political bill. A bill not authorized by the Constitution. Political bills do not carry legislative authority and do not allow the court to hold Miles illegally.

This Court has jurisdiction because of the significance of the Constitutional impact of the issue itself, and the interests involved; every federal prisoner incarcerated since 1948, and the preservation of the integrity of the Judicial Branch's oversight of both Houses of Congress and their actions.

See New York v. Eno, 155 U.S. 89, 93-97 (1894)(explaining "exceptions" as "case of urgency, involving the authority and operation of the government"); Ex Parte Hudgings, 249 U.S. 378, 379-380 (1919)("exception standard to general rule prohibiting by-passing 'other available sources of Judicial power': and to determine if the case is 'of exceptional character' depends 'upon an analysis of the merits'"); U.S. v. ex rel. Norris v.    e, _US_, 96 L.Ed. 1381, 1382 (1952)(Justice Douglas in chambers).

"[F]ederal court [habeas] jurisdiction is conferred by the allegation of an unconstitutional restraint" for which "[t]he jurisdictional prerequisite is ... detention simpliciter." Fay v. Noia, 372 U.S. 391, 426, 430 (1963).

2

"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless in cases of Rebellion or Invasion the Public Safety may require it." Article I, §9, Cl. 2, Constitution for the United States, which "necessarily impl[ies] judicial action." Fay v. Noia, 372 at 406 quoting Ex Parte Yerger, 75 U.S. (8 Wall.) 85, 98-99 (1896). When this clause was written into the Federal Constitution it was settled that the writ lay to test any restraint contrary to fundamental law ... embodied in the written Constitution." 372 U.S. 405, 426 ("at the time ... habeas was available to remedy any kind of governmental restraint contrary to fundamental law").

"[A]t the absolute minimum, the Suspension Clause protects the writ as it existed in 1789." INS v. St. Cyr 533 U.S. 289, 301 (2001), quoting Felkner v. Turpin, 518 U.S. 651, 663-664 (1996), which "encompassed detentions based on errors of law, including the erroneous application or interpretation of statutes" and was available to "answer" "pure questions of law" like those raised herein, 533 U.S. 303, 305.

This Court has explicit jurisdiction to entertain and grant writs of habeas corpus to address the unconstitutional custody and restraint. 28 U.S.C. §2241(a) ("Writs of habeas corpus may be granted by the Supreme Court ..."). See also 28 U.S.C. §1651(a) ("The Supreme Court ... may issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law.").

In construing §14 of the 1789 Judiciary Act, now 28 U.S.C. §1651(a), this Court recognized that an original writ of habeas corpus issues from the United States Supreme Court as part of its

3

appellate jurisdiction. Ex Parte Bollman, 8 U.S. (4 Cranch.) 75, 94-95 (1807); Ex Parte Yerger, 75 U.S. 98-99; Ex Parte Virginia, 100 U.S. 339, 341-343 (1888).

Thus this petition is properly before this Court to address the illegal restraints raised herein.

A.        PURSUANT TO SUPREME COURT RULE 20.4(a);
          STATEMENT OF "REASONS FOR NOT MAKING APPLICATION
          TO THE DISTRICT COURT OF COMMITMENT"

Miles has filed with the District and Appellate Courts of the 9th Circuit but to no avail.

Miles initially filed a §2241 habeas corpus petition with the District Court, May 13, 2010, Case No. 10-CV-03587-CAS-(PJW), (see Exhibit A). That petition was denied February 1, 2011 by Judge Christina A. Snyder, see (Exhibit B). In violation of Supreme Court precedent that subject-matter jurisdiction may be challenged at any time, see U.S. v. Cotton 535 U.S. 625, 630, 112 S.Ct. 1781, 152 L.Ed.2d 860 (20020, and "can never be forfeited or waived". The governments agent "intentionally misconstrued and recharacterized" Miles' 28 U.S.C. §2241 as a second and successive 28 U.S.C. §2255, in violation of Castro v. U.S., 540 U.S. 375 (2003).

Miles filed a Motion to Reconsider March 7, 2011, which the District Court refused to file, (see Exhibit C).

Miles filed a Writ of Mandamus on September 29, 2010, Case No. 10-72930, with the 9th Circuit, citing the District Courts failure to issue timely rulings on Miles' §2241. That Petition was denied December 10, 2010, see (Exhibit D).

To date the lower Courts have ignored Supreme Court precedent, and Congressional Statute, by repeatedly misconstruing

4

and recharacterizing Miles' motions as a second and successive 28 U.S.C. §2255 motion in order to procedurally block, sideline, or deny without findings of fact and law, and in order to bar Miles from seeking relief. Violating Miles rights under the Fifth Amendment, Due Process, in violation of U.S. v. Castro, 540 U.S. 375 (2003) (court must treat petition as presented), and leaving Miles imprisoned without relief.

Any recharacterization by the courts does not "create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis." See Castro, supra.

Even though the Supreme Court requires discovery on jurisdictional questions, and jurisdictional questions have no time limit or procedural default, and "can never be forfeited or waived." See U.S v. Cotton, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2003), the lower courts have refused to follow the law.

Giving Miles a prima facie case of bias for ignoring the courts own oath of office. Thus leaving Miles with no other recourse but to appeal to this Court since the lower courts have shown bias by ignoring Supreme Court precedent, Congressional statute, and their own Local Rules, to address its jurisdiction and therefore waived their right to be a court of original jurisdiction.

This Court has jurisdiction to hear this matter because of the certainty in the error of the illegal incarceration of ALL federal inmates has far reaching Constitutional implications, in that EVERY criminal prosecution that has been adjudicated since 1948 is invalid, and void in its inception, not just voidable but

5

void ab initio. A question of law that only this Court can answer.

All of which leaves Miles no choice but to appeal to this Court for relief.

B.               **CONTINUED INCARCERATION**
                **VIOLATES THE SUPREME COURT**
                **STANDARD UNDER GLOVER**

In Glover v. U.S., 531 U.S. 198 (2001). The Supreme Court held that even a minimal amount of time in prison without legal authority invokes constitutional violations.

For the Courts to continue with Miles' illegal imprisonment invokes Glover violations.

This means, that the statute must be construed to afford a "swift and imperative remedy in all cases of illegal confinement". See Fay v. Noia, 372 U.S. 391, 400, 83 S.Ct. 822, 828, 9 L.Ed.2d 837. And "... if the imprisonment cannot be shown to conform with the fundamental requirements of law the [petitioner] is entitled to his immediate release." id., 402, 83 S.Ct. p. 829. By these standards all forms of illegal restraint are and must be judged in any proceedings in the nature of habeas corpus.

//

//

//

//

//

//

//

//

6

III.    CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

Article I, §1, commands and declares that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."

Article I, §5, Cl. 1, commands, in relevant part, that "a Majority of each [House of Congress] shall constitute a Quorum to do Business," excepting therefrom permission to "adjourn from day to day" and "to compel Attendance of its Members, in such Manner, and under such Penalties as each House may provide."

Article I, §7, Cl. 2, commands, in relevant part, that "[e]very Bill which shall have passed both Houses, shall, before it becomes a Law, be presented to the President of the United States."

Article I, §7, Cl. 3, commands, in relevant part, that "[e]very ... Resolution ... to which the Concurrence of the Senate and House of Representatives may be necessary ... shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the case of a Bill."

Title 1, United States Code, Section 106, Act of July 30, 1947, Chapter 388, Title I, Ch. 2, §106, 61 Stat. 634. Pub. L. 80-772, provides, in relevant part, that [w]hen [a] bill ... shall have passed both Houses, it shall be printed and shall then be called the enrolled bill ... and shall be signed by the presiding officers of both Houses and sent to the President."

IV.                          STATEMENT OF FACTS

Miles has been tried, convicted, sentenced, and committed into Executive custody by order of a United States District Court acting pursuant to the grant of original jurisdiction purportedly created by Public Law 80-772, Title 18, United States Code, Section 3231. By virtue of the commitment order, Miles has been committed into the custody of the Attorney General and into the custody of the FBOP. See 18 U.S.C. §4082(a) (repealed) and §3621(a) (enacted Oct. 21, 1984, and effective Nov. 1, 1987).

The text of the bill, H.R. 3190 as amended, which became Public Law 80-772 (enacting Title 18, United States Code, and especially Section 3231), was passed only by the Senate and never passed by the House of Representatives because the **House had no quorum** when it presented the bill to the House on a 38 to 6 vote on May 12, 1947, when the House had 435 members.

For those reasons, Public Law 80-772, which purportedly enacted Title 18, United States Code, Act of June 25, 1948, Chapter 645, 62 Stat. 683 et **seq.** and Section 3231 thereof, 62 Stat. 826, purporting to confer upon "the district courts of the United States ... original jurisdiction ... of all offenses against the laws of the United States" violates Article I, §5, Cl. 1, and Article I, §7, Cls. 2 and 3, and are therefore unconstitutional and **void ab initio**, and imprisonment and/or confinement thereunder is fundamentally unconstitutional and unlawful.

//

//

//

8

C.                     **HISTORY OF H.R. 3190 IN THE FIRST
                        SESSION OF THE 80TH CONGRESS**

House Resolution (H.R.) 3190 was introduced and committed to the Committee of the entire House of Representatives on the State of the Union of the 1st Session of the 80th Congress entitled "Crimes and Criminal Procedure". See House Report No. 304, p. 1, April 24, 1947. See also, 94 Congressional Record Cong. Rec.) (D556-D557 (Daily Digest)(charting H.R. 3190). H.R. 3190 differed from "five ... bills which ... preceded it ... [because] it constitute[d] a revision, as ell as a codification, of the Federal laws relating to crimes and criminal procedure." 93 Cong. Rec. 5048-5049, May 12, 1947.

The bill was intended;

(1)  to revise and compile all of the criminal law, and;

(2)  to "restate[]" and "consolidate[]" "existing statutes", and;

(3)  to "repeal" "obsolete, superseded, redundant and repetitious statutes", and;

(4)  to coordinate the Criminal Code with the "Federal Rules of Criminal Procedure" formerly enacted, and;

(5)  to "clarify and harmonize" penalties of the "many acts" passed by Congress which were found to be "almost identical".

"The bill was ordered to be engrossed and read a third time, was read a third time, and passed" the House on May 12 1947, id; Journal of the House of Representatives ("House Journal"), May 12, 1947, pp. 343-344, Cong. Rec. D556-D557 (showing H.R. 3190's only passage by the House of Rep. on May 12, 1947), sent to the Senate and there "referred ... to the Committee on the Judiciary". 93 Cong. Rec. 5121, May 13, 1947; Journal of the Senate ("Senate Journal"), May 13, 1947, p. 252.

However, the "passage" of the bill, as established by the Congressional record was on a vote of 38 to 6, when 435 members were in Congress and no quorum was in session, (As admitted by former Clerk of the House, Karen L. Haas. See Exhibit E ), rendering the bill in violation of Article I, §5, Cl. 1 of the Constitution, and void ab initio.

As passed and enrolled by the House of Representatives, H.R. 3190 included at section 3231, subtitled "District Courts", the following text:

> "Offenses against the United States shall be cognizable in the district courts of the United States, but nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof."

H.R. 3190 as passed by the House of Rep., p. 367, §3231. See U.S. v. Sasscer, 558 F.Supp. 33, 34 (D.MD. 1982).

On July 27 1947, Congress adjourned without the Senate passing H.R. 3190. See 93 Cong. Rec. 10439, 10522, July 26, 1947.

On November 17, 1947, Congress reconvened pursuant to a Presidential proclamation. Yet, Congress again "adjourned sine die on December 19, 1947", (As admitted by Secretary of the Senate, Nancy Ericson. See Exhibit 1 ), without the Senate passing H.R. 3190. Kennedy v. Sampson, 511 F.2d 430, 444 Appendix n. 4 (D.C. Cir. 1974).

D.                    H.R. 3190 IN THE SECOND SESSION
                       OF THE 80TH CONGRESS

The Senate Committee on the Judiciary reported amendments to H.R. 3190 on June 14, 1948, under Sen. Rep. No. 1620. 94 Cong. Rec. 8075, June 14, 1948; Senate Journal, June 14, 1948, p. 452, App. 34. The Senate approved its Journal for June 14,

Senate Journal  June 15, 1948, pp. 461-462. Sen. Rep. No. 1620 contained "a large volume of amendments" and "the new Federal Rules of Criminal Procedure [were] keyed to the bill and [were] reflected in part II of [the new proposed] Title 18." Heralding that, upon passage of the amended bill, "[u]ncertainty will be ended," the Senate wanted "the amendments adopted en bloc," including a new jurisdictional section for Title 18. 94 Conq. Rec. 8721.

The report contained only the proposed amendments. See Sen. Rep. No. 1620, pp. 1 & 4.

"[T]he amendments were considered and agreed to en bloc" and then "ordered to be engrossed." 94 Conq Rec. 8721-8722, June 18, 1948, Senate Journal, June 18, 1948, p. 506 (H.R. 3190, "as amended," passed the Senate). It was moved that "the Senate insist upon its amendments" by the House, 94 Cong. Rec. at 8722; and "[o]rdered that the Secretary request the concurrence of the House of Representatives in the amendments." Senate Journal, supra, p. 506; House Journal June 18, 1948, p. 688.

The House received the proposed amendments. The Clerk "read the Senate amendments" collectively into the record with which the House concurred. 94 Conq. Rec. 8864-8865, June 18, 1948; House Journal, p. 704, June 18, 1948, (the "said Senate amendments were concurred in"). Although "[t]he House agreed to the amendments to ... H.R. 3190", Senate Journal, p. 510, June 18, 1948, no action was taken on H.R. 3190 as amended. The House approved the Journal for June 18, 1948, House Journal, P. 714, June 19, 1948, approving Journal for "legislative day of ... June 17, 1948" -i.e. calendar day of June 18, 1948; id at p. 669,

showing Friday, June 18, 1948, as "legislative day of Thursday, June 17, 1948", and the Senate approved its Journal for June 18, 19 and 20, 1948. Senate Journal, p. 593, July 26, 1948.

The Journal of the House of Representatives is devoid of any vote on H.R. 3190 itself on June 18, 1948, and thereafter through adjournment on June 20, 1948. Moreover, the official historical chart of H.R. 3190 clearly shows the **"only passage"** by the House of Representatives occurring on May 12, 1947, and specifically references volume 93, page 5048 of the Congressional Record as the recorded date the House passed the bill. 94 Cong. Rec. D556-D557 (Daily Digest).

**However, as it is clearly established by the Congressional record, the vote for passage was 38 to 6, when 435 members were in Congress and a quorum to do business would require a majority of those members to be present for passage. Therefore, with no quorum present, the bill is null and void, ab initio.**

**E.      CONGRESS AGREED BY RESOLUTION TO CONTINUE LEGISLATIVE BUSINESS BY A SINGLE OFFICER OF EACH HOUSE DURING ADJOURNMENT**

On June 19, 1948, the House submitted and agreed to concurrent resolutions, H.Con.Res. 218 and 219 and requested concurrence by the Senate. House Journal pp. 771-772, June 19, 1948; Senate Journal p. 577, June 18, 1948. "[T]he Senate [then] passed without amendment these concurrent resolutions of the House." The House sat from June 19 through June 20, 1948, adjourning at 6:56 A.M., House Journal, p. 775, June 19, 1948, and approved the Journal of the 19th. House Journal pp. 792-793, July 26, 1948 (reconvention by Presidential Proclamation), 94 Cong. Rec. 9349 (App. 57). H.Con.Re . 218 "provid[ed]

12

adjournment of the two Houses of Congress until December 31, 1948", id.; see Concurrent Resolutions, 2nd Session, 80th Cong., H.Con.Res. 218, June 20, 1948, 62 Stat. 1435-1436. H.Con.Res. 219 "authoriz[ed] the signing of enrolled bills following adjournment", 94 Con. Rec. 9349, specifically resolving:

> "That notwithstanding the adjournment of the two Houses until Dec. 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled."

See Concurrent Resolutions, supra, H.Con.Res. 219, June 20, 1948, 62 Stat, 1436.

Congress adjourned on June 20, 1948, pursuant to H.Con.Res. 218. 94 Cong. Rec. 9348, 9169; House Journal, p. 775, June 20, 1948; Senate Journal, p. 578, June 20, 1948.

Both Houses reconvened on July 26, 1948, pursuant to a proclamation of President Truman. Senate Journal p. 593, July 26, 1948 (showing reconvention); House Journal, pp. 792-793, July 26, 1948 (same). The House Journal for July 26, 1948, was approved, House Journal, p. 797, July 27, 1948, and the Senate Journal for July 26, 1948 was approved, Senate Journal, p. 593, July 27, 1948.

**F.**   **POST-ADJOURNMENT SIGNING OF H.R. 3190 BY SIGNING OFFICERS OF THE HOUSE AND PRESENTMENT TO, AND APPROVAL THEREOF BY PRESIDENT TRUMAN TO H.CON.RES. 219**

With both Houses adjourned, with no quorum, disassembled and dispersed, Mr. LeCompte, the Chairman of the Committee on House Administration reported that the committee had found H.R. 3190 "truly enrolled". House Journal, p. 776, legislative day of June 19, 1948 (recorded under heading "BILLS AND JOINT RESOLUTIONS ENROLLED SUBSEQUENT TO ADJOURNMENT").

- 13 -

Mr. LeCompte's announcement was reported upon reconvention by President Truman's Proclamation on July 26, 1948. 94 Cong. Rec. 9363. He attached his certificate of enrollment to the original H.R. 3190 passed by the House on May 12, 1947. See H.R. 3190 certified after adjournment as "truly enrolled" (as certified by Richard H. Hunt, Director, Center for Legislative Archives, The National Archives, Washington, D.C.).

Although never certified as truly enrolled, the Speaker and President pro tempore respectively signed the Senate's amended H.R. 3190 on June 22 and 23, 1948. 94 Cong. Rec. 9353-9354; House Journal p. 777, legislative day June 19, 1948; Senate Journal pp. 578-579, legislative day June 18, 1948. National Archives & Records Adm. Cert., H.R. 3190 signed by House and Senate officers and President Truman.

The Senate's amended H.R. 3190 was then presented by the Committee on House Administration to President Truman, on June 23, 1948, who signed it on June 25, 1948, at 12:23 P.M. E.D.T., 94 Cong. Rec. 9363-9367; House Journal, pp. 778, 780-782, legislative day of June 19, 1948; Senate Journal pp. 579, 583, legislative day of June 18, 1948. National Archives & Records Adm. Cert., H.R. 3190, supra; 94    . Rec. D557 (Daily Digest).

That same day President Truman signed into law Public Law 80-773 enacting into positive law Title 28, United States Code. Act of June 25, 1948, Ch. 646, §1, 62 Stat. 869. That Act positively repealed the former criminal jurisdiction granted to the district courts. id., §39 st seq., 62 Stat. 991 et seq. (positive repeal listing former 28 U.S.C. §41, ¶2 in schedule of repealed statutes).

14

G.                    **THE SIGNATORIES OF H.R. 3190**
                     **KNEW THE ENACTING CLAUSE**
                     **WAS FALSE WHEN SIGNED**

Public Law 80-772 stated that the enactment proceeded "by the Senate and House of Representatives of the United States of America **in Congress assembled.**" See National Archives & Records Adm. Cert., H.R. 3190 as signed into P.L. 80-772, supra.

**Each signatory knew that no quorum existed at the time of the House vote on May 12, 1947, no quorum existed on June 20, 1948, and neither "House" legislatively existed at that time, and that the legislative process had ceased within the terms to Article I, §§5 and 7 on June 20, 1948.**

It was bad enough that President Truman was a Democrat and the Speaker of the House and President pro tempore of the Senate were Republicans, who openly ridiculed and hated each other.

Then to compound these errors, the bill was never placed in the Federal Register as is required by the Federal Register Act, 44 U.S.C. §1501, et seq., (1935).

However, that is no excuse to ignore the Constitution they had taken an oath to uphold.

This comedy of errors is possibly one of the biggest fiascos ever created by Congress.

Thus, a political bill, not a bill Constitutionally passed by Congress, is being used to imprison Miles, in direct violation of the Constitution. The actions by Congress in the attempted enactment of P.L. 80-772 amount to nothing less than peonage and slavery, acts never condoned by our founding fathers.

//

//

V                    THE LEGAL PRINCIPLES

H            PUBLIC LAW 80-772 IS UNCONSTITUTIONAL AND VOID
             H.R. 3190 NEVER PASSED BOTH HOUSES AS REQUIRED
             BY ARTICLE I, §7, Cl. 2, OF THE CONSTITUTION

This case presents the "profoundly important issue," of the
constitutionality of an act of Congress INS v. Chada, 462 U.S.
919, 929 (1983) - matters "'of such public importance as to
justify deviation from normal appellate practice and to require
immediate determination by this Court."' Clinton v. City of New
York, 524 U.S. 417, 455 (1998) (Scalia, J. and O'Connor, J.,
joining in part and dissenting in part) (adopting language
directly from Sup. St. R. 11).

Clinton, 524 U.S. at 447, "twice had full argument and
briefing." as did INS v. Chadha, 462 U.S .at 943-944 ("The
important issues have been fully briefed and twice argued.")
"[T]he importance of the question," Metropolitan Washinton
Airports Authority v. Citizens for Abatement of Aircraft Noise,
Inc., 501 U.S. 252, 263 (1991), has always been noted. Wright v.
U.S., 302 U.S. 583, 586 (1938) ("the importance of the
question"); Pocket Veto Case, 279 U.S 655, 673 (1929) ("the
public importance of the question presented"); Missouri Pacific
Railway Co. v. Kansas, 248 U.S. 276, 279 (1919) ("the importance
of the subject").

Although "[a]ll legislative Powers granted herein shall be
vested in a Congress of the United States which shall consist of
a Senate and a House of Representatives." (Art, I, §1, U.S.
Constitution), "when [Congress] exercises its legislative power,
it must follow the 'single, finely wrought and exhaustively
considered procedures' specified in Article I," Metropolitan

16

Washington Airports Authority v. Citizens for Abatement of Aircraft Noise, Inc., 501 U.S. 252, 274 (1991) (quoting <u>INS v. Chadha</u>, 462 U.S. at 951). Article I establishes "just how those powers are to be exercised." INS v. Chadha, 462 U.S. at 945.

An act of Congress "does **not** become a law unless it follows each and every procedural step chartered in Article I, §7, Cl. 2, of the Constitution." Landqraf v. USI Film Products, 511 U.S. 244, 263 (1994) (citing INS v. Chadha 462 U.S. at 946-951 (emphasis added)); <u>Clinton</u>, 524 U.S at 448 (noting requisite "steps" taken before a bill may "'become a law'" and holding that a procedurally defective enactment cannot "'become a law' pursuant to the procedures designed by the Framers of Article I, §7, of the Constitution").

The Constitution requires "three procedural steps":

(1)  a bill containing its **exact text** was approved by a majority of the Members of the House of Representatives, and;

(2)  the Senate approved **precisely the same text**, and;

(3)  **that text** was signed into law by the President.

"If one paragraph of **that text** had been omitted at **any one of those three stages**, [the] law [in question] would **not** have been validly enacted." <u>Clinton</u>, 524 U.S at 448 (emphasis added). Between the second and third "procedural steps," the bill "... shall ... be presented to the President ..." Article I, §7, Cl. 2, of the Constitution.

The text of H.R. 3190 passed by the House of Representatives was the text as it existed on the date of passage - i.e., May 12, 1947. Whereas, the text of the bill passed by the Senate on June 18, 1948, was H.R. 3190 "as amended". Senate Journal, June 18,

1948, p. 506. Thus, no bill passed the House on May 12, 1947 since no quorum existed and no quorum existed on June 20, 1948, rendering the bills passed by the respective Houses invalid and neither bill ever "became a law". Clinton, 524 U.S. at 448.

### I.   PERMITTING POST-ADJOURNMENT LEGISLATIVE BUSINESS PURSUANT TO H.CON. RES. 219 VIOLATED THE QUORUM, BICAMERAL AND PRESENTMENT REQUIREMENTS OF ARTICLE I OF THE CONSTITUTION

After Congress adjourned on June 20, 1948, pursuant to H.Con.Res. 219 a single officer of each House of Congress signed a **bill** purporting to be H.R. 3190 on June 22-23, 1948, 94 Con. Rec. 9354; House Journal, legislative day of June 19, 1948, p. 777; Senate Journal, legislative day of June 18, 1948, pp. 578-579, and presented **that bill** to the President, who signed it on June 25, 1948. 94 Conq. Rec. 9365-9367. Thus, the post-adjournment signature "provision [of H.Con.Res. 219 was an important part of the legislative scheme," leading to the enactment of Public Law 80-772, without which it would never have "become a Law". Bowsher v. Synar, 478 U.S. 714, 728 (1986). Public Law 80-772 **falsely** stated it was "enacted" while both Houses were "in Congress assembled," when in fact Congress was not in session. See, National Archives & Records Adm. Cert., H.R. 3190 as signed into P.L. 80-772.

The bill signed was the Senate's amended H.R. 3190 - a bill never certified as "truly enrolled", **compare** P.L. 80-772, Enactment Clause & signature pages **with** H.R. 3190 certified as "truly enrolled," supra, and H.Con.Res. 219 never authorized the signing of **unenrolled** bills after adjournment. See H.Con.Res. 219, supra, 62 Stat. 1436.

//

Article I, §5, Clause 1 mandates a quorum of both Houses of Congress "to do Business." This constitutional requirement has been enforced by practice, Rules of the Houses, custom, Supreme Court holdings and duly enacted statutes.

1 U.S.C. §101 requires every "enacting clause of all Acts of Congress" to state: "'Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled.'"

Although the bill after passage by "both Houses" must be "enrolled" following which it "shall be signed by the presiding officers of both Houses and sent to the President of the United States,"

1 U.S.C. §106 contains an exception for enrollment "[d]uring the last six·days of a session," but no exception for enrolling, signing or presenting a bill to the President otherwise than during the sitting of both Houses.

1 U.S.C. § 106, the actual procedure is regulated by House rules and established practice. Following passage the "chairman of the committee on House Administration ... affixes to the bills examined a certificate that the bill has been found truly enrolled,"

Formerly, the "Chairman of the Committee on Enrolled Bills" performed this critical task in the legislative business of enacting a bill, which has always required the enrolled bill to be "placed before the House and signed by the Speaker." See House Doc. No. 355, 59th Cong. 2nd Session, Hinds' Precedents of the House of    resentatives, Ch. XCI, :3429, notes 3 & 5, p. 311 (G.P.O. 1907). See House Doc. No. 769, _supra_, Preface, p. [Vi]

("The rulings of the Speakers of the House and of the Chairman of the Committee of the Whole are to the rules of the House what the decisions of the courts are to the statutes ... [which are] embodied in the monumental work[s] of Hinds and Canon.").

House Doc. No. 769, supra, Stages of a Bill, §983, No. 16, p. [483] (App. 79), after which the "enrolled bill is first laid before the House of Representatives and signed by the Speaker ... after which it is transmitted to the Senate and signed by the President of that body." Id., No. 17, p. 484.

The Supreme Court not only takes judicial notice of the legislative history of a bill, Alaska v. American Can Co., 358 U.S. 224, 226-227 (1959), but will both judicially notice and "h[o]ld" Congress and its legislative committees "to observance of its rules." Yellin v. U.S., 374 U.S. 109, 114 (1963).

The Supreme Court in Marshall Field & Co. v. Clark, 143 U.S. 649 (1892), defined the essence of this procedure:

> **"The signing** by the Speaker of the House of Representatives, and by the President of the Senate, **in open session, of an enrolled bill is an official**

> government, and that i
> obedience to the constit
> bills which pass Congress shall be presented to him."

143 U.S. at 672 (emphasis added). 1 U.S.C. §106 codified this implicit constitutional requirement. Reading 1 U.S.C. §§101 and 106 together requires that all acts must occur at least through presentment to the President while Congress is in session. That the enrolled bill must be "layed before the House" prior to signing by the Speaker and **then** "transmitted to the Senate"

before the signing by the President of that body concludes that the respective Houses **must be in session during this transaction.**

"[T]he Constitution has left it to Congress to determine how a bill is to be authenticated as having passed" and "the courts accept as passed all bills authenticated in the manner provided by Congress." U.S. v. Munoz-Flores, 495 U.S. 385, 391 n. 4 (1990) (citing Field & Co. v. Clark, 143 U.S. 649 (1892), in which case the Court establishes the so-called "enrolled bill rule" - a rule not applicable in this case, but a ruling that supports Miles' claims.)

An "adjournment terminates the legislative existence of Congress." Pocket Veto Case, 279 U.S. at 681. "'Th[e] expression, a "house", or "each house", [when] employed ... with reference to the faculties and powers of the two chambers ... always means ... the constitutional quorum, assembled for the transaction of business, and capable of transacting business.'" 279 U.S. at 683, quoting I Curtis' Constitutional History of the United States, 486 n. 1. Moreover, the term "House" means "the House in session", 279 U.S. at 682 and "'as organized and entitled to exert legislative power', that is, the legislative bodies 'organized conformably to law for the purpose of enacting legislation.'" Id. (quoting Missouri Pacific Railway Co. v. Kansas, 248 U.S. 276, 281 (1919)). See also House Doc. No. 355, supra, Hinds' Precedents $2939, p. 87 ("'The House is not a House without a quorum'") (App. 87).

No "attestation" or "declaration **by the two** Houses ... to the President," Field & Co., 143 U.S. at 672, that H.R. 3190 had "passed" Congress during the adjournment was possible because no

such "houses" constitutionally existed. See also United States National Bank of Oregon v. Independent Insurance Agents of America, 508 U.S 439, 455 n. 7 (1993) (noting that the rule established in Field & Co., 143 U.S. at 672, made statutory by 1 U.S.C. §106 turned upon "the 'enrolled bill', signed in open session by the Speaker of the House of Representatives and the President of the Senate"). Longstanding precedence of the House affirms this. House Doc. No. 355, supra, Hinds' Precedents, Vol. IV, §2951, pp. 90-91 (upon "disclos[ure] ... that there is not a quorum ... [t]he House thereby becomes **constitutionally disqualified** to do further business") (excepting from disqualification the exceptions stated in Art. I, §5, Cl. 1 ) (emphasis added) (App. 88-89); id., §3458, p. 322 ("The Speaker may not sign an enrolled bill in the absence of a quorum.") (App. 93); id., at §3486, pp. 332-333 (recognizing enrollment and presentment to the President to be legislative business required to be completed before adjournment) (App. 95-96); id., at §3487, p. 333 n. 3 (presentment to the President is legislative "business" which must be completed before adjournment) (App. 96); id., at 4788, p. 1026 ("The presentation of enrolled bills" to the President of the United States is a "transact[ion]" of "business" of the "House".) (App. 100).

Once a bill has passed the House of Representatives it must be printed as an "engrossed bill" which then "shall be signed by the Clerk of the House ... sent to the other House, and in that form shall be dealt with by that House and its officers, and, if passed, returned signed by said Clerk." 1 U.S.C. §106. In the immediate case H.R. 3190 was passed by the House of

22

Representatives on May 12, 1947, engrossed and sent to the Senate and there referred to the Senate's Committee on the Judiciary. See 93 Conq. Rec. 5048-5049; Senate Journal May 13, 1947, p. 252. However, it was not dealt with nor passed "in that form".

Instead, amendments were proposed which were "agreed to en bloc", read into the record and "ordered to be engrossed", 94 Cong. Rec. 8721-8722. Then, "the [amended] bill was read the third time and passed." 94 Conq. Rec. 8722 Senate Journal, June 18, 1948, p. 506. The House then concurred in the amendments en bloc. 94 Conq. Rec. 8864-8865; House Journal, June 18, 1948, p. 704.

This contravenes the procedures of the House of Representatives for the 80th Congress. "When a bill with Senate amendments comes before the House, the House takes up each amendment by itself ..." House Doc. No. 769, Stages of a Bill in the House, §983, No. 13, p. [483].

"The House in which a bill originates enrolls it", House Doc. No. 769, _supra_, Stages of a Bill, No. 15, p. [483] (App. 79), and, in the case of House bills, the "Chairman of the Committee on House Administration ... affixes to the bills examined a certificate that the bill has been found truly enrolled", id., No. 16, p. [483], after which it is "laid before the House ... signed by the Speaker [then] transmitted to the Senate and signed by the President of that body". Id., No. 17. p. [484]. Unequivocally, "[t]he Speaker may not sign an enrolled bill in the absence of a quorum." House Doc. No. 355, _supra_, Hinds' Precedents §3458, p. 322. Cf., id., §2939, 87 ("The House is not a House without a quorum.").

The constitutional "quorum" issue is precluded from Field & Co.'s, "enrolled bill rule" by its terms - i.e., "[t]he signing ... in open session, of an enrolled bill", 143 U.S. at 672 (emphasis added), which in any case only applies in "the absence of [a] constitutional requirement binding Congress." U.S v. Munoz-Flores, supra, 495 U.S at 391 n. 4. Moreover, just as "§7 gives effect to all of its Clauses in determining what procedures the Legislative and Executive branches must follow to enact a law", id., 495 U.S 386 (emphasis by Court), so too does Article I, §5, Cl. 1 "provid[e] that no law could take effect without the concurrence of the prescribed majority of the Members of both Houses", INS v. Chadha, 462 U.S at 949-950, as to all legislative "Business". Cf. U.S v Ballin, 144 U.S. 1, 3-5 (1892) (to determine whether constitutionally mandated quorum was present for legislative action the Court "assume[s]" the Journals of the Houses are to be considered to decide the issue).

The bill signed by the Officers of the Houses presented to a signed by the President of the United States was the Senate's amended bill, which never passed the House. H.Con.Res. 219 only "authorized [the] sign[ing] [of] enrolled bills ... duly passed by the two Houses and found truly enrolled", H.Con.Res. 219, supra, 62 Stat. 1436, voiding the signatures on the amended bill.

On July 26, 1948, "Mr. LeCompte, from the Committee on House Administration, reported that the committee had examined and found" that H.R. 3190 had been "truly enrolled". 94 Conq. Rec. 9363. The version of H.R. 3190 certified as "truly enrolled" by Mr. LeCompte, is the House version passed on May 12, 1947, with the text of the original §3231 - the text of which was never

24

passed by the Senate - to which his certificate of enrollment is attached. The statutory mandate after final passage and printing to "call[]" the bill in such final form "the enrolled bill", 1 U.S.C. §106, Act of July 30, 1947, Ch. 388, Ch. 2, 61 Stat. 634, is determined by the certificate "affixe[d] to the bill", House Doc. No. 769, Stages of a Bill, supra, No. 16, all of which is required **before** the "sign[ing] by the presiding officers of both Houses and sen[ding] to the President of the United States." 1 U.S.C. §106.

**Having not been enrolled, certified as truly enrolled, or signed by the Speaker of the House with a quorum present, the bill was rendered constitutionally void.** House Doc. No. 769, supra, Constitution of the United States, §55, p. [19] ("[w]hen action requiring a quorum was taken in the ascertained absence of a quorum ... the action was null and void") (App. 74); House Doc. No. 355, supra, Hinds' Precedents §§3497 & 3498. pp. 344-345 (such a bill is "not in force" and is "not a valid statute") (App. 97-98). Cf., id., Hinds' Precedents §2962, p. 94 (to vacate legislative act "the absence of a quorum should appear from the Journal") (App. 90).

Art. I, §7, mandates that a bill that has passed both Houses "'shall before it becomes a Law, be presented to the President of the United States ...,'" Art. I, §7, Cl. 2; INS v. Chadha, 462 U.S. at 945, which "can **only** contemplate a presentment by the Congress in some manner, [because] ... [a]t that point the bill is necessarily in the hands of the Congress." U.S. v. Kapsalis, 214 F.2d 677, 680 (7th Cir. 1954), cert. denied, 349 U.S. 906 (1955) (emphasis added). Thus, presentment is clearly part of the

legislative procedure required as essential to enactment of a bill as law. INS v. Chadha, 462 U.S at 945, 947, 951; La Abra Silver Mining Co. v. U.S. 175 U.S 423, 454 (1899) ("**After a bill has been presented** to the President, **no further action is required by Congress** in respect of that bill, unless it be disapproved by him. ...") (emphasis added). See House Doc. No. 355, <u>supra</u>, Hinds' Precedents, Vol. IV, §4788, p. 1026 (recognizing that "the presentation of enrolled bills" to the President is a "transact[ion]" of "business" of "the House"); id., §3486, p. 332 (recognizing presentment required prior to adjournment); id., §3487, p. 333 n. 3 (when bill is enrolled or signed by presiding officers "too late to be presented to the President before adjournment" signing and presentment must continue at next session as a "resumption of [legislative] business"). Clearly presentment is part of the constitutionally mandated "Business", Art. I, §5, Cl. 1, to be "exercised in accord with [the] single, finely wrought and exhaustively considered, procedure" "prescri[bed] ... in Art. I, §§1 & 7." <u>INS v. Chadha</u>, 462 U.S at 951.

The "draftsmen" of the Constitution "took special pains to assure these [legislative] requirements could not be circumvented. During the final debates on Art. I, §7, Cl. 2, James Madison expressed concern that it might be easily evaded by the simple expedient of calling a proposal a 'resolution' or 'vote' rather than a 'bill'. As a consequence, Art. I, §7, Cl. 3, ... was added." INS v. Chadha, 462 U.S at 947 (citing 2 Farrand, supra, 301-302, 304-305).

//

Whether actions authorized under a resolution are "an exercise of legislative powers depends not on their form but upon 'whether they contain matter which is properly to be regarded as legislative in its character and effect.'" INS v. Chadha, 462 U.S at 952 (quoting S.Rep. No. 1335, 54th Cong., 2nd Session, 8 (1897)). "If the power is legislative, Congress must exercise it in conformity with the bicameralism and presentment requirements of Art. I, §7." Metropolitan, 501 U.S at 276. See also Bowsher v. Synar, 478 U.S at 756 (Stevens, J., concurring) ("It is settled, however, that if a resolution is intended to make policy that will bind the Nation, and thus is 'legislative in its character and effect,' S.Rep. No. 1335, 54th Cong., 2nd Session, 8 (1897) - then the full Article I requirements must be observed. For 'the nature or substance of the resolution, and not its form, controls the question of its disposition.' Ibid.").

"'Congress,'" of course, "'cannot grant to an officer under its control what it does not possess.'" Metropolitan, 501 U.s at 275 (quoting Bowsher v.  ar, 478 U.S. at 726). Congress does not possess the "'capab[ility] of transacting business'" and is not "'entitled to exert legislative power.'" when its "legislative existence" has been "terminate[d]" by an "adjournment." Pocket Veto Case, 279 U.S at 681-683 (citations omitted). "The limitation of the power of less than a quorum is absolute," House Doc. No. 355, supra, Hinds' Precedents, Vol. V, Ch. CXL, §6686, p. 851 (App. 102), and includes the signing of an enrolled bill by the Speaker of the House, id., Vol. IV, Ch. XCL, §3458, p. 322, and presentment to the President of the United States. id., Ch. XCII, §§3486, 3487 & 3497, pp. 332, 333, note 3,

344 & 345 (App. 95-98). Wright v. U.S., 302 U.S 583, 600 (1938) (Stone J., concurring) ("The houses of Congress, being collective bodies, transacting their routine business by majority action are capable of acting only when in session and by formal action recorded in their respective journals, or by recognition, through such action, of an established practice.") Thus, "Congress", as defined by the Constitution and Supreme Court, never "presented" **any** version of H.R. 3190 to the President of the United States.

Whether the action taken under H.Con.Res. 219 was an "exercise of legislative power" depends upon whether it was essentially "legislative in purpose and effect." INS v. Chadha 462 U.S. at 952. "In short, when Congress'[takes] action that ha[s] the purpose and effect of altering the legal rights, duties, and relations of persons ... outside the Legislative Branch', it must take that action by the procedures authorized in the Constitution." Metropolitan, 501 U.S at 276, quoting INS v. Chadha, 462 U.S at 952-955. "If Congress chooses to use a [] resolution ... as a means of expediting action, it may do so, if it acts by both houses and presents the resolution to the President." Consumer Ene y Council of America v. F.E.R.C., 673 F.2d 425, 476 (D.C. Cir. 1982), aff'd mem. sub nom., Process Gas Consumers Group v. Consumer En   Council of America, 463 U.S 1216 (1983).

The inescapable conclusion as to the "purpose and effect" of H.Con.Res. 219 was to enact **a bill** the text of which at the time of adjournment on June 20, 1948, had not passed by both Houses, enrolled, certified as "truly enrolled", or signed by the officers of the House or presented to the President of the United

States **with** **quorums** **sitting**. In other words, H.Con.Res. 219 unconstitutionally permitted post-adjournment legislative business to proceed without congress and upon an unpassed bill. Congress did not follow the procedures mandated by Art. I, §7, Cl. 2 and attempted to supersede the quorum requirements of Art. I, §5, Cl. 1 **via** a concurrent resolution to carry forth legislative business with no legislature. The 80th Congress surreptitiously provided a bill, the text of which had never passed either House "'mask[ed] under ... [the] indirect measure.'" Metropolitan, **supra**, 501 U.s at 277 (quoting Madison, The Federalist No. 48 p. 334 (J. Cooke 1961 ed.)), of a resolution purporting to authorize continuing legislative action during adjournment with no quorum and no Congress of an extra-congressional bill. Public Law 80-772 did not "become a Law" as required by the constitutional procedures mandated under Article I, §5, Cl. 1, and Article I, §7, Cls. 2 & 3, and is unconstitutional and **void ab initio**.

"[W]hen action requiring a quorum was taken in the ascertained absence of a quorum ... the action [is] null and void," House Doc. 769, **supra**, Constitution of the United States, §55, p. [19] (citing Hinds' Precedents, Vol. IV, §2964), and "a bill ... not actually passed [although] signed by the President [is to be] disregarded [requiring] a new bill [to be] passed." House Doc. 769, §103, p. [34] (citing Hinds' Precedents, Vol. IV, §3498) (App. 75).

//

//

//

VI.    THE DISTRICT COURT ORDER COMMITTING MILES TO EXECUTIVE
       CUSTODY PURSUANT TO §3231 (OF THE UNCONSTITUTIONAL
       PUBLIC LAW 80-772) IS ISSUED ULTRA VIRES, IS
       UNCONSTITUTIONAL AND CORAM NON JUDICE, AND
       IMPRISONMENTS AND/OR CONFINEMENT IS UNLAWFUL

"The challenge in this case goes to the subject-matter jurisdiction of the court and hence the power to issue the order[s]," United States Catholic Conference v Abortion Rights Mobilization Inc., 487 U.s 72, 77 (1988), committing Miles to imprisonment in Executive custody. Thus, the "question is, whether ... the action is judicial or extra-judicial, with or without the authority of law to render [the] judgement." Rhode Island v. Massachusetts 37 U.S (12 Pet.) 657, 718 (1838), and to issue the commitment orders.

Subject-matter jurisdiction means "'the courts' statutory or constitutional **power** to adjudicate the case,'" U.S. v. Cotton, 535 U.S 625, 630 (2002), quoting Steel Co. v. Citizens for a Better Environment, 523 U.S 83, 89 (1998); Rhode Island v. Mass., 37 U.S (12 Pet.) at 718 ("Jurisdiction is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them."); Reynolds v. Stockton, 140 U.S. 254, 268 (1891) ("Jurisdiction may be defined to be the right to adjudicate concerning the subject matter in a given case.") "Subject-matter limitations on federal jurisdiction serve institutional interests by keeping the federal courts within the bounds the Constitution and Congress have prescribed." Ruhrgas AG v. Marathon Oil Co., 526 U.S 574, 583 (1999).

"Federal courts are courts of limited jurisdiction ... Jurisdiction of the lower federal courts is further limited to

exception,'" Steel Co., 523 U.S. at 94-95, quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884); See also Insurance Corp. of Ireland, Ltd. 456 U.S. at 702.

Because subject-matter jurisdiction "involves a court's power to hear a case, [and thus] can never be forfeited or waived ... **correction** [**is manda**      whether the error was raised in district court" or not. U.S. v. Cotton, 535 U.S. at 630 (citation omitted); Steel Co., 523 U.S. at 94-95 (citing cases). When a district court did "not have subject-matter jurisdiction over the underlying action ... [its] process[es] [are] void and an order of [punishment] based [thereupon] ... must be reversed." U.S. Cath. Conf., 487 U.S. at 77; Willy v. Coastal Corp., 503 U.S. at 139 ("[T]he [punishment] order itself should fall with a showing that the court was without authority to enter the decree."); Ex Parte Fisk, 113 U.S. 713, 718 (1885) ("When ... a court of the United States undertakes, by its process ... to punish a man ... [respecting] an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing ... is equally void.")

Habeas corpus review "is limited to the examination of the jurisdiction of the court whose judgement and conviction is challenged." INS v. St. Cyr, 533 U.S. 289, 311-314; Bowen v. Johnston, 306 U.S. 19, 23 (1939). A "court 'has jurisdiction to render a particular judgement only when the offense charged is within the class of offenses placed into the law under its urisdiction.'" 306 U.S. at 24 (emphasis added). If it is found that the court lacked jurisdiction to try petitioner, the judgement is **void** and the prisoner must be discharged. Ex

31

Parte Yarbrough, 110 U.S. 651, 654 (1884).

Miles has established that the text of H.R. 3190 signed by respective House officers and the President of the United States:

(1) failed to pass the House of Representatives because no quorum was present when the House voted 38 to 6 to pass the bill on May 12, 1947, and;

(2) that the legislative process continued after Congress adjourned by single officers of each acting pursuant to H.Con.Res. 219 without quorums in r House.

All of which violated Article I, Section 5, Clause 1; Article I, Section 7, Clause 2, and/or Article I, Section 7, Clause 3 and any of which rendered Public Law 80-772 unconstitutional and **void ab initio**. Ma v. Madison, 5 U.S. 137, 180 (1803) ("a law repugnant to the constitution is void; and ... courts, as well as other departments, are bound by that instrument").

Therefore, because "the offense[s] charged ... [were] placed by the law under [the] jurisdiction," of the respective district courts below pursuant to 18 U.S.C. §3231 of Public Law 80-772, which is unconstitutional, and "void, the court was without jurisdiction and the prisoner[s] must be discharged." Yarbrough, 110 U.S. at 654. Since Public Law 80-772 has never been enacted as required by Article I, Section 5, Clause 1, and Article I, Section 7, Clauses 2 & 3 thereof, rendering **void ab initio** the jurisdiction by which the respective district courts acted to convict, enter judgement, and order Petitioner imprisoned in Executive custody, the district courts' actions were "'ultra vires'", Ruhrgas AG, 526 U.S. at 583 (quoting Steel Co. 523 U.S. at 101-102), and "**coram non judice**" Rhode Island v. Mass., 37 U.S. (12 Pet.) at 720.

32

those subjects encompassed within a statutory grant of jurisdiction." Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxite de Guinea, 456 U.D 694, 701 (1982); Kline v. Burke Constr. Co. 260 U.S. 226, 234 (1922) (all lower federal courts "derive[] [their] jurisdiction wholly from the authority of Congress"); U.S. v. Hudson & Goodwin, 11 U.S. 32, 33 (1812) (federal courts "possess no jurisdiction but what is given to them by the power that creates them."); U.S. v. Hall, 98 U.S. 343, 345 (1879) (federal "courts possess no jurisdiction over crimes and offenses ... except what is given to them by the power that created them"); Hudson & Goodwin, 11 U.S. at 33-34. See also, e.g., U.S. v. Wiltberger 18 U.S. 76, 95-105 (1820) ("the power of punishment is vested in the legislative, not the judicial department." criminal statutes are to be constructed strictly, "probability" cannot serve to "enlarge a statute" and an offense not clearly within the terms of a statute precludes federal court jurisdiction).

"Without jurisdiction the court cannot proceed at all in any cause ... and when it ceases to exist, the only function of the court is that of announcing the fact and dismissing the cause.'" Steel Co. v. Citizens, 523 U.S. at 94, quoting Ex Parte McCardle 74 U.S. (7 Wall.) 506, 514 (1869); Willy v. Coastal Corp. 503 U.S. 131, 137 (1992) ("lack of subject-matter jurisdiction ... precludes further adjudication").

This Court has asserted over and over that "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without

33

Any conviction and judgement thereupon "being without jurisdiction, is void, and the order punishing ... is equally void." Ex Parte Fisk, 113 U.S. at 718; U.S. Cath. Conf., 487 U.S. at 77; Willy v. Coastal Corp., 503 U.S. at 139. This is precisely the office and function of **habeas corpus** - i.e., to "examin[e] ... the jurisdiction of the court whose judgement of conviction is challenged." Bowen v. Johnston  306 U.S. at 23, and where, as here, a court is clearly "without jurisdiction ... the prisoner ... must be discharged." Ex Parte Yarbrough, 110 U.S. at 654. See also Ex Parte Lange, 85 U.S. (18 Wall.) 163, 166 (1874).

J.                         **THE COURT <u>MUST</u> NOTICE THE ERROR**
                          **"AT ANY <u>TIME</u>" F.R.Civ.P. 12(b)(2)**

Failure of an indictment to allege a violation of a valid criminal statute means it is legally insufficient. See Hughes v. Thompson  415 U.S. 1301, 1302, 39 L.Ed.2d 93, 85 (1974); U.S. v. <u>Ropp</u>, 347 F.Supp.2d 831, 833 (C.D.Cal. 2004); and Ex Parte Parks, 93 U.S. 18, 20, 23 L.Ed.787 (1876).

Therefore Miles moves the Court to take mandatory udicial <u>notice</u> that the statutes of which Miles was ostensibly convicted were legally non-existent since Title 18 U.S.C. criminal statutes of 1948 were never re-numbered, and the courts had no subject-matter jurisdiction over the crimis, because 18 U.S.C. §3231 has not existed since 1948.

//

//

//

//

//

34

VII.                          CONCLUSION

Miles requests that this court should take judicial notice of the facts stated previously:

**(1)** The lower courts have, against Supreme Court precedent, blocked, ignored, intentionally misconstrued, and/or recharacterized Miles' previous actions under §2255, 60(b), and §2241, in an attempt to deny Miles his Constitutional rights to a fair hearing and impartial judge.

**(2)** Public Law 80-772/H.R. 3190 (Title 18 of the United States Code) as shown is unconstitutional, by never passing both Houses as required by the Constitution. Specifically 18 U.S.C. §3231, thus the court lacked subject-matter jurisdiction over Miles.

**(3)** Continued illegal confinement of Miles by the lower courts violates Supreme Court precedents under Glover, Castro, and Statutory Law, creating a prima facie case of bias, and structural error.

**(4)** Miles is entitled to a extraordinary writ of habeas corpus from this Court because of the lack of response by the lower courts and presumptive denial for lack of action in this matter.

**(5)** By knowingly incarcerating Miles, using a unconstitutional statute to imprison Miles, the lower courts have violated their own oaths of office, and 28 U.S.C. §454 and §455 a high misdemeanor, creating structural error and bias by those judges.

In conducting harmless error analysis of Constitutional violations in direct appeal and habeas corpus cases, the Court repeatedly has reaffirmed that "[s]ome constitutional violations ... by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be

35

considered harmless." Satterwhite v. Texas, 486 U.S. 249, 256 (1988); accord Neder v. U.S., 527 U.S. 1, 7 (1999)("[W]e have recognized a limited class of fundamental constitutional errors that 'defy analysis by "harmless error" standards' ... Errors of this type are so intrinsically harmful as to require automatic reversal (i.e., 'affect substantial rights') without regard to their effect on the outcome.")); Sullivan v. Louisiana, 508 U.S 275, 279 (1993)("Although most constitutional errors have been held to harmless analysis, some will always invalidate the conviction." (citations omitted)); id at 283 (Rhenquist, C.J. concurring); U.S. v. Olano, 507 U.S 725, 735 (1993); Rose v. Clark, 478 U.S. 570, 577-578 (1986)(some constitutional errors require reversal without regard to the evidence in that particular case ... [because they] render a trial fundamentally unfair"); Vasquez v. Hillary 474 U.S. 254, 263-264 (1986); Chapman v. California, 386 U.S. 18, 23 (1967)("there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error").

Included in the definition of structural error, is the right to an impartial judge who follows the Constitution, Supreme Court precedent and upholds their oath of office. See, e.g., Neder v. U.S., supra, 527 U.S. at 8 ("biased trial judge" is 'structural [error].' and this [is] subject to automatic reversal"); Edwards v. Balisok, 520 U.S 641, 647 (1997)("a criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him."); Johnson v. U.S., 520 U.S 461, 469 (1997); Sullivan v. Louisiana, 508 U.S. at 279; Rose v. Clark, 478 U.S. 570, 577-578 (1986); Tumey v. Ohio, 273 U.S. 510, 523 (1927).

VIII.                    **RELIEF REQUESTED**

For the reasons invoked previously, Miles requests that the

Court:

(1) Take mandatory judicial notice pursuant to F.R.E. 201 of the facts alleged herein, including notice from the Congressional Record; and

(2) Declare that H.R. 3190 is unconstitutional and a political bill, not a bill validly passed by Congress during the 80th Congress in 1948, and so P.L. 80-772 was not legally enacted; and

(3) Declare that purported statutes in Title 18 United States Code including 18 U.S.C. §3231 (the statute the gives district courts their limited jurisdiction) were not legally enacted, and are null and void ab initio; and

(4) Declare that the trial and appeal courts do not have criminal jurisdiction over any crime in Titles 8, 18, 21, 26 etc., at the time of the alleged crimes, at the time of the indictment, at the time of trial, sentencing, or appeal, because of the non-existence of 18 U.S.C. §3231, and thus there was **NO** federal jurisdiction over prosecution of Miles for these alleged crimes; and

(5) Issue a show cause order for the government to show cause as to why Miles should not be immediately released from his illegal confinement; and

(6) Issue an order for Miles' immediate release on personal recognizance bond pending the ruling on his illegal imprisonment; and

(7) Based on the governments anticipated failure to respond, issue an order for Miles' immediate release from his unlawful imprisonment; and

(8) Vacate Miles' sentence and convictions and order the "U.S. Courts", U.S. Probation Office, the Federal Bureau of Prisons, and all other person-detaining sub-organizations to free Miles, and erase **ALL** his federal criminal records by expungement; and

(9) Declare Miles actually innocent of the crimes alleged; and

(10) Determine if it should sanction the Department of Justice for bringing charges under a Statute it knows is unconstitutional; and

(11) Order the Federal Government to return **ALL** money seized (directly and indirectly) from Miles, with interest from his date of arrest; and

(12) Order a payment to Miles of Three Thousand dollars ($3,000.00) per day for false imprisonment, to accrue with interest from his date of arrest to his release; and

(13) For such any further relief that the Court should deem proper and necessary to restore Miles to his state of being prior to his unlawful restraint.

Executed this the _____ day of _____, 2011.


                                        Harry Edwin Miles
                                        Reg. No. 17768-112
                                        Pro Se Petitioner
                                        Federal Correction Complex
                                        Victorville Medium 1
                                        Post Office Box 5300
          (Seal)                        Adelanto, CA 92301-5300


## IX.                    VERIFICATION

I, Harry Edwin Miles, hereby swears under the pains of penalty for perjury, pursuant to the laws of the United States of America, that the foregoing statements and facts contained herein are true, correct and not meant to mislead. That all matters of law addressed herein are accurate and true, to the best of my current information, knowledge and belief, so help me God. See, 28 U.S.C. §1746.

Executed this the _____ day of _____ 2011.


                                        Harry Edwin Miles
                                        Reg. No. 17768-112
                                        Pro Se Petitioner
                                        Federal Correction Complex
                                        Victorville Medium 1
                                        Post Office Box 5300
          (Seal)                        Adelanto, CA 92301-5300

X.                     **COMPLIANCE WITH WORD COUNT**

I, Harry Edwin Miles, hereby certify that the foregoing Extraordinary Writ of Habeas Corpus as Authorized by the Constitution for the United States of America. Complies with the Rule of the Supreme Court, specifically Rule 34(h), which allows for this Petition to contain no more than 9000 words. Actual word count is 8991. All other conditions thereto have also been met.

Pursuant to 28 U.S.C. 1746, I swear that the foregoing is true, correct and not meant to mislead, so help me God.

Executed this the _____ day of _____, 2011.

                                        Harry Edwin Miles
                                        Reg. No. 17768-112
                                        Pro Se Petitioner
                                        Federal Correction Complex
                                        Victorville Medium 1
                                        Post Office Box 5300
          (Seal)                        Adelanto, CA 92301-5300

## XI.    CERTIFICATE / PROOF OF SERVICE

I, Harry Edwin Miles, certify that a true and correct copy of the following papers: (1) REQUEST TO PROCEED IN FORMA PAUPERIS, WITHOUT PREPAYMENT OF FILING FEES WITH DECLARATION IN SUPPORT; (2) REQUEST FOR EXTRAORDINARY WRIT OF HABEAS CORPUS AS AUTHORIZED BY THE CONSTITUTION FOR THE UNITED STATES OF AMERICA; (3) EXHIBITS. Was served on the following:

UNITED STATES SUPREME COURT
Attn: William K. Suter, Clerk of the Court
1 First Street, N.E.
Washington, D.C. 20543-0001

Bearing Certified Mail Receipt No. 7010 3090 0002 2444 0460; and

UNITED STATES SOLICITOR GENERAL
Room 5614
DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue
Washington, D.C. 20530-0001

Bearing Certified Mail Receipt No. 7010 3090 0002 2444 0484.

By placing said postage pre-paid envelope in the mail box provided for legal mail by the institution.

Pursuant to 28 U.S.C. §1746, I swear under the pains of penalty for perjury that the foregoing is true, correct, and not meant to mislead, so help me God.

Executed this the ____ day of _____, 2011.

                                        Harry Edwin Miles
                                        Reg. No. 17768-112
                                        Pro Se Petitioner
                                        Federal Correction Complex
                                        Victorville Medium 1
                                        Post Office Box 5300
          (Seal)                        Adelanto, CA 92301-5300

- 40 -