UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
DENVER DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
|    Plaintiff/Respondent § | |
| § | 1:10-cr-00317-REB-2 |
| v. § | |
| § | 10-cv-01073 |
| RICHARD KELLOGG § | |
| ARMSTRONG § | Affidavit |
|    Defendant/Petitioner § | |
| § | Verified |

### EMERGENCY MOTION TO DISMISS FOR EVIDENCE OF PROSECUTORIAL MISCONDUCT

Comes now, Petitioner, unrepresented, and hereby moves the court for dismissal of this case with prejudice based on evidence of prosecutorial misconduct, then retaliation when that prosecutorial misconduct was discovered and was to be presented to the court.

A.    History

Petitioner was indicted on or about June 6, 2010, charged with violations of Counts one through three allege mail fraud. Counts four through seven allege filing false claims against the united States.

Petitioner is currently incarcerated, denied bond, based on statements and allegations of the prosecution team. However, evidence now obtained by the defense establishes that the prosecution team has committed multiple

1

violations of fraud in order to confine Petitioner and in order to proceed with a fraudulent conviction.

### B.  Corrupted Testimony is Illegal

Across the nation, judges, prosecutors and the police are running amok, engaging in a rape and pillage of the U.S. Constitution, abusing the laws, their briefcases, gavels, badges and their black robes to terrorize, retaliate and intimidate members of the citizenry who have the courage to stand up to their arbitrary and wrongful arrests, malicious prosecutions and rulings, who seek to expose the cover-ups of abuse and corruption in the justice system and challenge their abuse of parties whom appear before them seeking justice and redress of grievances.

The outing of the firing of federal prosecutors based on politics and the egregious prosecutorial misconduct by North Carolina prosecutor Mike Nifong in the Duke rape case are clear indications that our Republic is on a slippery slope to destroying democracy.

Police are abusing their powers, arresting people who dare to criticize the government, arresting people for taking pictures of police officers or simply taking pictures in public places, who wear a t-shirt bashing different Presidents and for reporters who dare to look further than the

2

news release handed out and work to expose government corruption. The prosecutors and low level courts are condoning it, resulting in ruining people's lives, causing wrongful incarcerations, trying to label their critics as cuckoo, all in an effort to cover up their wrongful actions, in essence fueling the cancer of governmental interference and corruption that has become pervasive in today's society.

"Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects .... That is why freedom of speech, though not absolute, ... is nevertheless protected against censorship or punishment", the Sixth Circuit Court of Appeals ruled in February. In courts nationwide, judges are claiming it's the citizens who are intimidating the judiciary because they use their voice, blogs, computers, emails—and exercise those freedoms guaranteed them by the Bill of Rights—freedom of speech, expression and press—to criticize the runaway judiciary who believe they are autonomous, shouting a defense of judicial independence as they engage in judicial homicide with the stroke of a pen as Florida Judge George Greer did in the Terri Schiavo case or as the egotistical Ohio judges like retired visiting judge Richard Markus, Ronald Bowman and David Faulkner did in the Baumgartner case, totally disregarding the U.S.

3

Constitution in their overzealous approach to retaliate against and silence Elsebeth Baumgartner. Instead of investigating the merits of her allegations, the criminal justice system of northern Ohio has teamed together to try to squelch her totally with the creed "hang together or assuredly we shall all hang separately".

The Sixth Circuit Court of Appeals in Cincinnati has ruled that citizens have a right against government retaliation, not just in Ohio but across America. People have the right to speak out without retaliation.Public confidence in the criminal justice system is eroding from the town courts to the Supreme Court and members of the judiciary, prosecutors offices and police agencies have no one to blame but themselves.

It appears that Ohio, Florida and New York aren't exempt from a runaway judiciary. In fact, it appears that they might be leading the pack.

The powers-that-be in Ohio, where the spotlight on public corruption has been aglow with ethics convictions of Gov. Bob Taft, the conviction of GOP fundraiser and Taft appointee Thomas Noe and and Congressman Bob Ney, have attacked a judicial whistleblower and governmental critic Elsebeth Baumgartner repeatedly, trying to

4

discredit her and have unsuccessfully tried to label her incompetent, trying to make her exposure of their wrongdoing go away.

She has incurred the government's wrath for speaking out and in turn, they have retaliated by maliciously prosecuting her for postings made on the Internet and for statements made in court pleadings which are traditionally immune from defamation and libel.

After being charged with multiple felonies for alleging that retired visiting judge Richard Markus is corrupt and engaged in case fixing, Baumgartner was then arrested for postings on a blog after the Cuyahoga County prosecutor's office claims that she made anonymous derogatory postings on her own blog, directed towards the wife of her former business partner. At best, there may have been a civil claim although even that is doubtful under the Digital Millineum Act of 1964. The Constitution prohibits one being criminally charged an exercise in freedom of speech, express and press, acts expressly protected by the First Amendment.

The government's repeated criminalizing of speech against Baumgartner served to make an example out of her, albeit in violation of her First Amendment rights, and helped to create a chilling effect to

5

intimidate others from speaking out against public corruption. The government set out to make an example of Baumgartner, albeit in violation of her constitutional rights and the right against retaliation.

Even if all of her accusations against public officials were false, and none have ever been investigated or the merits of the charges brought into court, it is unconstitutional to be criminally charged and imprisoned for expression of peaceful speech. The primary reason for the First Amendment is for people to be free to criticize the government and its officials without fear of retaliation by that government.

Freedom of speech, though not absolute…is nevertheless protected against censorship or punishment and the Constitution protects First Amendment speech activity, keeping it free from unlawful police harassment and inference.

This was underscored in the recent Sixth Circuit Court of Appeals decision in Center of Bio-ethical Reform v. City of Springboro et.al. http://caselaw.lp.findlaw.com/data2/circs/6th/063284p.pdf

The same Constitution, same First Amendment protection applies for whistleblowers and government critics who are targeted by the

6

government for disfavored treatment—including arrest, unlawful incarceration, financial ruin and emotional turmoil—-because they dare to try and expose government corruption.

It took nearly five years of litigation but ultimately the Center for Bio Ethical Reform (CBR), a non profit education foundation, has been victorious in a lawsuit against two Ohio law enforcement agencies and the FBI.

The court decision said that a reasonable jury could find that the officers were motivated to detain the protestors partially because the posters' content and concern by at least one officer that the photographs should be kept out of the sight of children. The ruling also said that the officers stopped the protestors because they were wearing body armor and Kevlar helmets which caused concern that they might be involved in criminal activity. However, the initial investigation found no evidence to justify why the protestors were held for three hours and a reasonable officer would have known that detaining the group because of their protests would violate their right to free speech.

The appeals court ruled that the district court had correctly found that CBR had "engaged in protected activity" and had a First Amendment

7

right not to be retaliated against for doing expressing their opinions and engaging in free speech.

"Plaintiffs argue, in their brief on appeal, that the district court erred in granting summary judgment on their First Amendment claim because, in their view, defendant officers stopped and detained them in retaliation for the message expressed on the sides of the trucks and have consequently chilled their free expression. Analyzing Plaintiffs' claim as one of retaliation for exercise of free speech rights, the district court concluded that the record did not show Plaintiffs' exercise of constitutional rights, rather than concern for public safety, motivated the stop. Specifically, the court found as a matter of law that, when stopped for a traffic violation, and found to be in possession of police equipment, radio equipment, body armor and Kevlar helmets, a three hour detention would not chill a person of ordinary firmness from continuing in this particular activity, participation in the public debate on one of the most contentious issues in society today. The court further concluded that the officers were protected by qualified immunity since their conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known.""

8

That ruling didn't fly in the higher court where the Constitution and First Amendment prevailed.

"We first consider whether "the facts alleged show the [defendants'] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Next, we determine whether that right was "clearly established" at the time of the alleged violation. *Id.* Applying this inquiry while viewing the facts in the light most favorable to Plaintiffs, the district court erred in granting summary judgment on this claim.

*Plaintiffs' Right Against Retaliation*

"As a threshold matter, we must determine whether, when "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. We evaluate claims that state actors retaliated against a claimant in response to his exercise of free speech under the framework generally set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977). Under *Mount Healthy* and its progeny, a plaintiff must show that (1) he was participating in a constitutionally protected activity; (2) defendant's action injured plaintiff in a way "likely [to] chill a person of ordinary firmness from"

9

further participation in that activity; and (3) in part, plaintiff's constitutionally protected activity motivated defendant's adverse action. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998) (internal citations omitted); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Once a plaintiff raises an inference that the defendant's conduct was motivated in part by plaintiff's protected activity, the burden shifts and defendant "can demonstrate that it would have taken the same action in the absence of the protected activity." *Arnett v. Myers*, 281 F.3d 552, 560-61 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 399). The inquiry of "whether activity is 'protected' or an action is 'adverse'" is context-specific. *Thaddeus-X*, 175 F.3d at 388.

"The First Amendment generally protects Plaintiffs' right to display signs communicating their views on abortion, and "[t]he fact that the messages conveyed by those communications may be offensive to their recipients does not deprive them of constitutional protection." *Hill v. Colorado*, 530 U.S. 703, 714-15 (2000); *see also Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949) ("Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects . . . . That is why freedom of speech, though not absolute, . . . is nevertheless protected against censorship or

10

punishment."). The district court correctly found that Plaintiffs had "engaged in protected activity," (J.A. at 116), and Defendants do not argue otherwise. We next consider whether the adverse action "would chill or silence a 'person of ordinary firmness' from future First Amendment activities." *Thaddeus-X*, 175 F.3d at 397 (citation omitted) (noting the "standard is amenable to all retaliation claims"). Here, Plaintiffs need not show they were actually deterred from exercising their right to free speech, but rather must show the actions were "capable of deterring a person of ordinary firmness from exercising his or her right[s]." *Id.* At 398. A chilling effect sufficient under this prong is not born of *de minimis* threats or "inconsequential actions," but neither does the requisite showing permit "solely egregious retaliatory acts . . . to proceed past summary judgment." *Id.*

"Deprivation of one's liberty of movement can hardly be classed "inconsequential;" indeed, the Founders endeavored scrupulously to protect this liberty in the Constitution. *See* U.S. const. amend. IV; U.S. const. amend. XIV. A two and one-half hour detention absent probable cause, accompanied by a search of both their vehicles and personal belongings, conducted in view of an ever-growing crowd of on-lookers, would undoubtedly deter an average law-abiding citizen from similarly

11

expressing controversial views on the streets of the greater Dayton area. *See McCurdy v. Montgomery County*, 240 F.3d 512, 520 (6th Cir. 2001) (impliedly acknowledging an arrest without probable cause constitutes adverse action of sufficient consequence); *cf. Lucas v. Monroe County*, 203 F.3d 964, 974 (6th Cir. 2000) (loss of business after being removed from a police station's rotating call list sufficient to "deter the average wrecker service operator" from similarly criticizing defendant sheriff).

"Finally, we evaluate the motivation for Defendants' actions. Plaintiffs argue that their speech motivated Defendants to stop and detain them. Specifically, Plaintiffs aver that Defendants knew their trucks were used to send an anti-abortion message prior to the challenged stop, that Defendants' post-incident reports label them as "anti-abortionists," that Agent Morris profiled them as domestic terrorists on the basis of their cause, that Defendants took photographs of the sides of Plaintiffs' trucks, and that Defendants made various comments purportedly criticizing Plaintiffs' method of expressing their message"

Since 911, the government has tried to justify its unconstitutional actions against the public by labeling reporters, lawyers and everyday

**citizens who dare to criticize government operations as being paper terrorists or domestic terrorists.**

**Although police and prosecutors nationwide, from the towns up to the federal government, continually assault and try to diminish the freedoms guaranteed to us by the U.S. Constitution, the Constitution remains the Supreme law of the land. The George Greers, Richard Markuses, Bowmans and Faulkners need to remember that the same U.S. Constitution that grants them the right to claim judicial independence is the same U.S. Constitution that grants reporters, lawyers and everyday citizens the right to express their views without retaliation.**

### C.   Evidence of Corruption in this Case

Attached as Appendix A is the affidavit of Elyse Del Francia, who was "bribed" by the prosecution team for her testimony in this case. Once that attempted bribery occurred, and the government discovered that the bribery would be disclosed, then the witness was subjected to further humiliation and theft of funds in order to discourage her from testifying about the attempted bribery of her testimony.

Due to the attempted bribery of one witness, the presumption now exists that ***all witnesses have been offered bribes or benefits*** in this case in order for the government to obtain a conviction. The government can not now overcome the presumption.

It is common knowledge that the government obtains a 99 percent conviction rate in federal criminal cases.

Such a conviction rate presumes one of two scenarios: first, that the prosecutors in federal criminal cases are such geniuses that their conviction rate is much higher than in any other country in the world because of their excellent work ethic, their attention to detail, and their belief in integrity of the government. One only needs to drive by a prosecutors' office at 6 p.m. on any evening to determine that that presumption is false.

Alternatively, the presumption is that the prosecutors can only win by misrepresenting and/or manipulating the facts of the case in order to obtain convictions, plus bonuses and benefits from obtaining those convictions.

In this case, evidence clearly establishes the second precedent, that the prosecutors have no code of ethics, no morals, and rely on unscrupulous agents to obtain information that is clearly illegal.

Petitioner invokes the maxim of law, that notice to the principal is notice to the agent, and notice to the agent is notice to the principal.

14

Petitioner also invokes the maxim of law that the right against retaliation is absolute according to the First and Fifth Amendments of the Constitution.

Petitioner has been investigating prosecutorial misconduct and attempted coercion of witnesses in this case, after evidence recently was received from those potential witnesses of such threats. The coercion of witnesses violates Petitioner's 1st, 5th, 6th and 8th Amendment rights according to the Constitution. Such coercion is also a violation of federal statutes and constitutes criminal activity by agents of the government. While the government has the right to prosecute vigorously, its officers do not have the right to threaten and intimidate witnesses in order to obtain unjust ends. Petitioner, requests that the court forward a copy of the report once it is prepared to the Office of Eric Holder within 24 hours as is required by statute, in order that the statutory authority for agents of the government to be investigated, be pursued vigorously.

Petitioner is requesting immunity from prosecution and retaliation for witnesses identified, that all attempted threats and collections against them be immediately dismissed, and that all evidence of harassment and threats of the government in this case be brought forward.

15

### E. Prayer for Relief

Wherefore, premises considered, Petitioner moves this court for;

1. An order dismissing this case for prosecutorial misconduct;

2. A referral to the Office of Eric Holder, Attorney General of the United States, for investigation of threats and intimidation of witnesses in this case;

3. An immediate order to cease and desist the illegal activity of agents and prosecutors in this case, including retaliation, retribution, threats and actions of the government;

4. Immediate dismissal of any actions by the government against the witness(es) identified in this motion with prejudice;

5. Sanctions against the employees of the government who are deemed to have violated their oaths of office and statutory authority, as determined by the court;

6. For such other and further relief as is deemed just and proper.

**Unsworn declaration under penalty of perjury 28 USC 1746(1), an affidavit of truth**

Respectfully submitted,
By *[signature]*
Richard Kellogg Armstrong
20413-298
9595 West Quincy Avenue
Littleton, CO 80123

## CERTIFICATE OF SERVICE

On this the __31ST__ day of __August, 2011__, a true and correct copy of the foregoing was served on the U.S. Attorney as opposing counsel in this case as is required by law.

*[signature]*

Richard Kellogg Armstrong

17

MICHAEL K. HAMSTREAMS
20413-298
FEDERAL DETENTION CENTER
ENGLEWOOD
9595 W. QUINCY AVE.
LITTLETON, CO 80123

LEGAL MAIL

**THE ENCLOSED LETTER WAS PROCESSED THROUGH SPECIAL MAILING PROCEDURES FOR FORWARDING TO YOU. THE LETTER HAS NEITHER BEEN OPENED NOR INSPECTED. IF THE WRITER RAISES A QUESTION OR PROBLEM OVER WHICH THIS FACILITY HAS JURISDICTION, YOU MAY WISH TO RETURN THE MATERIAL FOR FURTHER INFORMATION OR CLARIFICATION. IF THE WRITER ENCLOSES CORRESPONDENCE FOR FORWARDING TO ANOTHER ADDRESSEE, PLEASE RETURN THE ENCLOSURE TO THE ABOVE ADDRESS.**

DATE/INITIALS

**CORRECTIONAL SYSTEMS MANAGEMENT
FEDERAL CORRECTIONAL INSTITUTION
9595 WEST QUINCY AVE, LITTLETON, CO. 80123**

**RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
SEP 08 2011
GREGORY C. LANGHAM
CLERK**

CLERK OF THE COURT
U.S. DISTRICT COURT COLORADO
901 19TH ST., ROOM A 105
DENVER, CO 80294-3589

7010 3090 0002 7265 8121

