```
                                    FILED
                              U.S. DISTRICT COURT
                              DISTRICT OF COLORADO

                              2011 NOV 15  AM 11:08

                              GREGORY C. LANGHAM
                                     CLERK

                        BY_____DEP. CLK
```

November 8, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
DENVER DIVISION

UNITED STATES OF AMERICA
    Plaintiff

v.                                          No.10-cr-00317-REB-2

RICHARD KELLOGG ARMSTRONG
    Defendant

---

**MOTION FOR LEAVE TO FILE A MOTION FOR REHEARING FOR PRETRIAL RELEASE ON BOND PURSUANT TO 8TH AMENDMENT**

---

### REQUEST THAT THE COURT RECOGNIZE
Haines v. Kerner 404 U.S., 519

    Richard Kellogg Armstrong, Petitioner, pro se, unrepresented renews his motion to this Court for leave to file a Motion to order his release on bond pending trial. Trial in this matter is not scheduled at this time. Mr. Armstrong's continued confinement is part of a long and undisguised effort to prolong his confinement by any measure or method. The Government used smoke and mirrors to keep the Defendant confined based on the fact that the Defendant had a passport, a pilots license and a home in Mexico. If the fact that a defendant had a passport was grounds to hold a defendant, then no person with a passport would ever be allowed bond! There is no compelling reason to continue to hold Mr. Armstrong pending trial on a non-terrorism offense, particularly given his willingness to wear an electronic bracelet to guarantee continual monitoring.

    Petitioner's previous attorney, Mr. Kornfeld, petitioned the court to release Mr. Armstrong only to Arizona. However, Mr. Kornfeld was advised prior to both hearings that Petitioner had two residences in the Denver area to live which is still the case. That fact should satisfy the tracking or reporting concerns of the prosecution. Petitioner will furnish verifiable residence information to the court.

    Federal statutes have outlined the factors that a Court should consider when making a determination of pre-trial release. All of these factors point in the favor of release. Mr. Armstrong is not a danger to the community, there is no risk that Mr. Armstrong will not appear for trial; Mr. Armstrong has been charged with a non-violent offense; Mr. Armstrong has significant family ties to the region; and there is no record of criminal activity, drug use or alcohol use. Moreover, Mr. Armstrong is willing to submit to conditions, including the use of electronic monitoring, that assures the Court and Government that a pre-trial release will occur incident free and that the Defendant will appear for trial.

I. LEGAL STANDARD

    The Government has the burden to prove by clear and convincing evidence that Mr. Armstrong's release would be detremental to the safety of the community or to prove by a preponderance of the evidence that release would not assure Mr. Armstrong's attendance at trial. 18 U.S.C. , 3142 (e),(f); See, e.g., United States v. Xulam, 84F.3d 441,442 (D.C. Cir.1996); United States v. Manuel-Duarte, 2008 U.S. Dist. LEXIS 35966 (W.D.N.C. Apr.15, 2008). The Court must consider factors set out in 18 U.S.C., 3142 (g), including the nature and circumstances of the offense charged; the weight of evidence against the defendant; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See, e.g., Xulam, 84 F .3d at 442.

## II. MR. ARMSTRONG POSES NO DANGER TO THE COMMUNITY

Mr. Armstrong has never been and is not a danger to the community. He has never been arrested or accused of any violent behavior; he has been a model prisoner during his confinement. If he were to be released pending trial, he would spend almost all of his time with his family , with whom he has been separated from for the past seventeen months, as well as working on his trial. Mr. Armstrong has one surviving child, and a loving wife who is planning to return to the United States shortly.

His other interactions would be limited to close friends, his attorneys and an expert witness. The government cannot legitimately claim that Mr. Armstrong would pose a danger to the community if he was released for an unspecified number of weeks pending trial. Mr. Armstrong has never been charged with a violent offense and the current charge against him is nothing more than a dispute over tax liability and did not involve any violence.

Very importantly, Petitioner has some health issues that cannot be addressed in prison. Petitioner will discuss in private as necessary.

Petitioner has been a model citizen all of his life, has never been arrested for anything and has the utmost of integrity. He is not a risk of flight.

## III. MR. ARMSTRONG'S ATTENDANCE AT TRIAL IS ASSURED

There is no chance that Mr. Armstrong will flee the area. If Mr. Armstrong were to be released pending trial, such an action would violate his principles, betray his family, betray his friends, subject him to considerable financial loss and would force him to live in the shadows for the remainder of his life.

No one can remain in Mexico for more than thirty days without a passport and must obtain a tourist permit/visa at a Port of Entry that must be renewed every thirty days . Also, no one has seen Mr. Armstrong's passport since it was handed to the Border and Customs Agent at Calexico, California, on his return from Mexico where he was arrested.

No flight, commercial or private, may be made crossing either border without a prefiled Homeland Security, precleared flight plan that includes complete pilot, aircraft and passenger information; names, home addresses, home contact information, pilot license and passport data. The prosecution's blatant, uninformed statements that one or more of Mr. Armstrong's pilot licensed friends would commit a felony by smuggling Mr. Armstrong across the border is absurd and borders on arrogance and lack of knowledge of the facts. The Homeland Security information is transmitted to the designated Mexican Port of Entry as well as the estimated time of arrival and the route of flight is tracked.

The prosecution and their key witness have made numerous unsubstantiated claims that the petitioner has funds in the order of $350,000 to $600,000 hidden offshore allowing for a comfortable retirement in Mexico. The fact is simply not true. Mr. Kornfeld and Mr. Armstrong, with only limited records to work with because he did not have access to records in Arizona, accounted for all but about $90,000.

The Prosecutor's claim of Petitioner's connections with Canada and Germany are also baseless. The IRS claimed a Germany connection but that was the result of their tracking a wire transfer to Belize where a German bank was nothing more than an intermediary bank in the wire transfer process. The prosecutor should know better. All wire transfers to entities in Belize were for the purpose of repayment to lines of credit that were secured by assets.

Mr. Armstrong is a figure who has continued his struggle on the basis of principles against abuses by the Justice Department. He has maintained what he and his supporters view as an honorable position in contrast to his treatment by the Justice Department and maintains his innocence in this instant case. Were Defendant to flee during the period of his pre-trial release, Mr. Armstrong would have to discard core religious and political principles, violate promises to his family and supporters and put his family in danger.

Mr. Armstrong is not accused of any crime of terrorism that would prompt him to flee before trial and the Justice Department cannot show that he is withholding criminal evidence. It would be completely ridicules for him to attempt to flee the country without a passport under such circumstances. First, it is very unlikely that he could succeed without travel documents. Second, even if he were to be successful, he would live the life of a fugitive- unable to even contact his children or grandchildren in the United States and be unable to move freely in speaking with groups around the world. Becoming a fugitive would pose a threat to both his health and even his life. Mr. Armstrong has already been forced to sell assets to support his family and pay his legal

expenses.

The statement made by a Phoenix area IRS agent who said that Mr. Armstrong said that his assets were out of reach of the IRS was absolutely correct. All of his personal and real property were previously secured by the filing of a Commercial Security Agreement and a Legal Notice and Demand backed by UCC filings, both by the Petitioner and his wife with 18 State, Federal and International Agencies that include the Arizona Secretary of State, Arizona Attorney General, Timothy Geithner, Secretary of the Treasury, Douglas Schulman, IRS Commissioner and Eric Thorson, Secretary of Agriculture as well as IRS, Puerto Rico where the IRS is based. Please see Petitioner's public filing on his website www.getnotice.info/rka.html. And, by the way, IRS agent Flynn hasn't bothered to disclose the verified fact that the liens placed on the Petitioner's real properties, the levy of approximately $10,000 from Petitioner's bank account and the seizure of Petitioner's aircraft were done fraudulently and unlawfully and also that the IRS has never acknowledged that Petitioner discharged the alleged $1.6 million dollar debt to the IRS FIVE TIMES in 2009 and 2010. IRS actually owes the Petitioner $6.4 million dollars.

Regarding Mr. Armstrong's eventual trial, he would also be running a great risk were he to flee. He has already served seventeen months in prison as a flight risk, without due process. Were he to flee during the period of his pretrial release, he would be subjecting himself to a significantly greater period of incarceration, something he surely wishes to avoid. Finally, Mr. Armstrong believes that the instant indictment is fatally flawed and that even if convicted, he has a strong argument on sentencing. It would be irrational to risk a life as a fugitive or a long sentence rather than fight a multiple count indictment.

IV. THE COURT CAN IMPOSE RESTRICTIONS THAT SHOULD SATISFY THE GOVERNMENT'S CONCERNS

Even if the court were not entirely satisfied that the pre-trial release on his own recognizance in the Denver area would ensure Mr. Armstrong's attendance at trial, there are a number of tools the Government can utilize to satisfy the courts doubts. As Section 3142 states, once the Court has made the determination that a defendant does not qualify for release under section 3142(b), the judicial officer must follow Section 3142(c). The judicial officer must impose the least restrictive condition or combination of conditions necessary to "reasonably assure" the defendant's appearance as required and to "reasonably assure the safety of any person and the community." 18 U.S.C. 3142 (c)(1)(B).

Mr. Armstrong is more than willing to have certain conditions placed upon his release if it allows for him to prepare for trial. Such detention, electronic monitoring, regular calls or visits with pre-trial services, or any other measures the Court deems necessary. Mr. Armstrong only wishes to spend time with his family and properly prepare for trial.

For the foregoing reasons, Mr. Armstrong respectfully moves the Court for authorization to file a Motion that he be released on bond prior to trial that is not yet scheduled but estimated to occur about April, 2012.

*Richard Kellogg Armstrong*, pro se
Petitioner

## CERTIFICATE OF SERVICE

I hereby certify that on the ninth day of November, 2011, I mailed the foregoing to the Clerk of Court via First Class Certified U. S. Mail #7010 3090 0002 7265 8152.

*Richard Kellogg Armstrong*

RICHARD K. ARMSTRONG
20413-298
FEDERAL DETENTION CENTER
ENGLEWOOD
9595 QUINCY AVE.
LITTLETON, CO 80123

LEGAL MAIL

SENT 

7010 3090 0002 7265 8152

CERTIFIED MAIL

CLERK OF THIS COURT
U.S. DISTRICT COURT COLORADO
901 19TH ST.
DENVER, CO 80294-3589

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
NOV 14 2011
GREGORY C. LANGHAM
CLERK

CR