No. _____

In The

## TENTH CIRCUIT COURT OF APPEALS

_____

Richard Kellogg Armstrong, pro se, Petitioner,

-vs-

United States District Court for the District of Colorado, Denver Division

The Honorable Robert E. Blackburn, Judge

United States Courthouse, Room A 105

901 19th Street

Denver, CO 80294


Kenneth Mark Harmon, US Attorney                    Case below:  1:10-cr-00317-REB-2

1225 17th Street East # 700

Denver CO 80202


Respondents

_____


## On Petition for a Common Law Writ of Mandamus and/or Prohibition to the

## United States District Court for the District of Colorado, Denver Division

## PETITION FOR A WRIT OF MANDAMUS AND/OR PROHIBITION

———————

*Richard Kellogg Armstrong, pro se*
Reg. No. 20413-298
Englewood Federal Correctional Institution
9595 West Quincy Avenue
Littleton, CO 80123

### *Questions Presented*

- Whether a federal district court must follow the Constitution and declare a statute invalid when it is in violation of Article I, Section 5, Clause 1, of the Constitution
- Whether a district court judge must follow prevailing case law from the Supreme Court in *Carol Ann Bond v. United States*, No. 09-1227, which states that any statute repugnant to the Constitution is *void, ab initio*.
- Whether a district court may violate 18 USC 4001(a), a statutory requirement, which states that no citizen of the United States may be imprisoned without statute.
- Whether a judge who exhibits a prima facie case of bias by ignoring the Constitution commits structural error by remaining on a case in which prejudice is clearly shown?

### *List of Parties*

#### *Petitioner*

- **Richard Kellogg Armstrong -**

#### *Respondents*

- **Kenneth Mark Harmon** – The Attorney for the Government who is responsible for the enforcement proceedings in this case.
- **The United States District Court for the District of Colorado, Denver Division** – The District Court oversaw the proceedings in the criminal case, and issued the order for the illegal confinement
- **The Honorable Robert E. Blackburn,** Trial Judge – The District Court judge who presided over the proceedings in Case No. 1:10-cr-00317-REB-2

### *Table of Contents*

**QUESTIONS PRESENTED** *

**LIST OF PARTIES** *

     Petitioner *

     Respondents *

**PETITION FOR A WRIT OF MANDAMUS AND/OR PROHIBITION** *

**OPINIONS BELOW** *

**JURISDICTION** *

**CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED** *

     United States Constitution – Article 1, Section 5, Clause 1

**STATEMENT OF THE CASE** *

**REASONS FOR GRANTING THE WRIT** *

**CONCLUSION** *

In The

**TENTH CIRCUIT COURT OF APPEALS OF THE UNITED STATES**

Richard Kellogg Armstrong, pro se, Petitioner,

-vs-

United States District Court for the District of Colorado, Denver Division

The Honorable Robert E. Blackburn, District Court Judge

Kenneth Mark Harmon, U.S. attorney,

Respondents

———————

**On Petition for a Common Law Writ of Mandamus and/or Prohibition to the**

**United States District Court for the District of Colorado, Denver Division**

**The Honorable Robert E. Blackburn**

**United States Department of Justice, represented by AUSA Kenneth Mark Harmon**

———————

### Petition for Writ of Mandamus and/or Prohibition

Petitioner Richard Kellogg Armstrong does hereby petition this Honorable Court for the issuance of a Writ of Mandamus and/or Prohibition to compel the Respondents to issue an order declaring that Public Law 80-772 is *void ab initio*, that Petitioner is actually innocent of any alleged crimes as a matter of law, and that Petitioner is released from his illegal confinement.

### *Opinions Below*

All relevant orders and documents are part of the record in case number 1:10-cr-00317-REB-2, and can be found in the records of the case.  Some of the relevant records, which prove judicial bias in the case include:

Complaint, dated 5/18/10

Indictment, 6/8/10

Superseding Indictment, 2/15/11

Order denying Motion to Dismiss, 3/23/11

Stricken Motion to Dismiss, 3/25/11

### *Jurisdiction*

This Court has jurisdiction under the All Writs Act, 28 U.S.C.A. §1651, and Rule 21 of the Federal Rules of Appellate Procedure.

### *History of the Case*

Petitioner was charged with Frauds and Swindles, False or Fraudulent Claims, Monetary transactions in property derived from specified unlawful activity, and conspiracy to Defraud the Government by indictment on June 8, 2010.  Doc. 5.

A complaint was filed against Petitioner on 5/18/10 in the District Court for Colorado, Denver Division.  Doc. 1.

Petitioner was indicted on 6/08/10.  Doc 5.

A superseding indictment was filed on 2/15/11.  Doc 140.

A motion to answer a certified question of law was filed on 11/18/11.  Doc. 361.

Basically, the rest of the proceedings are a clear example of bias by the judge, in which he has repeatedly blocked Petitioner from attempting to protects Petitioner's Constitutional rights and prevented Petitioner from his right of access to the court.

### *The Fundamental Rights of the Petitioner*

Petitioner has, as a citizen of the United States, a fundamental and absolute right to due process of law pursuant to the 5th Amendment.  Petitioner has, as a citizen of the United States, a fundamental and absolute right of Access to the Courts pursuant to the 1st Amendment.  Petitioner has, as a citizen of the United States, a fundamental and absolute right to be free from cruel and unusual punishment pursuant to the 8th Amendment. Petitioner has an absolute right, to enforce the Rule of Stare Decisis and Supreme Court holdings, including the ruling in *Bond v. United States*, No. 09-1227, 6/16/11, a 9-0 vote. This court has a duty to the Constitution to uphold Petitioner's rights and to make sure that inferior courts uphold Petitioner's rights.  See *Ward v. Maryland* 79 US 419, 430, (1870). Jurisdiction of this court is based on Article III of the Constitution.

### *Only this Court Can Act*

Because the lower court is acting without jurisdiction, and has abdicated its duty to act, jurisdiction of the lower court should be suspended until the higher court rules, and the higher court has not had time to rule , therefore, a judicial stalemate exists. In order to resolve the judicial stalemate, a writ of mandamus and/or prohibition  is necessary from a court that has the authority to order the United States District Court for the District of Colorado, Denver Division,  to stop all actions pending a final ruling in the Tenth Circuit. This court is the only court that has the authority to compel the United States District Court for the District of Colorado, Denver Division, to act. Therefore, adequate relief cannot be obtained by any court other than this court. This court now has jurisdiction over this case and jurisdiction of the district court should be suspended pending a ruling on this writ.

### *Mandamus and/or Prohibition is Proper Remedy*

In the case of *UNITED STATES v. UNITED STATES DISTRICT COURT FOR EASTERN DISTRICT OF TENNESSEE ET AL.* 1954.C06.4, the Sixth Circuit Court of Appeals ruled:

> The United States, through an Assistant Attorney General, has moved this appellate court to issue a mandatory order directing the United States District Court for the Eastern District of Tennessee, Northern Division, to vacate and expunge its order of August 10, 1953, refusing to accept the transfer of this criminal case. An order to show cause why this motion of the United States should not be granted was issued by this court and the same has been duly answered by the district judge to whom it was addressed. He adheres to his original position upon reasoned grounds which brings about a "judicial stalemate"; wherefore, it becomes the duty of this court to resolve the conflict of

7

opinion among trial judges in the same state in this procedural matter which is of practical importance now and perhaps in future cases. Mandamus or a proceeding in the nature of mandamus is the appropriate procedure by which to decide the issue presented. See *United States v. United States District Court*, 334 U.S. 258, 263, 68 S. Ct. 1035, 92 L. Ed. 1351; *Ex parte United States*, 287 U.S. 241, 247, 53 S. Ct. 129, 77 L. Ed. 283; *McClellan v. Carland*, 217 U.S. 268, 280, 30 S. Ct. 501, 54 L. Ed. 762; *State of Tennessee, by Wolfenbarger, etc., v. Taylor*, 6 Cir., 169 F.2d 626, 637, which rather comprehensively reviews the subject of mandamus.

### *Constitutional Duty to Act*

Because the case is forever suspended in a judicial stalemate, this court has a duty to the Constitution to act. This court does not have the option to do nothing. The question before this court isn't if it will act, but what the action should be.

### *Constitutional and Statutory Provisions Involved*

### Primary Issue

Clause 1: Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members, and a Majority of each shall constitute a Quorum to do Business; but a smaller Number may adjourn from day to day, and may be authorized to compel the Attendance of absent Members, in such Manner, and under such Penalties as each House may provide.

### *Subsidiary Issues*

### *United States Constitution – 1st  Amendment*

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

### *United States Constitution – 5th Amendment*

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a

presentment or indictment of a Grand Jury, except in cases arising in the land or naval

forces, or in the Militia, when in actual service in time of war or public danger; nor shall

any person be subject for the same offense to be twice put in jeopardy of life or limb; nor

shall be compelled in any criminal case to be a witness against himself, nor be deprived

of life, liberty, or property, without due process of law; nor shall private property be

taken for public use, without just compensation.

### *United States Constitution – 8th Amendment*

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual

punishments inflicted".  Confinement of a person without authority constitutes peonage

and slavery, in violation of the Constitution of the United States.

### *Statement of the Case*

Petitioner was sued by the United States of America in on 5/18/2010.  Docket 1.

Despite motions to dismiss the case for lack of jurisdiction, and the evidence presented

proving the case, the court has consistently ruled in violation of the Constitution of the

United States and in violation of the judge's oath of office.   Therefore, the court violated

its oath of office, judicial canons, state bar rules, and 28 USC sections 454 and 455.

Petitioner is now in a judicial stalemate regarding his ability to have access to the

court, to protect his Constitutional rights pending final review of the order.

### *Reason for Granting the Writ*

### *The Judicial Stalemate*

Since the trial court refuses to rule on Petitioner's case according to the Constitution, and according to *Bond v. United States*, infra, jurisdiction has now been transferred to the Tenth Circuit, and until the Tenth Circuit rules, Petitioner has no right to defend himself, to protect his property, nor access to the court in the lower court. This court therefore can not ignore this situation. This court has to take some kind of action. With Petitioner's access to the District Court and his right to defend himself suspended, Petitioner would be denied his right of access to the court under the 1st Amendment to the Constitution, his right of Due Process pursuant to the 5th Amendment to the Constitution, and his right to be free from cruel and unusual punishment pursuant to the 8th Amendment of the United States Constitution.

A court must act when it has a duty to act. In the 1908 case *ex parte Young* states:

> Under these circumstances, the language of Chief Justice Marshall in *Cohens v. Virginia*, 6 Wheat, 264, 404, is most apposite. In that case he said: "It is most true that this court will not take jurisdiction if it should not; but it is equally true that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the Constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would **be treason to the Constitution**. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is to exercise our best judgment, and conscientiously perform our duty."

Because this situation creates a judicial stalemate, this court has a duty under the Constitution to fix the stalemate so that Petitioner may be declared actually innocent of his illegal charges.  This court is the only court that can make the District Court act to

allow Petitioner to be declared actually innocent. This court therefore must "do something" to fix the stalemate. For this court to do nothing would be a violation of the mandate of *ex parte Young*.

### *Remedies available to this court*

This court is under a duty to the Constitution to resolve the judicial stalemate. The stalemate can be resolved through mandamus, and or prohibition, or this court, having acquired jurisdiction through a judicial stalemate, could resolve the stalemate by addressing the underlying issues that created the stalemate. Thus, this court has subject matter jurisdiction over all the underlying issues which led to, or could have led to, the stalemate. It would therefore be appropriate for this court to make findings and issue opinions and orders so as to preclude the possibility of the problem from reoccurring.

There are several things this court might do. This court could order the District Court and the Department of Justice to stop all proceedings pending a final ruling on this petition, since jurisdiction has now transferred to the court of appeals.

This court could also make findings of fact, conclusions of law, and rulings to prevent future judicial stalemates.

This court could also issue opinions as to the effectiveness of judicial safeguards to ensure the due process rights of litigants, especially pro se litigants, are upheld. The court should also declare Petitioner actually innocent.

### *Should the Court of Appeals Rule?*

This court must do something to resolve the issue. One solution is for the District Court and the Plaintiff to stay all proceedings pending a final ruling on from the Tenth Circuit on this order. This solution would protect the rights of Petitioner pursuant to the 1st, 5th, and 8th Amendments to the Constitution.

Petitioner contends that the framers of the Constitution believed that justice was more than a slogan and that the Rules really are the Rules and that there is an expectation that the courts follow their own rules. Petitioner contends that this court has a duty to make sure state courts obey their own rules, and to make it clear that if a judge breaks the rule, that the higher courts of the state have a duty to correct the lower court.

Thus, if this court fails to act it will set very dangerous precedents that will eventually undermine the ability of the judicial system to properly function. Therefore, this court must act.

### *Motion for Order to Show Cause*

Petitioner contends that it would be appropriate for this court to order the Respondents to show cause why this writ of mandamus and/or prohibition should not issue and to show cause why Petitioner should not be declared actually innocent of any alleged crimes pursuant to a statute that was never Constitutionally passed, Public Law 80-772.

In the judicial stalemate in the Tennessee case cited above, the Sixth Circuit Court issued an order to show cause why the writ of mandamus should not be granted, and the judge complied with the order. The order to show cause was necessary in order for that court to make a determination as to how to end the judicial stalemate.

12

### *Issue Presented*

The district courts of the United States obtain their jurisdiction pursuant to 18 USC section 3231. The Constitution allowed for one Court, the Supreme Court, but stated that Congress could create other inferior courts as deemed necessary. Therefore, the district and appellate courts of the United States are courts of limited jurisdiction. 18 USC section 3231 (1948) is the only statute that grants the federal district courts authorization to prosecute crimes, whether Title 18 crimes, Title 21 crimes, Title 26 crimes, or crimes under any other statute.

Without a valid Section 3231, the federal courts would have no jurisdiction to prosecute any crime. 18 USC section 3231 is part of the enactment of Title 18, Public Law 80-772 in the 80th Congress. Under the *in toto* rule, if Public Law 80-772 is unconstitutional, then 18 USC section 3231 is unconstitutional.

Public Law 80-772 is unconstitutional and *void ab initio* because no quorum existed on May 12, 1947 when the House of Representatives voted on Public Law 80-772 by a vote of 38 to 6 when 435 members were in Congress. A further quorum violation occurred on June 22 and 23, 1948, when the Speaker of the House and President of the Senate signed Public Law 80-772, after Congress had adjourned on June 20, 1948 at 7 A.M., sine die. Either or both of the quorum violations is a violation of Article I, Section 5, Clause 1 of the Constitution, and renders the statute void ab initio.

The government can not obtain jurisdiction pursuant to the prior statutes because Title 18 (1940) was repealed in 1948 and Title 18 (1909) can not be used because it is in

violation of the Fair Warning Doctrine.  The government can not obtain jurisdiction

pursuant to the Enrolled Bill Rule, Marshall Field & Co. v. Clark, S.Ct., because it does

not apply on its own terms (signed in Congress in session) and because it was

distinguished by *Munoz-Florez v. United States*, FN 4, S.Ct., and *Clinton v. New York*,

S.Ct.  Thus the court must declare Petitioner actually innocent as a matter of law.

### *Offer of Proof*

Petitioner has witnesses, evidence, and testimony in an offer of proof that Title 18

is void ab initio as no quorum existed on May 12, 1947 when the House voted on the bill

and further actions were illegal, and that no quorum existed on June 22 and June 23, 1948

when the Speaker of the House and President pro tempore of the Senate signed the bill;

and that 18 USC § 546 (1940) was repealed in 1948; and that the district court could not

obtain jurisdiction over Title 18 crimes under the 1909 act due to the Fair Warning

Doctrine,

The court cannot refuse an offer of proof.

*"Allegations such as those asserted by petitioner, (a pro se litigant), however*
*inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence.*
*Accordingly, although we intimate no view on the merits of petitioner's allegations, we*
*conclude that he is entitled to an opportunity to offer proof."*  Haines v. Kerner, 404 U.S.
519, 522

### <u>*Oaths of Office Bind the Officers of the Court*</u>

The Judge in this case, in order to become a judge, took an oath of office to

uphold the Constitution of the United States.  If in fact, the judge refused to uphold the

Constitution, that would constitute perjury of oath of office.  The judge also is governed

by Canons of Judicial Conduct, 28 USC sections 454 and 455, and the Judge's State Bar Certificate. The Judge is also bound by Supreme Court precedent under the Rule of Stare Decisis, and is required to follow Supreme Court precedent, including Carol Ann Bond v. United States and United States v. Cotton.

The U.S. Attorney took an oath of office to uphold the Constitution of the United States in order to become a US Attorney.  The US Attorney is also is bond by the Prosecutor's Manual and the Laws.  A failure to uphold the Constitution of the United States by the U.S. Attorney would constitute perjury of oath of office.

The facts related to this claim are proven by the Congressional record and which law is proven by the Supreme Court **and the Constitution**:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.  As such, he is in a peculiar and very definite sense the **servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer**.  He may prosecute with earnestness and vigor - indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."
Berger v. U.S., 295 U.S. 78, 88 (1935).

Petitioner invokes *Carol Ann Bond v. United States*, No. 09-1227, 6/16/11, which requires this court to address its own jurisdiction and declare a statute repugnant to the Constitution *void*, and *United States v. Cotton*, 535 U.S. 625, 630 (2002) (the term "jurisdiction" means the court's statutory or constitutional power to adjudicate the case).

No quorum was present on May 12, 1947 when the House of Representatives voted on H.R. 3190.  After the vote of 38 to 6 by the House, all subsequent acts were illegal.  This is the **smoking gun** and can be proven by Congressional records.  No quorum was present on June 22 and June 23, 1948 when the Speaker of the House and

President pro tempore of the Senate "signed" Public Law 80-772 into law. Two Quorum Violations. Two Constitutional violations. **No law. No jurisdiction**. No court of competent jurisdiction has made findings of fact and conclusions of law related to those claims. The only authority the court has is to dismiss the case.

## I.   HR 3190 in the First Session of the 80th Congress

H.R. 3190 was introduced and committed to the Committee ofthe entire House of Representatives on the State of the Union of the First Session of the 80th Congress entitled "Crimes and Criminal Procedure." See House Report No. 304 (April 24, 1947), p. 1.  See also 94 Cong. Rec. D556-D557 (Daily Digest) (charting H.R. 3190).  H.R. 3190 differed from "five … bills which … preceded it … [because] it constitute[d] a revision, as well as a codification, of the Federal laws relating to crimes and criminal procedure."  93 Cong. Rec. 5048-5049 (May 12, 1947).  The bill was intended (1) to revise and compile **all** of the criminal law, (2) to "restate[]" and "consolidate[]" "existing statutes," (3) to "repeal" "obsolete, superseded, redundant and repetitious statutes," (4) to coordinate the Criminal Code with the "Federal Rules of Criminal Procedure" formerly enacted, and (5) to "clarify and harmonize" penalties of the "many acts" passed by Congress which were found to be "almost identical." "The bill was ordered to be engrossed and read a third time, was read a third time, and passed" the House on May 12, 1947, id.; Journal of the House of Representatives ("House Journal"), May  12, 1947, pp. 343-344  Cong. Rec. D556-D557 (showing H.R. 3190's only passage by the House of Rep. on May 12, 1947), sent to the Senate and there "referred … to the Committee on the Judiciary."  93 Cong. Rec. 5121, May 13, 1947; Journal of the

Senate ("Senate Journal"), May 13, 1947, p. 252. [However, the "passage" of the bill, as established by the Congressional record was on a vote of 38 to 6, when 435 members were in Congress and no quorum was in session.] The lack of a quorum voided all actions after that act until a quorum was properly registered. Hinds' Precedents, § 2939, p. 87 ("'The House is not a House without a quorum'")

As passed and enrolled by the House of Representatives H.R. 3190 included at section 3231, Subtitled "District Courts," the following text:

> Offenses against the United States shall be cognizable in the district courts of the United States, but nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof.

H.R. 3190 as passed by the H. of Rep., p. 367, § 3231. See United States v. Sasscer, 558 F. Supp. 33, 34 (D.MD. 1982).

On July 27, 1947, Congress adjourned without the Senate passing H.R. 3190. See 93 Cong. Rec. 10439, 10522 (July 26, 1947). On November 17, 1947, Congress reconvened pursuant to a Presidential proclamation. Yet, Congress again "adjourned *sine die* on December 19, 1947," without the Senate passing H.R. 3190. Kennedy v. Sampson, 511 F.2d 430, 444 Appendix n. 4 (D.C. Cir. 1974).

## II.   HR 3190 in the Second Session of the 80th Congress

The Senate Committee on the Judiciary reported amendments to H.R. 3190 on June 14,

1948, under Sen. Rep. No. 1620. 94 Cong. Rec. 8075 (June 14, 1948); Senate Journal, June 14, 1948, p. 452 (App. 34).[1] Sen. Rep. No. 1620 contained "a large volume of

---

[1]   The Senate approved its Journal for June 14, 1948. Senate Journal, June 15, 1948, pp. 461-462.

amendments" and "the new Federal Rules of Criminal Procedure [were] keyed to the bill and [were] reflected in part II of [the new proposed] title 18." Heralding that, upon passage of the amended bill, "[u]ncertainty will be ended," the Senate wanted "the amendments adopted en bloc," including a new jurisdictional section for Title 18. 94 Cong. Rec. 8721. The report contained only the proposed amendments. See Sen. Rep. No. 1620, pp. 1 & 4.

"[T]he amendments were considered and agreed to en bloc" and then "ordered to be engrossed." 94 Cong. Rec. 8721-8722 (June 18, 1948), Senate Journal, June 18, 1948, p. 506 (H.R. 3190, "as amended," passed the Senate). It was moved that "the Senate insist upon its amendments" by the House (94 Cong. Rec. at 8722); and "[o]rdered that the Secretary request the concurrence of the House of Representatives in the amendments." Senate Journal, supra, p. 506; House Journal, June 18, 1948, p. 688.

The House received the proposed amendments. The Clerk "read the Senate amendments" collectively into the record with which the House concurred. 94 Cong. Rec. 8864-8865 (June 18, 1948); House Journal, June 18, 1948, p. 704 (the "said Senate amendments were concurred in"). Although "[t]he House agreed to the amendments to … H.R. 3190," Senate Journal, June 18, 1948, p. 510, no action was taken on H.R. 3190 as amended.[2] **The Journal of the House of Representatives is devoid of any vote on H.R. 3190 itself on June 18, 1948, and thereafter through adjournment on June 20, 1948.** Moreover, the official historical chart of H.R. 3190 clearly shows the "*only passage*" by the House of Representatives occurring on May 12, 1947, and specifically

---

[2]       The House approved the Journal for June 18, 1948, House Journal, p. 714 (June 19, 1948, approving Journal for "legislative day of … June 17, 1948" – *i.e.*, calendar day of June 18, 1948); id. at p. 669 (showing Friday, June 18, 1948, as "legislative day of Thursday, June 17, 1948"), and the Senate approved its Journal for June 18, 19 and 20, 1948. Senate Journal, July 26, 1948, p. 593.

18

references volume 93, page 5048 of the <u>Congressional Record</u> as the recorded date the House passed the bill.  94 <u>Cong. Rec.</u> D556-D557 (Daily Digest).

### III.   HR 3190:  Actions After Adjournment

With both Houses adjourned, with **no quorum**, disassembled and dispersed, Mr. LeCompte, the Chairman of the Committee on House Administration reported that that committee had found <u>H.R. 3190</u> "truly enrolled." <u>House Journal</u>, legislative day of June 19, 1948, p. 776 (recorded under heading "BILLS AND JOINT RESOLUTIONS ENROLLED SUBSEQUENT TO ADJOURNMENT").[3]  He attached his certificate of enrollment to the **original** <u>H.R. 3190</u> passed by the House on May 12, 1947.  <u>See H.R. 3190, certified after adjournment as "truly enrolled"</u> (as certified by Richard H. Hunt, Director, Center for Legislative Archives, The National Archives, Washington, D.C.). Although never certified as truly enrolled, the Speaker and President pro tempore respectively signed the **Senate's amended <u>H.R. 3190</u> on June 22 and 23, 1948**.  94 <u>Cong. Rec.</u> 9353-9354; <u>House Journal</u>, legislative day June 19, 1948, p. 777; <u>Senate Journal</u>, legislative day June 18, 1948, pp. 578-579.  <u>National Archives & Records Adm. Cert., H.R. 3190 signed by House and Senate officers and President Truman</u>.  The Senate's amended <u>H.R. 3190</u> was then presented by the Committee on House Administration to President Truman, on June 23, 1948, who signed it on June 25, 1948[4], at 12:23 P.M. E.D.T., 94 <u>Cong. Rec.</u> 9364-9367; <u>House Journal</u>, legislative day of June

---

[3]     Mr. LeCompte's announcement was reported upon reconvention by the President's Proclamation on July 26, 1948.  94 <u>Cong. Rec.</u> 9363.

[4]     That same day President Truman signed into law Public Law 80-773 enacting into positive law Title 28, United States Code.  Act of June 25, 1948, Ch. 646, § 1, 62 Stat. 869.  That Act positively repealed the former criminal jurisdiction granted to the district courts.  <u>id.</u>, § 39 <i>et seq.</i>, 62 Stat. 991 <i>et seq.</i> (positive repeal listing former 28 U.S.C. § 41, ¶ 2 in schedule of repealed statutes).

19, 1948, pp. 778, 780-782; Senate Journal, legislative day of June 18, 1948, pp. 579,

583.  National Archives & Records Adm. Cert., H.R. 3190, supra; 94 Cong. Rec. D557

(Daily Digest).

### IV.   The Quorum Violations

### A.  May 12, 1947

On May 12, 1947 the House of Representatives voted on H.R. 3190,

which then became Public Law 80-772. **However no quorum was in place on that date,**

**as the vote was 38 to 6 and the House had 435 members.**  Without a quorum to do

business, the vote by the House was unconstitutional.  93 Cong. Rec., 5048, 5049, 5121.

Whatever actions occurred after the **38 to 6 vote**, including actions related to Public Law

80-772 were illegal until a quorum was in place.  Hinds' Precedents, § 2939, p. 87 ("'The

House is not a House without a quorum'")

### B.  June 22 and 23, 1948

After Congress adjourned on June 20, 1948, pursuant to H.Con.Res. 219, a single

officer of each House of Congress signed *a bill* purporting to be H.R. 3190 on June 22-

23, 1948, 94 Cong. Rec. 9354; House Journal, legislative day of June 19, 1948, p. 777;

Senate Journal, legislative day of June 18, 1948, pp. 578-579, and presented *that bill* to

the President, who signed it on June 25, 1948.  94 Cong. Rec. 9365-9367.  Thus, the post-

adjournment signature "provision [of H.Con.Res. 219] was an important part of the

legislative scheme," leading to the enactment of Public Law 80-772, without which it

would never have "become a Law."  Bowsher v. Synar, 478 U.S. 714, 728 (1986).  Public

Law 80-772 *falsely* stated it was "enacted" while both Houses were "in Congress

assembled," when in fact Congress was not in session.  See National Archives & Records Adm. Cert., H.R. 3190 as signed into P.L. 80-772.

The bill signed was the Senate's amended H.R. 3190 – a bill never certified as "truly enrolled," *compare* Pub.L. 80-772, Enactment Clause & signature pages *with* H.R. 3190, certified as "truly enrolled," supra, and H.Con.Res. 219 never authorized the signing of *unenrolled* bills after adjournment.  See H.Con.Res. 219, supra, 62 Stat. 1436.

**Article I, § 5, Clause 1 mandates a quorum of both Houses of Congress "to do Business."  This constitutional requirement has been enforced by practice, Rules of the Houses, custom, Supreme Court holdings and duly enacted statutes.**

1 U.S.C. § 101 requires every "enacting clause of all Acts of Congress" to state: "'Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled.'"  Although the bill after passage by "both Houses" must be "enrolled" following which it "shall be signed by the presiding officers of both Houses and sent to the President of the United States,"[5] 1 U.S.C. § 106, the actual procedure is regulated by House rules and established practice.  Following passage the "chairman of the Committee on House Administration … affixes to the bills examined a certificate that the bill has been found truly enrolled,"[6] House Doc. No. 769, supra, Stages of a Bill, § 983, No. 16, p. [483] (App. 79), after which the "enrolled bill is first

---

[5]     1 U.S.C. § 106 contains an exception for enrollment "[d]uring the last six days of a session," but no exception for enrolling, signing or presenting a bill to the President otherwise than during the sitting of both Houses.

[6]     Formerly, the "chairman of the Committee on Enrolled Bills" performed this critical task in the legislative business of enacting a bill, which has always required the enrolled bill to be "placed before the House and signed by the Speaker."  See House Doc. No. 355, 59th Cong., 2nd Sess., Hinds' Precedents of the House of Representatives, Ch. XCI, § 3429, notes 3 & 5, p. 311 (G.P.O. 1907).  See House Doc. No. 769, supra, Preface, p. [VI] ("The rulings of the Speakers of the House and of the Chairman of the Committee of the Whole are to the rules of the House what the decisions of the courts are to the statutes … [which are] embodied in the monumental work[s] of Hinds and Canon.").

laid before the House of Representatives and signed by the Speaker ... after which it is

transmitted to the Senate and signed by the President of that body." Id., No. 17, p. [484][7].

The Supreme Court in Marshall Field & Co. v. Clark, 143 U.S. 649 (1892),

defined the essence of this procedure:

> ***The signing*** by the Speaker of the House of Representatives, and, by the President of the Senate, ***in open session, of an enrolled bill is an official attestation by the two houses*** of such bill as one that has passed Congress. It is ***a declaration by the two houses***, through their presiding officers, ***to the President***, that a bill, thus attested, has received, in due form, ***the sanction of the legislative branch*** of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass Congress shall be presented to him.

143 U.S. at 672 (emphasis added).  1 U.S.C. § 106 codified this implicit constitutional

requirement.  Reading 1 U.S.C. §§ 101 and 106 together requires that all acts must occur

at least through presentment to the President while Congress is in session.  That the

enrolled bill must be "layed before the House" prior to signing by the Speaker and *then*

"transmitted to the Senate" before the signing by the President of that body concludes

that the respective Houses *must be in session during this transaction*.[8]

An "adjournment terminates the legislative existence of Congress." Pocket Veto

Case, 279 U.S. at 681.  "'Th[e] expression, a "house," or "each house," [when] employed

... with reference to the faculties and powers of the two chambers ... always means ...

---

[7]      The Supreme Court not only takes judicial notice of the legislative history of a bill, Alaska v. American Can Co., 358 U.S. 224, 226-227 (1959), but will both judicially notice and "h[o]ld" Congress and its legislative committees "to observance of its rules." Yellin v. United States, 374 U.S. 109, 114 (1963).

[8]      "[T]he Constitution has left it to Congress to determine how a bill is to be authenticated as having passed" and "the courts accept as passed all bills authenticated in the manner provided by Congress." United States v. Munoz-Flores, 495 U.S. 385, 391 n. 4 (1990) (citing Field & Co. v. Clark, 143 U.S. 649 (1892), in which case the Court established the so-called "enrolled bill rule" – a rule not applicable in this case, but a ruling that supports Petitioners' claims.)

the constitutional quorum, assembled for the transaction of business, and capable of transacting business.'" 279 U.S. at 683, quoting I Curtis' Constitutional History of the United States, 486 n. 1. Moreover, the term "'House'" means "the House in session," 279 U.S. at 682, and "'as organized and entitled to exert legislative power,' that is, the legislative bodies 'organized conformably to law for the purpose of enacting legislation.'" Id. (quoting Missouri Pacific Railway Co. v. Kansas, 248 U.S. 276, 281 (1919)). See also House Doc. No. 355, supra, Hinds' Precedents, § 2939, p. 87 ("'The House is not a House without a quorum'") (App. 87).

No "attestation" or "declaration by the two houses … to the President," Field & Co., 143 U.S. at 672, that H.R. 3190 had "passed" Congress during the adjournment was possible because no such "houses" constitutionally existed. See also United States National Bank of Oregon v. Independent Insurance Agents of America, 508 U.S. 439, 455 n. 7 (1993) (noting that the rule established in Field & Co., 143 U.S. at 672, made statutory by 1 U.S.C. § 106 turned upon "the 'enrolled bill,' signed in open session by the Speaker of the House of Representatives and the President of the Senate"). Longstanding precedence of the House affirms this. House Doc. No. 355, supra, Hinds' Precedents, Vol. IV, § 2951, pp. 90-91 (upon "disclos[ure] … that there is not a quorum .., [t]he House thereby becomes constitutionally disqualified to do further business") (excepting from disqualification the exceptions stated in Art. I, § 5, Cl. 1) (emphasis added); id., § 3458, p. 322 ("The Speaker may not sign an enrolled bill in the absence of a quorum."); id. at § 3486, pp. 332-333 (recognizing enrollment and presentment to the President to be legislative business required to be completed before adjournment) (App. 95-96); id. at § 3487, p. 333 n. 3 (presentment to the President is legislative "business" which must be

completed before adjournment);  id. at § 4788, p. 1026 ("The presentation of enrolled

bills" to the President of the United States is a "transact[ion]" of "business" of the

"House.").

Once a bill has passed the House of Representatives it must be printed as an

"engrossed bill" which then "shall be signed by the Clerk of the House ... sent to the

other House, and in that form shall be dealt with by that House and its officers, and, if

passed, returned signed by said Clerk." 1 U.S.C. § 106. In the immediate case H.R. 3190

was **"passed"** by the House of Representatives on May 12, 1947, engrossed and sent to

the Senate and there referred to the Senate's Committee on the Judiciary. See 93 Cong.

Rec. 5048-5049, 5121; Senate Journal, May 13, 1947, p. 252. However, it was not dealt

with nor passed "in that form."

Instead, amendments were proposed which were "agreed to en bloc," read into the

record and "ordered to be engrossed," 94 Cong. Rec. 8721-8722. Then, "the [amended]

bill was read the third time and passed." 94 Cong. Rec. 8722; Senate Journal, June 18,

1948, p. 506. The House then concurred in the amendments en bloc. 94 Cong. Rec.

8864-8865; House Journal, June 18, 1948, p. 704.[9]

"The House in which a bill originates enrolls it," House Doc. No. 769, supra,

Stages of a Bill, No. 15, p. [483] (App. 79), and, in the case of House bills, the "chairman

of the Committee on House Administration ... affixes to the bills examined a certificate

that the bill has been found truly enrolled," Id., No. 16, p. [483], after which it is "laid

before the House ... signed by the Speaker [then] transmitted to the Senate and signed by

the President of that body." Id., No. 17, p. [484]. Unequivocally, "[t]he Speaker may not

---

[9]         This contravenes the procedures of the House of Representatives for the 80th Congress. "When a
bill with Senate amendments comes before the House, the House takes up each amendment by itself ...."
House Doc. No. 769, Stages of a Bill in the House, § 983, No. 13, p. [483].

sign an enrolled bill in the absence of a quorum." House Doc. No. 355, supra, Hinds' Precedents, § 3458, p. 322.  Cf., id., § 2939, p. 87 ("The House is not a House without a quorum.").

   **The constitutional "quorum" issue** is precluded from the Field & Co.'s "enrolled bill rule" by its terms – i.e., "[t]he signing … **in open session**, of an enrolled bill," 143 U.S. at 672 (emphasis added), which in any case only applies in "the absence of [a] constitutional requirement binding Congress." United States v. Munoz-Flores, supra, 495 U.S. at 391 n. 4.  Moreover, just as "§ 7 gives effect to **all** of its Clauses in determining what procedures the Legislative and Executive branches must follow to enact a law," id., 495 U.S. 386 (emphasis by Court), so too does Article I, § 5, Cl. 1 "provid[e] that no law could take effect without the concurrence of the prescribed majority of the Members of both Houses," INS v. Chadha, 462 U.S. at 949-950, as to **all** legislative "Business."  Cf. United States v. Ballin, 144 U.S. 1, 3-5 (1892) (to determine whether constitutionally mandated quorum was present for legislative action the Court "assume[s]" the Journals of the Houses are to be considered to decide the issue).

   The bill signed by the Officers of the Houses presented to and signed by the President of the United States was the Senate's amended bill, which never passed the House.  H.Con.Res. 219 only "authorized [the] sign[ing] [of] enrolled bills … duly passed by the two Houses and found truly enrolled," H.Con.Res. 219, supra, 62 Stat. 1436, voiding the signatures on the amended bill.[10]

---

[10]   On July 26, 1948, "Mr. LeCompte, from the Committee on House Administration, reported that that committee had examined and found" that H.R. 3190 had been "truly enrolled." 94 Cong. Rec. 9363. The version of H.R. 3190 certified as "truly enrolled" by Mr. LeCompte, is the House version passed on May 12, 1947, with the text of the original § 3231 – the text of which was never passed by the Senate – to which his certificate of enrollment is attached.  The statutory mandate after final passage and printing to "call[]" the bill in such final form "the enrolled bill," 1 U.S.C. § 106, Act of July 30, 1947, Ch. 388, Ch. 2, 61 Stat. 634, is determined by the certificate "affixe[d] to the bill," House Doc. No. 769, Stages of a Bill,

**With no quorum present on May 12, 1947, and all actions after the 38 to 6 vote invalid, the bill was rendered constitutionally void**. House Doc. No. 769, supra, Constitution of the United States, § 55, p. [19] ("[w]hen action requiring a quorum was taken in the ascertained absence of a quorum ... the action was null and void"); House Doc. No. 355, supra, Hinds' Precedents, §§ 3497 & 3498, pp. 344-345 (such a bill is "not in force" and is "not a valid statute"). *Cf.*, id., Hinds' Precedents, § 2962, p. 94 (to vacate legislative act "the absence of a quorum should appear from the Journal") (App. 90).

Art. I, § 7, mandates that a bill that has passed both Houses "'shall before it becomes a Law, be presented to the President of the United States ...,'" Art. I, § 7, Cl. 2; INS v. Chadha, 462 U.S. at 945, which "can **only** contemplate a presentment by the Congress in some manner, [because] ... [a]t that point the bill is necessarily in the hands of the Congress." United States v. Kapsalis, 214 F.2d 677, 680 (7th Cir. 1954), cert. denied, 349 U.S. 906 (1955) (emphasis added). Thus, presentment is clearly part of the legislative procedure required as essential to enactment of a bill as law. INS v. Chadha, 462 U.S. at 945, 947, 951; La Abra Silver Mining Co. v. United States, 175 U.S. 423, 454 (1899) ("*After a bill has been presented* to the President, *no further action is required by Congress* in respect of that bill, unless it be disapproved by him. ...")(emphasis added). See House Doc. No. 355, supra, Hinds' Precedents, Vol. IV, § 4788, p. 1026 (recognizing that "the presentation of enrolled bills" to the President is a "transact[ion]" of "business" of "the House"); id., § 3486, p. 332 (recognizing presentment required prior to adjournment); id., § 3487, p. 333 note 3 (when bill is enrolled or signed by presiding officers "too late to be presented to the President before adjournment" signing and

---

supra, No. 16, all of which is required *before* the "sign[ing] by the presiding officers of both Houses and sen[ding] to the President of the United States." 1 U.S.C. § 106.

presentment must continue at next session as a "resumption of [legislative] business").

Clearly presentment is part of the constitutionally mandated "Business," Art. I, § 5, Cl. 1,

to be "exercised in accord with [the] single, finely wrought and exhaustively considered,

procedure" "prescri[bed] … in Art. I, §§ 1, 7." INS v. Chadha, 462 U.S. at 951.

The "draftsmen" of the Constitution "took special pains to assure these

[legislative] requirements could not be circumvented.  During the final debates on Art. I,

§ 7, Cl. 2, James Madison expressed concern that it might easily be evaded by the simple

expedient of calling a proposal a 'resolution' or 'vote' rather than a 'bill.'  As a

consequence, Art. I, § 7, Cl. 3, … was added." INS v. Chadha, 462 U.S. at 947 (citing 2

Farrand, supra, 301-302, 304-305).

Whether actions authorized under a resolution are "an exercise of legislative

powers depends not on their form but upon 'whether they contain matter which is

properly to be regarded as legislative in its character and effect.'" INS v. Chadha, 462

U.S. at 952 (quoting S. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1897)).  "If the power is

legislative, Congress must exercise it in conformity with the bicameralism and

presentment requirements of Art. I, § 7." Metropolitan, 501 U.S. at 276.  See also

Bowsher v. Synar, 478 U.S. at 756 (Stevens, J., concurring) ("It is settled, however, that

if a resolution is intended to make policy that will bind the Nation, and thus is 'legislative

in its character and effect,' S. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1897) – then the

full Article I requirements must be observed.  For 'the nature or substance of the

resolution, and not its form, controls the question of its disposition.'  Ibid.").

"'Congress,'" of course, "'cannot grant to an officer under its control what it does

not possess.'" Metropolitan, 501 U.S. at 275 (quoting Bowsher v. Synar, 478 U.S. at

726).  Congress does not possess the "'capab[ility] of transacting business'" and is not "'entitled to exert legislative power,'" when its "legislative existence" has been "terminate[d]" by an "adjournment."  Pocket Veto Case, 279 U.S. at 681-683 (citations omitted).  **"The limitation of the power of less than a quorum is absolute,"** House Doc. No. 355, supra, Hinds' Precedents, Vol. V, Ch. CXL, § 6686, p. 851 (App. 102), and includes the signing of an enrolled bill by the Speaker of the House, id., Vol. IV, Ch. XCI, § 3458, p. 322, and presentment to the President of the United States.  id., Ch. XCII, §§ 3486, 3487 & 3497, pp. 332, 333 note 3, 344 & 345 (App. 95-98).  Wright v. United States, 302 U.S. 583, 600 (1938) (Stone, J., concurring) ("The houses of Congress, being collective bodies, transacting their routine business by majority action are capable of acting only when in session and by formal action recorded in their respective journals, or by recognition, through such action, of an established practice.")  Thus, "Congress," as defined by the Constitution and Supreme Court, never "presented" *any* version of H.R. 3190 to the President of the United States.

Whether the action taken under H.Con.Res. 219 was an "exercise of legislative power" depends upon whether it was essentially "legislative in purpose and effect."  INS v. Chadha, 462 U.S. at 952.  "In short, when Congress '[takes] action that ha[s] the purpose and effect of altering the legal rights, duties, and relations of persons ... outside the Legislative Branch,' it must take that action by the procedures authorized in the Constitution."  Metropolitan, 501 U.S. at 276, quoting INS v. Chadha, 462 U.S. at 952-955.  "If Congress chooses to use a [] resolution ... as a means of expediting action, it may do so, if it acts by both houses and presents the resolution to the President," Consumer Energy Council of America v. F.E.R.C., 673 F.2d 425, 476 (D.C. Cir. 1982),

aff'd mem. sub nom., Process Gas Consumers Group v. Consumer Energy Council of America, 463 U.S. 1216 (1983).

The inescapable conclusion as to the "purpose and effect" of H.Con.Res. 219 was to enact *a bill* the text of which at the time of adjournment on June 20, 1948, had not been passed by both Houses, enrolled, certified as "truly enrolled," or signed by the officers of the Houses or presented to the President of the United States with quorums sitting.  In other words, H.Con.Res. 219  unconstitutionally permitted post-adjournment legislative business to proceed without Congress and upon an unpassed bill.  Congress did not follow the procedures mandated by Art. I, § 7, Cl. 2 and attempted to supersede the quorum requirements of Art. I, § 5, Cl. 1 *via* a concurrent resolution to carry forth legislative business with no legislature.  The 80th Congress surreptitiously provided a bill, the text of which had never passed either House "'mask[ed] under … [the] indirect measure,'" Metropolitan, supra, 501 U.S. at 277 (quoting Madison, The Federalist No. 48, p. 334 (J. Cooke 1961 ed.)), of a resolution purporting to authorize continuing legislative action during adjournment with no quorum and no Congress of an extra-congressional bill.  Public Law 80-772 did not "become a Law" as required by the constitutional procedures mandated under Article I, § 5, Cl. 1, and Article I, § 7, Cls. 2 and 3, and is unconstitutional and *void ab initio*.

**"[W]hen action requiring a quorum was taken in the ascertained absence of a quorum … the action [is] null and void,"** House Doc. No. 769, supra, Constitution of the United States, § 55, p. [19] (citing Hinds' Precedents, Vol. IV, § 2964), and "a bill … not actually passed [although] signed by the President [is to be] disregarded [requiring] a

new bill [to be] passed." House Doc. No. 769, § 103, p. [34] (citing Hinds' Precedents,

Vol. IV, § 3498) (App. 75).

### V   The Court Cannot Obtain Jurisdiction from a Prior Statute

Two prior enactments of Title 18 occurred in Congress.   In 1940, Congress

enacted Title 18, which included its jurisdiction section, 18 USC section 546.   However

the court cannot obtain jurisdiction pursuant to that statute because it was repealed in

1948. On June 25, 1948, President Truman signed into law Public Law 80-773 enacting

into positive law Title 28, United States Code.   Act of June 25, 1948, Ch. 646, § 1, 62

Stat. 869.   That Act **positively repealed** the former criminal jurisdiction granted to the

district courts.   id., § 39 et seq., 62 Stat. 991 et seq. (positive repeal listing former 28

U.S.C. § 41, ¶ 2 in schedule of repealed statutes).

The courts cannot obtain jurisdiction pursuant to the 1909 enactments of Title 18.

That act contained different crimes and penalty provisions than Title 18 (1948).   Further,

the use of that statute would be in violation of the Fair Warning Doctrine:

**Fair warning doctrine** invokes due process rights and requires that criminal

statute at issue be sufficiently definite to notify persons of reasonable intelligence that

their planned conduct is criminal.   United States v. Nevers, 7 F.3d 59 (5th Cir. 1993). See

United States ex. Rel. Clark v. Anderson, 502 F.2d 1080(3d Cir. 1974)(The notice

requirements of Due Process would not permit a state, after ruling one of its criminal

statutes was overly vague, to apply that statute's superseding predecessor statute in the

very case which ruled the successor statute unconstitutional).

In United States ex. Rel. Clark v. Anderson, 502 F.2d 1080(3d Cir. 1974),

502 F.2d 1080, 1081-1082, the court found that at the time the offense occurred and the

accused was indicted, "the state of Delaware had published and was holding out the new

[statute] as its only proscription of such misconduct as the indictment charged." The

crime was also not a crime at common law. The court ruled the new statute

unconstitutional. *And by definition, an unconstitutional statute is one that fails to give*

*fair notice that particular conduct is proscribed by the state.* See United

States v. Harris, 1954, 347 U.S. 612, 617, 98 L.Ed. 989, 74 S.Ct. 808;

Connally v. General Construction Co., 1926, 269 U.S. 385, 391, 70 L.Ed.

322, 46 S.Ct. 126. Thus, the state's own interpretation of the new statute

and its rejection of that section as a statutory basis for Clark's prosecution

caused the court to hold that the new statute did not provide

constitutionally adequate notice.

The *Clark* court determined that the defendant's conviction **could be upheld only**

**if** the old statute, the supercession of which had been legislatively declared and publicly

announced, could continue to serve as notice of the criminality of defendant's conduct.

In order to reach that conclusion the court decided that one would have to reason, first

that the new statute on its face gave adequate notice of its own invalidity, and second,

that the public, thus informed, was then put on further notice that the officially announced

statutory repeal or supercession of the old statute was legally ineffective. Id.

The court concluded that such reasoning was "too tortured and too far removed"

from reality to satisfy the due process requirement that, at the time of the alleged offense,

the accused shall have been on notice that his conduct was proscribed by the criminal

law. The court could not even surmount the first hurdle that the new statute could serve

31

as notice of its own invalidty.  Without that notice, no occasion was available to consider the old statute as possibly relevant.

As in the <u>Clark</u> case, and its Supreme Court precedents, to meet Due Process, Public Law 80-772 and 18 U.S.C. § 3231 would have had to give adequate public notice on their faces of their own invalidity and the public would have to have been put on further notice that the officially announced statutory repeal or supercession of the old statutes was legally effective.  The court cannot even reach the first hurdle, much less the second one. The court obtained its jurisdiction to prosecute crimes pursuant to 18 U.S.C. § 3231.  Without proper notice of the invalidity of the statute, defendant's indictment and any conviction cannot be upheld and the court has only one choice, to order dismissal of defendant's indictment and conviction *ab initio*.

According to standing precedent, this court had absolutely no jurisdiction to prosecute Defendant under either 18 U.S.C. § 3231 or any prior enactment.

**VI.    Summary**

1.   It is undisputed and Respondent has not denied that the Judge in this Case has taken an oath of office to uphold the Constitution of the United States.

2.   It is undisputed and the Respondent has not denied that the U.S. Attorney in this case has taken an oath of office to uphold the Constitution of the United States.

3.   It is undisputed and Respondent has not denied that the Separation of Powers Doctrine applies to this case.  (**Separation of powers** is a political doctrine originating from the United States Constitution, according to which the legislative,

executive, and judicial branches of the United States government are kept distinct in

order to prevent abuse of power. This United States form of separation of powers is

associated with a system of **checks and balances**.)

    4.  It is undisputed and Respondent has not denied that on May 12,

1947, the House voted 38 to 6 when 435 members were in the House.

    5.  It is undisputed and Respondent has not denied that without a

Quorum, any actions of the House are illegal.

    6.  It is undisputed and Respondent has not denied that no quorum

was present when H.R. 3190, Public Law 80-772, Title 18 of the United States criminal

code, allegedly "passed" the House of Representatives on May 12, 1947[11] when 435

---

[11]    H.R. 3190 was introduced and committed to the Committee of the entire House of Representatives on the State of the Union of the First Session of the 80th Congress entitled "Crimes and Criminal Procedure." See House Report No. 304 (April 24, 1947), p. 1. See also 94 Cong. Rec. D556-D557 (Daily Digest) (charting H.R. 3190). H.R. 3190 differed from "five ... bills which ... preceded it ... [because] it constitute[d] a revision, as well as a codification, of the Federal laws relating to crimes and criminal procedure." 93 **Cong. Rec. 5048-5049 (May 12, 1947)**. The bill was intended (1) to revise and compile **all** of the criminal law, (2) to "restate[]" and "consolidate[]" "existing statutes," (3) to "repeal" "obsolete, superseded, redundant and repetitious statutes," (4) to coordinate the Criminal Code with the "Federal Rules of Criminal Procedure" formerly enacted, and (5) to "clarify and harmonize" penalties of the "many acts" passed by Congress which were found to be "almost identical." (Id.) "The bill was ordered to be engrossed and read a third time, was read a third time, and [allegedly] passed" the House on May 12, 1947, id.; Journal of the House of Representatives ("House Journal"), May 12, 1947, pp. 343-344; 94 Cong. Rec. D556-D557 (showing H.R. 3190's only passage by the House of Rep. on May 12, 1947), sent to the Senate and there "referred ... to the Committee on the Judiciary." 93 Cong. Rec. 5121, May 13, 1947; Journal of the Senate ("Senate Journal"), May 13, 1947, p. 252.[11]
    As passed and enrolled by the House of Representatives H.R. 3190 included at section 3231, Subtitled "District Courts," the following text:
> Offenses against the United States shall be cognizable in the district courts of the United States, but nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof.

See United States v. Sasscer, 558 F. Supp. 33, 34 (D.MD. 1982).
    On July 27, 1947, Congress adjourned without the Senate passing H.R. 3190. See 93 Cong. Rec. 10439, 10522 (July 26, 1947). On November 17, 1947, Congress reconvened pursuant to a Presidential proclamation. Yet, Congress again "adjourned *sine die* on December 19, 1947," without the Senate passing H.R. 3190. Kennedy v. Sampson, 511 F.2d 430, 444 Appendix n. 4 (D.C. Cir. 1974).

members were in the House of Representatives and the House voted 38 to 6 for passage

of Public Law 80-772, violating the Constitution of the United States and its quorum

clause, Article I, Section V, Clause 1, of the Constitution.[12]

      7.  It is undisputed and the government has not denied that the

district court obtained its jurisdiction over Petitioner pursuant to 18 USC section 3231,

part of HR 3190 and Public Law 80-772 of the United States code.

      *8.*  It is undisputed and the government has not denied that the *in*

*toto* provision requires that if Public Law 80-772 is unconstitutional then 18 U.S.C. §

3231 is unconstitutional.[13]

      9.  It is undisputed and the government has not denied that

Congress adjourned on June 20, 1948 at 7 am, ***sine die***.

      10. It is undisputed and government has not denied that the Speaker

of the House and the President pro tempore of the Senate signed Public Law 80-772, into

law on June 22 and June 23, 1948, when Congress was fully adjourned and not in

session.

      11. It is undisputed and the government has not denied that the

---

[12] See 93 Congressional Record 5048- 5049.  This is the **Smoking Gun** Which cannot be denied.

[13] The effect of this *in toto requirement* is to compel the President to make an **all-or-nothing** choice regarding a broad and multifarious legislative package, even though he/she might prefer to accept some items and reject others. The *in toto requirement* serves to ensure that Congress retains ultimate authority to define the range of choices available to the President. Furthermore, the Statutes at Large show no severability clause for  Public Law 80-772.

signatures of the Speaker of the House and the President pro tempore of the Senate signing Public Law 80-772 while Congress was fully and completely adjourned and not in session on June 22 and 23, 1948,  is a violation of the Quorum Clause of the Constitution.[14]

12. It is undisputed and the government has not denied that a failure

to properly investigate the jurisdiction of the court in a criminal charge is a violation by the criminal defense attorney of the Sixth Amendment rights of a Defendant and, if proven, would constitute a "DEAD BANG WINNER (A dead-bang winner is defined as "an issue which was obvious from the trial record and would have resulted in a reversal on appeal." James v. McKee, 2009 U.S. Dist. LEXIS 102380 ( E.D. Mich. Nov. 3, 2009).

13.   It is undisputed and the government has not denied that the

---

[14]    The Senate Committee on the Judiciary reported amendments to H.R. 3190 on June 14, 1948, under Sen. Rep. No. 1620.  94 Cong. Rec. 8075 (June 14, 1948) (App. 50); Senate Journal, June 14, 1948, p. 452 (App. 34).[14]  Sen. Rep. No. 1620 contained "a large volume of amendments" and "the new Federal Rules of Criminal Procedure [were] keyed to the bill and [were] reflected in part II of [the new proposed] title 18."  Heralding that, upon passage of the amended bill, "[u]ncertainty will be ended," the Senate wanted "the amendments adopted en bloc," including a new jurisdictional section for Title 18.  94 Cong. Rec. 8721 (App. 51).  The report contained only the proposed amendments.  See Sen. Rep. No. 1620, pp. 1 & 4 (App. 103-104).
    "[T]he amendments were considered and agreed to en bloc" and then "ordered to be engrossed."  94 Cong. Rec. 8721-8722 (June 18, 1948) (App. 51-52), Senate Journal, June 18, 1948, p. 506 (H.R. 3190, "as amended," passed the Senate) (App. 37).  It was moved that "the Senate insist upon its amendments" by the House (94 Cong. Rec. at 8722); and "[o]rdered that the Secretary request the concurrence of the House of Representatives in the amendments."  Senate Journal, supra, p. 506; House Journal, June 18, 1948, p. 688 (App. 16).
    The House received the proposed amendments.  The Clerk "read the Senate amendments" collectively into the record with which the House concurred.  94 Cong. Rec. 8864-8865 (June 18, 1948) (App. 53-54); House Journal, June 18, 1948, p. 704 (the "said Senate amendments were concurred in") (App. 17).  Although "[t]he House agreed to the amendments to … H.R. 3190," Senate Journal, June 18, 1948, p. 510 (App. 38), no action was taken on H.R. 3190 as amended.[14]  The Journal of the House of Representatives is devoid of any vote on H.R. 3190 itself on June 18, 1948, and thereafter through adjournment on June 20, 1948.  Moreover, the official historical chart of H.R. 3190 clearly shows the only passage by the House of Representatives occurring on May 12, 1947, and specifically references volume 93, page 5048 of the Congressional Record as the recorded date the House passed the bill.  94 Cong. Rec. D556-D557 (Daily Digest).

U.S. Attorney is responsible to advise the court when it has a lack of jurisdiction and such failure to advise the court constitutes lack of candor to the court, structural error, and a violation of the <u>Citizen Protection Act</u> <u>of 1998</u> by the U.S. Attorney.

14. It is undisputed and the government has not denied that

actions of a court without jurisdiction would constitute structural error for bias by the court.

15. It is undisputed that a court cannot obtain jurisdiction

based on the prior statute (18 USC section 546, 1940) because that statute was repealed as part of the 80th Congress, as established herein. Infra.

16. It is undisputed that this court cannot obtain jurisdiction

Pursuant to the enactment of Title 18 in 1909 because the use of such statutes would constitute a violation of the Fair Warning Doctrine.

17. It is undisputed that Congress made it illegal to imprison a

person without a valid statute. See 18 USC section 4001(a).

It is Petitioner's contention that these errors were of constitutional dimensions, and that they cannot be condoned as harmless beyond a reasonable doubt. In fact, the errors are structural error, reversible by definition, in three dimensions: first, the errors are structural because the court was required to address its own jurisdiction; second the errors are structural because the prosecutor was required to advise the court that it had no jurisdiction; third, the error was structural because the defense attorney was required

to research the court's jurisdiction and such failure is a 6th amendment violation as a matter of law.

In summary, the House of Representatives failed to Constitutionally pass Public Law 80-772 when it voted 38 to 6 on May 12, 1947 when 435 members were in Congress on May 12, 1947,  and all actions after that vote are illegal, a violation of the Quorum Clause of the Constitution.  A further Quorum violation occurred on June 22 and 23. 1948, when the Speaker of the House and the President Pro tempore of the Senate signed Public Law 80-772 while Congress was completely and fully adjourned, sine die.

If the Court finds that Petitioner is not entitled to a judgment of actual innocence, then in the alternative, Petitioner respectfully requests the Court to conduct a plenary hearing as soon as is practicable, in order that the Court may make an independent inquiry to fully hear and resolve the issues of fact that are not sufficiently disposed of in the record on appeal.

Petitioner respectfully urges that dismissal of the case and declaration of actual innocence, or, alternatively, a plenary hearing is mandated.

In the course of such hearing, Petitioner will establish the truth of all of the allegations of his petition, in particular the facts stated above.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner Respectfully requests this court to:

- Issue an immediate order to the Respondents to show cause why a Writ of Mandamus and/or Prohibition should not be issued.
- Issue an immediate order declaring that Public Law 80-772 was never Constitutionally passed by Congress and is *void ab initio*
- Issue an order declaring that the 1909 predecessor act for Title 18 is in violation of the Fair Warning Doctrine;
- Issue an order declaring that Petitioner is actually innocent of any alleged crimes

- Issue a Writ of Mandamus and/or Prohibition to order the United States District Court for the United States District Court for the District of Colorado, Denver Division and for the Department of Justice to stay all proceedings pending a final ruling on the appeal of the order of the court.
- Costs should be assessed against the Respondents.
- Grant other relief as this court sees fit.

**PROOF OF SERVICE**

I do swear or declare that on ___3/9/12___, as required by the law, I have served the enclosed PETITION FOR A WRIT OF MANDAMUS AND/OR PROHIBITION on each party to the above proceedings or that party's counsel, and on every other person required to be served, by depositing an envelope containing the above documents in the United States mail properly addressed to each of them and with first-class postage prepaid.

The names and addresses of those served are as follows:

United States District Court for the District of Colorado

The Honorable Robert E Blackburn

AUSA Kenneth Mark Harmon

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Richard Kellogg Armstrong

## CERTIFICATE OF SERVICE

On this the _____9_____ day of _MARCH 2012_____, a true and correct copy of the foregoing motion was served on opposing counsel by first class mail, postage prepaid, as required by law.

Richard Kellogg Armstrong