IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 10-cr-00317-REB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.     CURTIS L. MORRIS, and
2.     RICHARD KELLOGG ARMSTRONG,

        Defendants.

## GOVERNMENT'S FACTUAL RESPONSE AND STATEMENT OF POSITION AS TO DEFENDANT MORRIS'S ORAL MOTION TO PRECLUDE THE TESTIMONY OF STEVEN BROUGHTON

The United States of America, by and through the undersigned counsel, responds as follows to the oral motion of counsel for defendant Morris to preclude the testimony of government witness Steven C. Broughton or, alternatively, presumably granting a continuance of trial or a deferral of the testimony of Mr. Broughton:[1]

    1.     On June 21, 2010, this Court entered its standing discovery conference memorandum and order governing, among other things, pretrial disclosures under Federal Rule of Criminal Procedure Rule 16 and the government's continuing constitutional obligation under *Brady* and *Giglio* to disclose material evidence favorable to the defense. The government

---

[1] Counsel, in her oral motion, indicated that she wished, as an alternative to a preclusion order, to have the testimony of Mr. Broughton deferred or continued until she had a chance to apply for court funds to hire an expert to review a medical report concerning Mr. Broughton's cognitive functioning, the disclosure of which is the triggering event of this motion. In her brief in support of the motion, counsel states that she seeks a continuance.

acknowledged therein its continuing duty to discharge these constitutional obligations (DE 24 at 4 ¶ 7(B).

  2. On February 14, 2011, following plea negotiations, Steven Broughton provided sworn testimony as part of the evidence in support of the superseding indictment in this case. During the onset of that testimony, Mr. Broughton sought to explain, and apologize for the fact, that his voice sounded hoarse and "crackly," because he had suffered "a minor stroke in August of 2008" that affected the quality of speech. He was then asked the following follow up questions and provided the following answers:

> Q. Does water help?
>
> A. Yes.
>
> Q. Since you brought it up, we will talk about the stroke you had. How are you feeling now?
>
> A. Perfect.
>
> Q. Any problems with thinking or remembering?
>
> A. No, no.

(DX 2, Tr. At 11, ll. 11-18).[2] Mr. Broughton proceeded to testify about the events of this case, most of which preceded the August 2008 stroke that he raised in his testimony. The government provided the defendants with this transcript of testimony more than a year ago and knew nothing further, in substance, about Mr. Broughton's medical condition, apart from that recorded in various memoranda of interviews, also provided to the defense as part of pretrial disclosures in this case.

---

[2] "DX" stands for marked trial defense exhibits in this case.

2

3.      On April 5, 2012, undersigned government counsel and the government's case agent met with Mr. Broughton to prepare for his trial testimony in this case. The government had been advised in the Fall of 2011 by Mr. Broughton's counsel that he had suffered a heart condition and had to undergo heart bypass surgery, necessitating the deferral of the commencement of criminal proceedings against him until he regained his health. During the multi-hour preparation session with Mr. Broughton, the subject of his health was raised by government counsel and discussed with Mr. Broughton. Mr. Broughton affirmed that his health had improved and that he would still be able to function as a witness in the case but indicated that he had been evaluated by a doctor in or about July 2011 for cognitive functioning and had been diagnosed with some minor cognitive difficulties. Government counsel asked whether Mr. Broughton had received a written report of the diagnosis. Mr. Broughton affirmed he had, and government counsel requested that Mr. Broughton, after consulting with counsel, consider disclosing the report to the government, through counsel.

4.      On April 5, 2012, undersigned government counsel left a voice mail message with Mr. Broughton's counsel reiterating this request, and, after business hours, sent an email to counsel advising her of the "marathon but productive [prep] session" and reiterating this same request. Undersigned government counsel also directed the government's case agent to prepare a short write-up of Mr. Broughton's statement of his condition for disclosure to the defense.

5.      On April 6, 2012, undersigned counsel received a report of Dr. Stephen S. Kallat, concerning a neuropsychological assessment that had been conducted of Mr. Broughton over the course of late July 2011 and early August 2011 (marked as Government Exhibit 2, in connection with this motion), which report undersigned counsel did not access and review until the

following day.  Following a cursory review, undersigned government counsel left a voice message for Mr. Broughton's counsel and a follow up email concerning questions that he had about the report and counsel's position concerning disclosure of the report and the format of disclosure.  On August 8, 2012, Easter Sunday, undersigned government counsel sent counsel for defendant Broughton a follow up email reiterating the need to discuss disclosure of the report, advising counsel that Mr. Broughton was anticipated to be the government's third witness in the case and the need to "front" any disclosure issues with the defense before Mr. Broughton testified.

6. On April 9, 2012, the government provided both defendants with a written summary by the case agent concerning Mr. Broughton's April 5, 2012 disclosure of his cognitive evaluation and his own evaluation of his cognitive functioning. (This summary is marked as Government's Exhibit 1 for this motion).  The summary states, in part, that "Mr. Broughton stated that he does not have any issues recalling things, but that he processes complex issues more slowly than he used to" and that his "day to day mental health is fine."

7. During the afternoon hours of trial proceedings on April 9, 2012, Mr. Broughton's counsel sent a series of emails responding to undersigned government's counsel.  In the emails, Mr. Broughton's counsel, among other things, clarified that the July-August 2011 cognitive evaluation was undertaken because, in the weeks leading to Mr. Broughton's 2012 heart attack, he noticed that he was having short term memory loss problems and work.  She related that Mr. Broughton's understanding of the short term memory loss ultimately related to loss of blood flow that ultimately resulted in the heart attack.  Undersigned government counsel spoke briefly with Mr. Broughton's counsel about the disclosure of the report and agreed to having no objection to

the disclosure of Dr. Kallat's report on the condition that control and custody of the report be restricted to counsel for the parties and defendant Armstrong's advisory counsel.  Following the conclusion of court proceedings on April 9, 2012, undersigned government counsel secured an understanding with counsel for defendant Morris and defendant Armstrong's advisory counsel concerning custody and control of the court, which understanding was the subject of an oral motion by undersigned government counsel at the commencement of court on April 10, 2012.  The Kallat report was furnished, in an unredacted format, to counsel at that time.

        8.      On April 9, 2011, during the late afternoon, undersigned government counsel called Mr. Broughton has the government's third witness in the case. Mr. Broughton, after being sworn, was asked  how his voice was doing and was in the process of attempting to explain to the jury how his voice was affected by his August 2008 stroke when counsel for defendant Morris objected to Mr. Broughton's testimony. This oral motion followed.

        9.      As the foregoing recitation makes clear, the government amply discharged any continuing constitutional duties that it had under *Brady* and *Giglio* with respect to the health issues of Mr. Broughton.  Mr. Broughton is expected to testify that, notwithstanding his diagnosed cognitive difficulties in the August 2011, he had no problem recalling and testifying about the events which precede his August 2008 stroke and that his prior testimony is accurate in regard to his recall.  Nothing in Dr. Kallat's report appears to undermine these assertions.

        10.      Striking Mr. Broughton's testimony is a draconian and unsupported remedy for an non-existent disclosure violation.  Nor is delaying the trial or deferring Mr. Broughton's testimony a necessary remedy for these non-existent violations in any event.  Government counsel and defense counsel stand on equal footing at this point with respect to their knowledge

and understanding of the Kallat report. More significantly, a mastery of the details of the report is not likely to facilitate a cross examination of Mr. Broughton concerning his memory or cognitive abilities since any impeachment in this regard will necessarily have to be confined to Mr. Broughton's personal knowledge and understanding of the report and his personal assessment of his condition. These matters are known now to counsel for both sides in this case.

11.     Should defendant Morris not be satisfied with seeking to impeach Mr. Broughton in this manner, defendant Morris would still have the time and ability, based on counsel's proffer, to secure court funds and to obtain an expert assessment of the report in time, during the defendant's case, to impeach Mr. Broughton's testimony concerning his memory and cognitive functions through extrinsic evidence in the form of trial testimony of a defense-sponsored expert. Alternatively, defendant Morris could seek leave to re-open the cross examination of Mr. Brought, with respect to these limited areas, following this defense-endorsed assessment of the Kallat report.

WHEREFORE, the United States respectfully submits that the oral motion be denied.

>                   Respectfully Submitted,
>
>                   JOHN F. WALSH
>                   United States Attorney
>
> By:     s/Kenneth M. Harmon
>                   Kenneth M. Harmon
>                   Assistant United States Attorney
>                   District of Colorado

CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF, which will send notification to counsel listed below.

Lisa Monet Wayne
lmonet20@aol.com

David L. Owen
davidowen@lodopc.com


By:  s/ *Kenneth M. Harmon*
     KENNETH M. HARMON
     Assistant United States Attorney