IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 10-cr-00317-REB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.     CURTIS L. MORRIS, and
2.     RICHARD KELLOGG ARMSTRONG,

        Defendants.

---

### GOVERNMENT'S RESPONSE TO DEFENDANT MORRIS'S OBJECTION TO GOVERNMENT CLOSING ARGUMENT AND REQUEST FOR MISTRIAL OR, IN THE ALTERNATIVE, A CURATIVE INSTRUCTION

---

The United States of America, by and through the undersigned counsel, responds in opposition to defendant Morris's motion styled, Objection to Government Closing Argument and Request for Mistrial Or, in the Alternative, a Curative Instruction (DE 505).[1]

## Background

During the course of her opening statement in this case, defendant Morris's counsel made remarks suggesting that the prosecution of this case was brought essentially because the government agency that was the target of the scheme, the Internal Revenue Service ("IRS"), was mad that it had not detected several of the frivolous income tax returns that were filed as part of the charged scheme and so had ended up making refund payments to defendant Armstrong and several others in error. Defendant Morris's counsel suggested, in this regard, that the IRS's

---

[1] "DE _" refers to docket entries in this case.

failure to prevent the processing of these returns and the making of the refund payments was the result of a breakdown in the IRS's system and the agency's incompetence and that the agency was at fault for not safeguarding the public's money.

Defendant Morris's counsel, in her closing remarks to the jury, maintained at various points that the testimony of several of the government's own witnesses who were defendant Morris's "OID clients"[2] supported her contention that defendant Morris engaged in the charged conduct as the result of a good faith belief that the prepared returns and refund claims were valid and so undertaken without the requisite fraudulent intent. Counsel cited, in particular, testimony of government witness David Lissy that he thought that defendant Morris believed in the validity of the returns and refund claims and the professed philosophy behind them (Reporter's Transcript, Jury Trial - Day 12 - Excerpt at 6, ll. 16-24).[3] She pointed out that Lissy, on cross-examination, indicated that he did not think his OID tax returns contained false statements about income tax withholdings, based on explanations that he was given about the OID process and because the asserted withholdings were made using the 1099-OID Forms in accordance with that process (Closing Arg. Excerpt Tr. at 10, ll. 4-18). And counsel pointed out that no other OID client testified, contrary to Lissy, that defendant Morris lacked a good faith belief in the validity of his conduct, implicitly suggesting that the absence of such witness testimony indicated that no

---

[2] References to "OID clients" in this response pertains to tax preparation clients of defendant Morris whose federal income tax returns defendant Morris prepared pursuant to the fraudulent scheme charged in this case, that is, returns claiming large income tax refunds based on fictitious tax withholdings claimed in fabricated IRS Forms 1099-OID prepared and submitted in connection with the returns. "OID tax returns," as used in the response, refers to the income tax returns that claimed tax refunds based on these asserted withholdings and supporting forms.

[3] The transcript is hereinafter abbreviated as "Closing Arg. Excerpt Tr."

such client would testify to defendant Morris's absence of good faith (Closing Arg. Excerpt at 7, ll. 7-12; 11, l. 20 - 12, l. 3).

Defendant Morris's counsel, in closing, also returned to the theme that the prosecution of defendants Morris and Armstrong was motivated by IRS anger and embarrassment about the refund payments that had been made as the result of processing tax returns filed pursuant to the charged scheme. Thus, counsel stated at one point:

> You have to look at who is — what would be the recipient of the deceit. That's the Internal Revenue Service, the IRS. What happened here. I told you, you know, they aren't happy. They aren't happy that they used our money and paid Mr. Armstrong a lot of money. They're not happy about the fact they paid Mr. Broughton ...

(Closing Arg. Excerpt Tr. at 10, ll. 19-25). And, in line with this theme, counsel completed her closing to the jury with the following parting comment:

> Mr. Morris is not guilty, and despite the fact that the Government is not happy about paying out a lot of money, our money, and the fact that they may not be able to find his money[4] or some other individuals' [sic] money, that doesn't mean their anger should be directed toward this defendant and that he's guilty.

(Closing Arg. Excerpt Tr. at 30, ll. 10-15).

Undersigned government counsel spent part of his time addressing defendant Morris's contention that his OID clients who testified as government witnesses supported his good faith defense in this case. Undersigned government counsel contended, in part, that it was "human nature" for Lissy, Broughton and defendant Morris's other OID clients to want to claim that they participated in the scheme because Morris believed in it and so were convinced of its validity by

---

[4] Although not reflected in the transcript, counsel's reference to "his money" was apparently to the tax refund money paid to defendant Armstrong in this case.

him, as opposed to acknowledging personal complicity (Closing Arg. Excerpt Tr. at 36, l. 12 - 37, l. 9).   Undersigned counsel then attempted to posit a parable for the case concerning a contract dispute that resulted in a straightforward simple check fraud, suggesting that "Mr. Morris and people like-minded," including clients like Lissy, "espouse[d] a belief [that] the banks owe[d] them money because of the way the banking system works and the banks should give it back to them, but they're going to get it from the IRS" doing "some phony forms and mak[ing] a refund claim," like the "bogus check" in the posited parable (Closing Arg. Excerpt Tr. at 40, l. 7 - 41, l. 21).

In drawing this analogy, undersigned counsel proceeded to suggest that defendant Morris and the other adherents to the OID scheme tried to rationalize taking money from the IRS on the view that the money was personally owed to them in the first place (Closing Arg. Excerpt Tr. at 41, l. 22 - 42).  Undersigned counsel then suggested that many of the OID clients, being in desperate financial straits, undertook to rationalize their conduct and compartmentalize their knowledge of their wrongdoing in this way, endeavoring to complete this theme with the following concluding remarks:

> Well, those are the Steven Broughtons and the Elyse Del Francias and the David Lissys of this case.  I don't know if it's Mr. Morris. ... This is the people [sic] that were brought into this and why they did it.  If they think at the end of the day they have good faith, it's the good faith that's simply the product of desperation and compartmentalization.
>
> If they get the money just like Alex in that stupid story, they rationalize it and say, you know what? I am owed that money.  Just like that case, in this case, if they get the money from the man, they say, you know, it's the IRS. They're a big organization.  It's their mistake.  They should go after the banks anyway. So they rationalize it that way.  They say to themselves, all I did was got

>one over on the man.
>
>Well, ladies and gentlemen of the jury, the man is you. The man is you. The man is me. The man is all of us. And what these people are doing at the end of the day is trying to get one over on us.
>
>I ask you at this point don't let them do it again. Hold them criminally accountable by doing the only thing you can in this case, speaking with one voice and returning an indictment [sic] holding these defendants accountable.

(Closing Arg. Excerpt Tr. at 43, ll. 1 - 22).

Neither defendant objected to these concluding remarks.

After reminding the jury "that, like opening statement, closing arguments are not evidence and may not be used by you as such," the Court left the jury to retire to commence its deliberations. The jury deliberated that day, April 26, 2012, for approximately ninety minutes until excused by the Court until Monday, April 30, 2012 to continue with its deliberations (DE 504).

On April 30th, at approximately 9:55 a.m., after the jury resumed its deliberations, defendant Morris filed the instant motion, supplementing the motion some twenty minutes later with proposed curative instructions to give the jury during its deliberations (DE 506). At approximately 10:55 a.m. that day, the jury submitted a note to the Court indicating that it had returned verdicts in the case. The Court took these verdicts, discharged the jury and held the instant motion in abeyance until briefing and possible argument by the parties.

## Argument

Although not expressly stated, defendant Morris's objection and his instant motion appear to be directed to the final passages of undersigned government counsel's concluding remarks in

rebuttal closing.  Defendant Morris characterizes these remarks as "a naked appeal to the personal interests of the jury" based on the assertion that their tax dollars had been misappropriated by defendant Morris.  Though afforded a full business day and two additional calendar days to do so, defendant Morris did not raise this issue with the Court until the jury was in the midst its second day of deliberations in this case.  Because of the belated nature of the objection and motion, the Court was effectively deprived the opportunity to consider the objection and motion on their merits before the jury returned a verdict, thereby effectively precluding the Court from either granting defendant Morris a mistrial or a curative instruction, the motion's alternative branch.

Under the circumstances, Morris's motion must now be considered a request for a new trial pursuant to Rule 33(a) of the Federal Rule of Criminal Procedure.  While that provision authorizes a court to grant a new trial whenever "the interest of justice so requires," improper statements by a prosecutor warrant a new trial only where they influenced the jury's verdict. *United States v. Pickard*, 278 F.Supp.2d 1217, 1248 (D.Kan.2003)(citing *United States v. Broomfield*, 201 F.3d 1270, 1276–77 (10th Cir.), *cert. denied*, 531 U.S. 830 (2000)).  As a general matter, a conviction should not be easily overturned on the basis of a prosecutor's comments standing alone because the statements must be viewed in context, including the strength of the evidence against the defendant, whether curative instructions were given, and whether the prosecution was responding to an attack made by defense counsel. *United States v. Young*, 470 U.S. 1, 11 (1985); *United States v. Oles*, 994 F.2d 1519, 1524 (10th Cir.1993).

Moreover, a motion for new trial under Rule 33 generally is not regarded with favor and is granted only with great caution. *United States v. Powell*, 165 F.Supp.2d 1230, 1233 (D. Kan.

2001)(citing *United States v. Custodio*, 141 F.3d 965, 966 (10th Cir.1998)). Where, as here, a defendant fails to make a contemporaneous objection at trial to the purportedly offending remark, the reviewing tribunal, whether an appellate or trial court, should apply a plain error standard in assessing the new trial motion. *See United States v. Yoakam*, 168 F.R.D. 41, 44 n.2 (D. Kan. 1996); *United States v. Norris*, 753 F.Supp.2d 492, 531 (E.D.Pa. 2010). *See also United States v. Hernandez*, 327 F.3d 1110, 1114 (10th Cir. 2003)(district court erred in granting new trial based on government counsel's asserted improper closing argument where no contemporaneous objection made by defense and stringent test of plain error had not been met), *cert. denied*, 540 U.S. 915 (2003); Fed. R.Crim.P. 52(b). *Cf. United States v. Powell*, 165 F.Supp.2d at 1240 (applying plain error standard regarding new trial motion based on claimed jury instruction error to which no objection was lodged).[5]

The plain error standards to be applied are well established in this circuit:

> Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.""When evaluating allegedly inappropriate remarks of counsel for plain error, we must view the remarks in the context of the entire trial."

*United States v. Fleming*, 667 F.3d 1098, 1103 (10th Cir. 2011)(citations, quotations omitted). As defendant Morris failed to make a contemporaneous objection, it is his burden of persuasion with

---

[5] *But see United States v. Ibisevic*, 761 F.Supp.2d 326, 340 n. 69 (E.D.Va..2010)(In a motion for a new trial, the interests of justice standard—not the plain error standard—applies even where defendant does not timely object to the error at trial. It is for this reason that new trial motions must be granted sparingly; otherwise, a "perverse incentive" would arise whereby "[a] party seeing error would be free to sit silently, hoping to prevail in spite of the error, but nonetheless confident that if he does not prevail he can still obtain a new trial based on the error." ), *judgment vacated*, 675 F.3d 342 (4th Cir. 2012).

respect to prejudice, and he is entitled to relief only if it shown that the purportedly offending remarks are "plainly improper," and he further demonstrates that the improper statement affected his substantial rights. *Id*. *See also United States v. Mendoza*, 543 F.3d 1186, 1194 (10th Cir.2008) ("Under the plain error standard, we reverse only when an error impacts a party's substantial rights, asking whether there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different."); *United States v. Franklin–El*, 555 F.3d 1115, 1124–25 (10th Cir. 2009)("[T]he line between proper and improper advocacy is inexact, and even improper conduct does not in all cases warrant reversal."). Defendant Morris can show neither.

The challenged rebuttal closing remarks in this case were not plainly in error. While remarks construed as appeals to the pecuniary interest of a jury, such as its interest as taxpayers, have, in some circuits outside the Tenth Circuit, been deemed improper under certain circumstances, *see, e.g., United States v. Palma*, 473 F.3d 899, 902-03 (8th Cir. 2007)(citing cases), the challenged remarks in this case were not intended, nor can they be fairly considered, as a naked appeal to the jurors to abandon their role as neutral arbiters of the facts and to decide the case instead on the basis of personal interest and bias. The remarks were, not on their face, an explicit entreaty to convict defendant Morris or his co-defendant based on the assertion that they had stolen money from the jury either individually or as members of the public as a whole. Read in context, the remarks were, at least in part, part of an overall explanation that the rationalization and compartmentalization undertaken by defendant Morris's clients – if not himself – was specious; the OID clients could not rationalize that they were simply recovering their own money from an impersonal bureaucracy, these comments sought to convey, because

they were really were stealing money from the public at large.  The remarks were part of a broader discussion as to how OID clients like Lissy sought to convince themeselves that neither they, nor defendant Morris, had done anything wrong but instead had been acting in good faith.  They were  meant to show the transparency of the asserted good faith belief supposedly shared by defendant Morris and his clients, by observing that the intended misappropriation of funds was not a self-remedy but outright theft.  The undersigned's final entreaty – 'not to let them do it again' - was an effort to implore the jury not to engage in the same self-deception as those OID scheme adherents who sought to rationalize their conduct in the manner described.

       The challenged rebuttal closing remarks in this case were also not plainly in error because they were in response to comments made by defendant Morris's counsel in her opening statement and closing argument.  They were invited responses in two distinct, but related, respects.  First, as indicated in the recital above, it was counsel for defendant Morris, not government counsel, who first interjected into the trial, in an express way, the notion that conduct at issue in the case involved taxpayer funds that affected the public at large, characterizing the fraudulently obtained tax refunds as "our money" (Closing Arg. Excerpt Tr. at 10, l. 22)("They aren't happy that they used our money and paid Mr. Armstrong a lot of money"); (*id*. at 30, l. 11)("The Government is not happy about paying out a lot of our money).  It was thus defendant Morris's arguments that first invoked the pecuniary interests of the jurors in this case (albeit in the context of suggesting that the targeted government agency, the IRS, had been foolhardy with jurors' taxpayer funds), thereby inviting the government to address those same interests in its rebuttal arguments.

       Second, the challenged rebuttal remarks were invited responses – and an invitation that the government took up in rebuttal – because of the context in which Morris's counsel addressed

these pecuniary interests. Defendant Morris's counsel suggested, both in opening and closing comments, that the charged conduct in this case was not really criminal in nature and became the subject of prosecution only because the targeted government agency was angered about how it had been taken in and allowed taxpayer dollars to be paid out in refund claims based on frivolous returns. The challenged rebuttal comments, in observing that the "man" who had been deceived and paid out money in this case was really the jurors and other members of the public at large, responded to this contention by reminding the jurors that the crimes at issue involved more than an agency's sense of wounded pride and, correspondingly, that the prosecution was about more than vindicating that sense of wounded pride. The Tenth Circuit, following Supreme Court precedent, has consistently recognized that "considerable latitude is given [to] the prosecutor in closing argument in replying to an argument raised by defense counsel's closing statement." *United States v. Fleming*, 667 F.3d at 1105 (quoting *United States v. Janus Indus.*, 48 F.3d 1548, 1558 (10th Cir.1995))(citing *United States v. Hall*, 625 F.3d 673, 685 (10th Cir.2010) ("Prosecutors have considerable latitude to respond to an argument made by opposing counsel." (quotations omitted)); *United States v. Grey Bear*, 883 F.2d 1382, 1391–92 (8th Cir.1989) ("It is well established that prejudicial error does not result from the improper remarks made during closing argument when such remarks were provoked by opposing counsel")). *See generally United States v. Young*, 470 U.S. 1 (addressing "invited response" or "invited reply" rule in connection with assessing impact of alleged prosecutorial misconduct in closing arguments). Because the challenged remarks in this case were prompted by defendant Morris's counsel's own comments and remarks, as opposed to being directed without provocation toward inciting the jurors passions by suggesting that they act as the conscience of the community, the challenged

remarks were not plainly in error. *United States v. Fleming*, 667 F.3d at 1105 (concluding that prosecutor's statements – about bringing illegal drugs from Denver to Cheyenne to pollute the community and taking money back to Denver – were part of invited responses and so not improper).

Defendant Morris fails, in any event, to show that his substantial rights were affected by the challenged remarks, or, more particularly, that there was a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.  In assessing whether the requisite prejudice has been established, this circuit considers, among other things, in particular, the extent of the alleged misconduct, the steps taken by the trial court to mitigate the impact of such conduct, and the role of the misconduct within the case as a whole. *United States v. Fleming*, 667 F.3d at 1106.  See also *United States v. Oberle*, 136 F.3ed 643, 650 (10th Cir. 1998)(factors relevant to determining whether the improper commentary affected the fairness of the trial include whether the instance was singular and isolated, whether the district court instructed the jury that the attorneys' argument was not evidence, and whether there was substantial evidence of the defendant's guilt).  Undersigned government counsel's challenged remarks here were not a focal point of his overall arguments and, given the context of the overall trial and all of the arguments in the case, did not detract from the proper focus of the case. *United States v. Fleming*, 667 F.3d at 1106.  This Court instructed the jury a number of times during the course of trial – including immediately before closing arguments, during the prosecution's rebuttal conclusion (Closing Arg. Excerpt Tr. at 33, ll. 14-16)  and at the conclusion of closing arguments (*id*. at 43-44) – that arguments of counsel in closing and generally were not evidence that the jury could consider.  And the evidence adduced at trial overwhelming established the

guilt of both defendants Morris and Armstrong.  Under the circumstances, there is no reasonable doubt, no less probability, that the challenged rebuttal remarks by undersigned counsel did not influence the outcome of this case.  The evidence of defendants' guilt, and not the invited responses by the prosecutor, determined that.

## Conclusion

For the foregoing reasons, the United States respectfully submits that defendant Morris's motion, styled Objection to Government Closing Argument and Request for Mistrial Or, in the Alternative, a Curative Instruction, be denied.

Respectfully Submitted,

JOHN F. WALSH
United States Attorney

By: *s/Kenneth M. Harmon*
Kenneth M. Harmon
Assistant United States Attorney
District of Colorado

<u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on this 7th day of May, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF, which will send notification to counsel listed below.

  Lisa Monet Wayne
  lmonet20@aol.com

  David L. Owen
  davidowen@lodopc.com


            By:  s/ *Kenneth M. Harmon*
                KENNETH M. HARMON
                Assistant United States Attorney