IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 10-CR-00317-REB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

2.      RICHARD K. ARMSTRONG,

        Defendant.

---

**GOVERNMENT'S SENTENCING STATEMENT**

---

The United States of America, by and through Kenneth M. Harmon, Assistant United States Attorney, and Kevin F. Sweeney, Special Assistant United States Attorney, submits the following sentencing statement:

## I. INTRODUCTION

The defendant was charged by way of indictment with: one (1) count of mail fraud, in violation of Title 18, United States Code, Section 1341; eight (8) counts of filing false claims in violation of Title 18, United States Code, Section 287; one (1) count of conspiracy to defraud the United States with respect to claims in violation of Title 18, United States Code, Section 286; three (3) counts of engaging in monetary transaction in criminally derived property, in violation of Title 18, United States Code, Section 1957.

The defendant was tried before a jury, with trial commencing on April 9, 2012 and concluding on April 30, 2012. The jury returned guilty verdicts on all thirteen counts for which he was charged in the indictment.

## II. STATUTORY PENALTIES

The maximum statutory penalty for mail fraud per count is: not more than twenty (20) years imprisonment; not more than a $250,000 fine; a supervised release term of not more than three (3) years; and a $100 special assessment fee.  Filing false claims against the United States carries a maximum statutory penalty per count of: not more than five (5) years imprisonment; not more than a $250,000 fine; a supervised release term of not more than three (3) years; and a $100 special assessment fee.  The maximum statutory penalty for conspiracy to defraud the United States with respect to claims is: not more than 10 years imprisonment; not more than a $250,000 fine; a supervised release term of not more than three (3) years; and a $100 special assessment fee. Engaging in monetary transactions in criminally derived property carries a maximum statutory penalty per count of: not more than ten (10) years imprisonment; not more than a $250,000 fine or twice the amount of the criminally derived property involved in the transaction; a supervised release term of not more than three (3) years; and a $100 special assessment fee.

## III.  FACTS RELEVANT TO SENTENCING

**BACKGROUND:**

Richard Armstrong is a married 77 year old male from Prescott, Arizona.  Based upon the testimony of his former CPA Ken Chafin, Armstrong is financially sophisticated and possesses an above average knowledge of the tax laws.  According Chafin's testimony, Armstrong had discussed various types of sophisticated transactions with him over the years to include complex tax concepts involving 1031 like-kind exchanges and corporate loans to shareholders.  Additional evidence of Armstrong's financial sophistication introduced at trial included loan applications where Mr. Armstrong listed significant assets and income.  On one loan application submitted by Mr.

Armstrong to Cessna Finance Corporation, Mr. Armstrong listed his net worth as $2.67 million.

**THE SCHEME:**

In late 2008, Armstrong worked with Larry Hall, Jan Reynolds, and Curtis Morris as part of an original issue discount ("OID") redemption scheme. Hall and Reynolds promoted the scheme sometimes by working with and touting clients who had successfully obtained refunds from the IRS. Armstrong was one of those clients who, through refund checks he had received from the IRS, recruited others into the scheme. He also assisted clients in coordinating the preparation and filing of false OID tax returns and in responding to IRS notices informing clients that the OID tax returns were frivolous and subject to civil fines.

According to the testimony at trial, clients of the scheme were instructed to compile lists of all of their debts and lines of credit and sometimes bank account information and to provide this information to Hall, Morris, or Reynolds for the preparation of a rarely used IRS form known as a Form 1099-OID. The Forms 1099-OID would claim that large amounts of money for federal income taxes had been withheld by certain financial institutions like credit card companies and mortgage lenders when no such money had, in fact, been withheld. The Government called numerous financial institutions at trial and all testified that the Forms 1099-OID at issue were completely bogus. Once completed, one set of these bogus Forms 1099-OID were typically mailed to the IRS. Another set was used by the scheme tax preparer, co-defendant Curtis Morris, to prepare false income tax returns and/or amended income tax returns for years 2005-2008 claiming the large amounts of bogus federal income tax withholding listed on these forms. Most of these false tax returns attached copies of the bogus Forms 1099-OID. These large federal

income tax withholding amounts substantially inflated clients' claimed income tax refunds to levels that sometimes exceeded a million dollars.

According to the testimony at trial, Hall and/or Reynolds advocated for and offered their services in setting up nominee entities such as land trusts for clients as part of this scheme. Consistent with this portion of the scheme and the testimony and evidence concerning other OID scheme clients, Armstrong attempted to conceal his fraudulent tax refund proceeds shortly after receiving over $1.6 million in fraudulent tax refund proceeds by transferring a large portion into real estate through a nominee entity called Harvest Mile Land Trust.[1]  Based upon the testimony of IRS revenue officer Jerry Carter, the placement of fraudulent tax refund proceeds paid by the IRS to one individual into the names of other individuals or entities typically frustrate the IRS's ability to recover that money.

The OID refund scheme appears to have been designed, in part, to avoid detection of the fraud.  According to the testimony of Kristy Morgan, the IRS keeps federal income tax withholding information reported to it by financial institutions in its master database and, when appropriate, can verify federal income tax withholding amounts claimed on tax returns with these records.  If the bogus Forms 1099-OID sent to the IRS had been processed and the federal income tax withholding information inputted into its system, it would have frustrated the IRS's ability to determine that the OID tax returns were false.  However, the IRS did detect that all of the Forms 1099-OID separately sent to the IRS were fraudulent and did not input the information on these forms into their master database.

---

[1] This is discussed in greater detail below.

**ROLE IN CONSPIRACY**

The evidence from trial indicates that, in late 2008, Armstrong filed three amended U.S. Individual Income Tax returns for the years 2005, 2006 and 2007 claiming total refunds due of $1.4 million. The returns in question were prepared by co-defendant Morris. Morris signed and dated the completed returns as paid preparer on October 20, 2008 and sent them to Richard Armstrong in Prescott, Arizona on October, 23, 2008. Armstrong signed these returns the next day and mailed them to the IRS which received them in Austin, Texas on November 3, 2008. Based on these three false claims, the IRS issued three refund checks totaling $1,637,481.61.[2]

Shortly after receiving the refund checks, Armstrong communicated with his longtime CPA Ken Chafin by email. Armstrong explained that he had received refunds based on an OID program and sent Chafin a document explaining the OID scheme and process. Chafin responded to Armstrong on December 16, 2008 warning him that the OID scheme was illegal. He urged Armstrong to return the money to the IRS or face potential criminal prosecution. Not only did Armstrong not return the money to the IRS or undue the tax returns that claimed them, he filed an additional OID tax return for tax year 2008 in early 2009 claiming an additional refund due of $1.7 million. The IRS did not issue refunds for the submission of this 2008 tax return.

Emails and federal express records introduced at trial established that Armstrong recruited Elyse Del Francia and Roger Wanderwindt into the OID program. Both Del Francia and Vanderwindt had OID tax returns prepared by Morris and filed with the IRS claiming large tax refunds due. Emails and federal express records indicate that Armstrong assisted Roger

---

[2] As IRS employee Kristy Morgan testified to at trial, the difference between the approximately $1.4 million in refunds Armstrong claimed and the approximately $1.6 million the IRS actually paid to Armstrong is the interest accrued and paid out to Armstrong by the IRS.

Vanderwindt with logistical matters regarding his OID filings including mailing Forms 1099A and 1096 to the IRS. Moreover, emails introduced at trial indicate that Armstrong assisted Elyse Del Francia in responding to notices she received from the IRS informing her that the OID tax return she had filed was frivolous and must be corrected within thirty (30) days to avoid a civil fine.

**CONCEALMENT OF PROCEEDS**[3]

Shortly after the aforementioned email exchange between Armstrong and Chafin, Armstrong began to conceal the fraudulent tax refund proceeds he had received from the IRS. By February of 2009, approximately two months after receiving this money, only about $5,000 of the $1.6 million of the fraudulent tax refund proceeds deposited into Armstrong's bank account remained. On or about December 22, 2008 Armstrong wired $727,000 to Hall for the purchase of a home. After another $665,000 wire from Hall to a title company, Hall purchased a home in Brighton, Colorado with this money and took title to that property via a nominee entity called Harvest Land Trust. Subsequently, Hall wired $127,000 back to Armstrong and the property was soon transferred by quit claim deed from Harvest Land Trust to Foreign Enterprises. At trial, evidence was introduced showing that the mailing address used by Foreign Enterprises on this quit claim deed, as well as a deed for another home in Lake Havasu, Arizona that was previously owned by Armstrong, came back to a mail drop with forwarding services rented by Armstrong.

The evidence at trial also established that Armstrong made several others transactions designed to conceal his fraudulent tax refund proceeds. First, bank records were introduced at trial

---

[3] Attached to this sentencing statement are excepts from Government Exhibit 1205 which was presented as a demonstrative exhibit at trial. These PowerPoint slides depict some of the more complex transactions Armstrong used to conceal the proceeds of his fraud.

that showed Mr. Armstrong transferred $351,000 to a bank account at Caye International Bank located in the country of Belize. Special Agent Flynn testified at trial that Belize is notorious for not cooperating with the United States Government in actions to collect from bank accounts located therein and that, in this case, IRS efforts to collect from these foreign bank accounts had proved unsuccessful. Second, evidence showed that Armstrong purchased an aircraft for $345,000 from a company he and his wife owned and controlled and placed a bogus lien on the plane. Specifically, Mr. Armstrong recorded a bill of sale with the Federal Aviation Administration and subsequently recorded a large aircraft security agreement listing San Marten Management as the lender/creditor. The address for San Marten Management comes back to the mail drop rented by Mr. Armstrong and used on the quit claim deeds for the Brighton property as well as Mr. Armstrong's Lake Havasu residence. Moreover, Special Agent Flynn performed a search of IRS records, Secretary of State records, and commercial databases and found nothing to substantiate the existence or legitimate operations of San Marten Management.

**GOVERNMENT TAX LOSS COMPUTATIONS:**

At trial, Special Agent Greg Flynn testified that his investigation uncovered numerous false OID tax returns prepared as part of the scheme claiming at least $22 million in fraudulent income tax refunds. The Government admitted forty-eight such false tax returns. These tax returns collectively claimed over $21 million in fraudulent refunds. Of these tax returns, four of them were for Richard and Sharon Armstrong. Eight more were prepared for scheme clients Del Francia and Vandewindt who Armstrong recruited into the scheme and/or assisted in the preparation of their tax returns or responses to IRS notices. The refunds claimed on those

scheme tax returns for Armstrong, Del Francia, and Vandewindt and, hence, the Government's intended loss calculations are as follows:

|    | Year | Form  | Taxpayer                          | Refund Claimed | GX   |
|----|------|-------|-----------------------------------|----------------|------|
| 1  | 2005 | 1040X | Armstrong, Richard K & Sharon L.  | 582,352        | 101A |
| 2  | 2006 | 1040X | Armstrong, Richard K & Sharon L.  | 283,746        | 102A |
| 3  | 2007 | 1040X | Armstrong, Richard K & Sharon L.  | 605,300        | 103A |
| 4  | 2008 | 1040  | Armstrong, Richard K & Sharon L.  | 1,739,452      | 104A |
| 5  | 2005 | 1040X | Del Francia, Elyse                | 203,203        | 133A |
| 6  | 2006 | 1040X | Del Francia, Elyse                | 253,653        | 134A |
| 7  | 2007 | 1040  | Del Francia, Elyse                | 1,126,473      | 135A |
| 8  | 2008 | 1040  | Del Francia, Elyse                | 345,000        | 136A |
| 9  | 2005 | 1040X | Vanderwindt, Roger                | 793,057        | 165A |
| 10 | 2006 | 1040X | Vanderwindt, Roger                | 263,650        | 166A |
| 11 | 2007 | 1040X | Vanderwindt, Roger                | 858,985        | 167A |
| 12 | 2008 | 1040  | Vanderwindt, Roger                | 384,851        | 168A |
|    |      |       | **TOTAL**                         | **$7,439,722** |      |

Of these returns, the IRS actually paid out $1,637,481.61 in fraudulent tax refunds to Armstrong of which the IRS has only been able to recover $9,495.89. Accordingly, the IRS has yet to be able to recover $1,627,985.72 of the loss caused by the defendant. The refunds actually paid out and, hence, the government's actual loss calculations are as follows:

| Client    | Tax Year | Paid Out       | Recovered   | Unrecovered    |
|-----------|----------|----------------|-------------|----------------|
| Armstrong | 2005     | $699,449.70    | $9,495.89   |                |
| Armstrong | 2006     | $315,252.75    |             |                |
| Armstrong | 2007     | $622,779.16    |             |                |
| **TOTAL** |          | $1,637,481.61  | $9,495.89   | $1,627,985.72  |

### IV. SENTENCING COMPUTATION

The government calculates the defendant's advisory sentencing guideline range as follows:

A.   Pursuant to U.S.S.G. §3D1.2(d), the counts for which the defendant was convicted should be grouped together to produce a single offense level. The base guideline is U.S.S.G.

§2B1.1 and, in light of the mail fraud convictions, the base offense level is **7**. U.S.S.G. §3D1.2(d), Application Note 3. This base offense level is increased by the greater of the estimated actual and intended loss amounts. U.S.S.G. §2B1.1(b)(1), Application Note 3(a) & (c). The loss amounts attributable to Armstrong relate to his tax returns and the tax returns of scheme clients he aided and assisted and/or those clients for which it was reasonably foreseeable to Armstrong would file false OID tax returns requesting fraudulent refunds. U.S.S.G. §1B1.3(a) & Application Note 2. These individuals include Roger Vanderwindt and Elyse Del Francia at a minimum. In this case, the actual loss that resulted from the filing of false tax returns for Armstrong, Vanderwindt, and Del Francia, as calculated by the Government, is at least $1,637,481.61 but the intended loss is over $7 million. Using the above intended loss amount, the application of §2B1.1(b)(1) results in an offense score for the defendant of **27** (U.S.S.G. §2B1.1(b)(1)(L)(loss more than $7,000,000 but not more than $20,000,000)).

      B.      Pursuant to U.S.S.G. § 2B1.1(b)(10)(C), the defendant's offense score should be increased **2 Levels** because the charged offenses involved sophisticated means. Sophisticated means is defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." The application note lists several non-exhaustive examples including "hiding assets or transactions, or both, through fictitious entities, corporate shells, or offshore financial accounts." However, the utilization of one's knowledge about IRS procedures to minimize the chances of detection has also been held to be sophisticated means by the Tenth Circuit. United States v. Price, 41 Fed.Appx. 283 (10th Cir. 2002)(holding that the defendant's use of inside knowledge of IRS procedures to manipulate her clients' false tax returns in a way that made it less likely they would be audited constituted sophisticated means).

This adjustment, the Government submits, is based on both the execution and concealment of the charged offenses. The scheme clearly involved the concealment of tax refund proceeds in nominee entities such as land trusts and at least one fictitious creditor. However, the execution of the scheme also appears to have been designed to minimize detection of the fraud. This is not a case about simply filing false tax returns. By attempting to file bogus Forms 1099-OID with the IRS prior to filing false returns supported by those bogus forms, the scheme attempted to frustrate IRS procedures related to the verification of federal income tax withholding claimed on the fraudulent tax returns with records in the IRS database regarding that which was actually reported to the IRS by financial institutions.

     C.     Pursuant to U.S.S.G. § 2S1.1(a)(1) and (b)(2)(A), the defendant's offense score should be increased **1 Level**, because he was convicted under 18 U.S.C. § 1957.

     D.     There are no adjustments under U.S.S.G. Parts 3A-3C which apply in this case.

     E.     The defendant is not eligible to receive an offense level reduction for acceptance of responsibility, pursuant to U.S.S.G. §3E1.1.   The resulting offense level would, therefore, remain **Level 30**.

     F.     The adjusted offense level would, therefore, be **30**.

     G.     The government is unaware of any prior criminal history of the defendant. Assuming the defendant has no criminal history, his criminal history category would by **Category I**.

     H.     The guideline range resulting from the estimated offense level and criminal history category above, is **97 to 121 months**.

  I. Pursuant to guideline §5E1.2, assuming the estimated offense level above, the fine range for this offense would be between $15,000 and $1,454,000 (twice the $727,000 of criminally derived property used in the § 1957 transactions).

  J. Pursuant to guideline §5D1.2, if the Court imposes the term of supervised release, that term shall be at least one year but no more than three years.

  K. The Court should order restitution to the IRS in this case as a condition of supervised release, because the IRS is an identifiable victim that has suffered pecuniary loss. U.S.S.G. §5E1.1(a)(2).

## V. GOVERNMENT'S SENTENCING RECOMMENDATION

The United States respectfully submits and recommends that the defendant should receive a sentence that includes an imprisonment term within the advisory sentencing guideline range calculated above and that the Court should order the defendant, as a special condition of supervised release, to pay restitution to the IRS in the amount of $1,627,985.72.

Respectfully submitted,

JOHN F. WALSH  
United States Attorney

s/Kevin F. Sweeney  
By:  Kevin F. Sweeney  
Special Assistant U.S. Attorney  
1225 Seventeenth Street, Suite 700  
Denver, Colorado 80202  
Tel. No. (303) 454-0100  
Fax No. (303) 454-0402  
E-mail: kevin.sweeney3@usdoj.gov

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 15th day of June, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF, which will send notification to counsel listed below.  I further transmitted, on June 15, 2012, a copy of the same by email to counsel listed below and to United States Probation Officer Justine Kozack.

    David L. Owen
    davidowen@lodopc.com

    Justine Kozack
    Justine_Kozack@cod.uscourts.gov

I also certify that I sent the foregoing via U.S. Mail to the following:

    Richard Kellogg Armstrong
    #20413-298
    Englewood Federal Correctional Institution
    Inmate Mail/parcels
    9595 West Quincy Avenue
    Littleton, CO 80123


                             s/ Kevin F. Sweeney
                             KEVIN F. SWEENEY
                             Special Assistant United States Attorney
                             U.S. Attorney's Office
                             1225 Seventeenth Street, Suite 700
                             Denver, Colorado 80202
                             Tel. No. (303) 454-0100
                             Fax No. (303) 454-0402
                             E-mail: kevin.sweeney3@usdoj.gov