## NOTICE OF AND RESCISSION OF BRIEF AMICUS CURAIE FOR CAUSE

NOTICE DATE: Day Seven        Month Four      Year 2013 C.E.

**FILED**

UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 11 2013

JEFFREY P. COLWELL
CLERK

UNITED STATES DISTRICT COURT COLORADO
Gregory C. Langham, Clerk of the Court
901 19th Street
Denver, Colorado 80294-3589

In reply to: "Case 1:10-cr-00317-REB Document 326 Fil~~ed 10/17/11 USDC Color~~ado Page 1 of 3
5 UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO DENVER DIVISION BRIEF AMICUS
CURAIE, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24
, 25, 26, 27,28, 29, 30, 31, 32 Tony Davis 12/14/11, 33, Page 34 of 35 Tony Davis, Page 35
of 35"

**PLEASE TAKE NOTICE** that I, Richard Kellogg Armstrong, sentient moral being rescind the
Original "supra" for cause. I made a mistake creating, signing, filing and Presenting
the BRIEF AMICUS CURAIE. I repent of my sin.

I willingly, knowingly, voluntarily, intentionally and intelligently perform this act and
deed.

[1]"My son, if you have become surety for your friend, if you have shaken hands in a pledge
for a stranger"[2]"You are snared by the words of your mouth; you are taken by the words of
your mouth."[3]"So do this, my son, and deliver yourself; for you have come into the hand of
your friend; go humble yourself; plead with your friend."[4]"Give no sleep to your eyes, nor
slumber to your eyelids."[5]"Deliver yourself like a gazelle from the hand of the hunter,
and like a bird from the hand of the fowler."

I RESERVE ALL MY RIGHTS WITH EXPLICIT RESERVATION AND WITHOUT PREJUDICE.

Sincerely,

*Richard Kellogg Armstrong*

Richard Kellogg Armstrong
c/o 20413-298
Federal Correctional
Institution – Lompoc
3600 Guard Road
Lompoc, California

Footnotes: 1)Proverbs 6:1 2)Proverbs 6:2 3)Proverbs 6:3 4)Proverbs 6:4 5)Proverbs 6:5
cc: UNITED STATES DISTRICT COURT Colorado, Judge Robert E. Blackburn, 901 19th Street, Denver, Colorado
80294-3589
cc: UNITED STATES DISTRICT COURT Colorado, 901 19th Street, Denver, Colorado 80294-3589

### CERTIFICATE OF MAILING

I, Richard Kellogg Armstrong, certify this NOTICE OF AND RESCISSION OF BRIEF AMICUS CURAIE FOR CAUSE was sealed
in an envelope with First Class Postage paid and deposited in a United States Postal Mail Box located in Unit J
at FCI Lompoc 3600 Guard Road Lompoc, California on April 7, 2013 C.E. for same day delivery to UNITED STATES
DISTRICT COURT COLORADO Clerk of the Court Gregory C. Langham, 901 19th Street, Denver, Colorado 80294-3589

*Richard Kellogg Armstrong*

Richard Kellogg Armstrong

**UNITED STATES DISTRICT COURT**
**FOR THE  DISTRICT OF COLORADO**
**DENVER  DIVISION**

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2011 OCT 17 · PM 1: 20

GREGORY C. LANGHAM
CLERK

BY_____ DEP. CLK

**IN THE CASE OF**

| | |
|---|---|
| **Richard Kellogg Armstrong**<br>**Petitioner** | §<br>§<br>§ |
| **Vs.**<br>**UNITED STATES OF AMERICA**<br>**Respondent** | §<br>§<br>§<br>§<br>§<br>§ |

Ref: No. :  1:10-cr-00317-REB-2

# BRIEF AMICUS CURAIE

Legal Accountability Workgroup on behalf of Richard Kellogg Armstrong, respectfully moves this Honorable Court for dismissal of all charges in his case as Armstrong is illegally imprisoned without statutory authority in violation of 18 USC § 4201(a).

## STATEMENT OF INTEREST

Legal Accountability Workgroup, a group specializing in Constitutional and Human Rights, files this amicus curaie on behalf of Armstrong, seeking an immediate order dismissing the criminal case, and finding of actual innocence according to law, and immediate release from unlawful confinement. "No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress." 18 USC § 4001(a).  Since as shown herein, Armstrong is illegally imprisoned without statutory authority, the court is petitioned to order his immediate release and declare his actual innocence.



GOVERNMENT
EXHIBIT
24
10-cr-317-REB

## I. INTEREST OF AMICUS CURIAE

Legal Accountability Workgroup, a firm specializing in the preservation of Constitutional and Human Rights, has investigated the case against Petitioner and found violations of Constitutional Rights by both the court and the Prosecutor's office in the above referenced criminal case. Petitioner is actually innocent by law of any charges against Petitioner and Amicus Curiae moves this court to issue an order declaring Petitioner actually innocent and declaring that the Department of Justice order Petitioner's immediate release.

## II. STATEMENT OF THE ISSUES

Legal Accountability Workgroup raises one issue, which the government has **admitted as fact** by failure to respond to the request for admissions by the government in the case of Shawn Harper v. United States, E.D.Tx. Beaumont Division.

1) Whether the District Court had jurisdiction over Petitioner pursuant to 18 U.S.C. § 3231 given the fact that the 1948 enactment of Pub. L. 80-772, which was codified as Title 18 of the U.S.C., was unconstitutional since no quorum was present on May 12, 1947 when the House voted on the bill and no quorum was present when the Speaker of the House and the President pro tempore of the Senate signed the bill on June 23, 1948, a violation of Article I, Section Clause I of the Constitution. Since the May 12, 1947 vote was 38 to 6 when the House had 435 members and the House did not vote on the bill at any other time in 1947 or in the second session of Congress in 1948, therefore no vote occurred by the House on this bill and without a vote of both Houses of Congress, the bill was never enacted. A further violation of the Quorum Clause of the Constitution occurred when Congress adjourned sine die on June 20, 1948 at 7 AM totally and completely adjourned and the bill was "signed" with Congress completely and totally adjourned and without a Quorum being present.

2) It should be noted that these facts have now been admitted by the government (request for admissions, failure to respond) and are now admitted facts by the Department of Justice. Those facts are now judicially noticed into this court. The Department of Justice waived argument on the issue in a habeas petition after a show cause order was issued by the court in Sean Carney v. United States, S.D.Tx, Houston Div. Therefore, as a matter of law, the party herein is entitled to relief.

## IIA.  CONTROLLING AUTHORITY

Article I, Section V, Clause I of the Constitution: "Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members, and a Majority of each shall constitute a Quorum to do Business; but a smaller Number may adjourn from day to day, and may be authorized to compel the Attendance of absent Members, in such Manner, and under such Penalties as each House may provide." The Court should take mandatory judicial notice of Article I, Section V, Clause I of the Constitution.

Carol Ann Bond v. United States, 09-1227, 6/16/11, in which the Supreme Court in a 9-0 vote reaffirmed its prior rulings related to a challenge to jurisdiction and declared that any statute that is repugnant to the Constitution is void. The Court should take mandatory judicial notice of Carol Ann Bond v. United States. The lower courts have repeatedly been warned not to overturn Supreme Court precedent.

Where issues arise as to jurisdiction or venue, discovery under the federal rules of civil procedure (rules 26-27) is available to ascertain the facts bearing on such issues. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-351, 57 L.Ed.2d. 253, 98 S.Ct. 2380 (1978). The Court should take mandatory judicial notice of *Oppenheimer Fund, Inc. v. Sanders*.

The Congressional Records of the 80th Congress, which establishes that no quorum was present on May 12, 1947 when the House "voted" on Public Law 80-772 and no quorum was in place on June 23, 1948 when the Speaker of the House and the President pro tempore of the Senate "signed" Public Law 80-772. The court should take mandatory judicial notice of the records of the 80th Congress.

The exhibits attached hereto, which are self-authenticating as government documents

1. The letter from Jeff Trandahl, Clerk of the House dated June 28, 2000, addressed to Charles Degan, in which Trandahl states that Title 18 was not voted on by Congress in June of 1948. **Exhibit A.** Since the document is self-authenticating, the court should take judicial notice of the document.

2. The letter from Karen L. Haas, Clerk of the House dated September 11, 2008 **Exhibit B**, in which he stated: "After conducting a thorough examination of the journals, I found no entry in the journal of the House of any May 12, 1947 vote on the H.R. 3190 bill, although pages 343344 of the Journal of the House of Representatives from the 1[st] Session of the 80[th] Congress indicates that the bill was amended, purportedly passed, and transmitted to the Senate for concurrence. The Senate took no action on the H.R. 3190 bill prior to the December 19, 1947 sine die adjournment...." Since the document is self-authenticating, the Court should take mandatory judicial notice of the document.

3. The letter from Nancy Erickson, Secretary to the Senate, to Mr. Wayne Matthews, **Exhibit C**, in which she stated: "I asked the Senate Historian's office to review the correspondence you enclosed, and they were able to verify that no action was taken by the Senate on H.R. 3190 prior to the December 19, 1947 *sine die* adjournment. I have enclosed relevant pages from the House journal and Congressional Record for your reference." Since the document is self-authenticating, the Court should take

mandatory judicial notice of the document.

4. A letter dated August 24, 2010 form the Office of the Clerk of the House, **Exhibit D**, in which it stated: "Our office has conducted research of the House Journal and the Congressional Record in regards to HR 3190 and the voice vote that was taken on May 12, 1947. After researching these official proceedings of the US House of Representatives we have been unable to find the names of the 44 Members who responded to the voice vote. We have included pages from the House Journal and the Congressional Record that shows the proceedings of that day as far as the quorum is concerned. Since the document is self-authenticating, the Court should take mandatory judicial notice of this portion of the document.

5. An internal memorandum to staff by Harley G. Lappin, Director of the Federal Bureau of Prisons, dated July 27, 2009 at 3:17 PM, **Exhibit E**, which states: Attention All Department Heads, there has been a large volume of inmate Request for Administrative Remedies questioning the validity of the Bureau's authority to hold or classify them under 18 U.S.C. §§4081, et. seq. (1948). On the claim that Public Law 80-772 ws never passed or signed in the presence of a Quorum or Majority of both Houses of Congress as required by Article 1-§5, Clause 1 of the Constitution. Although most courts have, thus far, relied on Field v. Clark, 143 U.S. 649 (1892) to avoid ruling on the merits of these claims, however the have been some which have stated that they were not bound by the Field case, but those cases did not involve any Quorum Clause challenge. So out of an abundance of caution, I contacted the Office of Legal Counsel, the National Archives and the Clerk of the House of Representatives to learn that there is no record of any quorum being present during the May 12, 1947 vote on the H.R. 3190 Bill in the House (See 93 Cong.Rec. 5049) and the record is not clear as to whether there was any Senate vote on the H.R. 3190 Bill during any session of the 80th Congress. There is only one Supreme Court case that says in order for any bill to be valid the Journals of both Houses must show that it was passed in the presence of a Quorum. See United States v. Ballin, Joseph & Co, 144 U.S. 3 (1892). The Clerk of the House states that the May 12, 1947 vote was a 'voice vote' but the Parliamentarian of the House states that a Voice vote is only valid when the Journal shows that a quorum is present and that it's unlawful for the Speaker of the House to sign any enrolled bill in the absence of a quorum. On May 12, 1947, a presence of 218 Members in the hall of the House was required to be entered on the Journal in order for the 44 Member 38 to 6 voice vote to be legal. It appears that the 1909 version of the Federal Criminal Code has never been repealed. Therefore, in essence our only true authority is derived from the 1948 predecessor to Public Law 80-772. "Although adjudication of the constitutionality of congressional enactments has generally been thought to be beyond the jurisdiction of federal administrative agencies, this rule is not mandatory," according to the Supreme Court in the case of Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 215 (1994). Therefore, the Bureau under the advise of the Legal Counsel feels that it is in the best interest of public safety to continue addressing all of these Administrative Remedy Requests by stating that only the Congress or the courts can repeal or declare a federal statute unconstitutional." Since the document is self-authenticating, the Court should take mandatory judicial notice of this document.

The Fair Warning Doctrine, which prevents any district court from obtaining jurisdiction pursuant to the 1909 codification of Title 18.

4

**Fair warning doctrine** invokes due process rights and requires that criminal statute at issue be sufficiently definite to notify persons of reasonable intelligence that their planned conduct is criminal. *United States v. Nevers*, 7 F.3d 59 (5th Cir. 1993). See *United States ex. Rel. Clark v. Anderson*, 502 F.2d 1080(3d Cir. 1974)(The notice requirements of Due Process would not permit a state, after ruling one of its criminal statutes was overly vague, to apply that statute's superseding predecessor statute in the very case which ruled the successor statute unconstitutional).

In *United States ex. Rel. Clark v. Anderson*, 502 F.2d 1080(3d Cir. 1974), 502 F.2d 1080, 1081-1082, the court found that at the time the offense occurred and the accused was indicted, "the state of Delaware had published and was holding out the new [statute] as its only proscription of such misconduct as the indictment charged." The crime was also not at the common law. The court ruled the new statute unconstitutional. *And by definition, an unconstitutional statute is one that fails to give fair notice that particular conduct is proscribed by the state.* See *United States v. Harris*, 1954, 347 U.S. 612, 617, 98 L.Ed. 989, 74 S.Ct. 808; *Connally v. General Construction Co.*, 1926, 269 U.S. 385, 391, 70 L.Ed. 322, 46 S.Ct. 126. Thus, the state's own interpretation of the new statute and its rejection of that section as a statutory basis for Clark's prosecution forced the court to hold that the new statute did not provide constitutionally adequate notice.

The *Clark* court determined that the defendant's conviction **could be upheld only if** the old statute, the supercession of which had been legislatively declared and publicly announced, could continue to serve as notice of the criminality of defendant's conduct. In order to reach that conclusion the court decided that one would have to reason, first that the new statute on its face gave adequate notice of its own invalidity, and second, that the public, thus informed, was then put on further notice that the officially announced statutory repeal or supercession of the old statute was legally ineffective. Id.

The court concluded that such reasoning was "too tortured and too far removed" from reality to satisfy the due process requirement that, at the time of the alleged offense, the accused shall have been on notice that his conduct was proscribed by the criminal law. The court could not even surmount the first hurdle that the new statute could serve as notice of its own invalidity. Without that notice, no occasion was available to consider the old statute as possibly relevant.

As in the *Clark* case and its Supreme Court precedents, to meet Due Process, Public Law 80-772 and 18 U.S.C. § 3231 would have had to give adequate public notice on their faces of their own invalidity and the public would have to have been put on further notice that the officially announced statutory repeal or supercession of the old statutes was legally effective. The court can not even reach the first hurdle, much less the second. The court obtained its jurisdiction to prosecute crimes pursuant to 18 U.S.C. § 3231. Without proper notice of the invalidity of the statute, defendant's indictment and conviction can not be upheld and the court has only one choice, to order dismissal of defendant's indictment and conviction ab initio.

According to standing precedent, this court had absolutely no jurisdiction to prosecute Defendant under either 18 U.S.C. § 3231 or the prior enactment. On June 25, 1948, President Truman signed into law Public Law 80-773 enacting into positive law Title 28, United States Code. Act of June 25, 1948, Ch. 646, § 1, 62 Stat. 869. That Act positively repealed the former criminal jurisdiction granted to the district courts. id., § 39 *et seq.*, 62 Stat. 991 *et seq.* (positive repeal listing former 28 U.S.C. § 41, ¶ 2 in schedule of repealed statutes). The court should take mandatory judicial notice of the Fair Warning Doctrine.

The court should take judicial notice of *Field v. Clark*, 143 U.S. 649 (1892), which

5

invoked the enrolled bill rule. *Field v. Clark* is inapplicable to this issue by its own terms:
"a Congress in *open session*". Field has since been overturned by the Supreme Court.

The court should take mandatory judicial notice that no court has made findings of fact
and conclusions of law regarding the Quorum issue.

## IIB.  ISSUE ONE:  SUMMARY OF THE ARGUMENT

Petitioners present issues to the Court which go to the jurisdiction of the District

Court's indictment and any judgment and commitment order and which establish that the

District Court's actions were *ultra vires* and that he remains imprisoned without legal authority

rendering his judgment void.

The district courts obtained their jurisdiction over Petitioner pursuant to a grant issued by

Congress by Public Law 80-772, Title 18 of the criminal code.   That law contained a

jurisdictional section, 18 USC § 3231[1], which gave the district court authority to prosecute

Petitioner.  A district court obtains its authority through acts of Congress.  Without the validity of

18 USC § 3231, the court had no authority to prosecute and its actions are *ultra virus*.  Since

Petitioner establishes as a matter of law that Public Law 80-772 was never enacted, then the

court had no authority pursuant to 18 USC § 3231 and Petitioner is currently imprisoned for

committing no crime.  As Petitioner establishes, Public Law 80-772, introduced as H.R. 3190,

was allegedly passed by the House in the first session of Congress in 1947[2], sent to the Senate,

but not voted on, Congress adjourned, then was reconvened by the President, then adjourned

sine die in December 1948.  In the second session of Congress in June of 1948, the same bill,

---

[1] That section was necessary to establish jurisdiction, because the Senate declared it necessary:  As the Senate stated
in Senate Report No. 1620, Calendar No. 1675, Revision of Title 18, United States Code, June 14, 1948, Mr. Wiley,
from the Committee on the Judiciary Submitted the following Report to accompany H.R. 3190: "....... This **report
is necessary** to preserve the provisions of section 371(1) of title 28 United States Code, 1940 edition, giving the
district court of the United States original jurisdiction of all offenses against the laws of the United States, exclusive
of the State courts."

[2] In fact, there was no quorum in Congress when the bill was passed by the House: "The speaker.  The question is
on the amendment offered by the gentleman from Pennsylvania (Mr. Walter).  The question was taken; and the
Speaker being in doubt, the House divided, and there were–ayes 38, noes 6.  So the amendment was agreed to.  The
bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to
reconsider was laid on the table." May 12, 1947, Congressional Record, House.

6

H.R. 3190, not a new bill, surfaced in the Senate, which materially amended it. The House then concurred in the amendments, **but never voted on the amended bill.** Thus the House allegedly passed one bill in 1947 when in fact **no quorum was present**, the Senate passed a different bill in 1948, and in fact, the House never voted on the bill Constitutionally in either 1947 or 1948. After the passage, Congress fully adjourned sine die on June 20, 1948 at 7 AM. The bill was then truly enrolled by the House. But which bill was enrolled as the bill passed? It was the House bill, which never actually passed the House, since no quorum was present. **After Congress was completely and fully adjourned, and the members were disbanded, the President pro tempore and the Speaker of the House signed the bill into law on June 23, 1948.** But which bill was signed into law? The truly enrolled bill? No. It was the bill passed by the Senate, but not the House, since the House never actually passed the bill. Then the Senate bill, never passed by the House, was 'signed into law by the President on June 25, 1948. Then, to compound the errors, the bill was never placed in the Federal Register as was required by the Federal Register Act, 44 USC § 1501, et seq. (1935). It was bad enough that the President was a democrat and the Speaker of the House and President pro tempore of the Senate were Republicans, and openly ridiculed each other and hated each other. However, that is no excuse to ignore the Constitution they all had taken an oath to uphold. Thus, a political bill, not a bill Constitutionally passed by Congress, is being used as the basis to imprison Petitioners, in direct violation of the Constitution of the United States. The actions amount to nothing less than peonage and slavery, acts never condoned by our founding fathers.

It should be noted that no appellate court has made proper findings of fact and law on the issues presented. It should also be noted that no district court case has precedent value, and that for a district court to even hear the issue and avoid it, ignore it, or make an improper ruling, is a violation of 28 USC § 455 and a prima facie case of bias and structural error.

## III. SUMMARY OF THE CASE

A. Course of Proceedings and Disposition in Court Below

Petitioner was charged with various alleged crimes based on the jurisdiction claimed by the courts pursuant to 18 USC section 3231.

B. Statement of Facts

Petitioner was charged with various alleged crimes in the district court, when in fact Petitioner is innocent as a matter of law.

## IV. SUMMARY OF THE ARGUMENT

The District Court erred (a) in unconstitutionally asserting jurisdiction over Petitioner because 18 U.S.C. § 3231 was never enacted.

## ARGUMENT

Petitioner challenges

Petitioner raises only two questions of law, which need to be reviewed *de novo*: (a) whether the 1948 codification of 18 U.S.C. § 3231, through the enactment of Pub. L. 80-772 was unconstitutional.



ISSUE ONE:  The District Court's Actions Were *Ultra Vires* and Petitioner Is Being Illegally Held in Custody since he is being held without Constitutional passage of a valid statute?

## ISSUE ONE

The facts related to this issue have already been admitted by the government and are now judicially noticed on the record.

THE DISTRICT COURT ORDER UNDER WHICH PETITIONER IS COMMITTED TO CUSTODY PURSUANT TO THE JURISDICTIONAL GRANT OF 18 U.S.C. § 3231 (OF PUBLIC LAW 80-772) WAS ISSUED *ULTRA VIRES*, UNCONSTITUTIONAL, AND THEREFORE, THE DISTRICT COURT LACKS JURISDICTION.

The district court got its jurisdiction over Petitioner from 18 U.S.C. § 3231, which purportedly gives the "district courts of the United States ... original jurisdiction ... of all offenses against the laws of the United States." § 3231, as well as most of chapter 211 (entitled "Jurisdiction and Venue") of Title 18, was codified on June 25, 1948, when Title 18 was originally codified upon the enactment of Public Law 80-772, in the Second Session of the 80th Congress.

Petitioner requests this Court dismiss the  indictment with prejudice and issue an order rendering Defendants indictment and conviction void, (or alternatively, due to the courts lack of jurisdiction and their conflict of interest and this courts potential conflict of interest pursuant to 28 USC § 455, forward this Petition to the Supreme Court) with instructions for the district court to declare unconstitutional and *void ab initio*: (1) Public Law 80-772 which purported to enact

Title 18, United States Code, Act of June 25, 1948, Chapter 645, 62 Stat. 683 *et seq.*, and (2) more specifically, Section 3231 thereof, 62 Stat. 826, which purported to confer upon "the district courts of the United States … original jurisdiction … of all offenses against the laws of the United States."  These legislative Acts violated the Quorum, Bicameral and/or Presentment Clauses mandated respectively by Article I, § 5, Cl. 1, and Article I, § 7, Cls. 2 and 3, of the Constitution of the United States.  The federal district court which rendered judgment and ordered commitment of this Petitioner, under Section 3231, lacked jurisdiction and, therefore, the judgment and commitment order is *void ab initio*.  To imprison and detain a Petitioner under a *void* judgment and commitment order is unconstitutional and unlawful.  Therefore, Petitioner must be discharged from any present confinements and his judgment must be declared *void* immediately to prevent ongoing or future harm.  Further structural error occurred in the passage of Title 18 of the criminal code because the statute violates the Federal Register Act, 44 USC §1501, et seq. (1935) as no notice was served on the public as required by the act, since the Act was signed into law by the President of the United States when Congress was fully adjourned and disassembled, it was a political act, not an Act of Congress.

"The[se] facts [as raised by Petitioner in his Motion to Correct an Illegal Sentence] set forth by petitioner must be accepted as true," and Petitioner was/is "entitled to a hearing to establish the truth of those allegations." Reynolds v. Cochran, 365 U.S. 525, 528, 533 (1961).  Failure to hold a hearing is a  violation of the Reynolds v. Cochran standard.  Furthermore, the failure to allow Petitioner to be heard before when the issue was raised   would violate Due Process (5th Amendment), the "pro se rule", the "Do No Harm Rule", and would establish that the District Court was not independent pursuant to these proceedings.

## A.  JURISDICTION OF THIS COURT TO HEAR THIS MOTION

The district court and the Circuit Court have jurisdiction to hear this argument, however the

district court has a direct conflict of interest in ruling on its own jurisdiction pursuant to 28 USC

§ 455, since the district court judge is civilly liable for acting without jurisdiction. This Court

also has a potential conflict of interest in ruling on its own jurisdiction.  This direct conflict of

interest almost dictates that all proceedings be stayed and this court forward the issue directly

to the Supreme Court for review.

## B.  CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

Article I, § 1, commands and declares that "[a]ll legislative Powers herein granted shall be vested

in a Congress of the United States, which shall consist of a Senate and House of

Representatives."

Article I, § 5, Cl. 1, commands, in relevant part, that "a Majority of each [House of Congress]

shall constitute a Quorum to do Business," excepting therefrom permission to "adjourn from day

to day" and "to compel Attendance of its Members, in such Manner, and under such Penalties as

each House may provide."

11

Article I, § 7, Cl. 2, commands, in relevant part, that "[e]very Bill which shall have passed both Houses, shall, before it becomes a Law, be presented to the President of the United States."

Article I, § 7, Cl. 3, commands, in relevant part, that "[e]very ... Resolution ... to which the Concurrence of the Senate and House of Representatives may be necessary ... shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the case of a Bill."

Title 1, United States Code, Section 106, Act of July 30, 1947, Chapter 388, Title I, Ch. 2, § 106, 61 Stat. 634, Pub.L. 80-278, provides, in relevant part, that "[w]hen [a] bill ... shall have passed both Houses, it shall be printed and shall then be called the enrolled bill ... and shall be signed by the presiding officers of both Houses and sent to the President of the United States."

Amendment V to the Constitution commands that "No person shall be held for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in active service in time of War or public danger; nor shall any person be subject to the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property without Due Process of law; nor shall private property be taken for public use, without just compensation."

28 USC § 455 (a) states: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

## STATEMENT OF FACTS

Lead Petitioner was tried, convicted, and has been committed into Executive custody by order of the United States District Court for the Eastern District of Texas, Beaumont Division, acting pursuant to the claim of original jurisdiction purportedly created by Public Law 80-772, Title 18 United States Code, Section 3231. By virtue of the commitment order, Petitioner was committed into the custody of the Attorney General and into the custody of the Bureau of Prisons. See 18 U.S.C. § 4082(a) (repealed) and § 3621(a) (enacted Oct. 12, 1984, and effective Nov. 1, 1987). Other Petitioners are similarly situated in districts in the United States. The other Petitioners are similarly situated.

The text of the bill, H.R. 3190 as amended, which became Public Law 80-772 (enacting Title 18, United States Code, and especially Section 3231), was passed only by the Senate and never passed by the House of Representatives. Moreover, that bill was never certified as enrolled, and was surreptitiously signed by the Speaker of the House and President pro tempore of the Senate under purported authority of a concurrent resolution agreed to by a Congress denounced by President Truman as "'body dominated by men with a dangerous lust for power and privilege,'" 27 Encyclopedia Americana 175 (2005), without quorums of the respective Houses sitting. Finally, that bill was mistakenly signed by the President of the United States after it was misrepresented to him by solitary Officers as a bill passed by both Houses, which was impossible, since no Congress was in session.

13

For those reasons, Public Law 80-772 which purportedly enacted Title 18, United States Code,

Act of June 25, 1948, Chapter 645, 62 Stat. 683 *et seq.* and Section 3231 thereof, 62 Stat. 826,

purporting to confer upon "the district courts of the United States … original jurisdiction … of

all offenses against the laws of the United States" violates Article I, § 5, Cl. 1, and Article I, § 7,

Cls. 2 and 3 and is therefore unconstitutional and *void ab initio*. The district court, which acted

against Petitioner, did so without jurisdiction and Petitioner's indictment and commitment order

is *void ab initio*, and any imprisonment and confinement thereunder is fundamentally

unconstitutional and unlawful.

4.      H.R. 3190 In The First Session Of The 80th Congress H.R. 3190 was introduced and

committed to the Committee of the entire House of Representatives on the State of the Union of

the First Session of the 80th Congress entitled "Crimes and Criminal Procedure." See House

Report No. 304 (April 24, 1947), p. 1. See also 94 Cong. Rec. D556-D557 (Daily Digest)

(charting H.R. 3190). H.R. 3190 differed from "five … bills which … preceded it … [because]

it constitute[d] a revision, as well as a codification, of the Federal laws relating to crime and

criminal procedure." 93 Cong. Rec. 5048-5049 (May 12, 1947). The bill was intended (1) to

revise and compile all of the criminal law, (2) to "restate[]" and "consolidate[]" "existing

statutes," (3) to "repeal" "obsolete, superseded, redundant and repetitious statutes," (4) to

coordinate the criminal Code with the "Federal Rules of Criminal Procedure" formerly enacted,

and (5) to "clarify and harmonize" penalties of the "many acts" passed by Congress which were

found to be "almost identical." (Id.) "The bill was ordered to be engrossed and read a third time,

was read a third time, and passed" the House on May 12, 1947, id.; Journal of the House of

Representatives ("House Journal"), May  12, 1947, pp. 343-344; 94 Cong. Rec. D556-D557

(showing H.R. 3190's only passage by the House of Rep. on May 12, 1947), sent to the Senate

14

and there "referred ... to the Committee on the Judiciary." 93 <u>Cong. Rec.</u> 5121, May 13, 1947; <u>Journal of the Senate</u> ("<u>Senate Journal</u>"), May 13, 1947, p. 252.

As passed and enrolled by the House of Representatives <u>H.R. 3190</u> included at section 3231, Subtitled "District Courts," the following text:

Offenses against the United States shall be cognizable in the district courts of the United States, but nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof.

<u>H.R. 3190 as passed by the H. of Rep.,</u> p. 367, § 3231. <u>See</u> <u>United States v. Sasscer,</u> 558 F. Supp. 33, 34 (D.MD. 1982).

On July 27, 1947, Congress adjourned without the Senate passing <u>H.R. 3190.</u> <u>See</u> 93 <u>Cong. Rec.</u> 10439, 10522 (July 26, 1947). On November 17, 1947, Congress reconvened pursuant to a Presidential proclamation. Yet, Congress again adjourned *sine die* on December 19, 1947," without the Senate passing <u>H.R. 3190.</u> <u>Kennedy v. Sampson,</u> 511 F.2d 430, 444 Appendix n. 4 (D.C. Cir. 1974).

5.      H.R. 3190 In Second Session Of The 80th Congress

The Senate Committee on the Judiciary reported amendments to <u>H.R. 3190</u> on June 14, 1948, under <u>Sen. Rep. No. 1620.</u> 94 <u>Cong. Rec.</u> 8075 (June 14, 1948); <u>Senate Journal,</u> June 14, 1948, p. 452. <u>Sen. Rep. No. 1620</u> contained "a large volume of amendments" and "the new Federal Rules of Criminal Procedure [were] keyed to the bill and [were] reflected in part II of [the new proposed] title 18." Heralding that, upon passage of the amended bill, "[u]ncertainty will be ended," the Senate wanted "the amendments adopted en bloc," including a new jurisdictional

15

section for Title 18.  94 Cong. Rec. 8721.  The report contained only the proposed amendments.
See Sen. Rep. No. 1620, pp. 1 & 4.


"[T]he amendments were considered and agreed to en bloc" and then "ordered to be engrossed."
94 Cong. Rec. at 8722 (June 18, 1948), Senate Journal, June 18, 1948, p. 506 (H.R. 3190, "as
amended," passed the Senate).  It was moved that "the Senate insist upon its amendments" by the
House (94 Cong. Rec. at 8722); and "[o]rdered that the Secretary request the concurrence of the
House of Representatives in the amendments."  Senate Journal, supra, p. 506; House Journal,
June 18, 1948, p. 688.


The House received the proposed amendments.  The Clerk "read the Senate amendments
collectively into the record with which the House concurred. 94 Cong. Rec. 8864-8865 (June 18,
1948); House Journal, June 18, 1948, p. 704 (the "said Senate amendments were concurred in").
Although "[t]he House agreed to the amendments to ... H.R. 3190," Senate Journal, June 18,
1948, p. 510, no action was taken on H.R. 3190 as amended.  The Journal of the House of
Representatives is devoid of any vote on H.R. 3190 itself on June 18, 1948, and thereafter
through adjournment on June 20, 1948.  Moreover, the official historical chart of H.R. 3190
clearly shows the only passage by the House of Representatives occurring on May 12, 1947, and
specifically references volume 93, page 5048 of the Congressional Record as the recorded date
the House passed the bill. 94 Cong. Rec. D556-D557 (Daily Digest).

Congress Agreed By Resolution To Continue Legislative Business By A Single Officer Of Each
House During Adjournment


On June 19, 1948, the House submitted and agreed to concurrent resolutions H.Con.Res. 218 and
219 and requested concurrence by the Senate.  House Journal, June 19, 1948, pp. 771-772;

16

Senate Journal, June 18, 1948, p. 577.  "[T]he Senate [then] passed without amendment these concurrent resolutions of the House."   94 Cong. Rec. 9349.   H.Con.Res. 218 "provid[ed] adjournment of the two Houses of Congress until December 31, 1948," id.; see Concurrent Resolutions, Second Session, Eightieth Cong., H.Con.Res. 218, June 20, 1948, 62 Stat. 1435-1436.   H.Con.Res. 219 "authorize[ed] the signing of enrolled bills following adjournment," 94 Cong. Rec. 9349, specifically resolving:

That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

See Concurrent Resolutions, supra, H.Con.Res. 219, June 20, 1948, 62 Stat. 1436.

Congress adjourned on June 20, 1948, pursuant to H.Con.Res. 218.  94 Cong. Rec. 9348, 9359; House Journal, June 20, 1948, p. 775; Senate Journal, June 20, 1948, p. 578.  Both Houses reconvened on July 26, 1948, pursuant to a proclamation of President Truman.  Senate Journal, July 26, 1948, p. 593 (showing reconvention); House Journal, July 26, 1948, pp. 792-793 (same).

**Post-Adjournment Signing Of H.R. 3190 By Single Officers Of The Houses, Presentment To & Approval Thereof By The President Pursuant To H.Con.Res. 219**

With both Houses adjourned, with no quorum, disassembled and dispersed, Mr. LeCompte, the Chairman of the Committee on House Administration reported that that committee had found H.R. 3190 "truly enrolled."  House Journal, legislative day of June 19, 1948, p. 776 (recorded under heading "BILLS AND JOINT RESOLUTIONS ENROLLED SUBSEQUENT TO ADJOURNMENT").  He attached his certificate of enrollment to the original H.R. 3190 passed

17

by the House on May 12, 1947.  See H.R. 3190, certified after adjournment as "truly enrolled" (as certified by Richard H. Hunt, Director, Center for Legislative Archives, The National Archives, Washington, D.C.).   Although never certified as truly enrolled, the Speaker and President pro tempore respectively signed the Senate's amended H.R. 3190 on June 22 and 23, 1948.  94 Cong. Rec. 9353-9354; House Journal, legislative day June 19, 1948, p. 777; Senate Journal, legislative day June 18, 1948, pp. 578-579.   National Archives & Records Adm. Cert. H.R. 3190 signed by House and Senate officers and President Truman.   The Senate's amended H.R. 3190 was presented by the Committee on House Administration to Pres. Truman, June 23, 1948, who signed June 25, 1948,   12:23 P.M. E.D.T., 94 Cong. Rec. 9364-9367; House Journal, legislative day June 19, 1948, pp. 778, 780, 782; Senate Journal, legislative day of June 18, 1948, pp. 579, 583.  Natl. Archives & Records Adm. Cert., H.R. 3190, supra; 94 Cong. Rec. D557 (Daily Digest).

The Signatories Of H.R. 3190 Knew the Enacting Clause Was False When Signed

Public Law 80-772 stated that the enactment proceeded "by the Senate and House of Representatives of the United States of America in Congress assembled."  See National Archives & Records Adm. Cert., H.R. 3190 as signed into P.L. 80-772, supra.  Each signatory knew that neither "House" legislatively existed at that time, and the legislative process had ceased with the terms of Article I §§ 5 and 7 on June 20, 1948.

9.  *Public Law 80-772* Is Unconstitutional And *Void* Because H.R. 3190 Never Passed Both Houses As Required By Article I, Section 7, Clause 2

# THE LEGAL PRINCIPLES

This case presents the "profoundly important issue," of the constitutionality of an act of Congress – matters "'of such public importance as to justify deviation from normal appellate practice and to require immediate determination by this Court.'" Clinton, 524 U.S. at 455 (Scalia, J., and O'Conner, J., joining in part and dissenting in part) (adopting language directly from Sup. Ct. R. 11).

Although "[a]ll legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives," (Art. I, § 1, U.S. Constitution), "when [Congress] exercises its legislative power, it must follow the 'single, finely wrought and exhaustively considered procedures' specified in Article I." Metropolitan Washington Airport Authority v. Citizens for Abatement of Aircraft Noise, Inc., 501 U.S. 252, 274 (1991) (quoting INS v. Chadha, 462 U.S. at 951). Article I establishes "just how those powers are to be exercised." INS v. Chadha, 462 U.S. at 945.

An act of Congress "does *not* become a law unless it follows each and every procedural step chartered in Article I, § 7, cl. 2, of the Constitution." Landgraf v. USI Film Products, 511 U.S. 244, 263 (1994) (citing INS v. Chadha, 462 U.S. at 946-951 (emphasis added)); Clinton, 524 U.S. at 448 (noting requisite "steps" taken before bill may "'become a law'" and holding that a procedurally defective enactment cannot "'become a law' pursuant to the procedures designed by the Framers of Article I, § 7, of the Constitution").

The Constitution requires "three procedural steps": (1) a bill containing its *exact text* was approved by a majority of the Members of the House of Representatives; (2) the Senate approved *precisely the same text*; and (3) *that text* was signed into law by the President. "If one paragraph of *that text* had been omitted at *any one of those three stages*, [the] law [in question] would *not*

have been validly enacted." <u>Clinton</u>, 524 U.S. at 448 (emphasis added).  Between the second and third "procedural steps," the bill "… shall … be presented to the President…"  Article I, § 7, Cl. 2.

The text of <u>H.R. 3190</u> passed by the House of Representatives was the text as it existed on the date of passage – i.e. May 13, 1947.  Whereas, the text of the bill passed by the Senate on June 18, 1948, was <u>H.R. 3190</u> "as amended." <u>Senate Journal</u>, June 18, 1948, p. 506.  Thus, the text of the bills passed by the respective Houses was grossly different and neither bill ever "became a law." <u>Clinton</u>, 524 U.S. at 448.  Permitting Post-Adjournment Legislative Business Pursuant to H.Con.Res. 219 Violated The Quorum, Bicameral And Presentment Requirements Of Article I Of The Constitution

After Congress adjourned on June 20, 1948, pursuant to <u>H.Con.Res. 219</u>, a single officer of each House of Congress signed *a bill* purporting to be <u>H.R. 3190</u> on June 22-23, 1948, 94 Cong. Rec. 9354; <u>House Journal</u> legislative day of June 19, 1948, p. 777; <u>Senate Journal</u>, legislative day of June 18, 1948, pp. 578-579, and presented *that bill* to the President, who signed it on June 25, 1948.  94 <u>Cong. Rec.</u> 9365-9367.  Thus, the post-adjournment signature "provision [of H.Con.Res. 219] was an important part of the legislative scheme," leading to the enactment of <u>Public Law 80-772</u>, without which it would never have "become a Law." <u>Bowsher v. Synar</u>, 478 U.S. 714, 728 (1986). <u>Public Law 80-772</u> *falsely* stated it was "enacted" while both Houses were "in Congress assembled" when in fact Congress was not in session.  <u>See</u> National Archives & Records Adm. Cert., <u>H.R. 3190</u> as signed into <u>P.L. 80-772</u>.

The bill signed was the Senate's amended <u>H.R. 3190</u> – a bill never certified as "truly enrolled," *compare* <u>Pub.L. 80-772</u>, Enactment Clause & signature pages *with* <u>H.R. 3190,</u> certified as "truly

enrolled," supra, and H.Con.Res. 219 never authorized the signing of *unenrolled* bills after

adjournment.  See H.Con.Res. 219, supra, 62 Stat. 1436.


Article I, § 5, Clause 1 mandates a quorum of both Houses of Congress "to do Business."  This

constitutional requirement has been enforced by practice, Rules of the Houses, custom, Supreme

Court holdings and duly enacted statutes.


1 U.S.C. § 101 requires every "enacting clause of all Acts of Congress" to state: "'Be it enacted

by the Senate and House of Representatives of the United States of America in Congress

assembled.'"  Although the bill after passage by "both Houses" must be "enrolled" following

which it "shall be signed by the presiding officers of both Houses and sent to the President of the

United States," 1 U.S.C. § 106, the actual procedure is regulated by House rules and established

practice.  Following passage the "chairman of the Committee on House Administration …

affixes to the bills examined a certificate that the bill has been found truly enrolled," House Doc.

No. 769, supra, States of a Bill, § 983, No. 16, p. [483], after which the "enrolled bill is first laid

before the House of Representatives and signed by the Speaker … after which it is transmitted to

the Senate and signed by the President of that body," Id., No. 17, p. [484].


The Supreme Court in Marshall Field & Co. v. Clark, 143 U.S. 649 (1892), defined the essence

of this procedure:

*The signing* by the Speaker of the House of Representatives, and, by the President of the Senate,

*in open session, of an enrolled bill is an official attestation by the two houses* of such bill as one

that has passed Congress.  It is *a declaration by the two houses*, through their presiding officers,

*to the President*, that a bill, thus attested, has received, in due form, *the sanction of the legislative*

*branch* of the government, and that it is delivered to him in obedience to the constitutional

requirement that all bills which pass Congress shall be presented to him.

143 U.S. at 672 (emphasis added).   1 U.S.C. § 106 codified this implicit constitutional

requirement.   Reading 1 U.S.C. §§ 101 and 106 together requires that all acts must occur at least

through presentment to the President while Congress is in session.   That the enrolled bill must be

"layed before the House" prior to signing by the Speaker and *then* "transmitted to the Senate"

before the signing by the President of that body concludes that the respective Houses *must be in

session during this transaction.*

An "adjournment terminates the legislative existence of Congress."   Pocket Veto Case, 279 U.S.

at 681.   "'Th[e] expression a "house," or "each house," [when] employed … with reference to

the faculties and powers of the two chambers … always means … the constitutional quorum,

assembled for the transaction of business, and capable of transacting business.'"   279 U.S. at

683, quoting I Curtis' Constitutional History of the United States, 486 n. 1.   Moreover, the term

"'House'" means "the House in session," 279 U.S. at 682, and "'as organized and entitled to

exert legislative power,' that is, the legislative bodies 'organized conformably to law for the

purpose of enacting legislation.'"   Id. (quoting Missouri Pacific Railway Co. v. Kansas, 248 U.S.

276, 281 (1919)).   See also House Doc. No. 355, supra, Hinds' Precedents, § 2939, p. 87 ("The

House is not a House without a quorum'").

No "attestation" or "declaration by the two houses … to the President," Field & Co., 143 U.S. at

672, that H.R. 3190 had "passed" Congress during the adjournment was possible because no

such "houses" constitutionally existed.   See also United States National Bank of Oregon v.

Independent Insurance Agents of America, 508 U.S. 439, 455 n. 7 (1993) (noting that the rule

established in Field & Co., 143 U.S. at 672, made statutory by 1 U.S.C. § 106 turned upon "the 'enrolled bill,' signed in open session by the Speaker of the House of Representatives and the President of the Senate").  Longstanding precedence of the House affirms this.  House Doc. No. 355, supra, Hinds' Precedents, Vol. IV, § 2951, pp. 90-91 (upon "disclos[ure] … that there is not a quorum … [t]he House thereby becomes constitutionally disqualified to do further business") (excepting from disqualification the exceptions stated in Art. I, § 5, Cl. 1) (emphasis added); id., § 3458, p. 322 ("The Speaker may not sign an enrolled bill in the absence of a quorum."); id. at § 3486, pp. 332-333 (recognizing enrollment and presentment to the President to be legislative business required to be completed before adjournment); id. at § 3487, p. 333 n. 3 (presentment to the President is legislative "business" which must be completed before adjournment; id. at § 4788, p. 1026 ("The presentation of enrolled bills" to the President of the United States is a "transact[ion]" of "business" of the "House.").

Once a bill has passed the House of Representatives it must be printed as an "engrossed bill" which then "shall be signed by the Clerk of the House … sent to the other House, and in that form shall be dealt with by that House and its officers, and, if passed, returned signed by said Clerk." 1 U.S.C. § 106.   In the immediate case H.R. 3190 was passed by the House of Representatives on May 12, 1947, engrossed and sent to the Senate and there referred to the Senate's Committee on the Judiciary.  See 93 Cong. Rec. 5048-5049, 5121; Senate Journal, May 13, 1947, p. 252.  However, it was not dealt with nor passed "in that form."

Instead, amendments were proposed which were "agreed to en bloc," read into the record and "ordered to be engrossed," 94 Cong. Rec. 8721-8722.  Then, "the [amended] bill was read the third time and passed." 94 Cong. Rec. 8722; Senate Journal, June 18, 1948, p. 506.  The House

then concurred in the amendments en bloc.  94 Cong. Rec. 8864-8865; House Journal, June 18, 1948, p. 704.

"The House in which a bill originates enrolls it," House Doc. No. 769, supra, Stages of a Bill, No. 15, p. [483], and, in the case of House bills, the "chairman of the Committee on House Administration . . . affixes to the bills examined a certificate that the bill has been found truly enrolled," Id., No. 16, p. [483], after which it is "laid before the House … signed by the Speaker [then] transmitted to the Senate and signed by the President of that body." Id., No. 17, p. [484]. Unequivocally, "[t]he Speaker may not sign an enrolled bill in the absence of a quorum." House Doc. No. 355, supra, Hinds' Precedents, § 3458, p. 322.  Cf., id., § 2939, p. 87 ("The House is not a House without a quorum.").

The constitutional "quorum" issue is precluded from the Field & Co.'s "enrolled bill rule" by its terms – i.e., "[t]he signing … in open session, of an enrolled bill," 143 U.S. at 672 (emphasis added), which in any case only applies in "the absence of [a] constitutional requirement binding Congress." United States v. Munoz-Flores, supra, 495 U.S. at 391 n. 4.  Moreover, just as "§ 7 gives effect to all its Clauses in determining what procedures the Legislative and Executive branches must follow to enact a law," id., 495 U.S. 386 (emphasis by Court), so too does Article I, § 5, Cl. 1 "provide[] that no law could take effect without the concurrence of the prescribed majority of the Members of both Houses," INS v. Chadha, 462 U.S. at 949-950, as to all legislative "Business." Cf. United States v. Ballin, 144 U.S. 1, 3-5 (1892) (to determine whether constitutionally mandated quorum was present for legislative action the Court "assume[s]" the Journals of the Houses … to be considered to decide the issue).

The bill signed by the Officers of the Houses, presented to and signed by the President of the United States, was the Senate's amended bill, which never passed the House. H.Con.Res. 219 only "authorized [the] sign[ing] [of] enrolled bills … duly passed by the two Houses and found truly enrolled," H.Con.Res. 219, supra, 62 Stat. 1436, voiding the signatures on the amended bill.

Having not been enrolled, certified as truly enrolled, or signed by the Speaker of the House with a quorum present, the bill was rendered constitutionally void. House Doc. No. 769, supra, Constitution of the United States, § 55, p. [191] ("[w]hen action requiring a quorum was taken in the ascertained absence of a quorum … the action was null and void"); House Doc. No. 355, supra, Hinds' Precedents, §§ 3497 & 3498, pp. 344-345 (such a bill is "not in force" and is "not a valid statute"). Cf., id., Hinds' Precedents, § 2982, p. 94 (to vacate legislative act "the absence of a quorum should appear from the Journal").

Art. I, § 7, mandates that a bill that has passed both Houses "'shall before it becomes a Law, be presented to the President of the United States …'" Art. I, § 7, Cl. 2; INS v. Chadha, 462 U.S. at 945, which "can only contemplate a presentment by the Congress in some manner, [because] … [a]t that point the bill is necessarily in the hands of the Congress." United States v. Kapsalis, 214 F.2d 677, 680 (7th Cir. 1954), cert. denied, 349 U.S. 906 (1955) (emphasis added). True presentment is clearly part of the legislative procedure required as essential to enactment of a bill as law. INS v. Chadha, 462 U.S. at 945, 947, 951; La Abra Silver Mining Co. v. United States, 175 U.S. 423, 454 (1899) ("After a bill has been presented to the President, no further action is required by Congress in respect of that bill, unless it be disapproved by him. …") (emphasis added). See House Doc. No. 355, supra, Hinds' Precedents, Vol. IV, § 4788, p. 1026 (recognizing that "[p]resentation of enrolled bills" to the President is a "transact[ion]" of "business" of "the House"); id., § 3486, p. 332 (recognizing presentment required prior to

adjournment); id., § 3487, p. 333 note 3 (when bill is enrolled or signed by presiding officers "too late to be presented to the President before adjournment" signing and presentment must continue at next session as a "resumption of [legislative] business"). Clearly presentment is part of the constitutionally mandated "Business," Art. I, § 5, Cl. 1, to be "exercised in accord with [the] single, finely wrought and exhaustively considered, procedure" "prescri[bed] in Art. I, §§ 1, 7." INS v. Chadha, 462 U.S. at 951.

The "draftsmen" of the Constitution "took special pains to assure these [legislative] requirements could not be circumvented. During the final debates on Art. I, § 7, Cl. 2, James Madison expressed concern that it might easily be evaded by the simple expedient of calling a proposal a 'resolution' or 'vote' rather than a 'bill.' As a consequence, Art. I, § 7, Cl. 3, … was added." INS v. Chadha, 462 U.S. at 947 (citing 2 Farrand, supra, 301-302, 304-305).

Whether actions authorized under a resolution are "an exercise of legislative powers depends not on their form but upon 'whether they contain matter which is properly to be regarded as legislative in its character and effect.'" INS v. Chadha, 462 U.S. at 952 (quoting S. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1897)). "If the power is legislative, Congress must exercise it in conformity with the bicameralism and presentment requirements of Art. I, § 7." Metropolitan, 501 U.S. at 276. See also Bowsher v. Synar, 478 U.S. at 756 (Stevens, J., concurring) "It is settled, however, that if a resolution is intended to make policy that will bind the Nation, and thus is 'legislative in its character and effect,' S. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1897) – then the full Article I requirements must be observed. For 'the nature or substance of the resolution, and not its form, controls the question of its disposition.' Ibid.").

"'Congress,'" of course, "'cannot grant to an officer under its control what it does not possess.'" Metropolitan, 501 U.S. at 275 (quoting Bowsher v. Synar, 478 U.S. at 726). Congress does not possess the "'capab[ility] of transacting business'" and is not "'entitled to exert legislative power,'" when its "legislative existence" has been "terminate[d]" by an "adjournment." Pocket Veto Case, 279 U.S. at 681-683 (citations omitted). "The limitation of the power of less than a quorum is absolute," House Doc. No. 355, supra, Hinds' Precedents, Vol. V, Ch. CXL, § 6686, p. 851, and includes the signing of an enrolled bill by the Speaker of the House, id., Vol. IV, Ch. XCI, § 3458, p. and presentment to the President of the United States. id., Ch. CII, §§ 3486, 3487 & 3497, pp. 332, 333 note 3, 344 & 345. Wright v. United States, 302 U.S. 583, 600 (1938) (Stone, J. concurring) ("The houses of Congress, being collective bodies transacting their routine business by majority action are capable of acting only when in session and by formal action recorded in their respective journals, or by recognition, through such action, of an established practice.") Thus, "Congress," as defined by the Constitution and Supreme Court, never "presented" any version of H.R. 3190 to the President of the United States.

Whether the action taken under H.Con.Res. 219 was an "exercise of legislative power" depends upon whether it was essentially "legislative in purpose and effect." INS v. Chadha, 462 U.S. at 952. "In short, when Congress '[takes] action that ha[s] the purpose and effect of altering the legal rights, duties, and relations of persons ... outside the Legislative Branch,' it must take that action by the procedures authorized in the Constitution." Metropolitan, 501 U.S. at 276, quoting INS v. Chadha, 462 U.S. at 952-955. "If Congress chooses to use a [] resolution ... as a means of expediting action, it may do so, if it acts by both houses and presents the resolution to the President," Consumer Energy Council of America v. F.E.R.C., 673 F.2d 425, 476 (D.C. Cir. 1982), aff'd mem. sub nom., Process Gas Consumers Group v. Consumer Energy Council of America, 463 U.S. 1216 (1983).

The inescapable conclusion as to the "purpose and effect" of H.Con.Res. 219 was to enact *a bill* the text of which at the time of adjournment on June 20, 1948, had not been passed by both Houses, enrolled, certified as "truly enrolled," or signed by the officers of the Houses or presented to the President of the United States with quorums sitting. In other words, H.Con.Res. 219 unconstitutionally permitted post-adjournment legislative business to proceed without Congress and upon an unpassed bill. Congress did not follow the procedures mandated by Art. I, § 7, Cl. 2 and attempted to supersede the quorum requirements of Art. I, § 5, *via* a concurrent resolution to carry forth legislative business with no legislature. The 80th Congress surreptitiously provided a bill, the text of which had never passed either House "'mask[ed] under … [the] indirect measure,'" Metropolitan, supra, 501 U.S. at 277 (quoting Madison, The Federalist No. 48, p. 334 (J. Cooke 1961 ed.)), of a resolution purporting to authorize continuing legislative action during adjournment with no quorum and no Congress of an extra-congressional bill. Public Law 80-772 did not "become a Law" as required by the constitutional procedures mandated under Article I, § 5, Cl. 1, and Article I, § 7, Cls. 2 and 3, and is unconstitutional and *void ab initio.*

"[W]hen action requiring a quorum was taken in the ascertained absence of a quorum … the action [is] null and void," House Doc. No. 769, supra, Constitution of the United States, § 55, p. [19] (citing Hinds' Precedents, Vol. IV, § 2964), and "a bill … not actually passed [although] signed by the President [is to be] disregarded [requiring] a new bill [to be] passed." House Doc. No. 769, § 103, p. [ ] (citing Hinds' Precedents, Vol. IV, § 3498).

The District Court Order Committing Petitioner To Executive Custody Pursuant To § 3231 (Of The Unconstitutional *Public Law 80-772*) Was Issued *Ultra Vires*, Is Unconstitutional And *Coram Non Judice*, And his Imprisonment and Confinement Is Unlawful

"The challenge in this case goes to the subject-matter jurisdiction of the [district] court and hence [its] power to issue the order," United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 77 (1988), committing Petitioner to imprisonment in Executive custody. Thus, the "question is, whether … [the district court's] action is judicial or extra-judicial, with … without the authority of law to render [the] judgment," Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) 657, 718 (1838), and to issue the commitment order.

Subject-matter jurisdiction means "'the courts' statutory or constitutional *power* to adjudicate the case,'" United States v. Cotton, 535 U.S. 625, 630 (2002), quoting Steel Co. v. Citizens For A Better Environment, 523 U.S. 83, 89 (1998); Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) at 718 ("Jurisdiction is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them."); Reynolds v. Stockton, 140 U.S. 254, 268 (1891) ("Jurisdiction may be defined to be the right to adjudicate concerning the subject matter in a given case."). "Subject-matter limitations on federal jurisdiction serve institutional interests by keeping the federal courts within the bounds the Constitution and Congress have prescribed." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).

"'Without jurisdiction the court cannot proceed at all in any cause … and when it ceases to exist, the only function of the court is that of announcing the fact and dismissing the cause.'" Steel Co. v. Citizens, 523 U.S. at 94, quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869); Willy v. Coastal Corp., 503 U.S. 131, 137 (1992) ("lack of subject-matter jurisdiction … precludes further adjudication"). The Supreme Court has asserted over and over that "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" Steel Co., 523

29

U.S. at 94-95, quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884); See also Insurance Corp. of Ireland, Ltd., 456 U.S. at 702.

Because subject-matter jurisdiction "involves a court's power to hear a case, [and thus] can never be forfeited & waived … correction [is mandatory] whether the error was raised in district court" or not. United States v. Cotton, 535 U.S. at 630 (citation omitted); Steel Co., 523 U.S. at 94-95 (citing cases). When a district court did "not have subject-matter jurisdiction over the underlying action … [its] process[es] [are] void and an order of [punishment] based [thereupon] … must be reversed." United States Catholic Conf., 487 U.S. at 77; Willy v. Coastal Corp., 503 U.S. at 139 ("[T]he [punishment] order itself should fall with a showing that the court was without authority to enter the decree."); Ex parte Fisk, 113 U.S. 713, 718 (1885) ("When … a court of the United States undertakes, by its process … to punish a man … [respecting] an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing … is equally void.")

*Habeas corpus* review "is limited to the examination of the jurisdiction of the court whose judgment of conviction is challenged." INS v. St. Cyr, 533 U.S. 289, 311-314 (2001); Bowen v. Johnston, 306 U.S. 19, 23 (1939). A "court 'has jurisdiction to render a particular judgment *only when the offense charged is within the class of offenses placed by the law under its jurisdiction.*'" 306 U.S. at 24 (emphasis added). If it is found that the court lacked jurisdiction to try petitioner, the commitment and imprisonment is void, any judgment is *void* and the prisoner must be discharged. Ex parte Yarbrough, 110 U.S. 651, 654 (1884).

Petitioners have established that the text of H.R. 3190 signed by respective House officers and the President of the United States: (1) failed to pass the House of Representatives, and (2) that

the legislative process continued after Congress adjourned by single officers of each House acting pursuant to H.Con.Res. 219 without quorums in either House, all of which violated Article I, Section 5, Clause 1; Article I, Section 7, Clause 2, and/or Article I, Section 7, Clause 3 – and any of which rendered Public Law 80-772 unconstitutional and *void ab initio*. Marbury v. Madison, 5 U.S. 137, 180 (1803) ("a law repugnant to the constitution is *void*; and … courts, as well as other departments, are bound by that instrument"), that the Law signed by the President when Congress was fully adjourned and not in session was a political law, not a law Constitutionally passed by Congress, and that the bill passed violated the Federal Register Act. Therefore, because "the offense[s] charged … [were] placed by the law under [the] jurisdiction," of the district court below pursuant to 18 U.S.C. § 3231 of Public Law 80-772, which is *unconstitutional* and "*void*, the court was without jurisdiction and the prisoner must be discharged." Yarbrough, 110 U.S. at 654. Since Public Law 80-772 has never been enacted as required by Article I, Section 5, Clause 1, and Article I, Section 7, Clauses 2 and 3 thereof, rendering *void ab initio* the jurisdiction by which the district court acted to indict and to imprison Petitioner, to enter any judgment, and order Petitioner imprisoned in Executive custody, the district court's actions were "'*ultra vires*,'" Ruhrgas AG, 526 U.S. at 583 (quoting Steel Co., 523 U.S. at 101-102), and "*coram non judice*." Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) at 720.

The indictment and imprisonment and any judgment thereupon "being without jurisdiction, is *void*, and the order punishing … is equally *void*." Ex parte Fisk, 113 U.S. at 718; United States Cath. Conf., 487 U.S. at 77; Willy v. Coastal Corp., 503 U.S. at 139. This is precisely the office and function of *habeas corpus* – *i.e.*, to "examin[e] … the jurisdiction of the court whose judgment of conviction is challenged," Bowen v. Johnston, 306 U.S. at 23, and where, as here,

the court was clearly "without jurisdiction ... the prisoner ... must be discharged." Ex parte Yarbrough, 110 U.S. at 654.  See also Ex parte Lange, 85 U.S. (18 Wall.) 163, 166 (1874).

## CONCLUSION:

Petitioner's indictment should be overturned and he be set free because the District Court did not have jurisdiction to try crimes against the United States due to the unconstitutional enactment of Public Law 80-772, codified as Title 18, since no quorum was in place on May 12, 1947, when the House voted on the bill, no quorum was in place when the bill was signed by the Speaker of the House and President pro tempore of the Senate on June 23, 1948 when the bill was "signed" into law, and no valid enactment occurred when the bill was not registered into the Federal Register Act, and no court has made proper findings of fact and law related to the quorum issue.

## PRAYER FOR RELIEF:

Wherefore, as established herein, the court should issue an order:

Declaring Public Law 80-772 unconstitutional;

Declaring Petitioner actually innocent as a matter of law;

Declaring that Petitioner be immediately released from his unlawful confinement.

Respectfully submitted

/s/ _____   11/14/11

Legal Accountability Workgroup

3300 Bee Cave Road, Suite 650-1185

32

Austin, TX 78746



April 7, 2013 C.E.

RESCISSION

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Brief has been served on AUSA for

the District of Colorado, Denver Division

/s/_____

Legal Accountability Workgroup

34

U.S. DISTRICT COURT
DISTRICT OF COLORADO

2011 OCT 17 PM 1:20

GREGORY C. LANGHAM
CLERK

BY _____ DEP. CLK