RICHARD KELLOGG ARMSTRONG
Federal Register No. 20413-298
Federal Correctional Institution
3600 Guard Road
Lompoc, CA 93436
Telephone: None Available

DEFENDANT PRO SE

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR 28 2019

JEFFREY P. COLWELL
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 1:10-cr-00317-REB-2 |
| Plaintiff, | ) **DEFENDANT RICHARD KELLOGG ARMSTRONG'S** |
| | ) **VERIFIED MOTION FOR SENTENCE REDUCTION** |
| vs. | ) **PURSUANT TO: THE FIRST STEP ACT of 2018** |
| RICHARD KELLOGG ARMSTROND, | ) 1) 18 U.S.C. § 3582(c)(2); and (c)(1)(B) |
| Defendant. | ) |
| | ) 2) Amendment 782 To The United States Sentencing Guidelines Enacted & Applied Retroactively As Of November 1, 2014 and the FIRST STEP ACT of 2018, December 21, 2018 EXHIBITS IN SUPPORT THEREOF. |

RICHARD K. ARMSTRONG, Defendant Pro Se herein, hereby files, serves and submits this "**Motion For Sentence Reduction Pursuant To 18 U.S.C. § 3582(c)(2) And Amendment 782 To The United Sentencing Guidelines Enacted & Applied Retroactively As Of November 1, 2014.**" Defendant states, certifies and declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1) **Original Sentencing Court & Sentence Imposed:**

   A) <u>Sentencing Court</u>: U.S. District Court, District of Colorado

   B) <u>Date Of Sentence</u>: August 14, 2012

   C) <u>Original Sentence</u>: 108 months, plus 22 months criminal contempt (83.3% & 100% Served to date)

   D) <u>Amount Of Original Sentence Served To Date</u>: 108 = 83.3% / 22 = 100% (See docket 588)

2) **Original Sentence Determination:**

   A) <u>Criminal History Category</u>: I

   B) <u>Base Offense Level</u>: 31

   C) <u>Offense Level Enhancements Applied</u>: N/A

-1-

    D)    <u>Offense Level Reduction(s) Applied</u>: Unknown

    E)    <u>Original Total Offense Level</u>: 31

    F)    <u>Original Sentencing Range</u>: 108 - 135

    G)    <u>Departures From Original Sentencing Range</u>: 22 months (criminal contempt)

    H)    <u>Mandatory Minimum Sentence</u>: Unknown

    I)    <u>Original Sentence</u>: 108 months

    J)    <u>Offenses Of Conviction</u>: 18 U.S.C. §§ 287; 1341; 2

    K)    <u>5K1 Cooperation Agreement</u>: None

    L)    <u>Summary Overview Of Original Sentencing</u>: Fully qualify for release under the term of the FIRST STEP ACT of 2018.

3) **New Sentence Determinations With Amendment 782 Two (2) Level Guidelines Reduction: FIRST STEP ACT authorized a reduction of 33% in addition to any other law**

    A)    <u>Revised Total Offense Level After Two Level Reduction</u>: 29

    B)    <u>Revised Sentencing Range After Two Level Reduction</u>: 87 - 108

4) **First Step Analysis - Does Level Reduction Result In Reduced Sentencing Range:**
After 2 point reduction new sentence is 87 months plus 33% pursuant to FSA

5) **Second Step Analysis - Factors & Change In Circumstances Warranting Sentence Reduction:**
FIRST STEP ACT "elderly offender" authorizes 33% reduction = time served

    A)    <u>Prison Progress Report</u>: Clear conduct as of current team report

    B)    <u>Rule Infractions Or Disciplinary Actions</u>: See BOP records for same

    C)    <u>Defendant Has Taken Advantage Of Every Prison Rehabilitation Program To Rehabilitate Himself And Become A Model Prisoner Worthy Of Recognition & Sentence Reduction</u>:

        1. N/A

        2.

        3.

        4.

D)   Change In The Nature & Characteristics Of Defendant:
The defendant/inmate, has become fully aware of his downfalls in the society and h as become fully rehabilitated, for the mere fact that he has been put through a prison environment that he does not intend to ever let it happen again. At this older age of nearly 80 years old, I do not intend for this experience to reoccur and I will be sure not to ever reoffend. I will be in a status of observance of the law, and be sure to respect it.

6)   **Sentence Reduction Requested:**

If the Court were to apply a straightforward and mechanical formula to the Sentence Reduction, presumably it would resentence Defendant to a New Sentence of 0 Percent ( 0 ) above the Lower Level of   87 months imprisonment, or 0  months above the month Lower Level (i.e.   0 months) as it did with the Original Sentence.

However, Defendant's Post-Sentencing Conduct & Rehabilitation has been truly remarkable and astonishing, resulting in the Justice System having resulted in the creation of a "new man" that is adult, responsible, mature and community oriented.

Therefore, based upon Defendant's Post-Sentencing Conduct & Rehabilitation, **Defendant respectfully requests that the Court resentence him to a New Sentence of  87  months imprisonment which corresponds to the Lower Level of the new reduced Sentencing Guidelines.**

Such a Resentencing based on Defendant's Post-Sentencing Conduct & Rehabilitation is fully supported by:

A)   **The U.S. Justice Department Policy** (which follows);

B)   **The Public As Stated In The New Yorker Magazine Article "The Caging Of America"** (which follows);

C)   **The Ninth Circuit Court Of Appeals precedent established in United States v. Trujillo, 713 F.3d 1003 (9th Cir. 2013) [citing the U.S. Supreme Court precedent established in United States v. Pepper, 131 S.Ct. at 1242-43]** (which follows) stating in pertinent part:

"In Pepper and Gall, the Supreme Court made clear that post sentencing or post offense rehabilitation - **particularly in light of its tendency to reveal a defendant's likelihood of future criminal conduct - was a critical factor to consider in the imposition of a sentence.**"

**IT IS THE POLICY OF THE U.S. DEPARTMENT OF JUSTICE, EFFECTIVE AS MARCH 13, 2014, THAT THE BASE OFFENSE LEVELS CALCULATED UNDER USSG § 2D1.1(c) SHOULD BE REDUCED BY TWO LEVELS.**

1) On January 17, 2014, the United States Sentencing Commission published a proposed Amendment to United States Sentencing Guidelines ("USSG") § 2D1.1(c). If adopted, the amendment will reduce the present base offense level for Federal drug traficking offenses by two level, effective November 1, 2014. Also the FIRST STEP ACT of 2018.

2) On March 13, 2014, in anticipation that the Amendment will be adopted, and under the directive of Attorney General Eric Holder, the U.S. Department of Justice advised Federal prosecutors that, **effective immediately, it is the POLICY of the U.S. Dept. of Justice that base offense levels calculated under USSG § 2D1.1(c) SHOULD BE REDUCED BY TWO LEVELS. In addition a reduction of 33% pursuant to the FIRST TEP ACT.**

3) Accordingly, effective as of March 13, 2014, **in all cases where the base offense level is calculated under USSG § 2D1.1(c), the United States should move the Sentencing Court TO VARY DOWNWARD BY TWO LEVELS from the base offense levels now in effect under USSG 2D1.1(c). The FIRST STEP ACT "elderly offender" clause applies hereby.**

4) Additionally, it is of historic significance that the Sentencing Commission is **emphasizing for the first time** that it **"must ensure that the sentencing guidelines are 'formulated to MINIMIZE THE LIKELIHOOD THAT THE FEDERAL PRISON POPULATION WILL EXCEED the capacity of the Federal prisons.'"** [See U.S.S.C., Proposed Amendments to the Sentencing Guidelines (Preliminary), January 9, 2014, at 2]. Thus, '[p]ursuant to 28 U.S.C. § 994(g), the Commission intends to consider the issue of reducing costs of incarceration and overcapacity of Federal prisons.' Id. quoting Fed. Reg. 51820 (August 21, 2013).

5) Of equal importance, and fundamentally so from a separation of powers perspective, the Executive Branch supports the Judicial Branch's proposed Amendment. **"The Justice Department STRONGLY SUPPORTS the Commission's proposed change to the Drug Quantity Table.** If adopted, this Amendment would lower by two levels the base offense levels associated with various drug quantities involved in drug trafficking crimes." [Department of Justice, Office of Public Affairs, March 13, 2014 Press Release]

**[NOTE: Bold, Underline & CAPS for Emphasis]**

**THE ACCUMULATED EXPERIENCE AND EVIDENCE IS CLEAR AND UNEQUIVOCAL THAT THE SEVERITY OF SENTENCES SELDOM, IF EVER, FUNCTION AS CRIME PREVENTATIVES, AND THERE IS NO REAL EVIDENCE OF A DETERRENT EFFECT FOR SENTENCE SEVERITY, WHEN IN VIRTUALLY EVERY DETERRENCE**

**STUDY TO DATE, THE "PERCEIVED CERTAINTY OF PUNISHMENT" WAS MORE IMPORTANT THAN THE "PERCEIVED SEVERITY."**

As the Court is aware, Congress, through Mandatory Minimums, has increasingly appropriated an area of law traditionally reserved for judges. It is self-evident that "mandatory sentencing laws...prevent[] judges from exercising judgment." Adam Gopnik, The Caging of America, The New Yorker, January 30, 2012. The result is less judgment but not yet machinery:

> Punishment is imposed parsimoniously and with respectful consideration for the individuality of each particular defendant. A court that mechanically doles out precalculated sentences on a wholesale basis to categories of faceless defendants, fails to do justice. A court that succumbs to apathy, bred by repetition, will cease to see defendants as individuals, with pasts and potentials, with humanity and promise. Unites States v. Coughlin, 2008 WL 313099 *9 (W.D.Ark. Feb 1, 2008) [unpublished]

The New Yorker article stated in pertinent part:

> The accelerating rate of incarceration over the past few decades, is just as starttling as the number of people jailed: in 1980, there were about two hundred and twenty people incarcerated for every hundred thousand Americans; by 2010, the number had more than tripled, to seven hundred and thirty-one. **No other country even approaches that.**
>
> The rate of incarceration in most other rich, free countries, whatever the differences in their histories, is remarkably steady. In countries with Napoleonic justice or common law or some mixture of the two, in countries with adversarial systems, and in those with magisterial ones, whether the country once had brutal plantation-style penal colonies, as France did, or was once itself a brutal plantation-style colony like Australia, the natural rate of incarceration seems to hover right around a hundred men per hundred thousand people... Id.

The emphasis on severity appears to be misplaced, unless raw punishment is the goal. **"Imaginable increases in severity of punishments DO NOT yield significant (if any) marginal deterrent effects.** Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as every major survey of the evidence. This is the belief, in my experience, of most experienced judges and prosecutors." Michael Tonry, The Functions of Sentencing and Sentencing Reform, 58 Stan.L.Rev. 37, 52-53 (2005) (citing Criminal Careers and "Career Criminals" [Alfred Blumstein et al. eds. 1986]; Deterrence and Incapacitation: Estimating the Effects of Criminal Sanctions on Crime Rates [Alfred Blumstein et al. eds. 1978]; Understanding and Controlling Violence [Albert J. Reiss, Jr. & Jeffrey Roth eds., 1993]; Andrew Von Hirsh et al, Criminal Deterrence and Sentence Severity; An Analysis of Recent Research (1999);Anthony N. Doob & Cheryl Marie Webster, Sentence Severity and Crime: Accepting the Null Hypothesis, 30 Crime & Justice 143 (2003); Daniel S. Nagin, Criminal Deterrence Research at the Outset of the Twenty-First Century,

23 Crime Justice 1 (1998)).

These same conclusions are corroborated in the social science literature. **"The clear weight of the evidence, not surprisingly, given what we know about severeity increases generally, IS THAT THEY ARE SELDOM IF EVER CRIME PREVENTATIVES."** Id. at 53.

**"THERE IS NO REAL EVIDENCE OF A DETERRENCE EFFECT FOR SEVERITY."** Raymond Pasternoster, How Much Do We Really Know About Criminal Deterrence, 100 J. Crim. L. & Criminology, 765, 818 (2010).

**"[I]N VIRTUALLY EVERY DETERRENCE STUDY TO DATE, THE PERCEIVED CERTAINTY OF PUNISHMENT WAS MORE IMPORTANT THAN THE PERCEIVED SEVERITY."** ID. AT 817. See also, Steven N. Durlauf and Daniel S. Nagin, Imprisonment and Crime: Can Both Be Reduced?, 10 Criminology & Pub. Policy 13, 37 (2011) ("The key empirical conclusions of our literature review are that at prevailing levels of certainty and severity, relatively little evidence of variation in the severity of punishment having a substantial deterrent effect is available and that relatively strong evidence indicates that variation in the certainty of punishment has a large deterrent effect, particularly from the vantage point of specific programs that alter the use of police.").

The Sentence specified herein is a certain punishment. It adequately and amply punishes the Defendant, protects the public from him, reflects the seriousness of the offense, promotes respect for the law, and deters Defendant and others. No more time is necessary or desirable in order to achieve those goals, and the Sentencing Commission's proposed Amendment clearly recognizes these particularities.

**THE NINTH CIRCUIT COURT OF APPEALS REITERATED AND RE-EMPHASIZED THE PRIOR PRECEDENTS ESTABLISHED BY THE U.S. SUPREME COURT, IN <u>UNITED STATES V. TRUJILLO</u>, 713 F3d 1003 (9th Cir. <u>2013</u>), WHERE IT EMPHASIZED THAT <u>"POST-SENTENCE OR POST-OFFENSE REHABILITAION - PARTICULARLY IN LIGHT OF ITS TENDENCY TO REVEAL A DEFENDANT'S LIKELIHOOD OF FUTURE CRIMINAL CONDUCT - WAS A CRITICAL FACTOR TO CONSIDER IN THE IMPOSITION OF A SENTENCE."**

In <u>Trujillo</u>, the Ninth Circuit stated in pertinent part:

> "In <u>Pepper</u> and <u>Gall</u>, the Supreme Court made clear that post sentencing or postoffense rehabilitation - **particularly in light of its tendency to reveal a defendant's likelihood of future criminal conduct - was a critical factor to consider in the imposition of a sentence.** See: <u>Pepper</u>, 131 S.Ct. at 1242-43 (citing 18 U.S.C. § 3553(a)(2)(B)-(C); <u>Gall</u>, 552 U.S. at 59 (same). In <u>Kimborough v. United States</u>, 552 U.S. 85, 91, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), the Court also emphasized that unwarranted disparities between offenders - and that such disparities would result in imposing sentences "greater than necessary" to achieve the objectives of sentencing - **was an important factor for district courts to consider."** <u>Trujillo</u>, 713 F3d at 1009-10.

"..The [Court's] order did not discuss any of the § 3553(a) factors that Trujillo argued in support of the lower sentence. **Trujillo's presentation about the § 3553(a) factors comprised eight pages of argument and an additional 39 pages of addenda consisting of health records and certificates of achievments from inmate programs.** ..Accordingly, the Supreme Court has consistently instructed that "**the punishment should fit the offender AND NOT MERELY THE CRIME,**" and thus, judges should use "**the fullest information possible concerning the defendant's life and characteristics**" **to determine the appropriate sentence.** Pepper, 131 S.Ct. at 1235, 1240 (quoting Williams v. New York, 337 U.S. 241, 246-47, 69 S.Ct. 1079, 93 L.Ed. 1337 (1940))," Trujillo, 713 F3d at 1008-09.

"Here Trujillo presented fairly extensive arguments and evidence concerning the 'characteristics of the defendant,' pursuant to 18 U.S.C. § 3553(a)(1): In addition to **citing his lack of a prior criminal record**, the defendant presented evidence of: **his educational history..; the support of his siblings and two children; his considerable involvement in constructive prison activities; HIS POST-SENTENCING REHABILITATION...**He also argued that the judge should consider unwarranted sentencing disparities pursuant to § 3553(a)(6)." Trujillo, 713 F3d at 1010.

"Regardless of the ultimate force of Trujillo's arguments, **they are not frivolous.** The district court did not address any of them, even to dismiss them in shorhand. **This total omission goes against the EXPLICIT POLICY CONSIDERATIONS IN RITA, where the Supreme Court explained that while a district judge need not enumerate every factor supporting a particular sentence, "[A] statement of reasons is important.** The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties arguments **and has a reasoned basis for exercising his own legal decision making authority.**" 552 U.S. at 356. Trujillo, 713 F3d at 1010.

Dated: March 21, 2019                          Respectfully submitted,

                                               /s/ Richard Kellogg Armstrong
                                               RICHARD KELLOGG ARMSTRONG
                                               Defefendant.


## VERIFICATION

I, RICHARD K. ARMSTRONG , Defendant Pro Se herein, hereby certify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

1) I am the moving Defendant in this Motion;

2) I have read, reviewed and understand all of the statements made herein and know them to be true and correct of my own knowledge.

Dated: March 21, 2019

                                               /s/ Richard Kellogg Armstrong
                                               RICHARD KELLOGG ARMSTRONG
                                               Defendant.

-7-

CERTIFICATE OF SRERVICE

I, the undersigned :Defendant," hereby certify and declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that:

1) I am the Defendant in the Case entitled:

   United States v. **Richard Kellogg Armstrong**
   United States District Court
   District of **Colorado**
   Case No. 1:10-cr-00317-REB-2

2) On the Date set forth below, I placed the Original and one (1) Copy of the following Document(s) in a sealed envelope with First Class postage prepaid thereon:

   Verified Motion for Sentence Reduction Pursuant to:
   1) 18 U.S.C. § 3582(c)(2); and (c)(1)(B) or Home Confinement
   2) Amendment 782 of the U.S. Sentencing Guidelines Applied Retroactively Effective as of November 1, 2014; The FIRST STEP ACT of 2018, under "elderly offender."
   Exhibits in Support hereof.

and delivered said sealed envelope(s) into the possession and custody of the Unit Officer at Federal Correctional Institution (Low), Lompoc, CA 93436, marked "Legal Mail" for the placement in the Prison Mailing System for forwarding through the U.S. Mail to the following addresses.

ORIGINAL:
Clerk
United States District Court
District of **Colorado**
901 19th. St., Room A105
Denver, CO 80294-3589

COPY:
United States Attorney's Office
Attn: AUSA,
1225 17th. St., Suite 700
Denver, CO 80202

3) The above was undertaken in full compliance with the "Prison Mailbox Rule" established by the U.S. Supreme Court in Houston v. Lack, 487 U.S. 266, 101 L.Ed.2d 245 (1988), and the Ninth Circuit Court of Appeals decisions clarifying its application to all Federal Prisoner filings and service in Douglas v. Noelle, 567 F3d 1103 (9th Cir. 2008) and Washington v. Duncan, 357 Fed, Appx. 843 (9th Cir. 2009) establishing the precedent that the documents are "deemed filed" and "deemed served" on the date the Federal Prisoner delivers them to Prison Staff for forwarding to the Courts and parties.

Date: March 21, 2019                          Federal Prisoner:

                                              *Richard Kellogg Armstrong*
                                              RICHARD KELLOGG ARMSTONG
                                              Defendant, Pro Se